James E. Cecchi
Caroline F. Bartlett
**CARELLA, BYRNE, CECCHI,**
**OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone:  (973) 994-1700

Mark. J. Dearman
Stuart A. Davidson
Jason H. Alperstein
Eric Dwoskin
**ROBBINS GELLER RUDMAN**
**  & DOWD LLP**
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone:  (561) 750-3000

(*Pending pro hac vice admission*)

Steven G. Calamusa
Robert. E. Gordon
Daniel G. Williams
**GORDON & DONER, P.A.**
4114 Northlake Boulevard
Palm Beach Gardens, FL 33410
Telephone: (561) 799-5070

(*Pending pro hac vice admission*)

*Attorneys for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ROBERT PONZIO, KARINA KLOCZKO, JESSICA IRENE MILLER, THOMAS HAYES, ALEX ACUNA, BRIAN MADSEN, VANESSA M. MONTGOMERY, ROBERT MULL, HADIYA NELTHROPE, and SAMUEL SALGADO, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) ) ) | No. _____ |
| Plaintiffs, | ) ) | **CLASS ACTION COMPLAINT** |
| vs. | ) ) ) | **JURY TRIAL DEMAND** |
| MERCEDES-BENZ USA, LLC and DAIMLER AG, | ) ) ) ) | |
| Defendants. | ) | |

Plaintiffs Robert Ponzio, Karina Kloczko, Jessica Irene Miller, Thomas Hayes, Alex Acuna, Brian Madsen, Vanessa M. Montgomery, Robert Mull, Hadiya Nelthrope, and Samuel Salgado ("Plaintiffs"), on behalf of themselves and all other similarly situated members of the below-defined Nationwide Class and State Classes they respectively seek to represent (collectively, the "Class"), bring this action against Defendants Mercedes-Benz USA, LLC ("MBUSA") and Daimler AG ("Daimler") (collectively, "Defendants" or "Mercedes"), upon personal knowledge as to the factual allegations pertaining to themselves and as to all other matters upon information and belief, based upon the investigation made by the undersigned attorneys, as follows:

## I.    INTRODUCTION

1.    This action is brought by Plaintiffs, individually and on behalf of a class of similarly situated owners and lessees of Mercedes-Benz branded automobiles with Mars Red[1] paint sold in the United States (the "Class Vehicles" or "Vehicles"), all of which were delivered by Defendants with an identical and inherent defect in the Vehicles' paint and/or paint process that Defendants have now acknowledged.  The defect, which was latent, but existed at the time that the Class Vehicles left Defendants' possession and control, manifests itself over time, and causes the Vehicles' exterior clearcoat to bubble, peel, and flake off, ultimately leading to rusting and corrosion ("Paint Defect").  Although the Class Vehicles consist of Mercedes-Benz branded vehicles across a number of models and model years, the paint used and the process by which it

---

[1]    Mars Red is an automotive paint color manufactured by PPG Industries, Inc. ("PPG"), formerly known as Pittsburgh Plate Glass Company.  The color formulation, which is also commonly known as Fire Opal, has been used by Mercedes between 2004 and 2017.  PPG identifies the color by paint code 905264, while Mercedes identifies the color by paint code 590. *See* PPG code 905264 – red, http://paintref.com/cgi-bin/paintdetail.cgi?ppg=905264 (last visited July 27, 2018).

was applied was identical in all the Vehicles.  As a result, all the Class Vehicles are uniformly plagued by the identical design and/or manufacturing Paint Defect, and the Paint Defect manifests in the Vehicles in a substantially similar or identical fashion.

2.     Plaintiffs seek damages, injunctive, equitable, and declaratory relief due to the Paint Defect in the Class Vehicles, as well as Defendants' unlawful conduct in concealing the Paint Defect, failing to cure the Paint Defect, and/or failing to adequately compensate Plaintiffs and Class members for the economic harm they have suffered as a result of the Paint Defect.

3.     As detailed below, due to the Paint Defect, the Class Vehicles are prone to, and do experience, paint failure at rates and in a manner that do not conform to industry standards.  The Paint Defect subjects the Class Vehicles to rust and corrosion and substantially decreases the value of the Vehicles.  Faced with the Paint Defect, owners/lessors must either live with the problems caused by the Paint Defect or spend significant money—or hope that Mercedes will cover the cost—to have their Class Vehicles repainted and the corroded areas repaired.  Even then, repainting the Class Vehicles does not cure the Paint Defect and, in and of itself, results in a cosmetic defect that decreases the Vehicles' value.

4.     Automobiles are painted for two purposes: (a) to enhance aesthetics (color, gloss, and appearance); or (b) to provide functionality (chemical and corrosion-resistance to protect the body of the vehicle).  If either of these purposes is compromised, then the value of the vehicle is diminished.  Accordingly, automakers employ multiple standards and test protocols to ensure long life of the paint system used on their vehicles, as well as to ensure the paint system will provide long-lasting protection when exposed to corrosive environments.  If the paint system fails one or more of these tests, it is considered a failure by industry standards.  As a result of the standard testing of the appearance and protection of a paint finish used in the auto industry, it is

customary to expect in excess of ten years of acceptable performance of a paint system from both an appearance and functionality standpoint.

5.     The condition of the paint on the body of a motor vehicle is widely recognized in the automotive industry as a factor affecting the value of the vehicle.[2]  This is because "[t]he appearance (color, gloss, and texture) of the surface [of the vehicle] significantly affects a customer's perception of product quality."[3]  In addition, "customer expectations for the attributes given by the appearance of coatings continue to increase as manufacturers compete to provide surfaces that offer enhanced surface characteristics."[4]

6.     Mercedes recognizes the importance customers place on the exterior appearance of vehicles, even telling customers that "[a]s you might expect, aside from its visual attractiveness, the appearance of your Mercedes-Benz is a ***main component*** of its high resale value.  (a long-standing additional ownership benefit)."[5]

7.     As described more fully below, Defendants have been aware of the Paint Defect at all relevant times, but have repeatedly failed to disclose and even actively concealed the Paint Defect from Class members and the public, and continued to market and advertise the Class Vehicles as "state-of-the-art," "luxury," "fine craftsmanship," "the most advanced vehicles on the road," and "enduring quality," which, as a result of the Paint Defect, they are not.

---

[2]    *See, e.g.*,  NAAA  Vehicle  Condition  Grading  Scale,  https://www.naaa.com/standards/vehicle_gradingscale.pdf (last visited July 27, 2018); Ed Grabianowski, *How Kelley Blue Book Works*, HowStuffWorks.com (Nov. 21, 2005), http://auto.howstuffworks.com/buying-selling/kelley-blue-book4.htm.

[3]    Nelson K. Akafuah, *et al.*, *Evolution of the Automotive Body Coating Process—A Review*, MDPI (June 13, 2016), p. 20, http://www.mdpi.com/2079-6412/6/2/24.

[4]    *Id.*

[5]    Mercedes-Benz  Vehicle  Care  Guide  (1999),  assets.mbusa.com/vcm/CAC_RAPMD/01vehiclecareguide.pdf (emphasis added) (last visited July 27, 2018).

Defendants have exclusive knowledge of, and have been in exclusive possession of information pertaining to, the Paint Defect, which was material to Plaintiffs and Class members, who could not reasonably know of the Paint Defect, and under all circumstances, Defendants had a duty to disclose the latent Defect at the point of sale of the Class Vehicles. Instead, Defendants failed, and refused, to warn customers of the Paint Defect in the Class Vehicles, including the common consequences that they would likely suffer as a result of the Paint Defect, at the point of sale. Further, Defendants have refused, and continue to refuse, to provide a meaningful remedy to those who have suffered economic harm as a result of the Paint Defect.

8.      Despite Defendants' awareness and knowledge of the Paint Defect, at Defendants' direction, their employees and agents often continue to deny that the Paint Defect even exists, and have developed standard answers to dispel expected complaints made by Plaintiffs and Class members.

9.      For Plaintiffs and Class members with Class Vehicles where the Paint Defect has manifested, Mercedes either provided Plaintiffs and Class members inadequate repairs—which Mercedes knew or should have known to be inadequate—or even worse, forced them to pay out of pocket for the inadequate repairs, even in cases when their Class Vehicles remained under warranty at the time. Once a Class Vehicle's written warranty has expired, Defendants disclaim any and all liability, leaving the consumer to bear the cost of an expensive, but inadequate, repair, or live with the unsightliness of the damage caused by the Paint Defect.

10.     As a direct and proximate result of Defendants' concealment of, and failure to disclose, the Paint Defect, Plaintiffs and Class members: (1) overpaid for the Class Vehicles because the Paint Defect significantly diminishes the value of the Vehicles; (2) are forced to live with the discoloration of their Vehicles in situations where repainting cannot take place; (3) must

suffer premature rusting and corrosion; or (4) must expend significant money to have the Vehicles (inadequately) repainted and corrosion damage repaired.

11.     Plaintiffs and Class members have purchased and leased Class Vehicles that they would not otherwise have purchased or leased, or would have paid less for, had they known of the Paint Defect at the point of sale. Plaintiffs and Class members have consequently suffered ascertainable losses and actual damages as a result of Defendants' unlawful conduct. Accordingly, Plaintiffs and Class members seek actual and/or compensatory damages, including equitable relief seeking, *inter alia*, an order that the Class Vehicles are defective, and injunctive relief preventing Defendants from continuing their wrongful conduct, as alleged herein.

## II.     JURISDICTION

12.     The Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d), because at least one Class member is of diverse citizenship from Defendants, there are more than 100 Class members nationwide, and the aggregate amount in controversy exceeds $5,000,000, exclusive of costs and interest.

13.     The Court has personal jurisdiction over Defendants because Defendants have purposefully availed themselves of the privilege of conducting business activities in the State of New Jersey.

## III.     VENUE

14.     Venue is proper in this District, pursuant to 28 U.S.C. §1391, because a substantial part of the acts or omissions giving rise to the claims brought herein occurred or emanated within this District, Defendants have marketed, advertised, sold, and leased the Class Vehicles in this District, and Defendants have caused harm to one or more Plaintiffs residing in this District.

## IV.    PARTIES

**A.    Plaintiffs**

**1.    Robert Ponzio**

15.    Plaintiff Robert Ponzio (for the purpose of this section, "Plaintiff"), is a citizen of New Jersey, residing in Sewell, New Jersey.  Plaintiff purchased a new 2013 Mars Red SL 550 (for the purpose of this section, the "Class Vehicle") on June 10, 2013, at Mercedes-Benz of Cherry Hill, an authorized Mercedes-Benz dealer in Cherry Hill, New Jersey.

16.    Prior to purchasing the Class Vehicle, Plaintiff viewed marketing materials and commercials that touted the enduring quality, durability, and value of Mercedes' vehicles, including the Class Vehicle.  At the time of the purchase, Plaintiff specifically discussed with the sales representative a concern with the Mars Red paint.  Plaintiff was aware of other red Mercedes vehicles whose color had faded over time.  In addition, Plaintiff discussed with the sales representative that Plaintiffs' brother-in-law had an orange Mercedes-Benz vehicle that was severely faded.  The sales representative assured Plaintiff that fading issues and other issues with Mars Red paint were no longer a concern, and the sales representative at Mercedes-Benz of Cherry Hill emphasized the quality and durability of the Class Vehicle's Mars Red paint.  The sales representative stated that there had previously been a problem with the Mars Red paint, but that it had since been fixed, and, therefore, there would not be any problems with the Mars Red paint on the Class Vehicle.  Plaintiff relied on the sales representative's information regarding the quality, durability, and value of the Class Vehicle conveyed in those marketing materials and commercials, as well as the information regarding the quality, durability, and value of the Class Vehicle's Mars Red paint conveyed by the sales representative in deciding to purchase his Class Vehicle.  Moreover, Plaintiff specifically wanted to purchase a vehicle in a red color, and the

availability of the SL 550 in Mars Red was a material factor in his decision to purchase his Class Vehicle.

17.     Mercedes failed to disclose the Paint Defect to consumers, including Plaintiff and other members of the Class, and Plaintiff, therefore, purchased his Class Vehicle on the reasonable, but mistaken, belief that it would be a high quality and durable vehicle that would retain its value.  Plaintiff would not have purchased the Class Vehicle, or would not have paid as much for it, had he known of the Paint Defect and the propensity of the clearcoat to bubble, peel, and flake off the Class Vehicle.

18.     Approximately six months to one year ago, Plaintiff noticed that the clearcoat on the hood of his Class Vehicle was peeling, and observed the peeling spread to other parts of his vehicle over the next few months.  In or about May 2018, Plaintiff brought his Class Vehicle to Mercedes-Benz of Cherry Hill, where dealership personnel assessed the Paint Defect (by taking measurements and using a paint meter) and advised that the entire Vehicle would have to be repainted.  However, because Plaintiff's Class Vehicle was out of warranty, the dealership personnel said that they would have to reach out to Mercedes-Benz's corporate office to explore his options.  While at the dealership, Plaintiff was told that many Mars Red vehicles had come into the dealership with the same problem.  In addition, Plaintiff was specifically told that the value of his Class Vehicle would not diminish as a result of the repainting because the repainting would not show up on CarFax.com.  Despite following up with dealership personnel as to their conversation with Mercedes-Benz's corporate office, Plaintiff has yet to hear from anyone at Mercedes or the dealership regarding his repainting options.

19. Plaintiff has suffered a concrete and ascertainable loss as a direct and proximate result of Mercedes' misconduct in that Plaintiff overpaid for his Class Vehicle at the time of purchase, and the value of his Class Vehicle has been diminished as a result of the Paint Defect.

**2.    Karina Kloczko**

20. Plaintiff Karina Kloczko (for the purpose of this section, "Plaintiff"), is a citizen of Florida, residing in West Palm Beach, Florida.  Plaintiff purchased a new 2014 Mars Red C350 (for the purpose of this section, the "Class Vehicle") on May 14, 2014, at Mercedes-Benz of Miami, an authorized Mercedes-Benz dealer in Miami Gardens, Florida.

21. Prior to purchasing the Class Vehicle, Plaintiff visited Mercedes' website and viewed marketing materials and commercials that touted the enduring quality, durability, and value of Mercedes' vehicles, including the Class Vehicle.  Plaintiff relied on the information regarding the quality, durability, and value of the Class Vehicle conveyed on the website and in those marketing materials and commercials in deciding to purchase her Class Vehicle. Moreover, Plaintiff specifically wanted to purchase a vehicle in a red color, and the availability of the C350 in Mars Red was a material factor in her decision to purchase her Class Vehicle.

22. Mercedes failed to disclose the Paint Defect to consumers, including Plaintiff and other members of the Class, and Plaintiff, therefore, purchased her Class Vehicle on the reasonable, but mistaken, belief that it would be a high quality and durable vehicle that would retain its value.  Plaintiff would not have purchased the Class Vehicle, or would not have paid as much for it, had she known of the Paint Defect and the propensity of the clearcoat to bubble, peel, and flake off the Class Vehicle.

23. In or about June 2017, Plaintiff noticed that the clearcoat on her Class Vehicle was bubbling, peeling, and/or flaking.  Shortly thereafter, Plaintiff brought her Class Vehicle to

Mercedes-Benz of North Palm Beach, who referred her to Mercedes-Benz of West Palm Beach. Plaintiff then brought her Class Vehicle to Mercedes-Benz of West Palm Beach, where she was told by a service center representative that her Vehicle had a Paint Defect, but that there was a six month wait to have her Vehicle repainted due to the number of Class Vehicles being repainted as a result of the Paint Defect.  Plaintiff then brought her Class Vehicle to Mercedes-Benz of Pembroke Pines who sent the Vehicle to an AutoNation Collision Center where her Vehicle was repainted.  At a cost of over $10,000.00 paid for by Plaintiff's insurance company, it took AutoNation approximately one month to repaint Plaintiff's Class Vehicle—during which Plaintiff was still required to make her monthly payment and was not given a comparable loaner vehicle.

24.    On August 14, 2017, Plaintiff brought her Class Vehicle to CarMax to get it appraised and CarMax significantly reduced the value of her Vehicle, noting that the Vehicle had "Prior Paintwork" and/or "Needs Paintwork" on multiple parts of her Vehicle.  That same day, Plaintiff visited autotrader.com in order to obtain an appraisal for her Class Vehicle and received a significantly reduced "Kelley Blue Book Instant Cash Offer" that categorized the repainting of the various parts of her Vehicle as "Serious Conditions."

25.    Plaintiff has suffered a concrete and ascertainable loss as a direct and proximate result of Mercedes' misconduct in that Plaintiff overpaid for her Class Vehicle at the time of purchase, and the value of her Class Vehicle has been diminished as a result of the Paint Defect.

**3.    Jessica Irene Miller**

26.    Plaintiff Jessica Irene Miller (for the purpose of this section, "Plaintiff"), is a citizen of Florida, residing in Gainesville, Florida.  Plaintiff purchased a used 2014 Mars Red

CLA 250 (for the purpose of this section, the "Class Vehicle") on or about March 28, 2017, at Southeast Car Agency in Gainesville, Florida.

27.    Prior to purchasing the Class Vehicle, Plaintiff viewed marketing materials and commercials that touted the enduring quality, durability, and value of Mercedes' vehicles, including the Class Vehicle. Plaintiff relied on the information regarding the quality, durability, and value of the Class Vehicle conveyed in those marketing materials and commercials in deciding to purchase her Class Vehicle. Moreover, Plaintiff specifically wanted to purchase a vehicle in a red color, and the availability of the CLA 250 in Mars Red was a material factor in her decision to purchase her Class Vehicle.

28.    Mercedes failed to disclose the Paint Defect to consumers, including Plaintiff and other members of the Class, and Plaintiff, therefore, purchased her Class Vehicle on the reasonable, but mistaken, belief that it would be a high quality and durable vehicle that would retain its value. Plaintiff would not have purchased the Class Vehicle, or would not have paid as much for it, had she known of the Paint Defect and the propensity of the clearcoat to bubble, peel, and flake off the Class Vehicle.

29.    In or about February 2018, Plaintiff noticed that the clearcoat was peeling off of her Class Vehicle. On or about March 13, 2018, Plaintiff brought her Class Vehicle into Mercedes-Benz of Gainesville, where dealership personnel denied the existence of the Paint Defect and told Plaintiff that the problems with the clearcoat were the result of a bad touch-up paint job on the Class Vehicle, about which personnel also accused her of concealing. The dealership personnel made such accusations, despite the fact that the Class Vehicle had never been in an accident (and, thus, had no touch-up paint job performed), and even after one of the dealership's service technicians inspected the Vehicle and concluded that it only had the original

factory paint. Notwithstanding, the dealership refused to repaint Plaintiff's Class Vehicle, stating that they weren't going to do anything for Plaintiff just because of "something [she] read on the internet." On March 14, 2018, Plaintiff took her Class Vehicle to Buchholz Paint and Auto Body, a certified Mercedes-Benz body shop, where service personnel inspected the Vehicle and stated that the problems were the result of the Paint Defect, and that the Paint Defect was a common problem. The dealership provided Plaintiff with an estimate of between $6,000 and $8,000 to have her Class Vehicle repainted, but warned that the repainting would decrease the value of the Vehicle.

30.     Plaintiff has suffered a concrete and ascertainable loss as a direct and proximate result of Mercedes' misconduct in that Plaintiff overpaid for her Class Vehicle at the time of purchase, and the value of her Class Vehicle has been diminished as a result of the Paint Defect.

**4.     Thomas Hayes**

31.     Plaintiff Thomas Hayes (for the purpose of this section, "Plaintiff"), is a citizen of Florida, residing in Palm Harbor, Florida. Plaintiff purchased a used 2012 Mars Red C250 (for the purpose of this section, the "Class Vehicle") on or about July 2016, at Lokey Mercedes-Benz, an authorized Mercedes-Benz dealer in Clearwater, Florida.

32.     Prior to purchasing the Class Vehicle, Plaintiff viewed marketing materials, commercials, and Mercedes' website that touted the enduring quality, durability, and value of Mercedes' vehicles, including the Class Vehicle, and the sales representative and/or other personnel at Lokey Mercedes-Benz emphasized the quality, durability, and aesthetic features of the Class Vehicle, as well as the quality of Mercedes' Certified Pre-Owned ("CPO") vehicles. Plaintiff relied on the information regarding the quality, durability, and value of the Class Vehicle conveyed in those marketing materials and commercials, as well as by the sales

representative and/or other personnel, in deciding to purchase his Class Vehicle. Moreover, Plaintiff specifically wanted to purchase a vehicle in a red color, and the availability of the C250 in Mars Red was a material factor in his decision to purchase his Class Vehicle.

33.     Mercedes failed to disclose the Paint Defect to consumers, including Plaintiff and other members of the Class, and Plaintiff, therefore, purchased his Class Vehicle on the reasonable, but mistaken, belief that it would be a quality and durable vehicle that would retain its value. Plaintiff would not have purchased the Class Vehicle, or would not have paid as much for it, had he known of the Paint Defect and the propensity of the clearcoat to bubble, peel, and flake off the Class Vehicle.

34.     In or about May 2017, Plaintiff noticed that the clearcoat on his Class Vehicle was bubbling. In or about June 2017, Plaintiff brought his Class Vehicle into Lokey Mercedes-Benz, where he was told by a service representative named Brian that the bubbling was a result of the Paint Defect and that the dealership had seen many Class Vehicles experiencing problems related to the Paint Defect. Lokey Mercedes-Benz repainted Plaintiff's Class Vehicle in two separate visits taking approximately two weeks in total, and the expense of the repainting was covered by the dealership. However, when Plaintiff went to the dealership to pick up his Class Vehicle, he could immediately see that the Vehicle had been repainted and that the repainting was of inferior quality. The service representative at the dealership agreed with Plaintiff, but stated there was nothing that could be done and that the dealership would not repaint Plaintiff's Class Vehicle. Ever since the Class Vehicle has been repainted, each time Plaintiff takes his Vehicle in for service, the clearcoat peels and flakes off of the Vehicle after being washed/detailed. The clearcoat on Plaintiff's Class Vehicle continues to bubble, peel, and flake, not only in the areas on the Vehicle that were repainted, but other areas of the Vehicle as well.

35.     Plaintiff has suffered a concrete and ascertainable loss as a direct and proximate result of Mercedes' misconduct in that Plaintiff overpaid for his Class Vehicle at the time of purchase and the value of his Class Vehicle has been diminished as a result of the Paint Defect.

**5.    Alex Acuna**

36.     Plaintiff Alex Acuna (for the purpose of this section, "Plaintiff"), is a citizen of Florida, residing in Miami, Florida.  Plaintiff purchased a used 2012 Mars Red SLK250 (for the purpose of this section, the "Class Vehicle") on or about December 2014, at Off Lease Only in Miami, Florida.

37.     Prior to purchasing the Class Vehicle, Plaintiff viewed marketing materials and commercials that touted the enduring quality, durability, and value of Mercedes' vehicles, including the Class Vehicle, and viewed Mercedes' website, which touted the quality of its CPO vehicles and the rigorous certification process employed by Mercedes. Plaintiff relied on the information regarding the quality, durability, and value of the Class Vehicle conveyed in those marketing materials and commercials, as well as Mercedes' website, in deciding to purchase his Class Vehicle.  Moreover, Plaintiff specifically wanted to purchase a vehicle in a red color, and the availability of the SLK250 in Mars Red was a material factor in his decision to purchase his Class Vehicle.

38.     Mercedes failed to disclose the Paint Defect to consumers, including Plaintiff and other members of the Class, and Plaintiff, therefore, purchased his Class Vehicle on the reasonable, but mistaken, belief that it would be a high quality and durable vehicle that would retain its value.  Plaintiff would not have purchased the Class Vehicle, or would not have paid as much for it, had he known of the Paint Defect and the propensity of the clearcoat to bubble, peel, and flake off the Class Vehicle.

39.     In 2015, Plaintiff noticed that the clearcoat on his Class Vehicle was bubbling.  In or around September or October 2016, Plaintiff's Class Vehicle was in an accident.  Plaintiff brought his Class Vehicle to Mercedes-Benz of Miami to have it repaired. While there, Plaintiff brought the bubbling of his Class Vehicle's clearcoat to the attention of Carlos Guerrero, a collision consultant, who advised Plaintiff that it was a result of the Paint Defect, of which Mercedes had known for years, and that Mercedes-Benz of Miami had numerous Class Vehicles that were currently being repainted due to the Paint Defect.  Mr. Guerrero told Plaintiff that the repainting of his Class Vehicle would be covered under warranty, but that he would have to wait approximately one month given the backlog of Class Vehicles the dealership was currently repainting due to the Paint Defect.  However, when Plaintiff followed up approximately one month later, Mr. Guerrero appeared to renege on his promise that the repainting of Plaintiff's Class Vehicle would be covered under warranty.  Being unable to get a clear answer from either Mr. Guerrero or other personnel at the dealership, Plaintiff contacted MBUSA and was told that Mercedes was not aware of the Paint Defect and could not understand why the Mercedes-Benz of Miami dealership would have told him that the repainting of his Class Vehicle would be covered under warranty.

40.     In May 2018, Plaintiff traded in his Class Vehicle, but the amount of the trade-in provided by the dealership was significantly reduced as a result of the Paint Defect.

41.     Plaintiff has suffered a concrete and ascertainable loss as a direct and proximate result of Mercedes' misconduct in that Plaintiff overpaid for his Class Vehicle at the time of purchase, and the value of his Class Vehicle has been diminished as a result of the Paint Defect.

**6.     Brian Madsen**

42.     Plaintiff Brian Madsen (for the purpose of this section, "Plaintiff"), is a citizen of Kansas, residing in Olathe, Kansas.  Plaintiff purchased a used 2013 Mars Red SLK250 (for the purpose of this section, the "Class Vehicle") on April 9, 2018, at Overland Park Imports in Overland Park, Kansas.

43.     Prior to purchasing the Class Vehicle, Plaintiff visited Mercedes' website and viewed marketing materials and commercials that touted the enduring quality, durability, and value of Mercedes' vehicles, including the Class Vehicle.  Plaintiff relied on the information regarding the quality, durability, and value of the Class Vehicle conveyed on the website and in those marketing materials and commercials in deciding to purchase his Class Vehicle. Moreover, Plaintiff specifically wanted to purchase a vehicle in a red color, and the availability of the SLK250 in Mars Red was a material factor in his decision to purchase the Class Vehicle.

44.     Mercedes failed to disclose the Paint Defect to consumers, including Plaintiff and other members of the Class, and Plaintiff, therefore, purchased his Class Vehicle on the reasonable, but mistaken, belief that it would be a high quality and durable vehicle that would retain its value.  Plaintiff would not have purchased the Class Vehicle, or would not have paid as much for it, had he known of the Paint Defect and the propensity of the clearcoat to bubble, peel, and flake off the Class Vehicle.

45.     In or about April 2018, Plaintiff noticed that the clearcoat on his Class Vehicle was bubbling.  In or about May 2018, Plaintiff called Aristocrat Motors, an authorized Mercedes-Benz dealer, in Merriam, Kansas, who referred Plaintiff to Eveland Bros. Collision Center, a Mercedes-Benz certified body shop, where he was told that his Class Vehicle had the Paint Defect.  In or about May 2018, Plaintiff brought his Class Vehicle to Aristocrat Motors, where Matt Minor, a service advisor, denied that the Paint Defect existed and stated that the

bubbling had to be a result of the Vehicle being previously repainted.  After conducting research on his Class Vehicle, including obtaining a CARFAX Vehicle History Report, Plaintiff was unable to find any evidence that his Vehicle had previously been repainted.  Plaintiff then called Mercedes' corporate office to advise them of the issue and was told that Mercedes would not pay to have his Class Vehicle repainted because it was out of warranty.  On May 3, 2018, Plaintiff received an estimate from Eveland Bros. Collision Center of almost $13,000 to have his Class Vehicle repainted.

46.     Plaintiff has suffered a concrete and ascertainable loss as a direct and proximate result of Mercedes' misconduct in that Plaintiff overpaid for his Class Vehicle at the time of purchase, and the value of his Class Vehicle has been diminished as a result of the Paint Defect.

**7.     Vanessa M. Montgomery**

47.     Plaintiff Vanessa M. Montgomery (for the purpose of this section, "Plaintiff"), is a citizen of California, residing in Sacramento, California.  Plaintiff purchased a used 2014 Mars Red C250[6] (for the purpose of this section, the "Class Vehicle") on or about February 5, 2015, at Mercedes-Benz of Rocklin, an authorized Mercedes dealer in Rocklin, California.

48.     Prior to purchasing the Class Vehicle, Plaintiff viewed marketing materials and commercials that touted the enduring quality, durability, and value of Mercedes' vehicles, including the Class Vehicle, and the sales representative and/or other personnel at Mercedes-Benz of Rocklin emphasized the quality, durability, and aesthetic features of the Class Vehicle. Plaintiff relied on the information regarding the quality, durability, and value of the Class Vehicle conveyed in those marketing materials and commercials, as well as by the sales

---

[6] Plaintiff was the first owner of the Class Vehicle, which was used as a loaner vehicle at the dealership from which she purchased the Class Vehicle.

representative, in deciding to purchase her Class Vehicle.  Moreover, Plaintiff specifically wanted to purchase a vehicle in a red color, and the availability of the C250 in Mars Red was a material factor in her decision to purchase her Class Vehicle.  However, because the Class Vehicle was used, Plaintiff specifically asked the sales representative whether she should have a gloss coat applied to the Vehicle or take other proactive measures in order to protect the paint. In response, the sale representative told Plaintiff that a protective coat had already been applied to the Class Vehicle and, as such, she would have no issues with the Vehicle's paint.

49.     Mercedes failed to disclose the Paint Defect to consumers, including Plaintiff and other members of the Class, and Plaintiff, therefore, purchased her Class Vehicle on the reasonable, but mistaken, belief that it would be a high quality and durable vehicle that would retain its value.  Plaintiff would not have purchased the Class Vehicle, or would not have paid as much for it, had she known of the Paint Defect and the propensity of the clearcoat to bubble, peel, and flake off the Class Vehicle.

50.     In or about late 2015 or early 2016, Plaintiff noticed that the clearcoat on her Class Vehicle was bubbling, peeling, and flaking.  Shortly thereafter, Plaintiff brought her Class Vehicle in to Mercedes-Benz of Rocklin.  While there, Plaintiff brought the bubbling, peeling and flaking of her Class Vehicle's clearcoat to the attention of her service consultant in order to find out what was causing the problems, however, the service consultant ignored her concerns. When Plaintiff brought her Class Vehicle in to the dealership for her next service, she again raised the issue with her service consultant, who, again, ignored her concerns.  Plaintiff even asked her service consultant whether she needed to take any measures to ameliorate the problems with her Class Vehicle's clearcoat, and was told she need not do so.  Thus, on both occasions, Plaintiff's service consultant not only failed to do anything to address the problems she was

having with her Class Vehicle's clearcoat, but he also failed to advise her that those problems were caused by the Paint Defect.

51.     Plaintiff has suffered a concrete and ascertainable loss as a direct and proximate result of Mercedes' misconduct in that Plaintiff overpaid for her Class Vehicle at the time of purchase, and the value of her Class Vehicle has been diminished as a result of the Paint Defect.

**8.     Robert Mull**

52.     Plaintiff Robert Mull (for the purpose of this section, "Plaintiff"), is a citizen of North Carolina, residing in Winterville, North Carolina.  Plaintiff purchased a used 2014 Mars Red SLK250 (for the purpose of this section, the "Class Vehicle") on or about December 1, 2017, at Jarmon Auto Sales, Inc. in Greenville, North Carolina.

53.     Prior to purchasing the Class Vehicle, Plaintiff viewed marketing materials and commercials that touted the enduring quality, durability, and value of Mercedes' vehicles, including the Class Vehicle.  Plaintiff relied on the information regarding the quality, durability, and value of the Class Vehicle conveyed in those marketing materials and commercials. Moreover, Plaintiff specifically wanted to purchase a vehicle in a red color, and the availability of the SLK250 in Mars Red was a material factor in his decision to purchase his Class Vehicle.

54.     Mercedes failed to disclose the Paint Defect to consumers, including Plaintiff and other members of the Class, and Plaintiff, therefore, purchased his Class Vehicle on the reasonable, but mistaken, belief that it would be a high quality and durable vehicle that would retain its value.  Plaintiff would not have purchased the Class Vehicle, or would not have paid as much for it, had he known of the Paint Defect and the propensity of the clearcoat to bubble, peel, and flake off the Class Vehicle.

55.     In or about January 2018, Plaintiff noticed that the clearcoat on his Class Vehicle was fading and bubbling.  On or about January 22, 2018, Plaintiff brought his Class Vehicle to Mercedes-Benz of Raleigh, an authorized Mercedes dealer in Raleigh, North Carolina, where personnel at the dealership immediately recognized the Paint Defect.  He was then directed to Caliber Collision, a certified Mercedes-Benz body shop in Raleigh, North Carolina, to obtain an estimate for the repainting of his Vehicle.  That same day, Plaintiff brought his Class Vehicle into Caliber Collision where he was told that the damage to his Vehicle was caused by the Paint Defect, which was a known problem, and that the body shop had repainted many Class Vehicles due to the Paint Defect.  Caliber Collision provided Plaintiff with an estimate in the amount of $3,649.03, which was approved by Mercedes-Benz of Raleigh, and the cost of repainting was covered under warranty.  It took approximately six weeks to repaint the Class Vehicle, during which Plaintiff was still required to make his monthly payment and was not given a comparable loaner vehicle.

56.     Plaintiff has suffered a concrete and ascertainable loss as a direct and proximate result of Mercedes' misconduct in that Plaintiff overpaid for his Class Vehicle at the time of purchase, and the value of his Class Vehicle has been diminished as a result of the Paint Defect.

**9.      Hadiya Nelthrope**

57.     Plaintiff Hadiya Nelthrope (for the purpose of this section, "Plaintiff"), is a citizen of South Carolina, residing in Greenville, South Carolina.  Plaintiff purchased a used 2013 Mars Red C300 (for the purpose of this section, the "Class Vehicle") on or about August 20, 2014, at Mercedes-Benz of Nanuet, an authorized Mercedes dealer in Nanuet, New York.

58.     Prior to purchasing the Class Vehicle, Plaintiff viewed marketing materials and commercials that touted the enduring quality, durability, and value of Mercedes' vehicles,

including the Class Vehicle.  In addition, Plaintiff viewed Mercedes' website, which touted the quality of its CPO vehicles and the rigorous certification process employed by Mercedes. Plaintiff relied on the information regarding the quality, durability, and value of the Class Vehicle conveyed in those marketing materials and commercials in deciding to purchase her Class Vehicle.  Moreover, Plaintiff specifically wanted to purchase a vehicle in a red color, and the availability of the C300 in Mars Red was a material factor in her decision to purchase her Class Vehicle.  Notably, when Plaintiff purchased her Class Vehicle, the sales consultant at the dealership provided her with an unsolicited bottle of Mars Red touch-up paint.

59.    Mercedes failed to disclose the Paint Defect to consumers, including Plaintiff and other members of the Class, and Plaintiff, therefore, purchased her Class Vehicle on the reasonable, but mistaken, belief that it would be a high quality and durable vehicle that would retain its value.  Plaintiff would not have purchased the Class Vehicle, or would not have paid as much for it, had she known of the Paint Defect and the propensity of the clearcoat to bubble, peel, and flake off the Class Vehicle.

60.    Approximately two months after Plaintiff purchased the Class Vehicle, Plaintiff noticed that the clearcoat on the Vehicle was bubbling, peeling, and flaking.  Shortly thereafter, Plaintiff took her Class Vehicle in to Mercedes-Benz of Nanuet for service.  While there, Plaintiff brought the bubbling, peeling and flaking of her Class Vehicle's clearcoat to the attention of her service consultant in order to find out what was causing the problems, however, the service consultant told Plaintiff that the problems were a result of normal wear and tear.  In addition, nobody at the dealership raised any issues pertaining to the problems with Plaintiff's Class Vehicle's clearcoat either during or after any subsequent occasion she took her Vehicle in for service.  Plaintiff attempted to repair the problems by applying the Mars Red touch-up paint

the dealership provided, however, the touch-up paint did not remedy the bubbling, peeling, and flaking of her Class Vehicle's clearcoat.

61.     Plaintiff has suffered a concrete and ascertainable loss as a direct and proximate result of Mercedes' misconduct in that Plaintiff overpaid for her Class Vehicle at the time of purchase, and the value of her Class Vehicle has been diminished as a result of the Paint Defect.

**10.    Samuel Salgado**

62.     Plaintiff Samuel Salgado (for the purpose of this section, "Plaintiff"), is a citizen of California, residing in Rancho Santa Margarita, California.  Plaintiff purchased a used 2012 Mars Red C250 (for the purpose of this section, the "Class Vehicle") on or about January 25, 2014, at Mercedes-Benz of Foothill Ranch, an authorized Mercedes dealer in Foothill Ranch, California.

63.     Prior to purchasing the Class Vehicle, Plaintiff viewed marketing materials and commercials that touted the enduring quality, durability, and value of Mercedes' vehicles, including the Class Vehicle, and the sales representative and/or other personnel at Mercedes-Benz Foothill Ranch emphasized the quality, durability, and aesthetic features of the Class Vehicle.  Plaintiff relied on the information regarding the quality, durability, and value of the Class Vehicle conveyed in those marketing materials and commercials, as well as by the sales representative, in deciding to purchase his Class Vehicle.

64.     Mercedes failed to disclose the Paint Defect to consumers, including Plaintiff and other members of the Class, and Plaintiff, therefore, purchased his Class Vehicle on the reasonable, but mistaken, belief that it would be a quality and durable vehicle that would retain its value.  Plaintiff would not have purchased the Class Vehicle, or would not have paid as much

for it, had he known of the Paint Defect and the propensity of the clearcoat to bubble, peel, and flake off the Class Vehicle.

65.     In approximately 2015, Plaintiff noticed that the clearcoat on his Class Vehicle was bubbling, peeling, and flaking.

66.     Plaintiff has suffered a concrete and ascertainable loss as a direct and proximate result of Mercedes' misconduct in that Plaintiff overpaid for his Class Vehicle at the time of purchase, and the value of his Class Vehicle has been diminished as a result of the Paint Defect.

**B.      Defendants**

**1.      Mercedes-Benz USA, LLC**

67.     Defendant Mercedes-Benz USA, LLC is a Delaware corporation with its principal place of business in Atlanta, Georgia.

68.     Prior to July 2015, MBUSA's principal place of business was in Montvale, New Jersey.

69.     MBUSA is a wholly owned subsidiary of Daimler.

70.     At all times relevant herein, MBUSA has been, and has acted as, an agent of Daimler and subject to Daimler's control.

71.     At all times relevant herein, MBUSA (itself and through its related entities) engaged in the business of marketing, warranting, distributing, selling, leasing, and servicing automobiles, including the Class Vehicles, throughout the United States.

**2.      Daimler AG**

72.     Defendant Daimler AG is a foreign for-profit corporation with its principal place of business in Stuttgart, Germany.   Daimler manufactures and sells automobiles through

independent retail dealers, outlets, and authorized dealerships primarily in North America, Europe, and Asia.

73.    At all times relevant herein, Daimler (itself and through its related entities) engaged in the business of designing and manufacturing the Class Vehicles.

74.    Upon information and belief, Daimler was solely responsible for designing the Class Vehicles, including the paint used on the Class Vehicles, and therefore is an essential party to this action concerning a design defect in the Class Vehicles' paint and/or a manufacturing defect in the process by which the paint is applied.

75.    Upon information and belief, Daimler has, and at all relevant times had, the contractual right to exercise, and in practice has exercised, control over MBUSA's work, including, but not limited to, the design of Class Vehicles, the manner of marketing the Class Vehicles, the scope of written warranties, the scope of repairs in practice to be covered under warranty, and representations made and facts withheld from consumers and the public about the Paint Defect.  Daimler has been directly involved in assisting, directing, and controlling MBUSA and MBUSA's authorized dealers' handling of Class member complaints regarding the Paint Defect

76.    Daimler has held MBUSA out as its agent for all purposes in the United States, but especially for sales and marketing of the Class Vehicles and for ongoing management of relationships with purchasers and lessees of the Class Vehicles. It established MBUSA as its wholly owned subsidiary company; it named MBUSA with its official "Mercedes-Benz" title; and it provided MBUSA with marketing and technical materials avoiding any distinction between MBUSA and Daimler, and instead representing MBUSA as nothing less than Daimler's

presence in the United States for purposes of selling and leasing Mercedes-Benz brand vehicles and providing related services.

77.    Based on the foregoing actions, representations, and omissions, Plaintiffs and Class Members justifiably relied on MBUSA's representations and omissions regarding the Class Vehicles that were the responsibility of Daimler in, for example, Daimler's design of the Class Vehicles, and were injured because of their purchase or lease of the defective Class Vehicles.

## V.    FACTUAL ALLEGATIONS

### A.    The Class Vehicles and the Paint Defect

78.    All the Class Vehicles at issue suffer from the same Paint Defect.  They have all been painted with the same Mars Red paint and using the same paint process.  The Class Vehicles can be easily identified by viewing the label on the driver-side front door jamb, which identifies the use of Mars Red paint by reference to paint code 590.

79.    Mercedes marketed, distributed, and warranted the Class Vehicles in the United States in a uniform manner.

80.    Throughout the years, and at all times relevant to this action, Mercedes has marketed the Class Vehicles as having the highest quality, being the most durable, and maintaining the best resale value of any vehicles on the road.  Mercedes uses tag lines such as "state-of-the-art," "luxury," "fine craftsmanship," "the most advanced vehicles on the road," and "enduring quality," and encourages consumers to buy "the best" vehicle on the market (*i.e.*, a Mercedes-Benz).

81.     To most people, the Mercedes-Benz name in and of itself represents luxury and prestige, and for owners and lessees of Mercedes-Benz vehicles, the three-pointed star is a symbol of their success.

82.     In each of its 2007-2013 Annual Reports Daimler stated:

> We invented the automobile – now we are passionately shaping its future. As a pioneer of automotive engineering, we feel inspired and obliged to continue this proud tradition with groundbreaking technologies and high-quality products. Our philosophy is clear: We give of our best for customers who expect the best – and we live a culture of excellence that is based on shared values. Our corporate history is full of innovations and pioneering achievements; they are the foundation and ongoing stimulus for our claim to leadership in the automotive industry.

83.     The 2009 Annual report went so far as to state:

> The motto of "the best or nothing" applies in particular to Mercedes-Benz, the world's most valuable premium car brand. That was Gottlieb Daimler's ambition – and it is Mercedes-Benz's ambition today. Overall, a Mercedes has to be the best automobile on the market. Now that doesn't mean it always has to be the biggest car. "Premium" is not just a question of dimension or weight. It's a question of a brand's typical quality and characteristics. And in the future, Mercedes will make it even clearer that the fascination of the brand with the star does not begin with the C-, E- or S-Class.

84.     The most recent 2017 Annual Report reinforced its focus on the customer and vehicle quality, stating it has "designed [its] global production network [] with the aim to achieve uniform standards and the high quality of 'Made by Mercedes' worldwide" and that it has implemented an initiative "designed to offer our customers the best experience compared to all other automakers."

85.     But rather than being "the best," the Class Vehicles fail to provide the "high quality" and "experience" that customers have been promised by, and have come to expect from, Mercedes and the vehicles it markets and sells.

86.    Plaintiffs are informed and believe that, because of the Paint Defect, the exterior clearcoat on the Class Vehicles is predisposed to peeling, flaking, and bubbling under normal conditions that would not cause defect-free paint to peel, flake, and bubble, thereby compromising the quality, durability, and value of the Class Vehicles, and requiring Class members to have their Vehicles "repaired," often out of pocket, in a manner that does not remedy the Paint Defect or otherwise prevent the recurrence of the problem caused as a result thereof.

**B.    The Paint Process**

87.    The typical automotive body paint system is depicted as follows:



88.    The primer is the essential element in the quality of the adhesion between the e-coat and the basecoat.[7]  Primers must be tested for their ability to withstand "chemical reactivity" to UV light and extreme weather conditions because disintegration of any agents within the primer will likely cause "a drastic loss of adhesion and delamination of the topcoat [clearcoat]."[8]

---

[7]    Akafuah, *et al.*, *supra* n.3, pp. 9-10.

[8]    *Id.*

The durability of the paint, and the prevention of corrosion, is dependent upon the adhesion of the layers of the paint system.[9]

89.    Indeed, intercoat adhesion of all paint layers is a critical determinant of the quality of a paint system on any item, not just automobiles.  Achieving excellent performance and application properties of any paint requires a holistic approach to ensure compatibility, not only within a paint formulation across all ingredients, but also between the paint formulation and the paint system used for the application of the paint, so that all paint layers can properly work together and bring out those properties.  An inadequate layer or poor adhesion between layers (*i.e.*, poor intercoat adhesion) is the weakest link of a paint system, and greatly increases the probability of paint system failure.

90.    Given the purpose of automotive coatings and the value added by a quality paint job, automobile companies spend millions of dollars conducting a myriad of long-term and short-term tests to ensure automotive paints provide excellent aesthetics and performance properties.

91.    Preserving a scratch-free, high gloss finish over a longer vehicle life has challenged the auto industry for decades.

92.    Working with Mercedes, PPG developed a ceramic clearcoat technology, which uses nanotechnology to migrate silica particles to the outer surface of the coating, creating a very thin, hard, glass-like surface.

93.    In 2003, Mercedes began using the then-groundbreaking nanotechnology to make its vehicles substantially more scratch-resistant than conventional paint.   Mercedes' E, S, CL, SL, and SLK-Class model series were the first cars in the world to be available with the new paint system, while it became available on other Mercedes-Benz models in 2004.

---

[9]    *Id.*

94.    The new technology was said to represent Mercedes' latest significant contribution towards considerably enhancing the already exemplary long-term quality and value retention of its passenger cars.

95.    The system uses nanoparticles of ceramic to gain its scratch resistance by allowing the particles – each less than a millionth of a millimeter in size – to be integrated into the molecular structure of the binding agent.  These particles float around freely at first in the liquid clearcoat, before cross-linking as the drying process takes effect.  The nanoparticles of ceramic migrate to the very top portion of the clearcoat, usually within the top three to five microns. The particles link in with one another in such a way as to create an extremely dense and smoothly structured network at the paint surface.  This is supposed to provide a protective layer, which, although not very dense, ensures that the new nanoparticle clearcoat is considerably more scratch-resistant than conventional paintwork.

96.    This clearcoat is very hard at the top where the hard nanoparticles migrate.  However, once this layer is broken, the clearcoat becomes much softer and has very little scratch resistance below.

97.    The paint jobs on the Class Vehicles were performed at facilities in Germany and the United States, using uniform technologies, processes, and materials.  Mercedes refers to one such facility as the "Paint Shop," which is located at Mercedes-Benz U.S. International ("MBUSI"), a Mercedes automobile manufacturing plant in Vance, Alabama.  Mercedes details the primary processes of the paint job on MBUSI's website as follows:

**Pre-Clean**

After the Body arrives from the Body Shop, it is cleaned and conditioned to ensure the best possible paint job.

**Phosphate Dip**

Phosphate provides a surface to which the E-Coat can adhere to the Body. The phosphate actually grows a crystal into the first layer of metal, this effectively seals the body. Phosphate pre-treatment chemicals protect the raw metal of the body.

To ensure total phosphate coverage, the body is completely immersed in an approximately 40,000 Gallon tank. There is a conveyor system that allows you to tilt and dip the entire body so you can get 100% coverage and eliminate air pockets. You can also adjust the program for the specific style of vehicle such as GLE SUV and C-Class.

**E-Coat**

Protects the body from rust and corrosion. New e-coat material that will provide a better corrosion protection. Electrical charges are applied. E-Coat is actually a water-based and lead free cathodic electro-coat primer applied at 315 volts and 475 amps. After the body leaves the tank, we must make sure that the E-Coat dries properly by "curing" the body in an oven. It is then sanded and carefully inspected. The M-Class utilizes water-based and lead-free E-Coat to seal and protect the body.

**Primer**

Ensures consistency in the surface of the body prior to being painted.

**Color Coat**

Base color of vehicle. Next the color coat is applied, which is the actual paint that you see.

**Top Coat**

The purpose of the clear coat is to protect the color from damage due to the outside elements and UV damage. Top Coat is a new type of clear coat called Nano Clear Coat. It has a high cross-linking density which will provide a higher gloss and less [sic] scratches.[10]

---

[10] Mercedes-Benz U.S. International, Inc., THE PAINT SHOP, https://mbusi.com/factory/paint-shop#close (last visited July 27, 2018).

98.    Degradation of the coatings in an automotive paint system can be caused by the defective nature of the materials used or the improper manner in which they are applied during the painting process, resulting in accelerated degradation at the interface between the clear and basecoat.  This degradation causes a loss of adhesion and will manifest as peeling.  This is what happened to the Class Vehicles.

99.    Reasonable consumers contemplating the purchase or lease of a Class Vehicle develop an expectation regarding the quality and longevity of the paint used on Class Vehicles based on Mercedes' nationwide public advertisements, statements, and representations.

100.    Contrary to these expectations, and Mercedes' advertisements, statements, and representations, however, the paint systems on the Class Vehicles have failed due to the Paint Defect – a clear loss of adhesion between the Vehicles' clearcoat and the basecoat.

## C.    Mercedes' Marketing and Concealment

101.    Mercedes knowingly designed, manufactured, and sold/leased the Class Vehicles with the Paint Defect, while willfully concealing the true inferior quality and sub-standard performance of the Class Vehicles.

102.    Mercedes directly markets the Class Vehicles to consumers via extensive nationwide, multimedia advertising campaigns on television, the Internet, billboards, print publications, mailings, and through other mass media.

103.    Mercedes' marketing material describes the various Class Vehicles as "state-of-the-art," "luxury," "fine craftsmanship," "the most advanced vehicles on the road," and having "enduring quality."  Mercedes proclaims that it is "legendary for making cars of exceptional durability," noting that "it takes about the same energy to build a car that lasts as one that won't." To that end, Mercedes promises that its vehicles will be "Fun to drive; A Pleasure to own."

104.    Mercedes represents that the Class Vehicles have "[q]uality parts you can trust," assuring customers that:

> Owning a Mercedes-Benz means never having to settle for anything less than the best.  So you can rest assured knowing that the quality and craftsmanship we put into making your vehicle is the same as what we put into both our new and remanufactured parts.

105.    Mercedes represents that the parts on the Class Vehicles "don't merely perform[,] [t]hey endure," stating:

> Quality doesn't simply reside in how well a part functions at the get-go: it's a function of how well it performs over time.  And Genuine Parts endure because they're engineered specifically for your car—they fit like no other parts can, they're engineered to work with the other parts and systems, and they're made with the finest materials available.

106.    One of the most iconic badges in the automobile industries is Mercedes' three-pointed star, which has adorned the grilles and radiators of its vehicles for over a hundred years.  Mercedes explains that it is "[m]ore than a badge," proclaiming:

> For us, the Three-Pointed Star doesn't just identify a Mercedes-Benz.  It represents everything we stand for.  Everything we've ever done.  And everything we'll ever do.  But more importantly, it also represents our promise to deliver "The best or nothing."

107.    Since 2010, "[t]he best or nothing" has been the slogan used in almost every media campaign created by Mercedes to describe its vehicles.  When "[t]he best or nothing" slogan was first rolled out, Joachim Schmidt, executive vice president-sales and marketing for Mercedes at its global base in Stuttgart, Germany, stated:  "For us, that means we want to deliver the very best in all areas – be that in research and development, production, sales, service and

aftermarket business or in purchasing."[11]  According to Mr. Schmidt, the claim made in the new slogan is reflected in Mercedes' core values of perfection, fascination, and responsibility and is also a part of its corporate culture.[12]

108.    This led Plaintiffs and Class members to form a reasonable belief and expectation that the Class Vehicles were durable and of high quality, and certainly caused the reasonable consumer not to expect that the Vehicles would contain a defect that would adversely affect the quality, durability, and value of the Vehicles.

109.    Mercedes' "promise to deliver 'The best or nothing'" includes its promise to deliver a design that "combine[s] artistry and engineering to create cars that are visionary from every angle."  Mercedes describes the design of its vehicles as "[a]n appeal to the intelligence, grounded in the emotions" and that the exterior design of its vehicles represents "[a] surface that speaks to our depths."  Indeed, Mercedes declares:

> A Mercedes-Benz is unmistakable. To see one is to experience an immediate sensation. A feeling of surprise, instant attraction, purposeful energy and poised elegance. It's the result of painstaking attention to the details of design, governed by a philosophy we call "sensual purity." Each vehicle has been distilled to an essential form that readily communicates innovation and purpose — even as it sets the heart in motion. It's why every Mercedes-Benz is a clear inheritor of our storied tradition, and why each is a masterpiece of its time.

110.    Mercedes states in its Vehicle Care Guide the "emotional experience" that results from the "visual presence" of its vehicles "is why every visible surface has been crafted with the finest materials and coatings to ensure the best appearance and durability."  Mercedes even tells

---

[11]    Autotrader, *Mercedes-Benz has New Global Slogan: The Best or Nothing* (June 2010), https://www.autotrader.com/car-news/mercedes-benz-has-new-global-slogan-best-or-nothin-67400.

[12]    *Id.*

customers that "[a]s you might expect, aside from its visual attractiveness, the appearance of your Mercedes-Benz is a main component of its high resale value.  (a long-standing additional ownership benefit)."

111.    Mercedes touts its advanced paint technology and makes other express representations and warranties about the quality of the paint and paint process used on its vehicles, as well as the value that it adds to its vehicles, thus making the paint a selling feature to attract customers.

112.    Mercedes represents that its vehicles are "manufactured with one of the most advanced paint finishes in the automotive industry.  Scratch Resistant Clearcoat (SRC) uses 'nano-paint technology' comprised of microscopic ceramic particles that make it extremely durable and remarkably protective of the color coat beneath. This is particularly beneficial in protecting against swirl marks, minor scratches and even many chemical contaminants."

113.    In describing its paint technology, Mercedes states:

> Mercedes-Benz uses computer-controlled automatic robots which ensure an [sic] uniformly high paint finish standard and eliminate potential work hazards.  Major advances have also been made with regard to the paint itself.  A quality standard has been achieved which gives vehicles greater luster and longer protection than ever before.

> * * *

> The high-gloss paint finish of every Mercedes-Benz leaving the assembly line is the combined result of ultramodern paint technology and first-class employee training.

> New synthetic resin and two component polyurethane paints are considerably more resistant than cellulose paints and ensure maximum quality.

114.    Mercedes also touts the high quality of the paint jobs performed on its vehicles at what it refers to as the "Paint Shop."  Mercedes also describes, at length, the purportedly

painstaking process MBUSI undertakes "to ensure the best possible paint job," and further, represents that "MBUSI takes great care in delivering only the best quality."

115.    This led Plaintiffs and Class members to form a reasonable belief and expectation that the paint used on the Class Vehicles was of high quality, would endure, and positively impact the value of the Vehicles, and certainly caused the reasonable consumer not to expect that the paint used on the Class Vehicles would cause its clearcoat to peel, flake, or bubble under normal conditions, and cause other problems that would negatively impact the value of the Vehicles.

116.    Not only does Mercedes make representations regarding the quality, durability, and resale value of the Class Vehicles, but it also makes representations regarding the high quality and standard of the repairs it makes to the Class Vehicles.

117.    Mercedes advises customers that "[f]or repairs done right, turn to our people and parts."  Mercedes represents that "[w]ith advanced skills and training, our technicians can help ensure that repairs are performed with the utmost precision, commitment and care."  Mercedes further represents that "[a]ll of our collision centers follow rigorous restoration procedures and are committed to providing first-class service."

118.    Indeed, Mercedes tells customers that when "your vehicle needs . . . repair, accept nothing less than Genuine Mercedes-Benz parts," which it represents to be "[p]ainstakingly crafted to the state-of-the-art standards of Mercedes-Benz" and "the final, fine-tuned word in protecting your vehicle's performance, style, comfort, and safety for years to come."

119.    Mercedes represents that the Class Vehicles have "[q]uality parts you can trust," assuring customers that:

> Owning a Mercedes-Benz means never having to settle for anything less than the best.  So you can rest assured knowing that

35

the quality and craftsmanship we put into making your vehicle is the same as what we put into both our new and remanufactured parts.

120.    Statements like these led Plaintiffs and Class members to form a reasonable belief and expectation that any repairs to their Class Vehicles would be performed to the highest standard of quality and using materials and/or parts with a similar high standard of quality to ensure the damage to their Vehicles was adequately repaired, and certainly caused the reasonable consumer not to expect that repairs performed on their Class Vehicles would involve the use of materials and/or parts of inferior quality that would fail to repair the damage to their Vehicles.

121.    As it relates to repairs to the paint on their Class Vehicles, statements like the ones above led Plaintiffs and Class members to form a reasonable belief and expectation that any repainting would be performed to the highest standard of quality and using paint and/or a paint process that would cure the Paint Defect and adequately repair the resulting damage, and certainly caused the reasonable consumer not to expect that the repainting would involve the use of paint and/or a paint process that would fail to cure the Paint Defect and repair the resulting damage.  Moreover, such statements led Plaintiffs and Class members to form a reasonable belief that the repair of the Paint Defect would not reduce the value of the Class Vehicles.

122.    Plaintiffs and Class members were exposed to Mercedes' pervasive, long-term, national, multimedia marketing campaign touting the supposed quality and durability of the Class Vehicles and their component parts, including paint, and Class members justifiably made their decisions to purchase/lease their Class Vehicles based on Mercedes' misleading marketing that concealed the true, defective nature of the paint used on the Class Vehicles.

123.    In practice, the Class Vehicles are not of the quality and durability that Mercedes' marketing represented.  Mercedes concealed the fact that its so-called "Luxury" Class Vehicles,

which supposedly are "the most advanced vehicles on the road," are instead not of enduring quality and durability under ordinary conditions because the Paint Defect causes the exterior clearcoat on the Class Vehicles to peel, flake, or bubble.

**D.    Defendants' Knowledge of the Paint Defect**

124.    On information and belief, prior to the manufacture and sale of the Class Vehicles, Mercedes knew of the Paint Defect through, or as evidenced by, sources such as pre-release design and testing information, the issuance of a technical service bulletin ("TSB"), service center data, replacement part sales data, early consumer complaints made directly to Mercedes and/or posted on public online vehicle owner forums, testing performed, including testing in response to consumer complaints, aggregate data from Mercedes dealers, and other internal sources unavailable to Plaintiffs without discovery.  The issuance of a TSB, as well as the large number and consistency of the complaints made, underscores the fact that the Paint Defect is considered to be a material issue to the reasonable customer.

**1.    Mercedes Knew of the Paint Defect in the Design and Pre-Production Stages**

125.    Prior to a new paint and/or paint system being used on a vehicle, automakers such as Mercedes typically employ multiple standards and test protocols to ensure long life and film integrity of the paint system as well as the underlying substrate.  In addition to extensive exterior and accelerated weathering evaluation of clearcoats, there is additional aggressive testing prior to the qualification of an automotive coating system to ensure the paint system will provide long lasting protection when exposed to environmental elements.  These tests often run over the course of two-to-five years before a vehicle using the paint system is brought to market.

126.    Most of these test procedures are developed and standardized by the American Society for Testing and Materials ("ASTM") and the Society of Automotive Engineers ("SAE"), and typically include:

a.    accelerated weathering tests to assess paint color, gloss retention, and appearance in general, such as Xenon Arc (subjecting test panels to intense radiation), QUV (subjecting test panels to high ultra-violet light and condensing humidity cycles), EMMAQUA (placing test panels on racks that rotate with the sun to provide maximum UV light exposure), and humidity tests (subjecting test panels to 100% relative humidity at 100°F for several weeks);

b.    long-term outdoor weathering tests, where test panels are placed on so-called "test fences" at 45-degrees facing south (according to ASTM standards) in various environments, such as Florida (high UV light, humidity, and salt spray), Arizona (intense UV light and temperature), and industrial sites (high pollutants such as acid rain and various chemicals);

c.    corrosion resistance tests, including salt spray (subjecting test panels to 5 wt. salt spray at 95°F for several weeks), cyclic corrosion (subjecting test panels to various cycles of salt spray, humidity, wet/dry, temperature), condensing humidity (subjecting test panels to temperature cycling in highly saturated air, CASS (subjecting test panels to salt spray with added acetic acid for accelerated testing), and Kesternich (subjecting test panels to acid rain simulation);

d.      physical and mechanical tests, including flexibility, impact resistance, abrasion resistance, scratch and mar resistance, coating thickness, adhesion, and hot and cold cycling; and

e.      chemical properties testing, including resistance to solvents, chemicals, and various fluids the vehicle will likely encounter in the open environment.

127.    According to then-prevailing automotive industry standards, it was standard practice to undertake a Production Part Approval Process ("PPAP") when making changes to an existing automotive design, including a change in paint and the process of applying the paint to a vehicle.  The Automotive Industry Action Group, of which MBUSA is a member, has developed a common PPAP standard for suppliers of automotive paint.

128.    The PPAP is a standardized, required process in the automotive industry that helps manufacturers and suppliers communicate and approve production designs and processes before, during, and after manufacture.

129.    The PPAP is designed to demonstrate that a supplier has developed its design and production process to meet the client's requirements, minimizing the risk of failure by effective use of advanced planning.  Requests for approval must be supported in official PPAP format and with documented results when needed.

130.    The purpose of any PPAP is to: (a) ensure that a supplier can meet the manufacturability and quality requirements of the parts supplied to the customer; (b) provide evidence that the customer engineering design record and specifications are clearly understood and fulfilled by the supplier; and (c) demonstrate that the established manufacturing process has

the potential to produce the part that consistently meets all requirements during the actual production run at the quoted production.

131.    Typically, there are numerous PPAP requirements, including for material performance, which includes paint performance. On information and belief, Mercedes would have required its suppliers to test the paint, and its application, to see how it performed in simulated real-world conditions to determine the quality and durability of the paint, whether the paint adhered to the surface of the vehicle, whether it corroded or delaminated, how it performed when subjected to heat, cold, light, moisture, and rain, whether the color or gloss faded, changed, or was retained, whether the paint was, in fact, more scratch resistant than prior designs, among other performance metrics.

132.    Mercedes engaged in at least four years of development and testing prior to utilizing the new type of clearcoat paint on the Class Vehicles.  This included abrasion tests in a laboratory car-wash and extensive testing on the nanoparticle clearcoat in both laboratory and everyday conditions.

133.    On information and belief, when considering the part change to nanotechnology on its paint for the Class Vehicles, Mercedes employed the above PPAP procedures and engaged in system, sub-system, and/or component analysis with the design and product engineers and others who were directly responsible for brainstorming potential failures, evaluating the potential failures that such a change might cause, and the subsequent risks to consumers.

134.    In addition, on information and belief, either as part of the PPAP or independent of it, Mercedes performed several of the above-described ASTM and SAE test procedures.  In fact, Mercedes has developed what is referred to as "Mercedes SAE Standards & Testing" that are used in connection with the testing of its vehicles, including DBL 7392 for a test relating to

the "Coating/Painting for Parts Subject to Moderate Exposure to Corrosion Stress," as well as various other tests relating to the performance of the paint used on its vehicles, including the Class Vehicles, in simulated real-world conditions.[13]

135.   The development of the paint and the paint system, including the testing performed in connection therewith, would have revealed the Paint Defect.  The details regarding the testing performed by Mercedes and the results of that testing are in the exclusive custody and control of Mercedes.

**2.    Mercedes Knew of the Paint Defect from Its Own Technical Service Bulletin**

136.   Mercedes' knowledge of the Paint Defect is evident by the secret TSB issued by Mercedes concerning the peeling, flaking, and/or bubbling of the exterior clearcoat finish on the Class Vehicles.

137.   At some time prior to June 12, 2014, Daimler issued the initial version of TSB "LI98.00-P-058914" to MBUSA's dealers.  This version of the TSB is presently in the exclusive custody and control of Mercedes and is not yet available to Plaintiffs prior to discovery.

138.   On June 12, 2014, Mercedes issued the second version of TSB "LI98.00-P-058914," titled, "Clearcoat peeling / flaking / bubbling," which applied to "[a]ll vehicles with 590 – Mars Red" paint.[14]

---

[13]   Applied    Technical    Services,    Mercedes    SAE    Standards    &    Testing, http://www.atslab.com/automotive-testing/mercedes-sae-standards-testing.php (last visited July 27, 2018).

[14]   Notably, this version of the TSB was provided to the National Highway Traffic Safety Administration ("NHTSA"), who assigned it with NHTSA Safety Issue ID Number 10064784. Without the benefit of discovery, Plaintiffs are unaware whether this was Mercedes' first communication to the NHTSA regarding the Paint Defect, or of any communications between Mercedes and the NHTSA that followed.

139.    The TSB identified the "Complaint," or reason for its issuance, as "[e]xterior clearcoat finish is peeling, flaking or exhibits bubbles under the surface," and included three sample pictures of the clearcoats of Class Vehicles peeling, flaking, and bubbling.

140.    In addition, the TSB identified the "Cause" of the defect as the "[i]mproper adhesion of clearcoat" and instructed dealers to "use damage code 98091L6" and "[r]efinish affected areas according to WIS and approved paint manufacturer instructions" as the "Remedy" for the defect.  The TSB further identified the following "Symptoms" of the defect: "Overall vehicle / Paint/corrosion / Paintwork Fault / Poor Adhesion" and "Overall vehicle / Paint/corrosion / Paint damage / Swelling."

141.    Attached to the TSB is almost 28 full pages of tables identifying every vehicle, including variation and model year of that vehicle containing the Paint Defect, and thus, covered by the TSB.

142.    Since its initial issuance, there have been numerous versions of the TSB, which upon information and belief, and like the second version, were issued to provide an updated "[d]amage code" to dealers making repairs to Class Vehicles.

143.    For example, on February 3, 2017, Mercedes issued version 8 of TSB "LI98.00-P-058914," which updated the damage code to "98292 01."  Although the "Remedy" for the defect was the same as that stated in version 2 of the TSB, version 8 also included the following specific instructions for dealers to follow:

> 1.  For the affected whole parts, carefully sand down to the original e-coat primer (do not go beyond the e-coat primer) in order to ensure that the original clearcoat and basecoat are removed.
>
> 2.  In the surrounding area of the same body panel, sand the whole component until stable paint layers are reached, then sand the clearcoat over the entire panel.

3.  Avoid sanding through to bare metal or plastic.

4.  Thoroughly clean the surface before painting.

5.  In all cases a primer/filler must be applied over the whole panel.

Note 1:  Only outside surfaces need to be refinished, inside areas (For example door sills, folded areas and backsides) do not need to be painted.

Note 2:  Affected components like fenders, hoods, doors, trunk lids and rear doors will be painted while installed on the vehicle.

Note 3:  Bumpers may only be loosened for the painting process. The components will stay on the vehicle.

Note 4:  Any transition where there is new painting will be masked off so no visible paint edges occur.

Note 5:  Any plastic exterior components such as bumpers, rock panels, and trim are not affected, and repairs to these parts (for similar clearcoat complaints) will not be covered under warranty.

144.    In addition, the TSB told dealers that "[i]f the labor required is greater than 30hrs – Warranty policy requires an Information Only PTSS[15] case with: 1. photos of affected areas [and] 2. paint thickness measurements according to WIS forms OF09.00-P-3000-03."  Upon information and belief, and given the length of time it took to repaint many Class Vehicles, including those of certain Plaintiffs, the labor required to complete the above TSB remedy on many Class Vehicles was greater than 30 hours.  Thus, Daimler received numerous PTSS reports, and therefore, knew not only of the Paint Defect, but also of the extent of the damage it caused to the Class Vehicles.

---

[15]    PTSS is an acronym for Product Technical Support System, which is a report filed by the service manager at a MBUSA dealership for forwarding to Daimler.

145.    Although the last version of the TSB Plaintiffs' counsel have been able to locate was issued on February 3, 2017, upon information and belief, one or more versions of the TSB were issued after that date, and as recently as July 24, 2017.

146.    Mercedes knew of the Paint Defect from at least as early as the date it decided to initially issue the TSB.  Upon information and belief, it takes between six months to more than one year (or longer) from the start of a defect investigation to the issuance of a TSB, such as the TSB issued here.  Accordingly, based on the second version of the TSB alone, Mercedes knew of the Paint Defect as early as June 2013 and no later than December 2013.  In addition, Mercedes knew that the Paint Defect had not been remedied and continued to affect the Class Vehicles, as evidenced by the issuance of multiple versions of the TSB over the course of multiple vehicle model years.  Shockingly, despite the fact that Mercedes admitted the Paint Defect back in 2014 when the TSB was issued, Mercedes continued to use the same defective Mars Red paint and/or paint process on the Class Vehicles for three more years.

### 3.    Mercedes Knew of the Paint Defect from Warranty Data and Replacement Paint Ordered

147.    Mercedes also knew, or should have known, about the Paint Defect because of the large number of customer requests for repainting and corrosion repair caused by the Paint Defect, and repairs to remedy the Paint Defect, during the Class Vehicles' warranty periods.

148.    Upon information and belief, Mercedes collects, reviews, and analyzes detailed information about repairs made on vehicles still under warranty at its dealerships and service centers, including the type and frequency of such repairs.  Complete data on such repairs is exclusively within Mercedes' control and unavailable to Plaintiffs without discovery.

149.    Mercedes also knew, or should have known, about the Paint Defect because of the higher-than-expected amount of replacement Mars Red paint ordered from Mercedes, which

should have alerted Mercedes that the Paint Defect existed and affected a wide range of its vehicles.

150.    Upon information and belief, Mercedes-authorized service centers use replacement parts that they order directly from Mercedes.  Therefore, Mercedes would have detailed and accurate data regarding the number and frequency of replacement part orders, including replacement Mars Red paint.  Complete data on such orders is exclusively within Mercedes' control and unavailable to Plaintiffs without discovery.

**4.    Mercedes Knew of the Paint Defect from Class Member Complaints Made Directly to Mercedes**

151.    Mercedes also knew or should have known about the Paint Defect because numerous consumer complaints regarding the peeling, flaking, and bubbling of the clearcoat were made directly to Mercedes.  The large number of complaints, and the consistency of their descriptions of the Paint Defect and the symptoms that the Paint Defect caused in the Class Vehicles, alerted, or should have alerted, Mercedes that the Paint Defect existed and affected a wide range of its vehicles.

152.    The full universe of complaints made directly to Mercedes about the Paint Defect is information presently in the exclusive custody and control of Mercedes and is not yet available to Plaintiffs prior to discovery.  However, upon information and belief, many Class Vehicles owners complained directly to Mercedes and Mercedes authorized dealerships about the peeling, flaking, and bubbling of the clearcoat their vehicles experienced.  For example, some instances

of these direct-to-Mercedes complaints are described in complaints posted on online vehicle owner forums:[16]

- "Hi everyone, I am a newby but have a serious problem with the paintwork on my car. See the pics attached. Started noticing bubbles in the clearcoat on the rear fender/skirt and also particularly on the front lower fender area. As the car is not 2 years old yet I took it into to my MB workshop for their opinion. They took lots of phots and send them in to MB. They agreed that the rear would be repainted under warranty but reckoned the front was caused by stone chipping. Despite having an independent assessor look at the car and stating that it was caused by poor adhesion and not stone chips and that the problem at the rear is identical to the front MB still declined to repaint the front under warranty and have in their words closed the case." Posted on mbworld.org on June 11, 2010.

- "I have the very same color . . . Mars Red in my '08 C350 . . . And I have the same problem . . . it's in the lower rear bumper, close to the wheel well of the driver's side . . . . although a SA looked @ it and told me that in the next service the car can stay and the problem would be corrected because it's under warranty." Posted on mbworld.org on June 11, 2010.

- "I have very recently bought a 2011 SLK for an authorised MB dealer and am having problems with the faulty paintwork to the extent that I paid for it in March but still have not got use of it. . . There are patches which look as though dust has been painted in when originally painted by MB." Is any one else having this problem." Posted on forums.mercedesclub.org.uk on April 22, 2014.

- "Hey, been lurking for a while. I have a '13 C250 coupe, and while washing it today, I noticed some discoloration on the truck lid. to my amazement the paint is completely faded like an old GM car from the 80's. Took to local MB dealer and they said, "Mars Red is having an issue". Waiting for body shop to call me to schedule our COMPLETE repaint!!" Posted on mbworld.org on November 21, 2014.

---

[16] For these and other customer complaints quoted in this Complaint, quotes are left as written. Due to sheer number of typographical and grammatical errors, the [sic] notation has not been used. Any emphasis is in the original, unless otherwise noted.

- "So, the plot thickens.  We had a cold spell last week in florida.  Temps in the high 30's low 40's.  That's when paint "faded".  Now this weekend temps back in the 70's, paint fine.  MB is going to paint vehicle, but there are too many red cars in shop now, we have to wait."  Posted on mbworld.org on November 23, 2014.

- "I'm currently having the same issue with my Mars Red '13 C250 Coupe.  The entire care is discolored!  The holw paint job looks "oxidized," except on the plastic bumpers.  It's done this twice now, both times when the weather is up and down temps and rainy.  Evidently there are problems with the mars red paint and will probably need a while new paint job.  Taking it in the dealer on Friday."  Posted on mbworld.org on November 23, 2014.

- "Anyone else encounter this?  Went to the dealer for something else and noticed cloudy bubbles under the clear coat in the rear left QP.  Service guy says we'll get the mechanic check it out.  Two days later they tell me they had found them all around the car and that they had to REPAINT the entire vehicle!  According to the service manager, Mercedes corp. didn't even hesitate because they knew this was an issue."  Posted on mbworld.org on December 2, 2014.

- "I bought 2012 350 Mars red used a year ago.  I had clear bra put on.  During the installation, the clear peeled off in some spots.  The installer said he doesn't see this happen unless something was wrong with painting.  I had to have the car resprayed at a MB authorized shop.  Dealer finally agreed to pay half."  Posted on slkworld.com on November 4, 2014.

- "Folks started having this same problem with Mars Red (Fire Opal) paint on other model Mercedes long before any R172s were built.  Obviously Mercedes knew about it as it had those cars re-sprayed going back to 2014 or earlier."  Posted on slkworld.com on November 15, 2014.

- "I just purchased my first (and maybe last) C250 a little over a month ago from a large dealership in the DFW area.  I chose it over a BMW…which leaves me doubting my decision, [primarily for its color-Mars red.  Last weekend I noticed a bubble which turned out to be a baseball size area on the front passenger side door where the clear coat and paint was missing.  The dealer says they can't do anything about it because I didn't purchase the 'additional' interior/exterior insurance.  Now customer service from MB tells me it's not covered under the manufacturer's warranty.  I haven't even made

my first car payment and I am dealing with this nightmare."  Posted on mbworld.org on February 3, 2016.

- "Purchased this vehicle [2012 E350 Coupe] from a reputable independent dealer in May 2015. . . . After a couple days notices problems on the truck with the discoloration under the clear coat.  Had it check out to be sure the car had not been repainted.  Took to two collision centers who confirmed that the problem was a factory/paint defect. . . .   Mercedes position is that my warranty has expired and although there are no recalls other vehicles which are the Mars red color have been repainted by Mercedes because of a factory defect and my vehicle was purchased 5 months after the warranty expired will not be covered totally or partially for a repaint at all by Mercedes USA." Posted on www.carcomplaints.com on May 18, 2016.

- "I have had two cars now of Mercedes in 2 and a half years. The first one was one of the red ones that they have known about for 4 years and still carried on spraying with this faulty paint. I had not much success with the warranty procedure to the degree that they only wanted to respray the panels affected, this happen to be everywhere apart from one side I argued for a full respray as the car was showing signs of getting worse by the week. I got so fed up that believe it or not I traded it in and got another one."   Posted on www.consumeraffairs.com on March 8, 2017.

153.    As the above sampling of complaints shows, Class Vehicle owners have been vocal in complaining directly to Mercedes about the Paint Defect, and the number and consistency of their complaints should have alerted Mercedes to the existence of the Paint Defect.

**5.    Mercedes Knew of the Paint Defect Based on Class Member Complaints on Public Online Forums**

154.    In addition to complaints made directly to Mercedes, many Class Vehicle owners posted complaints about the Paint Defect on public online vehicle owner forums.  The following is a small sampling of such complaints:

- "I have a 2004 C230 Kompressor Sport Sedan with 38,000 miles on it. . . . Mars Red stinks!  The paint (at least in 2004) chips very easily.  I've looked

diligently for this issue on other vehicles.  NO ONE has the problem except with the Mars Red." Posted on mercedesforum.com on June 17, 2007.

- "Hi everyone, I am a newby but have a serious problem with the paintwork on my car.  See the pics attached.  Started noticing bubbles in the clearcoat on the rear fender/skirt and also particularly on the front lower fender area.  As the car is not 2 years old yet I took it into to my MB workshop for their opinion. . . .  They would not send an engineer/paint expert to look at the car so I took it to the MB authorized sprayshop used by my local MB agent.  Verbally they agreed that it was indeed poor adhesion and wondering whether the car had been damaged/repaired before I got it.  (They would not put it in writing through fear of loss of work from MB!)  I explained that the car was delivered by trailor to my home with 2 miles on the clock.  They could find no signs of a previous repair." Posted on mbworld.org on June 11, 2010.

- "I have the very same color . . . Mars Red in my '08 C350 . . . And I have the same problem . . . it's in the lower rear bumper, close to the wheel well of the driver's side." Posted on mbworld.org on June 11, 2010.

- "Hi to all of you who replied to my woes.  It is gratifying to know there are many of you interested in my paint problem.  Just had the quote in the post for repainting the front and rear fenders.  Interestingly the paintshop said they could not put in writing that it is poor adhesion due to the volume of work they get from MB.  However the quote did state that: '*For some reason the lacquer coat is peeling from the colour coat on both bumpers and the way it appears, I would suggest we would need to remove the complete top surface to make good the adhesion between layers.*'  They also said that although this is the first C Class (W204) they have seen with this problem there have been many E Class models (not latest model) that have had the same problem." Posted on mbworld.org on June 12, 2010.

- "Folks started having this same problem with Mars Red (Fire Opal) paint on other model Mercedes long before any R172s were built.  Obviously Mercedes knew about it as it had those cars re-sprayed going back to 2014 or earlier." Posted on slkworld.com on November 15, 2014.

- "I just purchased my first (and maybe last) C250 a little over a month ago from a large dealership in the DFW area.  I chose it over a BMW…which leaves me doubting my decision, primarily for its color-Mars red.  Last weekend I noticed a bubble which turned out to be a baseball size area on the front passenger side door where the clear coat and paint was missing.  The

dealer says they can't do anything about it because I didn't purchase the 'additional' interior/exterior insurance.  Now customer service from MB tells me it's not covered under the manufacturer's warranty.  I haven't even made my first car payment and I am dealing with this nightmare."  Posted on mbworld.org on February 3, 2016.

155.    As shown by this small sampling of complaints from websites such as mbworld.org, slkworld.com, carcomplaints.com, mercedesforum.com, consumeraffairs.com, and mercedesclub.org, consumers have been vocal in complaining about the Paint Defect and the damage being caused by the Paint Defect.  A multi-billion dollar vehicle design and manufacturing company such as Mercedes undoubtedly tracks, and has tracked, such sites and was, or should have been, aware of the Paint Defect in the Class Vehicles.

156.    In sum, Mercedes has actively concealed the existence and nature of the Paint Defect from Class members since at least 2010 (and certainly before the date that Plaintiffs purchased their Class Vehicles) despite its knowledge of the existence and pervasiveness of the Paint Defect, and certainly well before Plaintiffs and Class members purchased or leased their Class Vehicles.  Specifically, Mercedes has:

   a. failed to disclose, at and after the time of purchase, lease, and/or service, any and all known material defects of the Class Vehicles, including the Paint Defect;

   b. failed to disclose, at and after the time of purchase, lease, and/or service, that the paint and paint process used on the Class Vehicles were defective and not fit for their intended purposes;

   c. failed to disclose, and actively concealed, the fact that the paint and/or the paint process used on the Class Vehicles were defective, despite the fact that Mercedes learned of the Paint Defect as early as 2010, and likely even earlier;

d.       failed to disclose, and actively concealed, the existence and pervasiveness of the Paint Defect even when directly asked about it by Class members during communications with Mercedes, Mercedes Customer Assistance, Mercedes dealerships, and Mercedes service centers;

e.       actively concealed the Paint Defect by forcing Class members to bear the cost of repainting, while at the same time performing those services at no (or lower) cost for those who complained vocally and often;

f.       actively concealed the Paint Defect by inadequately repainting the Class Vehicles, so that the Paint Defect has never been permanently corrected in Class members' vehicles, even though Class members were led to believe that the services would cure, and, in fact, had cured the Paint Defect in their Vehicles;

g.       actively concealed the Paint Defect by knowingly repainting the Class Vehicles with the same Mars Red paint, while knowing and concealing that repainting the Vehicles would not prevent and/or cure the problems associated with the Paint Defect because the paint used on the Class Vehicles remained defectively designed; and

h.       actively concealed the Paint Defect by knowingly repainting the Class Vehicles with Mars Red paint using the same paint process, while knowing and concealing that repainting the Vehicles would not prevent and/or cure the problems associated with the Paint Defect because the process by which the paint was applied to the Class Vehicles remained defective.

157.    As alleged above, Mercedes received notice of the Paint Defect from Plaintiffs and Class members, as well as from its own internal sources.  Mercedes had ample opportunity to disclose the Paint Defect given that it engaged in national advertising campaigns for the Class

Vehicles on the Internet, in print, on the radio, and on television, and distributed Class Vehicle brochures to dealers for provision to potential customers.  Plaintiffs and Class members also would have been aware of the deception had Mercedes disclosed the Paint Defect to Mercedes-Benz dealerships and directed the dealerships to advise Plaintiffs and Class members of same given that, for the most part, each Plaintiff interacted with, and received information from, sales representatives at authorized Mercedes-Benz dealerships prior to purchasing their Class Vehicles.  Mercedes routinely communicates with consumers through Mercedes-Benz authorized dealerships via product brochures, special service messages, TSBs, and warranty programs. Mercedes had ample opportunity to disclose its omissions to Plaintiffs and Class members through these channels and more, but failed to do so.

158.    By engaging in the conduct described above, Mercedes has concealed, and continues to conceal, the Paint Defect from Class members.  If Class members had knowledge of the information Mercedes concealed, they would not have bought or leased the Class Vehicles, or would have paid less for them.

**E.    Applicable Warranties and Certifications**

159.    Mercedes sold the Class Vehicles with a "New Vehicle Limited Warranty" ("NVLW") which provides:

> DEFECTS: Mercedes-Benz USA, LLC (MBUSA) warrants to the original and each subsequent owner of a new Mercedes Benz vehicle that any authorized Mercedes-Benz Center will make any repairs or replacements necessary, to correct defects in material or workmanship arising during the warranty period.
>
> * * *
>
> WARRANTY PERIOD: This warranty is for 48 months or 50,000 miles, whichever occurs first.
>
> * * *

NO CHARGE: Warranty repairs will be made at no charge for parts and labors.

160.    In addition, the NVLW provides:

Our intention is to repair under warranty, without charge to you, anything that goes wrong with your vehicle during the warranty period which is our fault. All we ask is that you properly maintain and care for the vehicle and that you have warranty repairs performed by an authorized Mercedes-Benz Center.

161.    The NVLW distinguishes between defects and damages by stating:

Please note that difference between "Defects" and "Damage" as used in the warranty. Defects are covered since we, the distributor, are responsible. Conversely, we have no control over damage caused by things including, but not limited to, collision, misuse, and lack of or improper maintenance. Therefore, damage for whatever reason is not covered by the warranty.

162.    The NVLW also specifically addresses paint on the Class Vehicles:

Paint and Other Appearance Items. Defects in paint, trim or other appearance items are normally taken care of during our new vehicle preparation or by the authorized Mercedes-Benz Center during new vehicle inspection. We suggest that if you find any paint or appearance problems that you advise your authorized Mercedes-Benz Center as soon as possible since deterioration due to use and exposure is not covered by the warranty.

163.    The NVLW further advises of potential problems related to the repair of the Class

Vehicles due to the paint process used by Mercedes:

Body Repair Information. Due to the materials and assembly procedures used in the production of Mercedes-Benz vehicles, it is strongly recommended that any paint work/body repairs be performed using Genuine Mercedes-Benz parts by repair facilities which have been certified by MBUSA as having the tools, equipment and training necessary to perform such repairs. MBUSA has certified a network of body repair facilities which are qualified to perform both cosmetic and structural repairs to your vehicle.

164.    Mercedes represents that its CPO vehicles "are backed by one of the most comprehensive certified pre-owned warranties available."  The CPO Limited Warranty ("CPOLW") provides protection for 12 months or up to 100,000 total accumulated vehicle miles. Mercedes also represents that its CPO vehicles are factory-backed and the NVLW provides up to five years or 100,000 total vehicle accumulated miles of coverage.  Although the CPOLW excludes paint from its coverage, the provision is unconscionable because it excludes a defect that was known to, but not disclosed by, Mercedes.

165.    Mercedes further touts its "painstaking certification process" in connection with the CPO vehicles it sells.  Indeed, "[t]o qualify for Pre-Owned Certification, a Mercedes-Benz vehicle must meet stringent criteria and pass a rigorous inspection."  That inspection includes a "32 Point Appearance Inspection," two of which cover "paint," to ensure that every "Certified Pre-Owned vehicle is a clean-skinned beauty . . . with high quality fit and finish, inside and out." Upon information and belief, Mercedes will not certify a vehicle with obvious paint work or previously repaired damage.

**F.    Mercedes' Inadequate Remedy for the Paint Defect**

166.    As evidenced by the repair instructions in the TSB, as well as the experiences of Plaintiffs and the estimates they have received after their Class Vehicles have been repainted, repainting the Class Vehicles, even if done properly, does not cure the Paint Defect and does not remedy the diminution of value that occurs as a result of the repainting.

167.    For all the Class Vehicles, the factory paint was applied by robots to exacting tolerances consistently over all body panels—a point highlighted by Mercedes when marketing the Vehicles to customers—whereas the TSB repair process is haphazard at best and results in paint inconsistencies relative to appearance and longevity.

168.    Indeed, the repainting of a Class Vehicle—that has been exposed to environmental elements during its use—using the TSB repair process could never achieve the same finish that is produced during the original painting of the Vehicle given the equipment and methods used by Mercedes in the paint system that is applied to the pristine body of a Class Vehicle, not to mention the pristine and strictly controlled environment in which the paint system is applied.  Thus, it is the limited scope of the TSB's repair procedures, the environment in which the Class Vehicles are repaired, and the limitations of body shops, including those who are certified by Mercedes, that all but assures that the quality of re-painting can never be as good as the original paint job.  Mercedes knew that the TSB repair procedures were inadequate at the time they were first implemented, especially in light of the environmental and technical limitations of the body shops it authorized to perform such repairs, yet concealed that fact from Plaintiffs and the Class.

169.    Even if the Class Vehicles were properly repainted, their values would still be diminished, as repainted newer vehicles are worth less than vehicles with original paint.  Indeed, there is a stigma associated with a repainted vehicle, especially from a luxury brand like Mercedes, and the fact that a vehicle has been repainted is often used by a potential buyer as a bargaining chip to lower the price.

170.    In addition, anticipated car purchasers often shy away from a vehicle that has been repainted, as it rings alarm bells that the vehicle may have been damaged in an accident and repainted as a result.  A non-original paint job could also be an indication of major body repairs to the Vehicle that are being hidden, not to mention rust.  In fact, Mercedes even tells its dealers that when evaluating vehicles for inclusion in its CPO Program that one of the signs a vehicle

has had structural damage that has been repaired is "[p]aint that doesn't match painted areas next to it."[17]

171.    According to an online poll conducted by CarMax, 72% of respondents said that repainting the car is the strongest indicator of vehicle damage.[18]  In fact, CarMax states that repainting is one of the biggest warning signs indicating a vehicle may have been in a major accident, and instructs consumers to do the following in order to determine whether a used car may have been in a serious accident:

> Look for signs of repainting on the car, such as inconsistency in the paintwork or paint on the molding or gaskets.  Run your finger along the inside of the door edge and see if the finish is smooth or rough.  A rough finish can be caused by overspray during repainting.  If signs of repainting are found, ask additional questions to determine if the paintwork was for minor scratches and dents or to cover up more serious vehicle damage.

172.    Paint work to a vehicle typically shows up on a CARFAX Vehicle History Report, as such repairs are often reported by the dealerships or body shops performing them. Even if it is not, paint work can easily be identified through the use of a paint meter, which are used by dealers when evaluating vehicles for trade-in purposes.  In the case of the Class Vehicles, given the nature of the Paint Defect and the inadequate repainting of the Vehicles, the paint work can be identified by potential buyers with the naked eye and without the use of a paint meter.

---

[17] Mercedes-Benz USA, LLC, *Mercedes-Benz Certified Pre-Owned Program and Reconditioning Manual* (rev. Feb. 2015), at 26, http://assets.mbusa.com/vcm/CAC_RAPMD/images/CPOprogramandreconditioningmanual.pdf.

[18] CarMax, *Carmax.com "Quick Poll" Finds Consumers Often Misidentify Damage Indicators* (Apr. 28, 2008), http://investors.carmax.com/news-releases/news-releases-details/2008/VIDEO-CarMax-Offers-Tips-to-Spot-Hidden-Vehicle-Damage/default.aspx.

173.    CarMax's vehicle appraisals are determined, among other criteria, by its inspection of a "car's condition both inside and out," and it notes that "major defects" can impact their offers.  CarMax significantly lowers the appraised values for vehicles, including the Class Vehicles, that have been repainted.

174.    Kelley Blue Book ("KBB") similarly bases its appraisals on the condition of the vehicle.  KBB divides the condition of used vehicles into the following four grades:

> **Excellent** condition means that the ***vehicle looks new***, is in excellent mechanical condition and needs no reconditioning. ***This vehicle has never had any paint or body work*** and is free of rust. The vehicle has a clean Title History and will pass a smog and safety inspection. The engine compartment is clean, with no fluid leaks and is free of any wear or visible defects. The vehicle also has complete and verifiable service records. Less than 5 percent of all used vehicles fall into this category.

> **Good** condition means that the vehicle is ***free of any major defects***. This vehicle has a clean Title History, the paint, ***body and interior have only minor (if any) blemishes***, and there are no major mechanical problems. There should be little or no rust on this vehicle. The tires match and have substantial tread wear left. A "good" vehicle will need some reconditioning to be sold at retail. Most consumer owned vehicles fall into this category.

> **Fair** condition means that the ***vehicle has some*** mechanical or ***cosmetic defects*** and needs servicing but is still in reasonable running condition. This vehicle has a clean Title History, ***the paint, body*** and/or interior ***need work performed by a professional***. The tires may need to be replaced. There may be some repairable rust damage.

> **Poor** condition means that the ***vehicle has severe*** mechanical and/or ***cosmetic defects*** and is in poor running condition. The vehicle may have problems that cannot be readily fixed such as a damaged frame or a rusted-through body. A vehicle with a branded title (salvage, flood, etc.) or unsubstantiated mileage is considered "poor." A vehicle in poor condition may require an independent appraisal to determine its value.

175.    According to KBB's online Condition Quiz, vehicles that have extensive paintwork and no paint damage are considered to be, at most, in "Good" condition, while vehicles that have no paintwork and extensive paint damage are considered to be, at most, in "Fair" condition.

## G.    The Damage Caused by the Paint Defect

176.    Plaintiffs and Class members purchased or leased the Class Vehicles based on their reasonable but mistaken belief that their Class Vehicles were of high quality, durable, and free of defects.  However, the Class Vehicles delivered by Mercedes were not those for which Plaintiffs and Class members bargained.  Rather, the Class Vehicles suffered from a common defect – the Paint Defect.  Had Plaintiffs and Class members known of the Paint Defect, they would have either: (a) paid substantially less for the Class Vehicles; (b) required an immediate remedy that restored the Class Vehicles to the conditions bargained for; or (c) not purchased or leased the Class Vehicles.

177.    As a result of the disparity between the quality of the Class Vehicles negotiated for and the Class Vehicles actually received, Plaintiffs and Class members suffered economic harm.  This economic harm can be quantified as: (a) the economic value of an effective remedy that restores the Class Vehicles to their expected conditions (or the economic harm from the lack of that remedy); (b) the discount that Plaintiffs and Class members would have required to accept the Class Vehicles in their actual condition; and/or (c) the diminished value of the Class Vehicles, both those that have been repainted and those that have not.

178.    Plaintiffs and Class members paid premiums to purchase and lease the Class Vehicles as a result of the brand, quality, durability, and value representations made by Mercedes.  A vehicle purchased or leased with the reasonable expectation that it is of high

quality and durable as advertised is worth more than a vehicle known to be subject to the problems or risks associated with the Paint Defect. Plaintiffs and Class members were harmed from the day they drove their Class Vehicles off the lot because they did not get what they paid for – a high-quality and durable vehicle that would retain its value under normal conditions.

179.    As a direct result of Mercedes' misrepresentations and omissions, Plaintiffs and Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain. Plaintiffs and Class members paid a premium for the Class Vehicles, which Mercedes advertised as being durable and of high-quality, and received Class Vehicles that contained a known but concealed defect. Mercedes was unjustly enriched because it obtained and retained monies paid by Plaintiffs and Class members who paid a price for the Class Vehicles that was higher than the value of the vehicles they received in return.

180.    In addition, the widespread disclosure of the Paint Defect has caused a decrease in the value of the Class Vehicles, and, therefore, Plaintiffs and Class members have suffered a direct pecuniary loss in the form of the decreased value of their Class Vehicles, even when the Paint Defect has not yet manifested.

181.    As a result of Mercedes' unfair, deceptive, and/or fraudulent business practices, and its failure to disclose the Paint Defect and the problems associated therewith, owners and lessees of the Class Vehicles have suffered losses in money and/or property.

## H.    Fraudulent Concealment Allegations

182.    Absent discovery, Plaintiffs are unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals at Mercedes responsible for disseminating false and misleading marketing materials and information regarding the Class Vehicles. Mercedes necessarily is in possession of, or has access to, all of this information.

183. Plaintiffs' claims arise out of Mercedes' fraudulent concealment of the Paint Defect and the peeling, flaking, and bubbling of the Class Vehicles' paint it causes, and its representations about the quality, durability, and value of the Class Vehicles, including the paint used on the Class Vehicles.

184. To the extent that Plaintiffs' claims arise from Mercedes' fraudulent concealment, there is no one document or communication, and no one interaction, upon which Plaintiffs base their claims. Plaintiffs allege that at all relevant times, including specifically at the time they purchased or leased their Class Vehicles, Mercedes knew, or was reckless in not knowing, of the Paint Defect; Mercedes was under a duty to disclose the Paint Defect based upon its exclusive knowledge of it, its affirmative representations about it, and its concealment of it, and Mercedes never disclosed the Paint Defect to Plaintiffs or the public at any time or place or in any manner.

185. Plaintiffs make the following specific fraud allegations with as much specificity as possible although they do not have access to information necessarily available only to Mercedes:

a) **Who**: Mercedes actively concealed the Paint Defect from Plaintiffs and Class members while simultaneously touting the quality and durability of the Class Vehicles, as alleged above in paragraphs 1, 20-76, 101-123, *supra*. Plaintiffs are unaware of, and therefore unable to identify, the true names and identities of those specific individuals at Mercedes responsible for such decisions.

b) **What**: Mercedes knew, or was reckless or negligent in not knowing, that the Class Vehicles contain the Paint Defect, as alleged in paragraphs 124-158, *supra*. Mercedes concealed the Paint Defect and made contrary representations about the quality and durability, and other attributes of the Class Vehicles, as specified above in paragraphs 101-123, *supra*.

c)    ***When***: Mercedes concealed material information regarding the Paint Defect at all times and made representations about the quality and durability of the Class Vehicles, starting no later than 2010, or at the subsequent introduction of certain models of Class Vehicles to the market, continuing through the time of sale/lease, and on an ongoing basis, and continuing to this day, as alleged above in paragraphs 107-120, *supra*.    Mercedes has not disclosed the truth about the Paint Defect in the Class Vehicles to anyone outside of Mercedes. Mercedes has never taken any action to inform consumers about the true nature of the Paint Defect in Class Vehicles. And when consumers brought their Class Vehicles to Mercedes complaining of the clearcoat peeling, flaking, or bubbling off of their Vehicles, Mercedes denied any knowledge of, or responsibility for, the Paint Defect, and in many instances, actually blamed owners/lessees for causing the problem.

d)    ***Where***: Mercedes concealed material information regarding the true nature of the Paint Defect in every communication it had with Plaintiffs and Class members and made contrary representations about the quality and durability of the Class Vehicles.  Plaintiffs are aware of no document, communication, or other place or thing in which Mercedes disclosed the truth about the Paint Defect in the Class Vehicles to anyone outside of Mercedes.  Such information is not adequately disclosed in any sales documents, displays, advertisements, warranties, owner's manual, or on Mercedes' website.

e)    ***How***: Mercedes concealed the Paint Defect from Plaintiffs and Class Members and made representations about the quality and durability of the Class Vehicles. Mercedes actively concealed the truth about the existence and nature of the Paint Defect from Plaintiffs and Class members at all times, even though it knew about the Paint Defect and knew that information about the Paint Defect would be important to a reasonable consumer, and

Mercedes promised in its marketing materials that the Class Vehicles have qualities that they do not have.

f)     **Why**: Mercedes actively concealed material information about the Paint Defect in Class Vehicles for the purpose of inducing Plaintiffs and Class members to purchase or lease Class Vehicles, rather than purchasing or leasing competitors' vehicles and made representations about the quality and durability of the Class Vehicles. Had Mercedes disclosed the truth, for example in its advertisements or other materials or communications, Plaintiffs (and reasonable consumers) would have been aware of it, and would not have bought the Class Vehicles or would have paid less for them.

## VI.     TOLLING OF THE STATUTE OF LIMITATIONS

### A.     Fraudulent Concealment Tolling

186.     Mercedes has known of the Paint Defect in the Class Vehicles since at least 2010, and has concealed from, or failed to, notify Plaintiffs, Class members, and the public of the full and complete nature of the Paint Defect, even when directly asked about it by Plaintiffs and Class members during communications with Mercedes, Mercedes Customer Assistance, Mercedes dealerships, and Mercedes service centers. Mercedes continues to conceal the Paint Defect to this day.

187.     Any applicable statute of limitation has been tolled by Mercedes' knowledge, active concealment, and denial of the facts alleged herein, which behavior is ongoing.

### B.     Estoppel

188.     Mercedes was, and is, under a continuous duty to disclose to Plaintiffs and Class members the true character, quality, and nature of the Class Vehicles. Mercedes actively concealed – and continues to conceal – the true character, quality, and nature of the Class

Vehicles and knowingly made representations about the quality and durability of the Class

Vehicles. Plaintiffs and Class members reasonably relied upon Mercedes' knowing and

affirmative representations and/or active concealment of these facts. Based on the foregoing,

Mercedes is estopped from relying on any statutes of limitation in defense of this action.

## C.    Discovery Rule

189.    The causes of action alleged herein did not accrue until Plaintiffs and Class

members discovered that their Class Vehicles contained the Paint Defect.

190.    However, Plaintiffs and Class members had no realistic ability to discern that the

Class Vehicles were defective until – at the earliest – after the Paint Defect caused the clearcoat

on their Vehicles to peel, flake, and bubble. Even then, Plaintiffs and Class members had no

reason to know the peeling, flaking, and bubbling were caused by a defect in the Class Vehicles

because of Mercedes' active concealment of the Paint Defect. Not only did Mercedes fail to

notify Plaintiffs or Class members about the Paint Defect, Mercedes, in fact, denied any

knowledge of, or responsibility for, the Paint Defect when directly asked about it, and, in many

instances, actually blamed the owner/lessee for causing the problem.

191.    Thus Plaintiffs and Class members were not reasonably able to discover the Paint

Defect until after they had purchased or leased the Class Vehicles, despite their exercise of due

diligence, and their causes of action did not accrue until, at earliest, they discovered that the

Paint Defect was causing the clearcoat on their Vehicles to peel, flake, and bubble.

## VII.    CLASS ALLEGATIONS

192.    Plaintiffs bring this action pursuant to Rule 23(a) and (b)(2)-(3) of the Federal

Rules of Civil Procedure on behalf of themselves and all others similarly situated as members of

the following Nationwide Class (under the laws of the state of New Jersey) and State Classes

defined as:

**Nationwide Class:**

All persons or entities in the United States (including its territories
and the District of Columbia) that purchased or leased a Class
Vehicle. Class Vehicles include, without limitation, all Mercedes-
branded vehicles with Mars Red paint, otherwise identified as
having Pittsburgh Plate Glass paint code 905264, or Mercedes
paint code 590.

**Alabama Class:**

All persons and entities in the state of Alabama who purchased or
leased a Class Vehicle.

**Alaska Class:**

All persons and entities in the state of Alaska who purchased or
leased a Class Vehicle.

**Arizona Class:**

All persons and entities in the state of Arizona who purchased or
leased a Class Vehicle.

**Arkansas Class:**

All persons and entities in the state of Arkansas who purchased or
leased a Class Vehicle.

**California Class:**

All persons and entities in the state of California who purchased or
leased a Class Vehicle.

**Colorado Class:**

All persons and entities in the state of Colorado who purchased or
leased a Class Vehicle.

**Connecticut Class:**

All persons and entities in the state of Connecticut who purchased
or leased a Class Vehicle.

**<u>Delaware Class</u>:**

All persons and entities in the state of Delaware who purchased or leased a Class Vehicle.

**<u>District of Columbia Class</u>:**

All persons and entities in the District of Columbia who purchased or leased a Class Vehicle.

**<u>Florida Class</u>:**

All persons and entities in the state of Florida who purchased or leased a Class Vehicle.

**<u>Georgia Class</u>:**

All persons and entities in the state of Georgia who purchased or leased a Class Vehicle.

**<u>Hawaii Class</u>:**

All persons and entities in the state of Hawaii who purchased or leased a Class Vehicle.

**<u>Idaho Class</u>:**

All persons and entities in the state of Idaho who purchased or leased a Class Vehicle.

**<u>Illinois Class</u>:**

All persons and entities in the state of Illinois who purchased or leased a Class Vehicle.

**<u>Indiana Class</u>:**

All persons and entities in the state of Indiana who purchased or leased a Class Vehicle.

**<u>Iowa Class</u>:**

All persons and entities in the state of Iowa who purchased or leased a Class Vehicle.

**<u>Kansas Class</u>:**

All persons and entities in the state of Kansas who purchased or leased a Class Vehicle.

**Kentucky Class:**

All persons and entities in the state of Kentucky who purchased or leased a Class Vehicle.

**Louisiana Class:**

All persons and entities in the state of Louisiana who purchased or leased a Class Vehicle.

**Maine Class:**

All persons and entities in the state of Maine who purchased or leased a Class Vehicle.

**Maryland Class:**

All persons and entities in the state of Maryland who purchased or leased a Class Vehicle.

**Massachusetts Class:**

All persons and entities in the state of Massachusetts who purchased or leased a Class Vehicle.

**Michigan Class:**

All persons and entities in the state of Michigan who purchased or leased a Class Vehicle.

**Minnesota Class:**

All persons and entities in the state of Minnesota who purchased or leased a Class Vehicle.

**Mississippi Class:**

All persons and entities in the state of Mississippi who purchased or leased a Class Vehicle.

**Missouri Class:**

All persons and entities in the state of Missouri who purchased or leased a Class Vehicle.

**Montana Class:**

All persons and entities in the state of Montana who purchased or leased a Class Vehicle.

**Nebraska Class:**

All persons and entities in the state of Nebraska who purchased or leased a Class Vehicle.

**Nevada Class:**

All persons and entities in the state of Nevada who purchased or leased a Class Vehicle.

**New Hampshire Class:**

All persons and entities in the state of New Hampshire who purchased or leased a Class Vehicle.

**New Jersey Class:**

All persons and entities in the state of New Jersey who purchased or leased a Class Vehicle.

**New Mexico Class:**

All persons and entities in the state of New Mexico who purchased or leased a Class Vehicle.

**New York Class:**

All persons and entities in the state of New York who purchased or leased a Class Vehicle.

**North Carolina Class:**

All persons and entities in the state of North Carolina who purchased or leased a Class Vehicle.

**North Dakota Class:**

All persons and entities in the state of North Dakota who purchased or leased a Class Vehicle.

**Ohio Class:**

All persons and entities in the state of Ohio who purchased or leased a Class Vehicle.

**Oklahoma Class:**

All persons and entities in the state of Oklahoma who purchased or leased a Class Vehicle.

**Oregon Class:**

All persons and entities in the state of Oregon who purchased or leased a Class Vehicle.

**Pennsylvania Class:**

All persons and entities in the state of Pennsylvania who purchased or leased a Class Vehicle.

**Rhode Island Class:**

All persons and entities in the state of Rhode Island who purchased or leased a Class Vehicle.

**South Carolina Class:**

All persons and entities in the state of South Carolina who purchased or leased a Class Vehicle.

**South Dakota Class:**

All persons and entities in the state of South Dakota who purchased or leased a Class Vehicle.

**Tennessee Class:**

All persons and entities in the state of Tennessee who purchased or leased a Class Vehicle.

**Texas Class:**

All persons and entities in the state of Texas who purchased or leased a Class Vehicle.

**Utah Class:**

All persons and entities in the state of Utah who purchased or leased a Class Vehicle.

**Vermont Class:**

All persons and entities in the state of Vermont who purchased or leased a Class Vehicle.

**Virginia Class:**

All persons and entities in the state of Virginia who purchased or leased a Class Vehicle.

**Washington Class:**

All persons and entities in the state of Washington who purchased or leased a Class Vehicle.

**West Virginia Class:**

All persons and entities in the state of West Virginia who purchased or leased a Class Vehicle.

**Wisconsin Class:**

All persons and entities in the state of Wisconsin who purchased or leased a Class Vehicle.

**Wyoming Class:**

All persons and entities in the state of Wyoming who purchased or leased a Class Vehicle.

193.    Excluded from the Class are Defendants; their employees, officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliates of Defendants; Defendants' dealers; Class Counsel and their employees; the judicial officers and their immediate family members and associated court staff assigned to this case; and all persons within the third degree of relationship to any such persons.

194.    Certification of Plaintiffs' claims for Class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a Class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

195.    This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Fed. R. Civ. P. 23.

196.    **Numerosity**.    Rule 23(a)(1) of the Federal Rules of Civil Procedure:    The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. While Plaintiffs are informed and believe that there are at least thousands of members of the Class, the precise number of Class members is unknown to

Plaintiffs, but may be ascertained from Defendants' books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

197. **Commonality and Predominance**. Rules 23(a)(2) and (b)(3) of the Federal Rules of Civil Procedure: This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, but not limited to:

a.   whether Defendants engaged in the conduct alleged herein;

b.   whether Defendants designed, manufactured, advertised, marketed, distributed, leased, sold, or otherwise placed Class Vehicles into the stream of commerce in the United States;

c.   whether Defendants designed, manufactured, marketed, and distributed Class Vehicles with a Paint Defect;

d.   whether Plaintiffs and Class members overpaid for their Class Vehicles and/or did not receive the benefit of the bargain;

e.   whether Plaintiffs and Class members are entitled to damages and other monetary relief and, if so, in what amount;

f.   whether Defendants' alleged conduct constitutes the use or employment of an unconscionable commercial practice, deception, fraud, false pretense, false promise, and misrepresentation within the meaning of the applicable state consumer fraud statutes;

g.    whether Defendants have been unjustly enriched under applicable state laws;

h.    whether Defendants have violated its express warranties to Plaintiffs and Class members;

i.    whether Defendants have violated the implied warranty of merchantability under applicable state law;

j.    whether Defendants actively concealed the Paint Defect in order to maximize profits to the detriment of Plaintiffs and Class members; and

k.    such other common factual and legal issues as are apparent from the allegations and causes of action asserted in this Complaint.

198.    **Typicality**.  Rule 23(a)(3) of the Federal Rules of Civil Procedure:  Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Mercedes' wrongful conduct as described above.  All claims seek recovery on the same legal theories and are based upon Mercedes' common course of conduct.

199.    **Adequacy**.  Rule 23(a)(4) of the Federal Rules of Civil Procedure:  Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Class they seek to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously.  The Class' interests will be fairly and adequately protected by Plaintiffs and their counsel.

200.    **Declaratory Relief**.  Rule 23(b)(2) of the Federal Rules of Civil Procedure: Mercedes has acted or refused to act on grounds generally applicable to Plaintiffs and Class members, thereby making appropriate declaratory relief, with respect to each Class as a whole.

201.    **Superiority**.  Rule 23(b)(3) of the Federal Rules of Civil Procedure:  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiffs and Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Mercedes, so it would be impracticable for Class members to individually seek redress for Mercedes' wrongful conduct.  Even if Class members could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VIII.   CLAIMS

**A.      Claims Brought on Behalf of the Nationwide Class**

### NATIONWIDE COUNT I

### FRAUDULENT CONCEALMENT

202.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

203.    Plaintiffs bring this claim on behalf of themselves and the Nationwide Class under the common law of fraudulent concealment, which is materially uniform in all states.  In the

alternative, Plaintiffs bring this claim on behalf of each State Class under the law of each state in which Plaintiffs and Class members purchased or leased the Class Vehicles.

204.    Mercedes fraudulently concealed and suppressed material facts concerning the quality of the Class Vehicles and the paint used thereon, as well as the existence of the Paint Defect.

205.    Despite advertising the Class Vehicles as durable and being of high quality, Mercedes knew when it manufactured, marketed, and sold or leased the Vehicles that the paint used thereon suffered from a design and/or manufacturing defect that reduced the Vehicles' value and subjected the Vehicles to rust and corrosion.

206.    Mercedes failed to disclose these facts to consumers at the time it manufactured, marketed, and sold or leased the Class Vehicles and Mercedes knowingly and intentionally engaged in this concealment in order to boost sales and revenue, maintain its competitive edge in the automobile market, and obtain windfall profit.  Through its active concealment and/or suppression of these material facts, Mercedes sought to increase consumer confidence in the Class Vehicles, and to falsely assure purchasers and lessors of the same that the Vehicles were of sound quality and that Mercedes was a reputable manufacturer that stands behind the automobiles it manufactures.  Mercedes engaged in this behavior to protect its profits, avoid warranty replacements, avoid recalls that would impair the brand's image, cost it money, and undermine its competitiveness in the automobile industry.

207.    Plaintiffs and Class members were unaware, and could not reasonably discover on their own, that Mercedes' representations were false and misleading, or that it had omitted material facts relating to the Class Vehicles.

208.    Mercedes had a duty to disclose, rather than conceal and suppress, the full scope and extent of the Paint Defect because:

a.    Mercedes had exclusive or far superior knowledge of the Paint Defect and concealment thereof;

b.    the facts regarding the Paint Defect and concealment thereof were known and/or accessible only to Mercedes;

c.    Mercedes knew that Plaintiffs and Class members did not know about, or could not reasonably discover, the Paint Defect and concealment thereof; and

d.    Mercedes made representations and assurances about the qualities of the Class Vehicles, including statements about their quality, durability, and high resale value, that were misleading, deceptive, and incomplete without the disclosure of the fact that paint used on the Vehicles suffered from a systemic design and/or manufacturing defect.

209.    These omitted and concealed facts were material because a reasonable consumer would rely on them in deciding to purchase or lease the Class Vehicles, and because they substantially reduced the value of the Class Vehicles purchased or leased by Plaintiffs and Class members.  Whether the Class Vehicles were defective, of sound quality, and durable, and whether Mercedes stood behind such Vehicles, would have been an important factor in Plaintiffs' and the Class members' decisions to purchase or lease the Vehicles.  Plaintiffs and Class members trusted Mercedes not to sell them vehicles that were defective and significantly overpriced.

210.    Mercedes intentionally and actively concealed and suppressed these material facts to falsely assure consumers that their Class Vehicles were free from known defects, as represented by Mercedes and reasonably expected by consumers.

211.    Plaintiffs and Class members were unaware of these omitted material facts and would have paid less for the Class Vehicles, or would not have purchased/leased them at all, if they had known of the concealed and suppressed facts.  Plaintiffs and Class members did not receive the benefit of their bargain due to Mercedes' fraudulent concealment.  Plaintiffs' and Class members' actions in purchasing the Class Vehicles were justified. Mercedes was in exclusive control of the material facts, and such facts were not known or reasonably knowable to the public, Plaintiffs, or Class members.

212.    Plaintiffs and Class members relied to their detriment upon Mercedes' reputation, fraudulent misrepresentations, and material omissions regarding the quality, durability, and high resale value of the Class Vehicles.

213.    As a direct and proximate result of Mercedes' deceit and fraudulent concealment, including its intentional suppression of true facts, Plaintiffs and Class members suffered injury. They purchased and leased Class Vehicles that had a diminished value by reason of Mercedes' concealment of, and failure to disclose, the Paint Defect.  Plaintiffs and Class members also paid substantial money to (unsuccessfully) repair the Paint Defect.

214.    Accordingly, Mercedes is liable to the Nationwide Class and/or State Classes for their damages in an amount to be proven at trial.

215.    On information and belief, Mercedes has still not made full and adequate disclosure and continues to defraud Plaintiffs and Class members.  Mercedes also continues to conceal material information regarding the Paint Defect.

216.    Mercedes' acts were done deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Class members' rights.  Mercedes' conduct warrants an

assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## NATIONWIDE COUNT II

## UNJUST ENRICHMENT

217.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

218.    Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class under the common law of unjust enrichment, which is materially uniform in all states.  In the alternative, Plaintiffs bring this claim on behalf of each State Class under the law of each state in which Plaintiffs and Class members purchased or leased Class Vehicles.

219.    Plaintiffs bring this claim as an alternative to the contractual warranty claims asserted below and in the event that Plaintiffs prevail on their claims that any contract with Mercedes (including any express or implied warranty) was fraudulently induced and/or Plaintiffs prevail in proving that the warranties cannot be enforced by Mercedes due to Mercedes having provided the warranties only after entering into a contract with a purchaser or lessor, or due to Mercedes' intentional and deceptive efforts to conceal the Paint Defect and avoid its warranty obligations.

220.    Mercedes has received millions in revenue from the sale of the Class Vehicles between 2004 and 2017.

221.    This revenue was a benefit conferred upon Mercedes by Plaintiffs and Class members, individuals living across the United States.

222.     Mercedes manufactured, marketed, and sold defective Class Vehicles to Plaintiffs and Class members, while actively concealing the vehicles' known defects and touting their quality, durability, and high resale value.

223.     Mercedes benefitted from selling defective cars for more money than they were worth, at a profit, and Plaintiffs have overpaid for the cars and, in some instances, been forced to pay to (unsuccessfully) repair the Paint Defect.

224.     Plaintiffs and Class members elected to purchase or lease the Class Vehicles based on Mercedes' misrepresentations, deception, and omissions.  Mercedes knew and understood that it would (and did) receive a financial benefit, and voluntarily accepted the same, from Plaintiffs and Class members when they elected to purchase or lease the Class Vehicles.

225.     The Class Vehicles' defect, and Mercedes' concealment of the same, enriched Mercedes beyond its legal rights by securing through deceit and falsehood millions of dollars in revenues between 2004 and 2017.

226.     Therefore, because Mercedes will be unjustly enriched if it is allowed to retain the revenues obtained through falsehoods, deception, and misrepresentations, Plaintiffs and each Class member are entitled to recover the amount by which Mercedes was unjustly enriched at his or her expense.

227.     Accordingly, Plaintiffs, on behalf of themselves and each Class member, seek damages against Mercedes in the amounts by which it has been unjustly enriched at Plaintiffs' and each Class member's expense, and such other relief as this Court deems just and proper.

## NATIONWIDE COUNT III

## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT

## (15 U.S.C. §2301, *ET SEQ.*)

228.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

229.    This Court has jurisdiction to decide claims brought under **the Magnuson-Moss Warranty Act,** 15 U.S.C. §2301, *et seq*. ("MMWA") by virtue of 28 U.S.C. §1332(a)-(d).

230.    The Class Vehicles are "consumer products" within the meaning of the MMWA, 15 U.S.C. §2301(1).

231.    Plaintiffs are "consumers" within the meaning of the MMWA, 15 U.S.C. §2301(3).  They are consumers because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its implied warranties.

232.    Mercedes is a "supplier" and "warrantor" within the meaning of the MMWA, 15 U.S.C. §2301(4)-(5).

233.    15 U.S.C. §2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

234.    Mercedes provided Plaintiffs and Class members with the following express warranty, which is covered under 15 U.S.C. §2301(6):

> DEFECTS: Mercedes-Benz USA, LLC (MBUSA) warrants to the original and each subsequent owner of a new Mercedes Benz vehicle that any authorized Mercedes-Benz Center will make any repairs or replacements necessary, to correct defects in material or workmanship arising during the warranty period.
>
> * * *
>
> WARRANTY PERIOD: This warranty is for 48 months or 50,000 miles, whichever occurs first.

* * *

> NO CHARGE: Warranty repairs will be made at no charge for
> parts and labors.

235.    Mercedes provided Plaintiffs and Class members with an implied warranty of merchantability in connection with the purchase or lease of their Class Vehicles that is an "implied warranty" within the meaning of the MMWA, 15 U.S.C. §2301(7).  As part of the implied warranty of merchantability, Mercedes warranted that the Class Vehicles were fit for their ordinary purpose as safe passenger motor vehicles; would pass without objection in the trade as designed, manufactured, and marketed; and were adequately contained, packaged, and labeled.

236.    Mercedes breached its warranties, as described in more detail above, and is therefore liable to Plaintiffs and Class members pursuant to 15 U.S.C. §2310(d)(1).  Without limitation, the Class Vehicles share a common design and/or manufacturing defect in that the Vehicles are equipped with paint that has the propensity to cause their clearcoats to bubble, peel, and flake off the Vehicles.  Through its partial practice of covering the cost of having the Class Vehicles repainted, Mercedes has tacitly admitted that the Class Vehicles suffer from a Paint Defect of its own making, but Mercedes' refusal to fully cover repairs and acknowledge the Paint Defect in order to inform current and future purchasers/lessors of Class Vehicles is woefully insufficient.

237.    In its capacity as a warrantor, Mercedes had knowledge of the inherent defect in the Class Vehicles.  Any effort by Mercedes to limit the NVLW—or the CPOLW, which purportedly excludes paint from its coverage—in a manner that would exclude coverage of the

Class Vehicles is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the Class Vehicles is null and void.

238.    Any limitations Mercedes might seek to impose on its warranties are procedurally unconscionable.  There was unequal bargaining power between Mercedes and Plaintiffs and Class members, as, at the time of purchase and lease, Plaintiffs and Class members had no other options for purchasing warranty coverage other than directly from Mercedes.

239.    Any limitations Mercedes might seek to impose on its warranties are substantively unconscionable.  Mercedes knew that the Class Vehicles were defective and would continue to pose safety risks and quality concerns after the warranties purportedly expired. Mercedes failed to disclose these defects to Plaintiffs and Class members. Thus, Mercedes' enforcement of the durational limitations on those warranties is harsh and shocks the conscience.

240.    Plaintiffs and each of the other Class members have had sufficient direct dealings with either Mercedes or its agents (dealerships) to establish privity of contract between Mercedes, on the one hand, and Plaintiffs and each of the other Class members, on the other hand.  Nonetheless, privity is not required here because Plaintiffs and each of the other Class members are intended third-party beneficiaries of contracts between Mercedes and its dealers, and specifically, of Mercedes' warranties.  The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for, and intended to, benefit consumers.

241.    Pursuant to 15 U.S.C. §2310(e), Plaintiffs are entitled to bring this class action and are not required to give Mercedes notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs pursuant to Fed. R. Civ. P. 23.

242.    Plaintiffs and Class members would suffer economic hardship if they returned their Class Vehicles but did not receive the return of all payments made by them.  Because Mercedes is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs and Class members have not reaccepted their Class Vehicles by retaining them.

243.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.  Plaintiffs, individually and on behalf of the other Class members, seek all damages permitted by law, including diminution in value of their vehicles, in an amount to be proven at trial.  In addition, pursuant to 15 U.S.C. §2310(d)(2), Plaintiffs and Class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and Class members in connection with the commencement and prosecution of this action.

244.    Plaintiffs seek the establishment of a Mercedes-funded program for Plaintiffs and Class members to recover out-of-pocket costs incurred in attempting to rectify the Paint Defect in their Class Vehicles.

**B.**    **Claims Brought on Behalf of the Alabama Class**

### ALABAMA COUNT I

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (ALA. CODE §§7-2-314 AND 7-2A-212)

249.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

250.    This Count is brought on behalf of the Alabama Class.

251.    Mercedes is and was at all relevant times a "merchant" with respect to motor vehicles under ALA. CODE §§7-2-104(1) and 7-2A-103(3), and a "seller" of motor vehicles under §7-2-103(1)(d).

252.    With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under ALA. CODE §7-2A-103(1)(p).

253.    The Class Vehicles are and were at all relevant times "goods" within the meaning of ALA. CODE §§7-2-105(1) and 7-2A-103(1)(h).

254.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to ALA. CODE §§7-2-314 and 7-2A-212.

255.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose, as a result of the inherent defects, as detailed above.   In addition, because any warranty repairs or replacements offered by Mercedes cannot cure the defect in the Class Vehicles, they fail to cure Mercedes' breach of implied warranties.

256.    As a direct and proximate result of Mercedes' breach of the implied warranty of merchantability, the Alabama Class members have been damaged in an amount to be proven at trial.

257.    Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

## ALABAMA COUNT II

## BREACH OF EXPRESS WARRANTY
### (ALA. CODE §§§§7-2-313 AND 7-2A-210)

258.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

259.    This Count is brought on behalf of the Alabama Class.

260.    Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under ALA. CODE §§7-2-104(1) and 7-2A-103(3), and a "seller" of the Class Vehicles under §7-2-103(1)(d).

261.    With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under ALA. CODE §7-2A-103(1)(p).

262.    The Class Vehicles are and were at all relevant times "goods" within the meaning of ALA. CODE §§7-2-105(1) and 7-2A-103(1)(h).

263.    In connection with the purchase or lease of all Class Vehicles, Mercedes provided the Alabama Class members with a written warranty covering defects in materials and workmanship of the Class Vehicles for four years, as detailed above.  In addition, Mercedes' various oral and written representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles constituted express warranties to the Alabama Class members.

264.    Mercedes' warranties formed a basis of the bargain that was reached when the Alabama Class members purchased or leased their Class Vehicles.

265.    Mercedes breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Alabama Class members with Class Vehicles containing defects in the materials and workmanship with regard to the paint and paint

process used on the Class Vehicles that were never disclosed to the Alabama Class members; (b) failing to repair or replace the Class Vehicles at no cost within the four-year warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Mercedes.

266.    The Alabama Class members have given Mercedes a reasonable opportunity to cure its breach of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Mercedes can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

267.    Thus, Mercedes' four-year written warranty fails of its essential purpose and the recovery of the Alabama Class members is not limited to its remedies.

268.    Accordingly, the Alabama Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Alabama Class members of the purchase or lease price of all Class Vehicles currently owned and leased, and for such other incidental and consequential damages as allowed.

269.    As a direct and proximate result of Mercedes' breach of its express warranty, the Alabama Class members have been damaged in an amount to be determined at trial.

270.    Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

C.    **Claims Brought on Behalf of the Alaska Class**

**ALASKA COUNT I**

**BREACH OF IMPLIED WARRANTIES**
**(ALASKA STAT. §§45.02.314 AND 45.12.212)**

271.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

272.    This Count is brought on behalf of the Alaska Class.

273.    Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under ALASKA STAT. §§45.02.104(a) and 45.12.103(c)(11), and a "seller" of the Class Vehicles under §45.02.103(a)(4).

274.    With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under ALASKA STAT. §45.12.103(a)(16).

275.    The Class Vehicles are and were at all relevant times "goods" within the meaning of ALASKA STAT. §§45.02.105(a) and 45.12.103(a)(8).

276.    A warranty that the Class Vehicles were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to ALASKA STAT. §§45.02.314 and 45.12.212.

277.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Mercedes cannot cure the defect in the Class Vehicles, they fail to cure Mercedes' breach of implied warranties.

278.    As a direct and proximate result of Mercedes' breach of its implied warranties, the Alaska Class members have been damaged in an amount to be determined at trial.

279.     Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

## ALASKA COUNT II

### BREACH OF EXPRESS WARRANTY
### (ALASKA STAT. §§45.02.313 AND 45.12.210)

280.     Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

281.     This Count is brought on behalf of the Alaska Class.

282.     Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under ALASKA STAT. §§45.02.104(a) and 45.12.103(c)(11), and a "seller" of the Class Vehicles under §45.02.103(a)(4).

283.     With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under ALASKA STAT. §45.12.103(a)(16).

284.     The Class Vehicles are and were at all relevant times "goods" within the meaning of ALASKA STAT. §§45.02.105(a) and 45.12.103(a)(8).

285.     In connection with the purchase or lease of all Class Vehicles, Mercedes provided the Alaska Class members with a written warranty covering defects in materials and workmanship of the Class Vehicles for four years, as detailed above.  In addition, Mercedes' various oral and written representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles constituted express warranties to the Alaska Class members.

286.     Mercedes' warranties formed a basis of the bargain that was reached when the Alaska Class members purchased or leased their Class Vehicles.

287.    Mercedes breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Alaska Class members with Class Vehicles containing defects in the materials and workmanship with regard to the paint and paint process used on the Class Vehicles that were never disclosed to the Alaska Class members; (b) failing to repair or replace the defective Class Vehicles at no cost within the four-year warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Mercedes.

288.    The Alaska Class members have given Mercedes a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Mercedes can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

289.    Thus, Mercedes' four-year written warranty fails of its essential purpose and the recovery of the Alaska Class members is not limited to its remedies.

290.    Accordingly, the Alaska Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Alaska Class members of the purchase or lease price of all Class Vehicles currently owned and leased, and for such other incidental and consequential damages as allowed.

291.    As a direct and proximate result of Mercedes' breach of its express warranty, the Alaska Class members have been damaged in an amount to be determined at trial.

292.    Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

D.    **Claims Brought on Behalf of the Arizona Class**

### ARIZONA COUNT I

### VIOLATIONS OF THE ARIZONA CONSUMER FRAUD ACT
### (ARIZ. REV. STAT. ANN. §44-1521, *ET SEQ.*)

293.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

294.    This Count is brought on behalf of the Arizona Class.

295.    Mercedes and the Arizona Class members are "persons" within the meaning of ARIZ. REV. STAT. ANN. §44-1521(6).

296.    The Class Vehicles are "merchandise" within the meaning of ARIZ. REV. STAT. ANN. §44-1521(5).

297.    The Arizona Consumer Fraud Act ("Arizona CFA") provides that "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud, … misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale … of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." ARIZ. REV. STAT. ANN. §44-1522(A).

298.    In the course of its business, Mercedes violated the Arizona CFA by knowingly misrepresenting and intentionally concealing material facts regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles, as detailed above.  Specifically, in marketing, offering for sale/lease, and selling/leasing the defective Class Vehicles, Mercedes engaged in deceptive acts or practices, as outlined in ARIZ. REV. STAT. ANN. §44-1522(A), including using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression, or omission of a material

fact with intent that others rely upon such concealment, suppression, or omission, in connection with the advertisement and sale or lease of the Class Vehicles.

299.    Mercedes' scheme and concealment of the true characteristics of the Class Vehicles were material to the Arizona Class members, and Mercedes misrepresented, concealed, or failed to disclose the truth with the intention that the Arizona Class members would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the Arizona Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

300.    The Arizona Class members had no way of discerning that Mercedes' representations were false and misleading, or otherwise learning the facts that Mercedes had concealed or failed to disclose.

301.    Mercedes had an ongoing duty to the Arizona Class members to refrain from unfair and deceptive practices under the Arizona CFA in the course of its business.  Specifically, Mercedes owed the Arizona Class members a duty to disclose all the material facts concerning the Class Vehicles because Mercedes possessed exclusive knowledge, intentionally concealed it from the Arizona Class members, and/or made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

302.    The Arizona Class members suffered ascertainable loss and actual damages as a direct and proximate result of Mercedes' concealment, misrepresentations, and/or failure to disclose material information.

303.    The Arizona Class members seek an order awarding damages and any other just and proper relief available under the Arizona CFA.

## ARIZONA COUNT II

## BREACH OF IMPLIED WARRANTIES
## (ARIZ. REV. STAT. ANN. §§47-2314 AND 47-2A212)

304.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

305.    This Count is brought on behalf of the Arizona Class.

306.    Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under ARIZ. REV. STAT. ANN. §§47-2104(A) and 47-2A103(c), and a "seller" of the Class Vehicles under §47-2103(A)(4).

307.    With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under ARIZ. REV. STAT. ANN. §47-2A103(A)(16).

308.    The Class Vehicles are and were at all relevant times "goods" within the meaning of ARIZ. REV. STAT. ANN. §§47-2105(A) and 47-2A103(A)(8).

309.    A warranty that the Class Vehicles were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to ARIZ. REV. STAT. ANN. §§47-2314 and 47-2A212.

310.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose as a result of their inherent defects, as detailed above.    In addition, because any warranty repairs or replacements offered by Mercedes cannot cure the defect in the Class Vehicles, they fail to cure Mercedes' breach of implied warranties.

311.    As a direct and proximate result of Mercedes' breach of its implied warranties, the Arizona Class members have been damaged in an amount to be determined at trial.

312.    Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

## ARIZONA COUNT III

### BREACH OF EXPRESS WARRANTY
### (ARIZ. REV. STAT. ANN. §§47-2313 AND 47-2A210)

313.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

314.    This Count is brought on behalf of the Arizona Class.

315.    Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under ARIZ. REV. STAT. ANN. §§47-2104(A) and 47-2A103(c), and a "seller" of the Class Vehicles under §47-2103(A)(4).

316.    With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under ARIZ. REV. STAT. ANN. §47-2A103(A)(16).

317.    The Class Vehicles are and were at all relevant times "goods" within the meaning of ARIZ. REV. STAT. ANN. §§47-2105(A) and 47-2A103(A)(8).

318.    In connection with the purchase or lease of all Class Vehicles, Mercedes provided the Arizona Class members with a written warranty covering defects in materials and workmanship of the Class Vehicles for four years, as detailed above.  In addition, Mercedes' various oral and written representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles constituted express warranties to the Arizona Class members.

319.    Mercedes' warranties formed a basis of the bargain that was reached when the Arizona Class members purchased or leased their Class Vehicles.

320.    Mercedes breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Arizona Class members with Class Vehicles containing defects in the materials and workmanship with regard to the paint and paint process used on the Class Vehicles that were never disclosed to the Arizona Class members; (b) failing to repair or replace the defective Class Vehicles at no cost within the four-year warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Mercedes.

321.    The Arizona Class members have given Mercedes a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Mercedes can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

322.    Thus, Mercedes' four-year written warranty fails of its essential purpose and the recovery of the Arizona Class members is not limited to its remedies.

323.    Accordingly, the Arizona Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Arizona Class members of the purchase or lease price of all Class Vehicles currently owned and leased, and for such other incidental and consequential damages as allowed.

324.    As a direct and proximate result of Mercedes' breach of its express warranty, the Arizona Class members have been damaged in an amount to be determined at trial.

325.    Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

E.    **Claims Brought on Behalf of the Arkansas Class**

### ARKANSAS COUNT I

### VIOLATIONS OF THE DECEPTIVE TRADE PRACTICE ACT
### (ARK. CODE ANN. §4-88-101, *ET SEQ.*)

326.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

327.    This Count is brought on behalf of the Arkansas Class.

328.    Mercedes and the Arkansas Class members are "persons" within the meaning of ARK. CODE ANN. §4-88-102(5).

329.    The Class Vehicles are "goods" within the meaning of ARK. CODE ANN. §4-88-102(4).

330.    The Arkansas Deceptive Trade Practice Act ("Arkansas DTPA") makes unlawful "[d]eceptive and unconscionable trade practices," which include, but are not limited to, a list of enumerated items, including "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade[.]" ARK. CODE ANN. §4-88-107(a)(10). The Arkansas DTPA also prohibits the following when utilized in connection with the sale or advertisement of any goods: "(1) The act, use, or employment by any person of any deception, fraud, or false pretense; or (2) The concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission." ARK. CODE ANN. §4-88-108.

331.    In the course of its business, Mercedes violated the Arkansas DTPA by knowingly misrepresenting and intentionally concealing material facts regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles, as detailed above.    Specifically, in marketing, offering for sale/lease, and

selling/leasing the defective Class Vehicles, Mercedes engaged in one or more of the following unfair or deceptive acts or practices as defined in ARK. CODE ANN. §§4-88-107-108:

      a.      representing that the Class Vehicles have characteristics or benefits that they do not have;

      b.      representing that the Class Vehicles are of a particular standard and quality when they are not;

      c.      advertising the Class Vehicles with the intent not to sell them as advertised; and/or

      d.      using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the advertisement and sale or lease of the Class Vehicles, whether or not any person has in fact been misled, deceived, or damaged thereby.

332.    Mercedes' scheme and concealment of the true characteristics of the Class Vehicles were material to the Arkansas Class members, and Mercedes misrepresented, concealed, or failed to disclose the truth with the intention that the Arkansas Class members would rely on the misrepresentations, concealments, and omissions. Had they known the truth, the Arkansas Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

333.    The Arkansas Class members had no way of discerning that Mercedes' representations were false and misleading, or otherwise learning the facts that Mercedes had concealed or failed to disclose.

334.    Mercedes had an ongoing duty to the Arkansas Class members to refrain from unfair and deceptive practices under the Arkansas DTPA in the course of its business. Specifically, Mercedes owed the Arkansas Class members a duty to disclose all the material facts concerning the Class Vehicles because it possessed exclusive knowledge, it intentionally concealed such material facts from the Arkansas Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

335.    The Arkansas Class members suffered ascertainable loss and actual damages as a direct and proximate result of Mercedes' concealment, misrepresentations, and/or failure to disclose material information.

336.    The Arkansas Class members seek an order awarding damages pursuant to ARK. CODE ANN. §4-88-13(f), and any other just and proper relief available under the Arkansas DTPA.

## ARKANSAS COUNT II

### BREACH OF IMPLIED WARRANTIES
### (ARK. CODE ANN. §§4-2-314 AND 4-2A-212)

337.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

338.    This Count is brought on behalf of the Arkansas Class.

339.    Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under ARK. CODE ANN. §§4-2-104(1) and 4-2A-103(3), and a "seller" of the Class Vehicles under §4-2-103(1)(d).

340.    With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under ARK. CODE ANN. §4-2A-103(1)(p).

341. The Class Vehicles are and were at all relevant times "goods" within the meaning of ARK. CODE ANN. §§4-2-105(1) and 4-2A-103(1)(h).

342. A warranty that the Class Vehicles were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to ARK. CODE ANN. §§4-2-314 and 4-2A-212.

343. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Mercedes cannot cure the defect in the Class Vehicles, they fail to cure Mercedes' breach of implied warranties.

344. As a direct and proximate result of Mercedes' breach of its implied warranties, the Arkansas Class members have been damaged in an amount to be determined at trial.

345. Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

### ARKANSAS COUNT III

### BREACH OF EXPRESS WARRANTY
### (ARK. CODE ANN. §§4-2-313 AND 4-2A-210)

346. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein

347. This Count is brought on behalf of the Arkansas Class.

348. Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under ARK. CODE ANN. §§4-2-104(1) and 4-2A-103(3), and a "seller" of the Class Vehicles under §4-2-103(1)(d).

349. With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under ARK. CODE ANN. §4-2A-103(1)(p).

350. The Class Vehicles are and were at all relevant times "goods" within the meaning of ARK. CODE ANN. §§4-2-105(1) and 4-2A-103(1)(h).

351. In connection with the purchase or lease of all Class Vehicles, Mercedes provided the Arkansas Class members with a written warranty covering defects in materials and workmanship of the Class Vehicles for four years, as detailed above. In addition, Mercedes' various oral and written representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles constituted express warranties to the Arkansas Class members.

352. Mercedes' warranties formed a basis of the bargain that was reached when the Arkansas Class members purchased or leased their Class Vehicles.

353. Mercedes breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Arkansas Class members with Class Vehicles containing defects in the materials and workmanship with regard to the paint and paint process used on the Class Vehicles that were never disclosed to the Arkansas Class members; (b) failing to repair or replace the defective Class Vehicles at no cost within the four-year warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Mercedes.

354. The Arkansas Class members have given Mercedes a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Mercedes can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

355.    Thus, Mercedes' four-year written warranty fails of its essential purpose and the recovery of the Arkansas Class members is not limited to its remedies.

356.    Accordingly, the Arkansas Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Arkansas Class members of the purchase or lease price of all Class Vehicles currently owned and leased, and for such other incidental and consequential damages as allowed.

357.    As a direct and proximate result of Mercedes' breach of its express warranty, the Arkansas Class members have been damaged in an amount to be determined at trial.

358.    Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

**F.    Claims Brought on Behalf of the California Class**

**CALIFORNIA COUNT I**

**VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW
(CAL. BUS. & PROF. CODE §17200, *ET SEQ.*)**

359.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

360.    Plaintiffs Vanessa M. Montgomery and Samuel Salgado (for the purposes of this section, "Plaintiffs") bring this claim on behalf of themselves and the California Class.

361.    California's Unfair Competition Law ("UCL"), Business and Professions Code §17200, prohibits any "unlawful, unfair, or fraudulent business act or practices."

362.    In the course of its business, Mercedes violated the UCL by engaging in the following unlawful, fraudulent, and unfair business acts and practices:

        a.    selling and leasing the Class Vehicles to Plaintiffs and California Class members with knowledge that the paint and paint process used on those

Vehicle was defective, and intentionally concealing the Paint Defect from Plaintiffs and California Class members;

b.    marketing the Class Vehicles as defect-free and making affirmative representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles; and

c.    violating California statutory and common law prohibiting false advertising, fraudulent concealment, and breach of implied warranty.

363.    Mercedes' scheme and concealment of the true characteristics of the Class Vehicles were material to Plaintiffs and the California Class members, and Mercedes misrepresented, concealed, or failed to disclose the truth with the intention that Plaintiffs and the California Class members would rely on the misrepresentations, concealments, and omissions. Had they known the truth, Plaintiffs and the California Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

364.    Plaintiffs and California Class members suffered ascertainable loss and actual damages as a direct and proximate result of Mercedes' misrepresentations and its concealment of and failure to disclose material information.

365.    Pursuant to CAL. BUS. & PROF. CODE §17200, Plaintiffs and the California Class members seek any such orders or judgments as may be necessary to restore to Plaintiffs and California Class members any money acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in CAL. BUS. & PROF. CODE §§17203 and 3345, and any other just and proper relief available under the UCL.

## CALIFORNIA COUNT II

## VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW
(CAL. BUS. & PROF. CODE §17500, *ET SEQ.*)

366.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

367.    Plaintiffs Vanessa M. Montgomery and Samuel Salgado (for the purposes of this section "Plaintiffs") bring this claim on behalf of themselves and the California Class.

368.    CALIFORNIA BUS. & PROF. CODE §17500 states:   "It is unlawful for any … corporation … with intent directly or indirectly to dispose of real or personal property … to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated … from this state before the public in any state, in any newspaper or other publication, or any advertising device, … or in any other manner or means whatever, including over the Internet, any statement … which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

369.    Mercedes caused to be made or disseminated through California and the United States, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Mercedes, to be untrue and misleading to consumers, including Plaintiffs and the California Class members.

370.    Mercedes has violated CAL. BUS. & PROF. CODE §17500 because the misrepresentations and omissions regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles as set forth in this Complaint were material and likely to deceive a reasonable consumer.

371.    Plaintiffs and the California Class members have suffered an injury in fact, including the loss of money or property, as a result of Mercedes' unfair, unlawful, and/or deceptive practices.  In purchasing or leasing their Class Vehicles, Plaintiffs and the California Class members relied on the misrepresentations and/or omissions of Mercedes with respect to the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles.  Mercedes' representations turned out not to be true because during normal driving conditions, the Paint Defect would cause the clearcoat to bubble, peel, and flake off the Class Vehicles.  Had Plaintiffs and the California Class members known this, they would not have purchased or leased their Class Vehicles and/or paid as much for them.  Accordingly, Plaintiffs and the California Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain.

372.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Mercedes' business.  Mercedes' wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

373.    Plaintiffs, individually and on behalf of the California Class, requests that this Court enter such orders or judgments as may be necessary to restore to Plaintiffs and the California Class members any money Mercedes acquired by unfair competition, including restitution and/or restitutionary disgorgement and for such other relief as may be appropriate.

## CALIFORNIA COUNT III

### BREACH OF IMPLIED WARRANTIES
### (CAL. COM. CODE §§2314 AND 10212)

374.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

375.    Plaintiffs Vanessa M. Montgomery and Samuel Salgado (for the purposes of this section, "Plaintiffs") bring this claim on behalf of themselves and the California Class.

376.    Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under CAL. COM. CODE §§2104(1) and 10103(c), and "seller" of the Class Vehicles under §2103(1)(d).

377.    With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under CAL. COM. CODE §10103(a)(16).

378.    The Class Vehicles are and were at all relevant times "goods" within the meaning of CAL. COM. CODE §§2105(1) and 10103(a)(8).

379.    A warranty that the Class Vehicles were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to CAL. COM. CODE §§2314 and 10212.

380.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose as a result of their inherent defects, as detailed above.   In addition, because any warranty repairs or replacements offered by Mercedes cannot cure the defect in the Class Vehicles, they fail to cure Mercedes' breach of implied warranties.

381.    As a direct and proximate result of Mercedes' breach of its implied warranties, Plaintiffs and the California Class members have been damaged in an amount to be determined at trial.

382.    Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

## CALIFORNIA COUNT IV

## BREACH OF EXPRESS WARRANTY
## (CAL. COM. CODE §§2313 AND 10210)

383.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

384.    Plaintiffs Vanessa M. Montgomery and Samuel Salgado (for the purposes of this section, "Plaintiffs") bring this claim on behalf of themselves and the California Class.

385.    Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under CAL. COM. CODE §§2104(1) and 10103(c), and a "seller" of the Class Vehicles under §2103(1)(d).

386.    With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under CAL. COM. CODE §10103(a)(16).

387.    The Class Vehicles are and were at all relevant times "goods" within the meaning of CAL. COM. CODE §§2105(1) and 10103(a)(8).

388.    In connection with the purchase or lease of all Class Vehicles, Mercedes provided Plaintiffs and the California Class members with a written warranty covering defects in materials and workmanship of the Class Vehicles for four years, as detailed above.  In addition, Mercedes' various oral and written representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles constituted express warranties to Plaintiffs and the California Class members.

389.    Mercedes' warranties formed a basis of the bargain that was reached when Plaintiffs and the California Class members purchased or leased their Class Vehicles.

390.    Mercedes breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing Plaintiffs and the California Class members

with Class Vehicles containing defects in the materials and workmanship with regard to the paint and paint process used on the Class Vehicles that were never disclosed to Plaintiffs and the California Class members; (b) failing to repair or replace the Class Vehicles at no cost within the four-year warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Mercedes.

391.    Plaintiffs and the California Class members have given Mercedes a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Mercedes can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

392.    Thus, Mercedes' four-year written warranty fails of its essential purpose and the recovery of Plaintiffs and the California Class members is not limited to its remedies.

393.    Accordingly, Plaintiffs and the California Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiffs and the California Class members of the purchase or lease price of all Class Vehicles currently owned and leased, and for such other incidental and consequential damages as allowed.

394.    As a direct and proximate result of Mercedes' breach of its express warranty, Plaintiffs and the California Class members have been damaged in an amount to be determined at trial.

395.    Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

## CALIFORNIA COUNT V

## VIOLATIONS OF SONG-BEVERLY CONSUMER WARRANTY ACT
## FOR BREACH OF IMPLIED WARRANTIES
## (CAL. CIV. CODE §§1791.1 AND 1792)

396.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

397.    Plaintiff Vanessa M. Montgomery and Samuel Salgado (for the purposes of this section, "Plaintiffs") brings this claim on behalf of themselves and the California Class.

398.    Plaintiffs and the California Class members who purchased or leased Class Vehicles in California are "buyers" within the meaning of CAL. CIV. CODE §1791(b).

399.    The Class Vehicles are "consumer goods" within the meaning of CAL. CIV. CODE §1791(a).

400.    Mercedes is a "manufacturer" of the Class Vehicles within the meaning of CAL. CIV. CODE §1791(j).

401.    Mercedes impliedly warranted to Plaintiffs and California Class members that the Class Vehicles were "merchantable" within the meaning of CAL. CIV. CODE §§1791.1(a) and 1792; however, the Class Vehicles do not have the quality that a buyer would reasonably expect.

402.    CALIFORNIA CIV. CODE §1791.1(a) states: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

(1)    Pass without objection in the trade under the contract description.

(2)    Are fit for the ordinary purposes for which such goods are used.

(3)    Are adequately contained, packaged, and labeled.

(4)    Conform to the promises or affirmations of fact made on the container or label.

105

403.    The Class Vehicles would not pass without objection in the automotive trade, and are not fit for their ordinary purposes as a result of the inherent defects, as detailed above.  In addition, the Class Vehicles are not adequately labeled because the labeling fails to disclose the Paint Defect.  Further, because any warranty repairs or replacements offered by Mercedes cannot cure the defect in the Class Vehicles, they fail to cure Mercedes' breach of implied warranties.

404.    In the various channels of information through which Mercedes sold or leased the Class Vehicles, Mercedes failed to disclose material information concerning the Class Vehicles which it had a duty to disclose.  Mercedes owed Plaintiffs and the California Class members a duty to disclose all the material facts concerning the Class Vehicles because it possessed exclusive knowledge, it intentionally concealed such material facts from Plaintiffs and the California Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

405.    Mercedes breached the implied warranty of merchantability by manufacturing and selling Class Vehicles containing a Paint Defect.  Furthermore, this defect has caused Plaintiffs and California Class members to not receive the benefit of their bargain and has caused the Class Vehicles to diminish in value.

406.    As a direct and proximate result of Mercedes' breach of the implied warranty of merchantability, Plaintiffs and the California Class members received goods whose defective condition substantially impairs their value.

407.    Plaintiffs and the California Class members have been damaged as a result of the diminished value of their Class Vehicles.

408.    Under CAL. CIV. CODE §§1791.1(d) and 1794, Plaintiffs and the California Class members are entitled to damages and other legal and equitable relief including, at their election,

the purchase or lease price of their Class Vehicles, or the overpayment or diminution in value of their Class Vehicles.

409.    Under CAL. CIV. CODE §1794, Plaintiffs and the California Class members are entitled to costs and attorneys' fees.

## CALIFORNIA COUNT VI

## VIOLATIONS OF SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF EXPRESS WARRANTIES
## (CAL. CIV. CODE §§1791.2 AND 1793.2(D))

410.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

411.    Plaintiffs Vanessa M. Montgomery and Samuel Salgado (for the purposes of this section, "Plaintiffs") bring this claim on behalf of themselves and the California Class.

412.    Plaintiffs and the California Class members who purchased or leased the Class Vehicles in California are "buyers" within the meaning of CAL. CIV. CODE §1791(b).

413.    The Class Vehicles are "consumer goods" within the meaning of CAL. CIV. CODE §1791(a).

414.    Mercedes is a "manufacturer" of the Class Vehicles within the meaning of CAL. CIV. CODE §1791(j).

415.    Plaintiffs and the California Class members bought or leased new motor vehicles manufactured by Mercedes.

416.    Mercedes made express warranties to Plaintiffs and the California Class members within the meaning of CAL. CIV. CODE §§1791.2 and 1793.2, as described above.

417.    As set forth above in detail, the Class Vehicles are inherently defective in that they contain a Paint Defect that substantially impairs the use and value of the Class Vehicles to reasonable consumers.

418.    As a result of Mercedes' breach of its express warranties, Plaintiffs and the California Class members received goods whose defective condition substantially impairs their value to Plaintiffs and the California Class members.   Plaintiffs and the California Class members have been damaged as a result of, *inter alia*, the diminished value of their Class Vehicles, the malfunctioning of the paint used on their Class Vehicles, and the non-use of their Class Vehicles.

419.    Pursuant to Cal. Civ. Code §§1793.2 and 1794, Plaintiffs and the California Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase or lease price of their Class Vehicles, or the overpayment or diminution in value of their Class Vehicles.

420.    Pursuant to Cal. Civ. Code §1794, Plaintiffs and the California Class are entitled to costs and attorneys' fees.

**G.    Claims Brought on Behalf of the Colorado Class**

### COLORADO COUNT I

### VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT
(COLO. REV. STAT. §6-1-101, *ET SEQ.*)

421.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

422.    This Count is brought on behalf of the Colorado Class.

423.    Mercedes and the Colorado Class members are "persons" within the meaning of §6-1-102(6) of the Colorado Consumer Protection Act ("Colorado CPA"), Colo. Rev. Stat. §6-1-101, *et seq*.  The Colorado Class members are "consumers" within the meaning of Colo. Rev. Stat. §6-1-113(1)(a).

424.    The Colorado CPA makes unlawful deceptive trade practices in the course of a person's business.

425.    In the course of its business, Mercedes violated the Colorado CPA by knowingly misrepresenting and intentionally concealing material facts regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles, as detailed above.

426.    Specifically, in marketing, offering for sale/lease, and selling/leasing the defective Class Vehicles, Mercedes engaged in one or more of the following unfair or deceptive acts or practices as defined in COLO. REV. STAT. §6-1-105:

    a.    representing that the Class Vehicles have characteristics or benefits that they do not have;

    b.    representing that the Class Vehicles are of a particular standard and quality when they are not;

    c.    advertising the Class Vehicles with the intent not to sell them as advertised; and/or

    d.    failing to disclose material information concerning the Class Vehicles known to Mercedes at the time of advertisement or sale, with the intention of inducing the Colorado Class members to purchase Class Vehicles.

427.    Mercedes' scheme and concealment of the true characteristics of the Class Vehicles were material to the Colorado Class members, and Mercedes misrepresented, concealed, or failed to disclose the truth with the intention that the Colorado Class members would rely on the misrepresentations, concealments, and omissions. Had they known the truth,

the Colorado Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

428.    The Colorado Class members had no way of discerning that Mercedes' representations were false and misleading, or otherwise learning the facts that Mercedes had concealed or failed to disclose.

429.    Mercedes had an ongoing duty to the Colorado Class members to refrain from unfair and deceptive practices under the Colorado CPA in the course of its business. Specifically, Mercedes owed the Colorado Class members a duty to disclose all the material facts concerning the Class Vehicles because it possessed exclusive knowledge, it intentionally concealed such material facts from the Colorado Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

430.    The Colorado Class members suffered ascertainable loss and actual damages as a direct and proximate result of Mercedes' concealment, misrepresentations, and/or failure to disclose material information.

431.    Pursuant to COLO. REV. STAT. §6-1-113, the Colorado Class members seek an order awarding damages, treble or punitive damages, and any other just and proper relief available under the Colorado CPA.

## COLORADO COUNT II

### BREACH OF IMPLIED WARRANTIES
### (COLO. REV. STAT. §§4-2-314 AND 4-2.5-212)

432.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

433.    This Count is brought on behalf of the Colorado Class.

434.    Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under COLO. REV. STAT. §§4-2-104(1) and 4-2.5-103(3), and a "seller" of the Class Vehicles under §4-2-103(1)(d).

435.    With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under COLO. REV. STAT. §4-2.5-103(1)(p).

436.    The Class Vehicles are and were at all relevant times "goods" within the meaning of COLO. REV. STAT. §§4-2-105(1) and 4-2.5-103(1)(h).

437.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose as a result of their inherent defects, as detailed above.    In addition, because any warranty repairs or replacements offered by Mercedes cannot cure the defect in the Class Vehicles, they fail to cure Mercedes' breach of implied warranties.

438.    As a direct and proximate result of Mercedes' breach of its implied warranties, the Colorado Class members have been damaged in an amount to be determined at trial.

439.    Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

## COLORADO COUNT III

### BREACH OF EXPRESS WARRANTY
### (COLO. REV. STAT. §§4-2-313 AND 4-2.5-210)

440.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

441.    This Count is brought on behalf of the Colorado Class.

442.    Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under COLO. REV. STAT. §§4-2-104(1) and 4-2.5-103(3), and a "seller" of the Class Vehicles under §4-2-103(1)(d).

443.    With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under COLO. REV. STAT. §4-2.5-103(1)(p).

444.    The Class Vehicles are and were at all relevant times "goods" within the meaning of COLO. REV. STAT. §§4-2-105(1) and 4-2.5-103(1)(h).

445.    In connection with the purchase or lease of all Class Vehicles, Mercedes provided the Colorado Class members with a written warranty covering defects in materials and workmanship of the Class Vehicles for four years, as detailed above.  In addition, Mercedes' various oral and written representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles constituted express warranties to the Colorado Class members.

446.    Mercedes' warranties formed a basis of the bargain that was reached when the Colorado Class members purchased or leased their Class Vehicles.

447.    Mercedes breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Colorado Class members with Class Vehicles containing defects in the materials and workmanship with regard to the paint and paint process used on the Class Vehicles that were never disclosed to the Colorado Class members; (b) failing to repair or replace the defective Class Vehicles at no cost within the four-year warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Mercedes.

448.    The Colorado Class members have given Mercedes a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Mercedes can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

449.    Thus, Mercedes' four-year written warranty fails of its essential purpose and the recovery of the Colorado Class members is not limited to its remedies.

450.    Accordingly, the Colorado Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Colorado Class members of the purchase or lease price of all Class Vehicles currently owned and leased, and for such other incidental and consequential damages as allowed.

451.    As a direct and proximate result of Mercedes' breach of its express warranty, the Colorado Class members have been damaged in an amount to be determined at trial.

452.    Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

**H.    Claims Brought on Behalf of the Connecticut Class**

**CONNECTICUT COUNT I**

**VIOLATION OF CONNECTICUT UNLAWFUL
TRADE PRACTICES ACT
(CONN. GEN. STAT. ANN. §42-110A, *ET SEQ.*)**

453.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

454.    This Count is brought on behalf of the Connecticut Class.

455.    Mercedes and the Connecticut Class members are "persons" within the meaning of CONN. GEN. STAT. ANN. §42-110a(3) of the Connecticut Unfair Trade Practices Act ("Connecticut UTPA").

456.    Mercedes is engaged in "trade" or "commerce" within the meaning of CONN. GEN. STAT. ANN. §42-110a(4).

457.    The Connecticut UTPA provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." CONN. GEN. STAT. ANN. §42-110b(a).

458.    In the course of its business, Mercedes violated the Connecticut UTPA by knowingly misrepresenting and intentionally concealing material facts regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles, as detailed above.   Specifically, in marketing, offering for sale/lease, and selling/leasing the defective Class Vehicles, Mercedes engaged in one or more of the following unfair or deceptive acts or practices in violation of CONN. GEN. STAT. ANN. §42-110b(a):

a.    representing that the Class Vehicles have characteristics or benefits that they do not have;

b.    representing that the Class Vehicles are of a particular standard and quality when they are not;

c.    advertising the Class Vehicles with the intent not to sell them as advertised;

d.    engaging in other conduct which created a likelihood of confusion or of misunderstanding; and/or

e.      using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the advertisement and sale or lease of the Class Vehicles, whether or not any person has in fact been misled, deceived, or damaged thereby.

459.    Mercedes' scheme and concealment of the true characteristics of the Class Vehicles were material to the Connecticut Class members, and Mercedes misrepresented, concealed, or failed to disclose the truth with the intention that the Connecticut Class members would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the Connecticut Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

460.    The Connecticut Class members had no way of discerning that Mercedes' representations were false and misleading, or otherwise learning the facts that Mercedes had concealed or failed to disclose.

461.    Mercedes had an ongoing duty to the Connecticut Class members to refrain from unfair and deceptive practices, in the course of its business, including a duty to disclose all material facts concerning the Class Vehicles because it possessed exclusive knowledge that was intentionally concealed and withheld and/or Mercedes made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

462.    The Connecticut Class members suffered ascertainable loss and actual damages as a direct and proximate result of Mercedes' concealment, misrepresentations, and/or failure to disclose material information.

463.    Pursuant to CONN. GEN. STAT. ANN. §42-110g, the Connecticut Class members seek an order awarding damages, punitive damages, and any other just and proper relief available under the Connecticut UTPA.

## CONNECTICUT COUNT II

## BREACH OF IMPLIED WARRANTIES
### (CONN. GEN. STAT. ANN. §42A-2-314)

464.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

465.    This Count is brought on behalf of the Connecticut Class.

466.    Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under CONN. GEN. STAT. ANN. §42a-2-104(1), and a "seller" of the Class Vehicles under §42a-2-103(1).

467.    The Class Vehicles are and were at all relevant times "goods" within the meaning of CONN. GEN. STAT. ANN. §42a-2-105(1).

468.    A warranty that the Class Vehicles were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to CONN. GEN. STAT. ANN. §42A-2-314.

469.    The Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose as a result of their inherent defects, as detailed above.    In addition, because any warranty repairs or replacements offered by Mercedes cannot cure the defect in the Class Vehicles, they fail to cure Mercedes' breach of implied warranties.

470.    As a direct and proximate result of Mercedes' breach of its implied warranties, the Connecticut Class members have been damaged in an amount to be determined at trial.

471.     Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

## CONNECTICUT COUNT III

### BREACH OF EXPRESS WARRANTY
### (CONN. GEN. STAT. ANN. §42A-2-313)

472.     Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

473.     This Count is brought on behalf of the Connecticut Class.

474.     Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under CONN. GEN. STAT. ANN. §42a-2-104(1), and a "seller" of the Class Vehicles under §42a-2-103(1).

475.     The Class Vehicles are and were at all relevant times "goods" within the meaning of CONN. GEN. STAT. ANN. §42a-2-105(1).

476.     In connection with the purchase or lease of all Class Vehicles, Mercedes provided the Connecticut Class members with a written warranty covering defects in materials and workmanship of the Class Vehicles for four years, as detailed above. In addition, Mercedes' various oral and written representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles constituted express warranties to the Connecticut Class members.

477.     Mercedes' warranties formed a basis of the bargain that was reached when the Connecticut Class members purchased or leased their Class Vehicles.

478.     Mercedes breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Connecticut Class members with Class Vehicles containing defects in the materials and workmanship with regard to the paint and paint

process used on the Class Vehicles that were never disclosed to the Connecticut Class members; (b) failing to repair or replace the defective Class Vehicles at no cost within the four-year warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Mercedes.

479.    The Connecticut Class members have given Mercedes a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Mercedes can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

480.    Thus, Mercedes' four-year written warranty fails of its essential purpose and the recovery of the Connecticut Class members is not limited to its remedies.

481.    Accordingly, the Connecticut Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Connecticut Class members of the purchase price of all Class Vehicles currently owned, and for such other incidental and consequential damages as allowed.

482.    As a direct and proximate result of Mercedes' breach of its express warranty, the Connecticut Class members have been damaged in an amount to be determined at trial.

483.    Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

I.      **Claims Brought on Behalf of the Delaware Class**

**DELAWARE COUNT I**

**VIOLATIONS OF THE DELAWARE CONSUMER FRAUD ACT
(6 DEL. CODE ANN. §2513, *ET SEQ.*)**

484.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

485.    This Count is brought on behalf of the Delaware Class.

486.    Mercedes and the Delaware Class members are "persons" within the meaning of 6 DEL. CODE ANN. §2511(7).

487.    The Delaware Consumer Fraud Act ("Delaware CFA") makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby." 6 DEL. CODE ANN. §2513(a).

488.    In the course of its business, Mercedes violated the Delaware CFA by knowingly misrepresenting and intentionally concealing material facts regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles, as detailed above. Specifically, in marketing, offering for sale/lease, and selling/leasing the defective Class Vehicles, Mercedes used or employed deception, fraud, false pretense, false promise or misrepresentation, and the concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the advertisement and sale or lease of the Class Vehicles.

489.    Mercedes' scheme and concealment of the true characteristics of the Class Vehicles were material to the Delaware Class members, and Mercedes misrepresented, concealed, or failed to disclose the truth with the intention that the Delaware Class members would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the Delaware Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

490.    The Delaware Class members had no way of discerning that Mercedes' representations were false and misleading, or otherwise learning the facts that Mercedes had concealed or failed to disclose.

491.    Mercedes had an ongoing duty to the Delaware Class members to refrain from unfair and deceptive practices under the Delaware CFA in the course of its business. Specifically, Mercedes owed the Delaware Class members a duty to disclose all the material facts concerning the Class Vehicles because it possessed exclusive knowledge, it intentionally concealed such material facts from the Delaware Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

492.    The Delaware Class members suffered ascertainable loss and actual damages as a direct and proximate result of Mercedes' concealment, misrepresentations, and/or failure to disclose material information.

493.    Pursuant to 6 DEL. CODE ANN. §2525, the Delaware Class members seek an order awarding damages, punitive or treble damages, and any other just and proper relief available under the Delaware CFA.

## DELAWARE COUNT II

## VIOLATIONS OF THE DELAWARE DECEPTIVE
## TRADE PRACTICES ACT
## (6 DEL. CODE ANN. §2531, *ET SEQ.*)

494.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

495.    This Count is brought on behalf of the Delaware Class.

496.    Mercedes and the Delaware Class members are "persons" within the meaning of 6 DEL. CODE ANN. §2531(5).

497.    The Delaware Deceptive Trade Practices Act ("Delaware DTPA") makes unlawful deceptive trade practices in the course of a person's business.

498.    In the course of its business, Mercedes violated the Delaware DTPA by knowingly misrepresenting and intentionally concealing material facts regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles, as detailed above.    Specifically, in marketing, offering for sale/lease, and selling/leasing the defective Class Vehicles, Mercedes engaged in one or more of the following unfair or deceptive acts or practices as defined in 6 DEL. CODE ANN. §2532(a):

      a.    representing that the Class Vehicles have characteristics or benefits that they do not have;

      b.    representing that the Class Vehicles are of a particular standard and quality when they are not;

      c.    advertising the Class Vehicles with the intent not to sell them as advertised; and/or

      d.    engaging in other conduct which created a likelihood of confusion or misunderstanding.

499.    Mercedes' scheme and concealment of the true characteristics of the Class Vehicles were material to the Delaware Class members, and Mercedes misrepresented, concealed, or failed to disclose the truth with the intention that the Delaware Class members would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the Delaware Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

500.    The Delaware Class members had no way of discerning that Mercedes' representations were false and misleading, or otherwise learning the facts that Mercedes had concealed or failed to disclose.

501.    Mercedes had an ongoing duty to the Delaware Class members to refrain from unfair and deceptive practices under the Delaware DTPA in the course of its business. Specifically, Mercedes owed the Delaware Class members a duty to disclose all the material facts concerning the Class Vehicles because it possessed exclusive knowledge, it intentionally concealed such material facts from the Delaware Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

502.    The Delaware Class members suffered ascertainable loss and actual damages as a direct and proximate result of Mercedes' concealment, misrepresentations, and/or failure to disclose material information.

503.    Pursuant to 6 DEL. CODE ANN. §2533, the Delaware Class members seek an order awarding damages, punitive or treble damages, and any other just and proper relief available under the Delaware DTPA.

## DELAWARE COUNT III

## BREACH OF IMPLIED WARRANTIES
## (6 DEL. CODE ANN. §§2-314 AND 2A-212)

504.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

505.    This Count is brought on behalf of the Delaware Class.

506.    Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under 6 DEL. CODE ANN. §§2-104(1) and 2A-103(3), and a "seller" of the Class Vehicles under §2-103(1)(d).

507.    With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under 6 DEL. CODE ANN. §2A-103(1)(p).

508.    The Class Vehicles are and were at all relevant times "goods" within the meaning of 6 DEL. CODE ANN. §§2-105(1) and 2A-103(1)(h).

509.    A warranty that the Class Vehicles were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to 6 DEL. CODE ANN. §§2-314 and 2A-212.

510.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose as a result of their inherent defects, as detailed above.   In addition, because any warranty repairs or replacements offered by Mercedes cannot cure the defect in the Class Vehicles, they fail to cure Mercedes' breach of implied warranties.

511.    As a direct and proximate result of Mercedes' breach of its implied warranties, the Delaware Class members have been damaged in an amount to be determined at trial.

512.    Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

## DELAWARE COUNT IV

## BREACH OF EXPRESS WARRANTY
### (6 DEL. CODE ANN. §§2-313 AND 2A-210)

513.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

514.    This Count is brought on behalf of the Delaware Class.

515.    Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under 6 DEL. CODE ANN. §§2-104(1) and 2A-103(3), and a "seller" of the Class Vehicles under §2-103(1)(d).

516.    With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under 6 DEL. CODE ANN. §2A-103(1)(p).

517.    The Class Vehicles are and were at all relevant times "goods" within the meaning of 6 DEL. CODE ANN. §§2-105(1) and 2A-103(1)(h).

518.    In connection with the purchase or lease of all Class Vehicles, Mercedes provided the Delaware Class members with a written warranty covering defects in materials and workmanship of the Class Vehicles for four years, as detailed above.  In addition, Mercedes' various oral and written representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles constituted express warranties to the Delaware Class members.

519.    Mercedes' warranties formed a basis of the bargain that was reached when the Delaware Class members purchased or leased their Class Vehicles.

520.    Mercedes breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Delaware Class members with Class Vehicles containing defects in the materials and workmanship with regard to the paint and paint

process used on the Class Vehicles that were never disclosed to the Delaware Class members; (b) failing to repair or replace the defective Class Vehicles at no cost within the four-year warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Mercedes.

521.    The Delaware Class members have given Mercedes a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Mercedes can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

522.    Thus, Mercedes' four-year written warranty fails of its essential purpose and the recovery of the Delaware Class members is not limited to its remedies.

523.    Accordingly, the Delaware Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Delaware Class members of the purchase or lease price of all Class Vehicles currently owned and leased, and for such other incidental and consequential damages as allowed.

524.    As a direct and proximate result of Mercedes' breach of its express warranty, the Delaware Class members have been damaged in an amount to be determined at trial.

525.    Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

**J.**     **Claims Brought on Behalf of the District of Columbia Class**

### DISTRICT OF COLUMBIA COUNT I

### VIOLATION OF THE CONSUMER PROTECTION PROCEDURES ACT
### (D.C. CODE §28-3901, *ET SEQ.*)

526.     Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

527.     This Count is brought on behalf of the District of Columbia Class.

528.     Mercedes and the District of Columbia Class members are "persons" within the meaning of D.C. CODE §28-3901(a)(1).   The District of Columbia Class members are "consumers" within the meaning of D.C. CODE §28-3901(1)(2).

529.     Mercedes is engaged in "trade practices" within the meaning of D.C. CODE §28-3901.

530.     The District of Columbia Consumer Protection Procedures Act ("District of Columbia CPPA") makes unlawful unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.  D.C. CODE §28-3901, *et seq.*

531.     In the course of its business, Mercedes violated the District of Columbia CPPA by knowingly misrepresenting and intentionally concealing material facts regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles, as detailed above.   Specifically, in marketing, offering for sale/lease, and selling/leasing the defective Class Vehicles, Mercedes engaged in one or more of the following unfair or deceptive acts or practices as defined in D.C. CODE §28-3901, *et seq.*:

a.     representing that the Class Vehicles have characteristics or benefits that they do not have;

b.      representing that the Class Vehicles are of a particular standard and quality when they are not; and/or

c.      advertising the Class Vehicles with the intent not to sell them as advertised.

532.    Mercedes' scheme and concealment of the true characteristics of the Class Vehicles were material to the District of Columbia Class members, and Mercedes misrepresented, concealed, or failed to disclose the truth with the intention that the District of Columbia Class members would rely on the misrepresentations, concealments, and omissions. Had they known the truth, the District of Columbia Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

533.    The District of Columbia Class members had no way of discerning that Mercedes' representations were false and misleading, or otherwise learning the facts that Mercedes had concealed or failed to disclose.

534.    Mercedes had an ongoing duty to the District of Columbia Class members to refrain from unfair and deceptive practices under the District of Columbia CPPA in the course of its business.  Specifically, Mercedes owed the District of Columbia Class members a duty to disclose all the material facts concerning the Class Vehicles because it possessed exclusive knowledge, it intentionally concealed such material facts from the District of Columbia Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

535.    The District of Columbia Class members suffered ascertainable loss and actual damages as a direct and proximate result of Mercedes' concealment, misrepresentations, and/or failure to disclose material information.

536.    Pursuant to D.C. CODE §28-3901, the District of Columbia Class members seek an order awarding damages, treble and/or punitive damages, and any other just and proper relief available under the District of Columbia CPPA.

## DISTRICT OF COLUMBIA COUNT II

## BREACH OF IMPLIED WARRANTIES
### (D.C. CODE §§28:2-314 AND 28:2A-212)

537.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

538.    This Count is brought on behalf of the District of Columbia Class.

539.    Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under D.C. CODE §§2:2-104(1) and 28:2A-103(a)(20), and a "seller" of the Class Vehicles under §28:2-103(1)(d).

540.    With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under D.C. CODE §28:2A-103(a)(16).

541.    The Class Vehicles are and were at all relevant times "goods" within the meaning of D.C. CODE §§28:2-105(1) and 28:2A-103(a)(8).

542.    A warranty that the Class Vehicles were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to D.C. CODE §§28:2-314 and 28:2A-212.

543.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose as a result of their inherent defects, as detailed above.    In addition, because any warranty repairs or replacements offered by Mercedes cannot cure the defect in the Class Vehicles, they fail to cure Mercedes' breach of implied warranties.

544.    As a direct and proximate result of Mercedes' breach of its implied warranties, the District of Columbia Class members have been damaged in an amount to be determined at trial.

545.    Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

## DISTRICT OF COLUMBIA COUNT III

### BREACH OF EXPRESS WARRANTY
### (D.C. CODE §§28:2-313 AND 28:2A-210)

546.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

547.    This Count is brought on behalf of the District of Columbia Class.

548.    Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under D.C. CODE §§28:2-104(1) and 28:2A-103(a)(20), and a "seller" of the Class Vehicles under §28:2-103(1)(d).

549.    With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under D.C. CODE §28:2A-103(a)(16).

550.    The Class Vehicles are and were at all relevant times "goods" within the meaning of D.C. CODE §§28:2-105(1) and 28:2A-103(a)(8).

551.    In connection with the purchase or lease of all Class Vehicles, Mercedes provided the District of Columbia Class members with a written warranty covering defects in materials and workmanship of the Class Vehicles for four years, as detailed above.  In addition, Mercedes' various oral and written representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles constituted express warranties to the District of Columbia Class members.

552.    Mercedes' warranties formed a basis of the bargain that was reached when the District of Columbia Class members purchased or leased their Class Vehicles.

553.    Mercedes breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the District of Columbia Class members with Class Vehicles containing defects in the materials and workmanship with regard to the paint and paint process used on the Class Vehicles that were never disclosed to the District of Columbia Class members; (b) failing to repair or replace the defective Class Vehicles at no cost within the four-year warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Mercedes.

554.    The District of Columbia Class members have given Mercedes a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Mercedes can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

555.    Thus, Mercedes' four-year written warranty fails of its essential purpose and the recovery of the District of Columbia Class members is not limited to its remedies.

556.    Accordingly, the District of Columbia Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the District of Columbia Class members of the purchase or lease price of all Class Vehicles currently owned and leased, and for such other incidental and consequential damages as allowed.

557.    As a direct and proximate result of Mercedes' breach of its express warranty, the District of Columbia Class members have been damaged in an amount to be determined at trial.

558.    Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

**K.    Claims Brought on Behalf of the Florida Class**

## FLORIDA COUNT I

### VIOLATION OF FLORIDA'S UNFAIR & DECEPTIVE TRADE PRACTICES ACT (FLA. STAT. §501.201, *ET SEQ.*)

559.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

560.    Plaintiffs Jessica Irene Miller, Thomas Hayes, Karina Kloczko, and Alex Acuna (for the purposes of this section, "Plaintiffs") bring this claim on behalf of themselves and the Florida Class.

561.    Plaintiffs and the Florida Class members are "consumers" within the meaning of FLA. STAT. §501.203(7).

562.    Mercedes is engaged in "trade" or "commerce" within the meaning of FLA. STAT. §501.203(8).

563.    The Florida Deceptive and Unfair Trade Practices Act ("Florida DUTPA") makes unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." FLA. STAT. §501.204(1).

564.    In the course of its business, Mercedes violated the Florida DUTPA by knowingly misrepresenting and intentionally concealing material facts regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles, as detailed above. Specifically, in marketing, offering for sale/lease, and selling/leasing the defective Class Vehicles, Mercedes engaged in one or more of the following unfair or deceptive acts or practices prohibited by FLA. STAT. §501.204(1):

a.  representing that the Class Vehicles have characteristics or benefits that they do not have;

b.  representing that the Class Vehicles are of a particular standard and quality when they are not;

c.  advertising the Class Vehicles with the intent not to sell them as advertised;

d.  engaging in other conduct which created a likelihood of confusion or of misunderstanding; and/or

e.  using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the advertisement and sale or lease of the Class Vehicles.

565.  Mercedes' scheme and concealment of the true characteristics of the Class Vehicles were material to Plaintiffs and the Florida Class, and Mercedes misrepresented, concealed, or failed to disclose the truth with the intention that Plaintiffs and the Florida Class would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, Plaintiffs and the Florida Class would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

566.  Plaintiffs and the Florida Class members had no way of discerning that Mercedes' representations were false and misleading, or otherwise learning the facts that Mercedes had concealed or failed to disclose.

567.    Mercedes had an ongoing duty to Plaintiffs and the Florida Class members to refrain from unfair and deceptive practices under the Florida DUTPA in the course of its business.  Specifically, Mercedes owed Plaintiffs and the Florida Class members a duty to disclose all the material facts concerning the Class Vehicles because it possessed exclusive knowledge, it intentionally concealed such material facts from Plaintiffs and the Florida Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

568.    Plaintiffs and the Florida Class members suffered ascertainable loss and actual damages as a direct and proximate result of Mercedes' concealment, misrepresentations, and/or failure to disclose material information.

## FLORIDA COUNT II
## BREACH OF IMPLIED WARRANTIES
### (FLA. STAT. §§672.314 AND 680.212)

569.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

570.    Plaintiffs Jessica Irene Miller, Thomas Hayes, Karina Kloczko, and Alex Acuna (for the purposes of this section, "Plaintiffs") bring this claim on behalf of themselves and the Florida Class.

571.    Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under FLA. STAT. §§672.104(1) and 680.1031(3)(k), and a "seller" of the Class Vehicles under §672.103(1)(d).

572.    With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under FLA. STAT. §680.1031(1)(p).

573.    The Class Vehicles are and were at all relevant times "goods" within the meaning of FLA. STAT. §§672.105(1) and 680.1031(1)(h).

574.    A warranty that the Class Vehicles were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to FLA. STAT. §672.314.

575.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose as a result of their inherent defects, as detailed above.   In addition, because any warranty repairs or replacements offered by Mercedes cannot cure the defect in the Class Vehicles, they fail to cure Mercedes' breach of implied warranties.

576.    As a direct and proximate result of Mercedes' breach of its implied warranties, Plaintiffs and the Florida Class members have been damaged in an amount to be determined at trial.

577.    Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

## FLORIDA COUNT III
## BREACH OF EXPRESS WARRANTY
### (FLA. STAT. §§672.313 AND 680.21)

578.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

579.    Plaintiffs Jessica Irene Miller, Thomas Hayes, Karina Kloczko, and Alex Acuna (for the purposes of this section, "Plaintiffs") bring this claim on behalf of themselves and the Florida Class.

580.    Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under FLA. STAT. §§672.104(1) and 680.1031(3)(k), and a "seller" of the Class Vehicles under §672.103(1)(d).

581.    With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under FLA. STAT. §680.1031(1)(p).

582.    The Class Vehicles are and were at all relevant times "goods" within the meaning of FLA. STAT. §§672.105(1) and 680.1031(1)(h).

583.    In connection with the purchase or lease of all Class Vehicles, Mercedes provided Plaintiffs and the Florida Class members with a written warranty covering defects in materials and workmanship of the Class Vehicles for four years, as detailed above.  In addition, Mercedes' various oral and written representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles constituted express warranties to Plaintiffs and the Florida Class members.

584.    Mercedes' warranties formed a basis of the bargain that was reached when Plaintiffs and the Florida Class members purchased or leased their Class Vehicles.

585.    Mercedes breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing Plaintiffs and the Florida Class members with Class Vehicles containing defects in the materials and workmanship with regard to the paint and paint process used on the Class Vehicles that were never disclosed to Plaintiffs and the Florida Class members; (b) failing to repair or replace the defective Class Vehicles at no cost within the four-year warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Mercedes.

586.    Plaintiffs and the Florida Class members have given Mercedes a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Mercedes can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

587.    Thus, Mercedes' four-year written warranty fails of its essential purpose and the recovery of the Florida Class members is not limited to its remedies.

588.    Accordingly, Plaintiffs and the Florida Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiffs and the Florida Class members of the purchase or lease price of all Class Vehicles currently owned and leased, and for such other incidental and consequential damages as allowed.

589.    As a direct and proximate result of Mercedes' breach of its express warranty, Plaintiffs and the Florida Class members have been damaged in an amount to be determined at trial.

590.    Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

**L.    Claims Brought on Behalf of the Georgia Class**

**GEORGIA COUNT I**
**VIOLATIONS OF GEORGIA'S**
**UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**(GA. CODE ANN. §10-1-370, *ET SEQ*.)**

591.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

592.    This Count is brought on behalf of the Georgia Class.

593.    Mercedes and the Georgia Class members are "persons" within the meaning of the Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA"), GA. CODE ANN. §10-1-371(5).

594.    The Georgia UDTPA prohibits any "deceptive trade practices," which include misrepresenting the "standard, quality, or grade" of goods or services, and engaging "in any

other conduct which similarly creates a likelihood of confusion or of misunderstanding." GA. CODE ANN.§10-1-372(a).

595.    In the course of its business, Mercedes violated the Georgia UDTPA by knowingly misrepresenting and intentionally concealing material facts regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles, as detailed above.    Specifically, in marketing, offering for sale/lease, and selling/leasing the defective Class Vehicles, Mercedes engaged in one or more of the following deceptive trade practices:

      a.    representing that the Class Vehicles have characteristics or benefits that they do not have;

      b.    representing that the Class Vehicles are of a particular standard and quality when they are not;

      c.    advertising the Class Vehicles with the intent not to sell them as advertised; and/or

      d.    engaging in other conduct which created a likelihood of confusion or misunderstanding.

596.    Mercedes' scheme and concealment of the true characteristics of the Class Vehicles were material to the Georgia Class members, and Mercedes misrepresented, concealed, or failed to disclose the truth with the intention that the Georgia Class members would rely on the misrepresentations, concealments, and omissions.    Had they known the truth, the Georgia Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

597.    The Georgia Class members had no way of discerning that Mercedes' representations were false and misleading, or otherwise learning the facts that Mercedes had concealed or failed to disclose.

598.    Mercedes had an ongoing duty to the Georgia Class members to refrain from unfair and deceptive practices under the Georgia UDTPA in the course of its business. Specifically, Mercedes owed the Georgia Class members a duty to disclose all the material facts concerning the Class Vehicles because it possessed exclusive knowledge, it intentionally concealed such material facts from the Georgia Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

599.    The Georgia Class members suffered ascertainable loss and actual damages as a direct and proximate result of Mercedes' concealment, misrepresentations, and/or failure to disclose material information.

600.    Pursuant to GA. CODE ANN. §10-1-373, the Georgia Class members seek any such orders or judgments as may be necessary to restore to the Georgia Class members any money acquired by deceptive trade practices, including restitution and/or restitutionary disgorgement, and any other just and proper relief available under the Georgia UDTPA.

### GEORGIA COUNT II

### BREACH OF IMPLIED WARRANTIES
### (GA. CODE ANN. §§11-2-314 AND 11-2A-212)

601.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

602.    This Count is brought on behalf of the Georgia Class.

603.    Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under GA. CODE ANN. §§11-2-104(1) and 11-2A-103(3), and a "seller" of the Class Vehicles under §11-2-103(1)(d).

604.    With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under GA. CODE ANN. §11-2A-103(1)(p).

605.    The Class Vehicles are and were at all relevant times "goods" within the meaning of GA. CODE ANN. §§11-2-105(1) and 11-2A-103(1)(h).

606.    A warranty that the Class Vehicles were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to GA. CODE ANN. §§11-2-314 and 11-2A-212.

607.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose as a result of their inherent defects, as detailed above.    In addition, because any warranty repairs or replacements offered by Mercedes cannot cure the defect in the Class Vehicles, they fail to cure Mercedes' breach of implied warranties.

608.    As a direct and proximate result of Mercedes' breach of its implied warranties, the Georgia Class members have been damaged in an amount to be determined at trial.

609.    Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

### GEORGIA COUNT III

### BREACH OF EXPRESS WARRANTY
### (GA. CODE ANN. §§11-2-313 AND 11-2A-210)

610.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

611.    This Count is brought on behalf of the Georgia Class.

612.    Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under GA. CODE ANN. §§11-2-104(1) and 11-2A-103(3), and a "seller" of the Class Vehicles under §11-2-103(1)(d).

613.    With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under GA. CODE ANN. §11-2A-103(1)(p).

614.    The Class Vehicles are and were at all relevant times "goods" within the meaning of GA. CODE ANN. §§11-2-105(1) and 11-2A-103(1)(h).

615.    In connection with the purchase or lease of all Class Vehicles, Mercedes provided the Georgia Class members with a written warranty covering defects in materials and workmanship of the Class Vehicles for four years, as detailed above.  In addition, Mercedes' various oral and written representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles constituted express warranties to the Georgia Class members.

616.    Mercedes' warranties formed a basis of the bargain that was reached when the Georgia Class members purchased or leased their Class Vehicles.

617.    Mercedes breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Georgia Class members with Class Vehicles containing defects in the materials and workmanship with regard to the paint and paint process used on the Class Vehicles that were never disclosed to the Georgia Class members; (b) failing to repair or replace the defective Class Vehicles at no cost within the four-year warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Mercedes.

618.    The Georgia Class members have given Mercedes a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Mercedes can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

619.    Thus, Mercedes' four-year written warranty fails of its essential purpose and the recovery of the Georgia Class members is not limited to its remedies.

620.    Accordingly, the Georgia Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Georgia Class members of the purchase or lease price of all Class Vehicles currently owned, and for such other incidental and consequential damages as allowed.

621.    As a direct and proximate result of Mercedes' breach of its express warranty, the Georgia Class members have been damaged in an amount to be determined at trial.

622.    Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

**M.    Claims Brought on Behalf of the Hawaii Class**

**HAWAII COUNT I**

**UNFAIR AND DECEPTIVE ACTS IN VIOLATION OF HAWAII LAW**
**(HAW. REV. STAT. §480, *ET SEQ*.)**

623.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

624.    This Count is brought on behalf of the Hawaii Class.

625.    Mercedes is a "person" within the meaning of HAW. REV. STAT. §480-1.

626.    The Hawaii Class members are "consumers" within the meaning of HAW. REV. STAT. §480-1.

627.    Mercedes' actions as set forth above occurred in the conduct of trade or commerce.

628.    HAWAII REV. STAT. §480-2(a) prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

629.    In the course of its business, Mercedes concealed the Paint Defect in Class Vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.    Accordingly, Mercedes engaged in unfair methods of competition and unfair or deceptive acts or practices, including representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

630.    Mercedes' unfair methods of competition and unfair or deceptive acts or practices were likely to and did, in fact, deceive reasonable consumers, including the Hawaii Class members, about the quality of the Class Vehicles and Mercedes brand, and the true value of the Class Vehicles.

631.    The Hawaii Class members reasonably relied upon Mercedes' false misrepresentations and unfair or deceptive acts or practices.    They had no way of knowing that

Mercedes' representations were false and gravely misleading. As alleged herein, Mercedes engaged in extremely sophisticated methods of deception. The Hawaii Class members did not, and could not, unravel Mercedes' deception on their own.

632. Mercedes intentionally and knowingly failed to disclose and misrepresented material facts regarding the Class Vehicles with intent to mislead the Hawaii Class members.

633. Mercedes knew or should have known that its conduct violated HAW. REV. STAT. §480, *et seq.*

634. Mercedes owed the Hawaii Class members a duty to disclose the defective condition of the Class Vehicles because Mercedes:

    a.    possessed exclusive knowledge that the paint and paint process used on the Class Vehicles were defective;

    b.    intentionally concealed the foregoing from the Hawaii Class members; and/or

    c.    made incomplete representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles, while purposefully withholding material facts from the Hawaii Class that contradicted these representations.

635. Mercedes' scheme and concealment of the true characteristics of the Class Vehicles were material to the Hawaii Class members.

636. The Hawaii Class members suffered ascertainable loss and actual damages as a direct and proximate result of Mercedes' concealment, misrepresentations, and/or failure to disclose material information. Had they known the truth, the Hawaii Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them. The

Hawaii Class members also suffered diminished value of their vehicles, as well as lost or diminished use.

637.    Mercedes had an ongoing duty to all of its customers to refrain from unfair methods of competition and unfair or deceptive acts or practices under the Hawaii law in the conduct of its business.  All owners of the Class Vehicles suffered ascertainable loss in the form of diminished value of their vehicles as a result of Mercedes' unfair methods of competition and unfair or deceptive acts or practices made in the course of its business.

638.    As a direct and proximate result of Mercedes' violations of HAW. REV. STAT. §480, *et seq.*, the Hawaii Class members have suffered injury-in-fact and/or actual damage.

639.    Pursuant to HAW. REV. STAT. §480-13, the Hawaii Class members seek monetary relief against Mercedes measured as the greater of: (a) $1,000; and (b) threefold actual damages in an amount to be determined at trial.

640.    Under HAW. REV. STAT. §480-13.5, the Hawaii Class members seek an additional award against Mercedes of up to $10,000 for each violation directed at a Hawaiian elder. Mercedes knew or should have known that its conduct was directed to one or more Hawaii Class members who are elders.  Mercedes' conduct caused one or more of these elders to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the elder.  One or more Hawaii Class members who are elders are substantially more vulnerable to Mercedes' conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial physical, emotional, or economic damage resulting from Mercedes' conduct.

## HAWAII COUNT II

## BREACH OF IMPLIED WARRANTIES
### (HAW. REV. STAT. §§490:2-314 AND 490:2A-212)

641.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

642.    This Count is brought on behalf of the Hawaii Class.

643.    Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under HAW. REV. STAT. §§490:2-104(1) and 490:2A-103(b), and a "seller" of the Class Vehicles under §490:2-103(1)(d).

644.    With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under HAW. REV. STAT. §490:2A-103(a)(16).

645.    The Class Vehicles are and were at all relevant times "goods" within the meaning of HAW. REV. STAT. §§490:2-105(1) and 490:2A-103(a)(8).

646.    A warranty that the Class Vehicles were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to HAW. REV. STAT. §§490:2-314 and 490:2A-212.

647.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Mercedes cannot cure the defect in the Class Vehicles, they fail to cure Mercedes' breach of implied warranties.

648.    As a direct and proximate result of Mercedes' breach of its implied warranties, the Hawaii Class members have been damaged in an amount to be determined at trial.

649.    Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

## HAWAII COUNT III

### BREACH OF EXPRESS WARRANTY
### (HAW. REV. STAT. §§490:2-313 AND 490:2A-210)

650.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

651.    This Count is brought on behalf of the Hawaii Class.

652.    Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under HAW. REV. STAT. §§490:2-104(1) and 490:2A-103(b), and a "seller" of the Class Vehicles under §490:2-103(1)(d).

653.    With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under HAW. REV. STAT. §490:2A-103(a)(16).

654.    The Class Vehicles are and were at all relevant times "goods" within the meaning of HAW. REV. STAT. §§490:2-105(1) and 490:2A-103(a)(8).

655.    In connection with the purchase or lease of all Class Vehicles, Mercedes provided the Hawaii Class members with a written warranty covering defects in materials and workmanship of the Class Vehicles for four years, as detailed above.  In addition, Mercedes' various oral and written representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles constituted express warranties to the Hawaii Class members.

656.    Mercedes' warranties formed a basis of the bargain that was reached when the Hawaii Class members purchased or leased their Class Vehicles.

657.    Mercedes breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Hawaii Class members with Class Vehicles containing defects in the materials and workmanship with regard to the paint and paint process used on the Class Vehicles that were never disclosed to the Hawaii Class members; (b) failing to repair or replace the defective Class Vehicles at no cost within the four-year warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Mercedes.

658.    The Hawaii Class members have given Mercedes a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Mercedes can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

659.    Thus, Mercedes' four-year written warranty fails of its essential purpose and the recovery of the Hawaii Class members is not limited to its remedies.

660.    Accordingly, the Hawaii Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Hawaii Class members of the purchase or lease price of all Class Vehicles currently owned and leased, and for such other incidental and consequential damages as allowed.

661.    As a direct and proximate result of Mercedes' breach of its express warranty, the Hawaii Class members have been damaged in an amount to be determined at trial.

662.    Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

**N.      Claims Brought on Behalf of the Idaho Class**

**IDAHO COUNT I**

**VIOLATIONS OF THE IDAHO CONSUMER PROTECTION ACT
(IDAHO CODE §48-601, *ET SEQ.*)**

663.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

664.    This Count is brought on behalf of the Idaho Class.

665.    Mercedes and the Idaho Class members are "persons" within the meaning of IDAHO CODE §48-602(1).

666.    Mercedes is engaged in "trade" or "commerce" within the meaning of IDAHO CODE §48-602(2).

667.    The Class Vehicles are "goods" within the meaning of IDAHO CODE §48-602(6).

668.    The Idaho Consumer Protection Act ("Idaho CPA") makes unlawful misleading, false, or deceptive acts.

669.    In the course of its business, Mercedes violated the Idaho CPA by knowingly misrepresenting and intentionally concealing material facts regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles, as detailed above.  Specifically, in marketing, offering for sale/lease, and selling/leasing the defective Class Vehicles, Mercedes engaged in one or more of the following unfair or deceptive acts or practices proscribed by IDAHO CODE §48-603:

        a.      representing that the Class Vehicles have characteristics or benefits that they do not have;

        b.      representing that the Class Vehicles are of a particular standard and quality when they are not;

c.      advertising the Class Vehicles with the intent not to sell them as advertised; and/or

d.      engaging in other conduct which created a likelihood of confusion or misunderstanding.

670.    Mercedes' scheme and concealment of the true characteristics of the Class Vehicles were material to the Idaho Class members, and Mercedes misrepresented, concealed, or failed to disclose the truth with the intention that the Idaho Class members would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the Idaho Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

671.    The Idaho Class members had no way of discerning that Mercedes' representations were false and misleading, or otherwise learning the facts that Mercedes had concealed or failed to disclose.

672.    Mercedes had an ongoing duty to the Idaho Class members to refrain from unfair and deceptive practices under the Idaho CPA in the course of its business.  Specifically, Mercedes owed the Idaho Class members a duty to disclose all the material facts concerning the Class Vehicles because it possessed exclusive knowledge, it intentionally concealed such material facts from the Idaho Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

673.    The Idaho Class members suffered ascertainable loss and actual damages as a direct and proximate result of Mercedes' concealment, misrepresentations, and/or failure to disclose material information.

674.    Pursuant to IDAHO CODE §48-608, the Idaho Class members seek an order awarding damages, punitive damages, and any other just and proper relief available under the Idaho CPA.

## IDAHO COUNT II

### BREACH OF IMPLIED WARRANTIES
### (IDAHO CODE §§28-2-314 AND 28-12-212)

675.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

676.    This Count is brought on behalf of the Idaho Class.

677.    Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under IDAHO CODE §§28-2-104(1) and 28-12-103(3), and a "seller" of the Class Vehicles under §28-2-103(1)(d).

678.    With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under IDAHO CODE §28-12-103(1)(p).

679.    The Class Vehicles are and were at all relevant times "goods" within the meaning of IDAHO CODE §§28-2-105(1) and 28-12-103(1)(h).

680.    A warranty that the Class Vehicles were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to IDAHO CODE §28-2-314.

681.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose as a result of their inherent defects, as detailed above.    In addition, because any warranty repairs or replacements offered by Mercedes cannot cure the defect in the Class Vehicles, they fail to cure Mercedes' breach of implied warranties.

682.    As a direct and proximate result of Mercedes' breach of its implied warranties, the Idaho Class members have been damaged in an amount to be determined at trial.

683.    Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

## IDAHO COUNT III

## BREACH OF EXPRESS WARRANTY
## (IDAHO CODE §§28-2-313 AND 28-12-210)

684.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

685.    This Count is brought on behalf of the Idaho Class.

686.    Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under IDAHO CODE §§28-2-104(1) and 28-12-103(3), and a "seller" of the Class Vehicles under §28-2-103(1)(d).

687.    With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under IDAHO CODE §28-12-103(1)(p).

688.    The Class Vehicles are and were at all relevant times "goods" within the meaning of IDAHO CODE §§28-2-105(1) and 28-12-103(1)(h).

689.    In connection with the purchase or lease of all Class Vehicles, Mercedes provided the Idaho Class members with a written warranty covering defects in materials and workmanship of the Class Vehicles for four years, as detailed above.  In addition, Mercedes' various oral and written representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles constituted express warranties to the Idaho Class members.

690.    Mercedes' warranties formed a basis of the bargain that was reached when the Idaho Class members purchased or leased their Class Vehicles.

691.    Mercedes breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Idaho Class members with Class Vehicles containing defects in the materials and workmanship with regard to the paint and paint process used on the Class Vehicles that were never disclosed to the Idaho Class members; (b) failing to repair or replace the defective Class Vehicles at no cost within the four-year warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Mercedes.

692.    The Idaho Class members have given Mercedes a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Mercedes can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

693.    Thus, Mercedes' four-year written warranty fails of its essential purpose and the recovery of the Idaho Class members is not limited to its remedies.

694.    Accordingly, the Idaho Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Idaho Class members of the purchase or lease price of all Class Vehicles currently owned and leased, and for such other incidental and consequential damages as allowed.

695.    As a direct and proximate result of Mercedes' breach of its express warranty, the Idaho Class members have been damaged in an amount to be determined at trial.

696.    Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

**O.    Claims Brought on Behalf of the Illinois Class**

### ILLINOIS COUNT I

### VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (815 ILL. COMP. STAT. 505/1, *ET SEQ*., AND 510/2)

697.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

698.    This Count is brought on behalf of the Illinois Class.

699.    Mercedes and the Illinois Class members are "persons" within the meaning 815 ILL. COMP. STAT. 505/1(c) and 510/1(5).  The Illinois Class members are "consumers" within the meaning of 815 ILL. COMP. STAT. 505/1(e).

700.    The Illinois Consumer Fraud and Deceptive Practices Act ("Illinois CFA") makes unlawful "unfair or deceptive acts or practices, including, but not limited to, the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact … in the conduct of trade or commerce … whether any person has in fact been misled, deceived or damaged thereby."  815 ILL. COMP. STAT. 505/2.  The Illinois CFA further makes unlawful deceptive trade practices undertaken in the course of business.  815 ILL. COMP. STAT. 510/2.

701.    In the course of its business, Mercedes violated the Illinois CFA by knowingly misrepresenting and intentionally concealing material facts regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles, as detailed above.  Specifically, in marketing, offering for sale/lease, and selling/leasing the

defective Class Vehicles, Mercedes engaged in one or more of the following unfair or deceptive acts or practices prohibited by 815 ILL. COMP. STAT. 505/2 and 510/2:

    a.    representing that the Class Vehicles have characteristics or benefits that they do not have;

    b.    representing that the Class Vehicles are of a particular standard and quality when they are not;

    c.    advertising the Class Vehicles with the intent not to sell them as advertised;

    d.    engaging in other conduct which created a likelihood of confusion or of misunderstanding; and/or

    e.    using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the advertisement and sale or lease of the Class Vehicles, whether or not any person has in fact been misled, deceived, or damaged thereby.

702.　Mercedes' scheme and concealment of the true characteristics of the Class Vehicles were material to the Illinois Class members, and Mercedes misrepresented, concealed, or failed to disclose the truth with the intention that the Illinois Class members would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the Illinois Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

703.    The Illinois Class members had no way of discerning that Mercedes' representations were false and misleading, or otherwise learning the facts that Mercedes had concealed or failed to disclose.

704.    Mercedes had an ongoing duty to the Illinois Class members to refrain from unfair and deceptive practices under the Illinois CFA in the course of its business.  Specifically, Mercedes owed the Illinois Class members a duty to disclose all the material facts concerning the Class Vehicles because it possessed exclusive knowledge, it intentionally concealed such material facts from the Illinois Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

705.    The Illinois Class members suffered ascertainable loss and actual damages as a direct and proximate result of Mercedes' concealment, misrepresentations, and/or failure to disclose material information.

706.    Pursuant to 815 ILL. COMP. STAT. 505/10a(a) and 510/3, the Illinois Class members seek an order awarding damages, punitive damages, and any other just and proper relief available under the Illinois CFA.

## ILLINOIS COUNT II

## BREACH OF IMPLIED WARRANTIES
### (810 ILL. COMP. STAT. §§5/2-314 AND 5/2A-212)

707.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

708.    This Count is brought on behalf of the Illinois Class.

709.    Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under 810 ILL. COMP. STAT. §§5/2-104(1) and 5/2A-103(3), and a "seller" of the Class Vehicles under §5/2-103(1)(d).

710.    With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under 810 ILL. COMP. STAT. §5/2A-103(1)(p).

711.    The Class Vehicles are and were at all relevant times "goods" within the meaning of 810 ILL. COMP. STAT. §§5/2-105(1) and 5/2A-103(1)(h).

712.    A warranty that the Class Vehicles were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to 810 ILL. COMP. STAT. §5/2-314.

713.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose as a result of their inherent defects, as detailed above.   In addition, because any warranty repairs or replacements offered by Mercedes cannot cure the defect in the Class Vehicles, they fail to cure Mercedes' breach of implied warranties.

714.    As a direct and proximate result of Mercedes' breach of its implied warranties, the Illinois Class members have been damaged in an amount to be determined at trial.

715.    Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

## ILLINOIS COUNT III

### BREACH OF EXPRESS WARRANTY
### (810 ILL. COMP. STAT. §§5/2-313 AND 5/2A-210)

716.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

717.    This Count is brought on behalf of the Illinois Class.

718.    Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under 810 ILL. COMP. STAT. §§5/2-104(1) and 5/2A-103(3), and a "seller" of the Class Vehicles under §5/2-103(1)(d).

719.    With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under 810 ILL. COMP. STAT. §5/2A-103(1)(p).

720.    The Class Vehicles are and were at all relevant times "goods" within the meaning of 810 ILL. COMP. STAT. §§5/2-105(1) and 5/2A-103(1)(h).

721.    In connection with the purchase or lease of all Class Vehicles, Mercedes provided the Illinois Class members with a written warranty covering defects in materials and workmanship of the Class Vehicles for four years, as detailed above.  In addition, Mercedes' various oral and written representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles constituted express warranties to the Illinois Class members.

722.    Mercedes' warranties formed a basis of the bargain that was reached when the Illinois Class members purchased or leased their Class Vehicles.

723.    Mercedes breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Illinois Class members with Class Vehicles containing defects in the materials and workmanship with regard to the paint and paint process used on the Class Vehicles that were never disclosed to the Illinois Class members; (b) failing to repair or replace the defective Class Vehicles at no cost within the four-year warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Mercedes.

724.    The Illinois Class members have given Mercedes a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by

Mercedes can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

725.    Thus, Mercedes' four-year written warranty fails of its essential purpose and the recovery of the Illinois Class members is not limited to its remedies.

726.    Accordingly, the Illinois Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Illinois Class members of the purchase or lease price of all Class Vehicles currently owned and leased, and for such other incidental and consequential damages as allowed.

727.    As a direct and proximate result of Mercedes' breach of its express warranty, the Illinois Class members have been damaged in an amount to be determined at trial.

728.    Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

**P.    Claims Brought on Behalf of the Indiana Class**

**INDIANA COUNT I**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(IND. CODE §§26-1-2-314 AND 26-1-2.1-212)**

729.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

730.    This Count is brought on behalf of the Indiana Class.

731.    Mercedes is and was at all relevant times a "merchant" with respect to motor vehicle sales under IND. CODE §§26-1-2.1-103(3) and 26-1-2-104(1), and a "seller" of motor vehicles under §26-1-2-103(1)(d).

732.    With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under IND. CODE §26-1-2.1-103(1)(p).

733.    The Class Vehicles are and were at all relevant times "goods" within the meaning of IND. CODE §§26-1-2.1-103(1)(h) and 26-1-2-105(1).

734.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to IND. CODE §§26-1-2.1-212 and 26-1-2-314.

735.    As a direct and proximate result of Mercedes' breach of the implied warranty of merchantability, the Indiana Class members have been damaged in an amount to be proven at trial.

736.    Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

## INDIANA COUNT II

## BREACH OF EXPRESS WARRANTY
### (IND. CODE §§26-1-2-313 AND 26-1-2.1-210)

737.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

738.    This Count is brought on behalf of the Indiana Class.

739.    Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under IND. CODE §§26-1-2.1-103(3) and 26-1-2-104(1), and a "seller" of the Class Vehicles under §26-1-2-103(1)(d).

740.    With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under IND. CODE §26-1-2.1-103(1)(p).

741.    The Class Vehicles are and were at all relevant times "goods" within the meaning of IND. CODE §§26-1-2.1-103(1)(h) and 26-1-2-105(1).

742.    In connection with the purchase or lease of all Class Vehicles, Mercedes provided the Indiana Class members with a written warranty covering defects in materials and workmanship of the Class Vehicles for four years, as detailed above.  In addition, Mercedes' various oral and written representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles constituted express warranties to the Indiana Class members.

743.    Mercedes' warranties formed a basis of the bargain that was reached when the Indiana Class members purchased or leased their Class Vehicles.

744.    Mercedes breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Indiana Class members with Class Vehicles containing defects in the materials and workmanship with regard to the paint and paint process used on the Class Vehicles that were never disclosed to the Indiana Class members; (b) failing to repair or replace the defective Class Vehicles at no cost within the four-year warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Mercedes.

745.    The Indiana Class members have given Mercedes a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Mercedes can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

746.    Thus, Mercedes' four-year written warranty fails of its essential purpose and the recovery of the Indiana Class members is not limited to its remedies.

747.    Accordingly, the Indiana Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Indiana Class members of the purchase or lease price of all Class Vehicles currently owned and leased, and for such other incidental and consequential damages as allowed.

748.    As a direct and proximate result of Mercedes' breach of its express warranty, the Indiana Class members have been damaged in an amount to be determined at trial.

749.    Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

**Q.    Claims Brought on Behalf of the Iowa Class**

### IOWA COUNT I

### VIOLATIONS OF THE PRIVATE RIGHT OF ACTION FOR CONSUMER FRAUDS ACT (IOWA CODE §714H.1, *ET SEQ.*)

750.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

751.    This Count is brought on behalf of the Iowa Class.

752.    Mercedes is a "person" within the meaning of IOWA CODE §714H.2(7).

753.    The Iowa Class members are "consumers" within the meaning of IOWA CODE §714H.2(3).

754.    Mercedes' actions as set forth above occurred in the conduct of trade or commerce.

755.    The Iowa Private Right of Action for Consumer Frauds Act ("Iowa CFA") prohibits any "practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair

practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise." IOWA CODE §714H.3.

756.    In the course of its business, Mercedes concealed the Paint Defect in Class Vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.   Accordingly, Mercedes engaged in unfair or deceptive acts or practices, including representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

757.    Mercedes' unfair or deceptive acts or practices were likely to, and did, in fact, deceive reasonable consumers, including the Iowa Class members, about the quality of the Class Vehicles and Mercedes brand, and the true value of the Class Vehicles.

758.    The Iowa Class members reasonably relied upon Mercedes' false misrepresentations and unfair or deceptive acts or practices.   They had no way of knowing that Mercedes' representations were false and gravely misleading.   As alleged herein, Mercedes engaged in extremely sophisticated methods of deception.   The Iowa Class members did not, and could not, unravel Mercedes' deception on their own.

759.    Mercedes intentionally and knowingly failed to disclose and misrepresented material facts regarding the Class Vehicles with intent to mislead the Iowa Class.

760.    Mercedes knew or should have known that its conduct violated the Iowa CFA.

761.    Mercedes owed the Iowa Class members a duty to disclose the defective condition of the Class Vehicles because Mercedes:

      a.    possessed exclusive knowledge that the paint and paint process used on the Class Vehicles were defective;

      b.    intentionally concealed the foregoing from the Iowa Class members; and/or

      c.    made incomplete representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles, while purposefully withholding material facts from the Iowa Class that contradicted these representations.

762.    Mercedes' scheme and concealment of the true characteristics of the Class Vehicles were material to the Iowa Class members.

763.    The Iowa Class members suffered ascertainable loss and actual damages as a direct and proximate result of Mercedes' concealment, misrepresentations, and/or failure to disclose material information.  Had they known the truth, the Iowa Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.  The Iowa Class also suffered diminished value of their vehicles, as well as lost or diminished use. These injuries are the direct and natural consequence of Mercedes' misrepresentations and omissions.

764.    Mercedes had an ongoing duty to all of its customers to refrain from unfair or deceptive acts or practices under the Iowa CFA.  All owners of the Class Vehicles suffered ascertainable loss in the form of diminished value of their vehicles as a result of Mercedes' unfair or deceptive acts or practices made in the course of its business.

765.    As a direct and proximate result of Mercedes' violations of the Iowa CFA, the Iowa Class members have suffered injury-in-fact and/or actual damage.

766.    Pursuant to Iowa Code §714H.5, the Iowa Class members seek an order enjoining Mercedes' unfair and/or deceptive acts or practices, actual damages, court costs and attorneys' fees, and any other just and proper relief available under the Iowa CFA.  Because Mercedes' conduct was committed willfully, the Iowa Class members also seek treble damages as provided in Iowa Code §714H.5(4).

## IOWA COUNT II

### BREACH OF IMPLIED WARRANTIES
### (IOWA CODE §§554.2314 AND 554.13212)

767.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

768.    This Count is brought on behalf of the Iowa Class.

769.    Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under Iowa Code §§554.2104(1) and 554.13103(3), and a "seller" of the Class Vehicles under §554.2103(1)(d).

770.    With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under Iowa Code §554.13103(1)(p).

771.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Iowa Code §§554.2105(1) and 554.13103(1)(h).

772.    A warranty that the Class Vehicles were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to IOWA CODE §§554.2314 and 554.13212.

773.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Mercedes cannot cure the defect in the Class Vehicles, they fail to cure Mercedes' breach of implied warranties.

774.    As a direct and proximate result of Mercedes' breach of its implied warranties, the Iowa Class members have been damaged in an amount to be determined at trial.

775.    Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

## IOWA COUNT III

### BREACH OF EXPRESS WARRANTY
### (IOWA CODE §§554.2313 AND 554.13210)

776.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

777.    This Count is brought on behalf of the Iowa Class.

778.    Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under IOWA CODE §§554.2104(1) and 554.13103(3), and a "seller" of the Class Vehicles under §554.2103(1)(d).

779.    With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under IOWA CODE §554.13103(1)(p).

780.    The Class Vehicles are and were at all relevant times "goods" within the meaning of IOWA CODE §§554.2105(1) and 554.13103(1)(h).

781.   In connection with the purchase or lease of all Class Vehicles, Mercedes provided the Iowa Class members with a written warranty covering defects in materials and workmanship of the Class Vehicles for four years, as detailed above.  In addition, Mercedes' various oral and written representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles constituted express warranties to the Iowa Class members.

782.   Mercedes' warranties formed a basis of the bargain that was reached when the Iowa Class members purchased or leased their Class Vehicles.

783.   Mercedes breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Iowa Class members with Class Vehicles containing defects in the materials and workmanship with regard to the paint and paint process used on the Class Vehicles that were never disclosed to the Iowa Class members; (b) failing to repair or replace the defective Class Vehicles at no cost within the four-year warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Mercedes.

784.   The Iowa Class members have given Mercedes a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Mercedes can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

785.   Thus, Mercedes' four-year written warranty fails of its essential purpose and the recovery of the Iowa Class members is not limited to its remedies.

786.    Accordingly, the Iowa Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Iowa Class members of the purchase or lease price of all Class Vehicles currently owned and leased, and for such other incidental and consequential damages as allowed.

787.    As a direct and proximate result of Mercedes' breach of its express warranty, the Iowa Class members have been damaged in an amount to be determined at trial.

788.    Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

**R.    Claims Brought on Behalf of the Kansas Class**

**KANSAS COUNT I**

**VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT
(KAN. STAT. ANN. §50-623, *ET SEQ.*)**

789.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

790.    Plaintiff Brian Madsen (for the purposes of this section, "Plaintiff") brings this claim on behalf of himself and the Kansas Class.

791.    Plaintiff and the Kansas Class members are "consumers" within the meaning of KAN. STAT. ANN. §50-624(b).

792.    Mercedes is a "supplier" under the Kansas Consumer Protection Act ("Kansas CPA"), KAN. STAT. ANN. §50-624(l).

793.    The sale or lease of the Class Vehicles to Plaintiff and the Kansas Class members was a "consumer transaction" within the meaning of KAN. STAT. ANN. §50-624(c).

794.    The Kansas CPA states "[n]o supplier shall engage in any deceptive act or practice in connection with a consumer transaction," KAN. STAT. ANN. §50-626(a), and that

deceptive acts or practices include, but are not limited to: (1) knowingly making representations or with reason to know that "(A) Property or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have"; and "(D) property or services are of particular standard, quality, grade, style or model, if they are of another which differs materially from the representation"; "(2) the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact"; and "(3) the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact."  The Kansas CPA also provides that "[n]o supplier shall engage in any unconscionable act or practice in connection with a consumer transaction." KAN. STAT. ANN. §50-627(a).

795.    In the course of Mercedes' business, Mercedes concealed the Paint Defect in Class Vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  Accordingly, Mercedes engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

796.    Mercedes knew or should have known of the Paint Defect inherent in the Class Vehicles.

797.    Mercedes had a duty to disclose the existence of the Paint Defect in the Class Vehicles.  By failing to disclose and by actively concealing the Paint Defect in Class Vehicles, by marketing its vehicles as durable and being of high quality, and by presenting itself as a reputable manufacturer that valued quality and stood behind its vehicles after they were sold, Mercedes engaged in deceptive business practices in violation of the Kansas CPA.

798.    Mercedes' unfair or deceptive acts or practices were likely to, and did, in fact, deceive reasonable consumers, including Plaintiff and the Kansas Class members, about the quality of the Class Vehicles and Mercedes brand, and the true value of the Class Vehicles.

799.    Plaintiff and the Kansas Class members reasonably relied upon Mercedes' false misrepresentations and unfair or deceptive acts or practices.  They had no way of knowing that Mercedes' representations were false and gravely misleading.  As alleged herein, Mercedes engaged in extremely sophisticated methods of deception.  Plaintiff and the Kansas Class members did not, and could not, unravel Mercedes' deception on their own.

800.    Mercedes intentionally and knowingly failed to disclose and misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiff and the Kansas Class members.

801.    Mercedes knew or should have known that its conduct violated the Kansas CPA.

802.    Mercedes owed Plaintiff and the Kansas Class members a duty to disclose the defective condition of the Class Vehicles because Mercedes:

   a.    possessed exclusive knowledge that the paint and paint process used on the Class Vehicles were defective;

   b.    intentionally concealed the foregoing from Plaintiff and the Kansas Class; and

c.      made incomplete representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles, while purposefully withholding material facts from Plaintiff and the Kansas Class members that contradicted these representations.

803.   Mercedes' concealment of the Paint Defect in Class Vehicles was material to Plaintiff and the Kansas Class members.  A vehicle made by a reputable manufacturer of quality vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of inferior vehicles that conceals defects rather than promptly remedies them.

804.   Plaintiff and the Kansas Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased these Class Vehicles and/or would have paid less, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and the Kansas Class members' actions were justified.  Mercedes was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or the Kansas Class members.

805.   Mercedes' actions as set forth above occurred in the conduct of trade or commerce.

806.   Mercedes' unfair or deceptive acts or practices were likely to, and did, in fact, deceive reasonable consumers.

807.   Mercedes still has not made full and adequate disclosures, and continues to defraud Plaintiff and the Kansas Class members by concealing material information regarding the Paint Defect.

808.    As a direct and proximate result of Mercedes' violations of the Kansas CPA, Plaintiff and the Kansas Class have suffered injury-in-fact and/or actual damage.

809.    Plaintiff and the Kansas Class members suffered ascertainable loss caused by Mercedes' misrepresentations and its failure to disclose material information.  Had they been aware of the Paint Defect in the Class Vehicles, Plaintiff and the Kansas Class members either would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiff and the Kansas Class did not receive the benefit of their bargain as a result of Mercedes' misconduct.

810.    The repairs offered and instituted by Mercedes are not adequate.

811.    Pursuant to KAN. STAT. ANN. §50-634, Plaintiff and the Kansas Class members seek monetary relief against Mercedes measured as the greater of: (a) actual damages in an amount to be determined at trial; and (b) statutory damages in the amount of $10,000 for each Plaintiff and Kansas Class member, in addition to treble damages.

812.    Plaintiff and the Kansas Class members also seek declaratory relief, punitive damages, an order enjoining Mercedes' unfair, unlawful, and/or deceptive practices, and reasonable attorneys' fees and costs, as well as any other just and proper relief available under KAN. STAT. ANN. §50-623, *et seq*.

### KANSAS COUNT II

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (KAN. STAT. ANN. §§84-2-314 AND 84-2A-212)

813.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

814.    Plaintiff Brian Madsen (for the purposes of this section, "Plaintiff") brings this claim on behalf of himself and the Kansas Class.

815.    Mercedes is and was at all relevant times a "merchant" with respect to motor vehicle sales under KAN. STAT. ANN. §§84-2-104(1) and 84-2A-103(3), and a "seller" of motor vehicles under §84-2-103(1)(d).

816.    With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under KAN. STAT. ANN. §84-2A-103(1)(p).

817.    The Class Vehicles are and were at all relevant times "goods" within the meaning of KAN. STAT. ANN. §§84-2-105(1) and 84-2A-103(1)(h).

818.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to KAN. STAT. ANN. §§84-2-314 and 84-2A-212.

819.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Mercedes cannot cure the defect in the Class Vehicles, they fail to cure Mercedes' breach of implied warranties.

820.    As a direct and proximate result of Mercedes' breach of the implied warranty of merchantability, Plaintiff and the Kansas Class members have been damaged in an amount to be proven at trial.

821.    Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

## KANSAS COUNT III

## BREACH OF EXPRESS WARRANTY
### (KAN. STAT. ANN. §§84-2-313 AND 84-2A-210)

822.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

823.    Plaintiff Brian Madsen (for the purposes of this section, "Plaintiff") brings this claim on behalf of himself and the Kansas Class.

824.    Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under KAN. STAT. ANN. §§84-2-104(1) and 84-2A-103(3), and a "seller" of the Class Vehicles under §84-2-103(1)(d).

825.    With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under KAN. STAT. ANN. §84-2A-103(1)(p).

826.    The Class Vehicles are and were at all relevant times "goods" within the meaning of KAN. STAT. ANN. §§84-2-105(1) and 84-2A-103(1)(h).

827.    In connection with the purchase or lease of all Class Vehicles, Mercedes provided Plaintiff and the Kansas Class members with a written warranty covering defects in materials and workmanship of the Class Vehicles for four years, as detailed above.  In addition, Mercedes' various oral and written representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles constituted express warranties to Plaintiff and the Kansas Class.

828.    Mercedes' warranties formed a basis of the bargain that was reached when the Kansas Class members purchased or leased their Class Vehicles.

829.    Mercedes breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing Plaintiff and the Kansas Class members with

Class Vehicles containing defects in the materials and workmanship with regard to the paint and paint process used on the Class Vehicles that were never disclosed to Plaintiff and the Kansas Class members; (b) failing to repair or replace the defective Class Vehicles at no cost within the four-year warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Mercedes.

830.    Plaintiff and the Kansas Class members have given Mercedes a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Mercedes can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

831.    Thus, Mercedes' four-year written warranty fails of its essential purpose and the recovery of Plaintiff and the Kansas Class members is not limited to their remedies.

832.    Accordingly, Plaintiff and the Kansas Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and the Kansas Class members of the purchase or lease price of all Class Vehicles currently owned and leased, and for such other incidental and consequential damages as allowed.

833.    As a direct and proximate result of Mercedes' breach of its express warranty, Plaintiff and the Kansas Class members have been damaged in an amount to be determined at trial.

834.    Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

S.    **Claims Brought on Behalf of the Kentucky Class**

**KENTUCKY COUNT I**

**VIOLATION OF THE KENTUCKY CONSUMER PROTECTION ACT
(KY. REV. STAT. §367.110, *ET SEQ.*)**

835.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

836.    This Count is brought on behalf of the Kentucky Class.

837.    Mercedes and the Kentucky Class members are "persons" within the meaning of KY. REV. STAT. §367.110(1).

838.    Mercedes is engaged in "trade" or "commerce" within the meaning of KY. REV. STAT. §367.110(2).

839.    The Class Vehicles are "goods" within the meaning of KY. REV. STAT. §367.220(1).

840.    The Kentucky Consumer Protection Act ("Kentucky CPA") makes unlawful "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce." KY. REV. STAT. §367.170(1).

841.    In the course of its business, Mercedes violated the Kentucky CPA by knowingly misrepresenting and intentionally concealing material facts regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles, as detailed above. Specifically, in marketing, offering for sale/lease, and selling/leasing the defective Class Vehicles, Mercedes engaged in one or more of the following unfair or deceptive acts or practices in violation of KY. REV. STAT. §367.170(1):

      a.    representing that the Class Vehicles have characteristics or benefits that they do not have;

b.      representing that the Class Vehicles are of a particular standard and quality when they are not;

c.      advertising the Class Vehicles with the intent not to sell them as advertised;

d.      engaging in other conduct which created a likelihood of confusion or misunderstanding; and/or

e.      using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the advertisement and sale or lease of the Class Vehicles.

842.    Mercedes' scheme and concealment of the true characteristics of the Class Vehicles were material the Kentucky Class members, and Mercedes misrepresented, concealed, or failed to disclose the truth with the intention that the Kentucky Class members would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the Kentucky Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

843.    The Kentucky Class members had no way of discerning that Mercedes' representations were false and misleading, or otherwise learning the facts that Mercedes had concealed or failed to disclose.

844.    Mercedes had an ongoing duty to the Kentucky Class members to refrain from unfair and deceptive practices under the Kentucky CPA in the course of its business. Specifically, Mercedes owed the Kentucky Class members a duty to disclose all the material

facts concerning the Class Vehicles because it possessed exclusive knowledge, it intentionally concealed such material facts from the Kentucky Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

845.    The Kentucky Class members suffered ascertainable loss and actual damages as a direct and proximate result of Mercedes' concealment, misrepresentations, and/or failure to disclose material information.

846.    Pursuant to KY. REV. STAT. §367.220, the Kentucky Class members seek an order awarding damages, punitive damages, and any other just and proper relief available under the Kentucky CPA.

**KENTUCKY COUNT II**

**BREACH OF IMPLIED WARRANTIES**
**(KY. REV. STAT. §§355.2-314 AND 355.2A-212)**

847.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

848.    This Count is brought on behalf of the Kentucky Class.

849.    Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under KY. REV. STAT. §§355.2-104(1) and 355.2A-103(3), and a "seller" of the Class Vehicles under §355.2-103(1)(d).

850.    With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under KY. REV. STAT. §355.2A-03(1)(p).

851.    The Class Vehicles are and were at all relevant times "goods" within the meaning of KY. REV. STAT. §§355.2-105(1) and 355.2A-103(1)(h).

852.    A warranty that the Class Vehicles were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to KY. REV. STAT. §§355.2-314 and 355.2A-212.

853.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose as a result of their inherent defects, as detailed above.    In addition, because any warranty repairs or replacements offered by Mercedes cannot cure the defect in the Class Vehicles, they fail to cure Mercedes' breach of implied warranties.

854.    As a direct and proximate result of Mercedes' breach of its implied warranties, the Kentucky Class members have been damaged in an amount to be determined at trial.

855.    Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

### KENTUCKY COUNT III

### BREACH OF EXPRESS WARRANTY
### (KY. REV. STAT. §§355.2-313 AND 355.2A-210)

856.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

857.    This Count is brought on behalf of the Kentucky Class.

858.    Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under KY. REV. STAT. §§355.2-104(1) and 355.2A-103(3), and a "seller" of the Class Vehicles under §355.2-103(1)(d).

859.    With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under KY. REV. STAT. §355.2A-03(1)(p).

860.    The Class Vehicles are and were at all relevant times "goods" within the meaning of KY. REV. STAT. §§355.2-105(1) and 355.2A-103(1)(h).

861.    In connection with the purchase or lease of all Class Vehicles, Mercedes provided the Kentucky Class members with a written warranty covering defects in materials and workmanship of the Class Vehicles for four years, as detailed above. In addition, Mercedes' various oral and written representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles constituted express warranties to the Kentucky Class members.

862.    Mercedes' warranties formed a basis of the bargain that was reached when the Kentucky Class members purchased or leased their Class Vehicles.

863.    Mercedes breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Kentucky Class members with Class Vehicles containing defects in the materials and workmanship with regard to the paint and paint process used on the Class Vehicles that were never disclosed to the Kentucky Class members; (b) failing to repair or replace the defective Class Vehicles at no cost within the four-year warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Mercedes.

864.    The Kentucky Class members have given Mercedes a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Mercedes can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

865.    Thus, Mercedes' four-year written warranty fails of its essential purpose and the recovery of the Kentucky Class members is not limited to its remedies.

866.    Accordingly, the Kentucky Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Kentucky Class members of the purchase or lease price of all Class Vehicles currently owned and leased, and for such other incidental and consequential damages as allowed.

867.    As a direct and proximate result of Mercedes' breach of its express warranty, the Kentucky Class members have been damaged in an amount to be determined at trial.

868.    Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

**T.    Claims Brought on Behalf of the Louisiana Class**

**LOUISIANA COUNT I**

**VIOLATIONS OF THE LOUISIANA UNFAIR TRADE PRACTICES
AND CONSUMER PROTECTION LAW
(LA. REV. STAT. §51:1401, *ET SEQ.*)**

869.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

870.    This Count is brought on behalf of the Louisiana Class.

871.    Mercedes and the Louisiana Class members are "persons" within the meaning of the LA. REV. STAT. §51:1402(8).

872.    The Louisiana Class members are "consumers" within the meaning of LA. REV. STAT. §51:1402(1).

873.    Mercedes engaged in "trade" or "commerce" within the meaning of LA. REV. STAT. §51:1402(10).

874.    The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") makes unlawful "deceptive acts or practices in the conduct of any trade or commerce." LA. REV. STAT. §51:1405(A).  Mercedes participated in misleading, false, or deceptive acts that violated the Louisiana CPL.

875.    In the course of Mercedes' business, Mercedes concealed the Paint Defect in Class Vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.   Accordingly, Mercedes engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

876.    Mercedes knew or should have known of the Paint Defect inherent in the Class Vehicles.

877.    Mercedes had a duty to disclose the existence of the Paint Defect in the Class Vehicles.  By failing to disclose and by actively concealing the Paint Defect in Class Vehicles, by marketing its vehicles as durable and being of high quality, and by presenting itself as a reputable manufacturer that valued quality and stood behind its vehicles after they were sold, Mercedes engaged in deceptive business practices in violation of the Louisiana CPL.

878.    Mercedes' unfair or deceptive acts or practices were likely to, and did, in fact, deceive reasonable consumers, including the Louisiana Class members, about the quality of the Class Vehicles and Mercedes brand, and the true value of the Class Vehicles.

879.    The Louisiana Class members reasonably relied upon Mercedes' false misrepresentations and unfair or deceptive acts or practices.  They had no way of knowing that Mercedes' representations were false and gravely misleading.  As alleged herein, Mercedes engaged in extremely sophisticated methods of deception.  The Louisiana Class members did not, and could not, unravel Mercedes' deception on their own.

880.    Mercedes intentionally and knowingly failed to disclose and misrepresented material facts regarding the Class Vehicles with intent to mislead the Louisiana Class.

881.    Mercedes knew or should have known that its conduct violated the Louisiana CPL.

882.    Mercedes owed the Louisiana Class members a duty to disclose the defective condition of the Class Vehicles because Mercedes:

    a.    possessed exclusive knowledge that the paint and paint process used on the Class Vehicles were defective;

    b.    intentionally concealed the foregoing from the Louisiana Class members; and

    c.    made incomplete representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles, while purposefully withholding material facts from the Louisiana Class members that contradicted these representations.

883.    Mercedes' concealment of the Paint Defect in Class Vehicles was material to the Louisiana Class members.  A vehicle made by a reputable manufacturer of quality vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of inferior vehicles that conceals defects rather than promptly remedies them.

884.    The Louisiana Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased these Class Vehicles and/or would have paid less, or would have taken other affirmative steps in light of the information concealed from them.  The Louisiana Class members' actions were justified.  Mercedes was in exclusive control of the material facts, and such facts were not generally known to the public or the Louisiana Class members.

885.    Mercedes' actions as set forth above occurred in the conduct of trade or commerce.

886.    Mercedes' unfair or deceptive acts or practices were likely to, and did, in fact, deceive reasonable consumers.

887.    As a direct and proximate result of Mercedes' violations of the Louisiana CPL, the Louisiana Class members have suffered injury-in-fact and/or actual damage.

888.    The Louisiana Class members suffered ascertainable loss caused by Mercedes' misrepresentations and its failure to disclose material information.  Had they been aware of the Paint Defect in the Class Vehicles, the Louisiana Class members either would have paid less for their vehicles or would not have purchased or leased them at all.  The Louisiana Class members did not receive the benefit of their bargain as a result of Mercedes' misconduct.

889.    The repairs offered and instituted by Mercedes are not adequate.

890.    Pursuant to LA. REV. STAT. §51:1409, the Louisiana Class members seek to recover actual damages in an amount to be determined at trial, treble damages for Mercedes' knowing violations of the Louisiana CPL, other monetary relief, declaratory relief, punitive damages, an order enjoining Mercedes' unfair, unlawful, and/or deceptive practices, and reasonable attorneys' fees and costs, and any other just and proper relief available under LA. REV. STAT. §51:1409.

## LOUISIANA COUNT II

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY/ WARRANTY AGAINST REDHIBITORY DEFECTS (LA. CIV. CODE ARTS. 2520, 2524)

891.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

892.    This Count is brought on behalf of the Louisiana Class.

893.    Mercedes is and was at all relevant times a "seller" with respect to motor vehicle sales under LA. CIV. CODE Arts. 2520, 2524.

894.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to LA. CIV. CODE Arts. 2520, 2524.

895.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose as a result of their inherent defects, as detailed above.   In addition, because any warranty repairs or replacements offered by Mercedes cannot cure the defect in the Class Vehicles, they fail to cure Mercedes' breach of implied warranties.

896.    As a direct and proximate result of Mercedes' breach of the implied warranty of merchantability, the Louisiana Class members have been damaged in an amount to be proven at trial.

897.    Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

**U.    Claims Brought on Behalf of the Maine Class**

**MAINE COUNT I**

**BREACH OF IMPLIED WARRANTIES**
**(ME. REV. STAT. ANN. TIT. 11 §§2-314 AND 2-1212)**

898.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

899.    This Count is brought on behalf of the Maine Class.

900.    Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under ME. REV. STAT. ANN. tit. 11, §§2-104(1) and 2-1103(3), and a "seller" of the Class Vehicles under §2-103(1)(d).

901.    With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under ME. REV. STAT. ANN. tit. 11, §2-1103(1)(p).

902.    The Class Vehicles are and were at all relevant times "goods" within the meaning of ME. REV. STAT. ANN. tit. 11, §§2-105(1) and 2-1103(1)(h).

903.    A warranty that the Class Vehicles were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to ME. REV. STAT. ANN. tit. 11, §§2-314 and 2-1212.

904.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose as a result of their inherent defects,

as detailed above.   In addition, because any warranty repairs or replacements offered by Mercedes cannot cure the defect in the Class Vehicles, they fail to cure Mercedes' breach of implied warranties.

905.    As a direct and proximate result of Mercedes' breach of its implied warranties, the Maine Class members have been damaged in an amount to be determined at trial.

906.    Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

### MAINE COUNT II

### BREACH OF EXPRESS WARRANTY
### (ME. REV. STAT. ANN. TIT. 11 §§2-313 AND 2-1210)

907.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

908.    This Count is brought on behalf of the Maine Class.

909.    Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under ME. REV. STAT. ANN. tit. 11 §§2-104(1) and 2-1103(3), and a "seller" of the Class Vehicles under §2-103(1)(d).

910.    With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under ME. REV. STAT. ANN. tit. 11, §2-1103(1)(p).

911.    The Class Vehicles are and were at all relevant times "goods" within the meaning of ME. REV. STAT. ANN. tit. 11, §§2-105(1) and 2-1103(1)(h).

912.    In connection with the purchase or lease of all Class Vehicles, Mercedes provided the Maine Class members with a written warranty covering defects in materials and workmanship of the Class Vehicles for four years, as detailed above.   In addition, Mercedes' various oral and written representations regarding the quality of the Class Vehicles and the

quality and benefits of the paint and paint process used on the Class Vehicles constituted express warranties to the Maine Class members.

913.    Mercedes' warranties formed a basis of the bargain that was reached when the Maine Class members purchased or leased their Class Vehicles.

914.    Mercedes breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Maine Class members with Class Vehicles containing defects in the materials and workmanship with regard to the paint and paint process used on the Class Vehicles that were never disclosed to the Maine Class members; (b) failing to repair or replace the defective Class Vehicles at no cost within the four-year warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Mercedes.

915.    The Maine Class members have given Mercedes a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Mercedes can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

916.    Thus, Mercedes' four-year written warranty fails of its essential purpose and the recovery of the Maine Class members is not limited to its remedies.

917.    Accordingly, the Maine Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Maine Class members of the purchase or lease price of all Class Vehicles currently owned and leased, and for such other incidental and consequential damages as allowed.

918.    As a direct and proximate result of Mercedes' breach of its express warranty, the Maine Class members have been damaged in an amount to be determined at trial.

919.    Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

## V.    Claims Brought on Behalf of the Maryland Class

### MARYLAND COUNT I

### VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT
### (MD. CODE COM. LAW §13-101, *ET SEQ.*)

920.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

921.    This Count is brought on behalf of the Maryland Class.

922.    Mercedes is a "person" within the meaning of MD. CODE COM. LAW §13-101(h). The Maryland Class members are "consumers" within the meaning of MD. CODE COM. LAW §13-101(c)(1).

923.    The Class Vehicles are "consumer goods" within the meaning of MD. CODE COM. LAW §13-101(d)(1).

924.    The Maryland Consumer Protection Act ("Maryland CPA") provides that a person may not engage in any unfair or deceptive trade practice in the sale or lease of any consumer good.  MD. CODE COM. LAW §13-303.  Unfair or deceptive trade practices are defined under MD. CODE COM. LAW §13-301.

925.    The Maryland CPA makes unlawful several specific acts, including, but not limited to, representing that: "(2)(i) Consumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have"; "(iv) Consumer goods, consumer realty, or consumer services are of a

particular standard, quality, grade, style, or model which they are not"; and "(3) Failure to state a material fact if the failure deceives or tends to deceive." MD. CODE COM. LAW §13-301.

926.    In the course of its business, Mercedes violated the Maryland CPA by knowingly misrepresenting and intentionally concealing material facts regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles, as detailed above.  Specifically, in marketing, offering for sale or lease, and selling or leasing the defective Class Vehicles, Mercedes engaged in one or more of the following unfair or deceptive acts or practices as defined in MD. CODE COM. LAW §13-301:

      a.    representing that the Class Vehicles have characteristics or benefits that they do not have;

      b.    representing that the Class Vehicles are of a particular standard and quality when they are not; and/or

      c.    advertising the Class Vehicles with the intent not to sell or lease them as advertised.

927.    Mercedes' scheme and concealment of the true characteristics of the Class Vehicles were material to the Maryland Class members, and Mercedes misrepresented, concealed, or failed to disclose the truth with the intention that the Maryland Class members would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the Maryland Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

928.    The Maryland Class members had no way of discerning that Mercedes' representations were false and misleading, or otherwise learning the facts that Mercedes had concealed or failed to disclose.

929.    Mercedes had an ongoing duty to the Maryland Class members to refrain from unfair and deceptive practices under the Maryland CPA in the course of its business. Specifically, Mercedes owed the Maryland Class members a duty to disclose all the material facts concerning the Class Vehicles because it possessed exclusive knowledge, it intentionally concealed such material facts from the Maryland Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

930.    The Maryland Class members suffered ascertainable loss and actual damages as a direct and proximate result of Mercedes' concealment, misrepresentations, and/or failure to disclose material information.

931.    Pursuant to MD. CODE COM. LAW §13-408, the Maryland Class members seek an order awarding damages, treble damages, and any other just and proper relief available under the Maryland CPA.

## MARYLAND COUNT II

### BREACH OF IMPLIED WARRANTIES
### (MD. CODE COM. LAW §§2-314 AND 2A-212)

932.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

933.    This Count is brought on behalf of the Maryland Class.

934.    Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under MD. CODE COM. LAW §2-104(1), and a "seller" of the Class Vehicles under §2-103(1)(d).

935.    With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under MD. CODE COM. LAW §2A-103(1)(p).

936.    The Class Vehicles are and were at all relevant times "goods" within the meaning of MD. CODE COM. LAW §§2-105(1) and 2A-103(1)(h).

937.    A warranty that the Class Vehicles were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to MD. CODE COM. LAW §§2-314 and 2A-212.

938.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Mercedes cannot cure the defect in the Class Vehicles, they fail to cure Mercedes' breach of implied warranties.

939.    As a direct and proximate result of Mercedes' breach of its implied warranties, the Maryland Class members have been damaged in an amount to be determined at trial.

940.    Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

## MARYLAND COUNT III

### BREACH OF EXPRESS WARRANTY
### (MD. CODE COM. LAW §§2-313 AND 2A-210)

941.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

942.    This Count is brought on behalf of the Maryland Class.

943.    Mercedes is and was at all relevant times a "seller" with respect to the Class Vehicles under MD. CODE COM. LAW §2-103(1)(d), and a "merchant" under §2-104(1).

944.    With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under MD. CODE COM. LAW §2A-103(1)(p).

945.    The Maryland Class members are and were at all relevant times "buyers" of the Class Vehicles under MD. CODE COM. LAW §2-103(1)(a).

946.    The Class Vehicles are and were at all relevant times "goods" within the meaning of MD. CODE COM. LAW §§2-105(1) and 2A-103(1)(h).

947.    In connection with the purchase or lease of all Class Vehicles, Mercedes provided the Maryland Class members with a written warranty covering defects in materials and workmanship of the Class Vehicles for four years, as detailed above.  In addition, Mercedes' various oral and written representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles constituted express warranties to the Maryland Class members.

948.    Mercedes' warranties formed a basis of the bargain that was reached when the Maryland Class members purchased or leased their Class Vehicles.

949.    Mercedes breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Maryland Class members with Class Vehicles containing defects in the materials and workmanship with regard to the paint and paint process used on the Class Vehicles that were never disclosed to the Maryland Class members; (b) failing to repair or replace the defective Class Vehicles at no cost within the four-year warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Mercedes.

950.    The Maryland Class members have given Mercedes a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by

Mercedes can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

951.    Thus, Mercedes' four-year written warranty fails of its essential purpose and the recovery of the Maryland Class members is not limited to its remedies.

952.    Accordingly, the Maryland Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Maryland Class members of the purchase or lease price of all Class Vehicles currently owned and leased, and for such other incidental and consequential damages as allowed.

953.    As a direct and proximate result of Mercedes' breach of express warranty, the Maryland Class members have been damaged in an amount to be determined at trial.

954.    Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

**W.    Claims Brought on Behalf of the Massachusetts Class**

### MASSACHUSETTS COUNT I

### BREACH OF IMPLIED WARRANTIES
### (MASS. GEN. LAWS CH. 106, §§2-314 AND 2A-212)

955.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

956.    This Count is brought on behalf of the Massachusetts Class.

957.    Mercedes is and was at all relevant times a "seller" with respect to the Class Vehicles under MASS. GEN. LAWS ch. 106 §2-103(1)(d), and a "merchant" under 106 §2-104(1).

958.    With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under MASS. GEN. LAWS ch. 106 §2A-103(1)(p).

959.    The Class Vehicles are and were at all relevant times "goods" within the meaning of MASS. GEN. LAWS ch. 106 §§2-105(1) and 2A-103(1)(h).

960.    A warranty that the Class Vehicles were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to MASS. GEN. LAWS ch. 106 §§2-314 and 2A-212.

961.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose as a result of their inherent defects, as detailed above.    In addition, because any warranty repairs or replacements offered by Mercedes cannot cure the defect in the Class Vehicles, they fail to cure Mercedes' breach of implied warranties.

962.    As a direct and proximate result of Mercedes' breach of its implied warranties, the Massachusetts Class members have been damaged in an amount to be determined at trial.

963.    Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

### MASSACHUSETTS COUNT II

### BREACH OF EXPRESS WARRANTY
### (MASS. GEN. LAWS CH. 106, §§2-313 AND 2A-210)

964.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

965.    This Count is brought on behalf of the Massachusetts Class.

966.    Mercedes is and was at all relevant times a "seller" with respect to the Class Vehicles under MASS. GEN. LAWS ch. 106 §2-103(1)(d), and a "merchant" under 106 §2-104(1).

967.    With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under MASS. GEN. LAWS ch. 106 §2A-103(1)(p).

968.    The Massachusetts Class members are and were at all relevant times "buyers" of the Class Vehicles under MASS. GEN. LAWS ch. 106 §2-103(1)(a).

969.    The Class Vehicles are and were at all relevant times "goods" within the meaning of MASS. GEN. LAWS ch. 106 §§2-105(1) and 2A-103(1)(h).

970.    In connection with the purchase or lease of all Class Vehicles, Mercedes provided the Massachusetts Class members with a written warranty covering defects in materials and workmanship of the Class Vehicles for four years, as detailed above.  In addition, Mercedes' various oral and written representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles constituted express warranties to the Massachusetts Class members.

971.    Mercedes' warranties formed a basis of the bargain that was reached when the Massachusetts Class members purchased or leased their Class Vehicles.

972.    Mercedes breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Massachusetts Class members with Class Vehicles containing defects in the materials and workmanship with regard to the paint and paint process used on the Class Vehicles that were never disclosed to the Massachusetts Class members; (b) failing to repair or replace the defective Class Vehicles at no cost within the four-year warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Mercedes.

973.    The Massachusetts Class members have given Mercedes a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by

Mercedes can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

974.    Thus, Mercedes' four-year written warranty fails of its essential purpose and the recovery of the Massachusetts Class members is not limited to its remedies.

975.    Accordingly, the Massachusetts Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Massachusetts Class members of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

976.    As a direct and proximate result of Mercedes' breach of express warranty, the Massachusetts Class members have been damaged in an amount to be determined at trial.

977.    Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

## X.    Claims Brought on Behalf of the Michigan Class

### MICHIGAN COUNT I

### VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT
### (MICH. COMP. LAWS §445.903, *ET SEQ.*)

978.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

979.    This Count is brought on behalf of the Michigan Class.

980.    The Michigan Class members are "persons" within the meaning of MICH. COMP. LAWS §445.902(1)(d).

981.    The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." MICH. COMP. LAWS §445.903(1).  Mercedes engaged in unfair, unconscionable, or deceptive

methods, acts or practices prohibited by the Michigan CPA, including:  "(c) Representing that goods or services have … characteristics … that they do not have"; "(e) Representing that goods or services are of a particular standard … if they are of another"; "(i) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions"; "(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer"; "(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is"; and "(cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner."  MICH. COMP. LAWS §445.903(1).

982.    In the course of its business, Mercedes concealed the Paint Defect in Class Vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  Accordingly, Mercedes engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

983.    Mercedes knew or should have known of the Paint Defect inherent in the Class Vehicles.

984.    Mercedes had a duty to disclose the existence of the Paint Defect in the Class Vehicles.  By failing to disclose and actively concealing the Paint Defect in Class Vehicles, by marketing its Class Vehicles as durable and being of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, Mercedes engaged in deceptive business practices in violation of the Michigan CPA.

985.    Mercedes' unfair or deceptive acts or practices were likely to, and did, in fact, deceive reasonable consumers, including the Michigan Class members, about the quality of the Class Vehicles and Mercedes brand, and the true value of the Class Vehicles.

986.    The Michigan Class members reasonably relied upon Mercedes' false misrepresentations and unfair or deceptive acts or practices.  They had no way of knowing that Mercedes' representations were false and gravely misleading.  As alleged herein, Mercedes engaged in extremely sophisticated methods of deception.  The Michigan Class members did not, and could not, unravel Mercedes' deception on their own.

987.    Mercedes intentionally and knowingly failed to disclose and misrepresented material facts regarding the Class Vehicles with intent to mislead the Michigan Class.

988.    Mercedes knew or should have known that its conduct violated the Michigan CPA.

989.    Mercedes owed the Michigan Class members a duty to disclose the defective condition of the Class Vehicles because Mercedes:

   a.    possessed exclusive knowledge that the paint and paint process used on the Class Vehicles were defective;

   b.    intentionally concealed the foregoing from the Michigan Class members; and/or

c.    made incomplete representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles, while purposefully withholding material facts from the Michigan Class members that contradicted these representations.

990.    Mercedes' concealment of the Paint Defect in Class Vehicles was material to the Michigan Class members.  A vehicle made by a reputable manufacturer of quality vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of inferior vehicles that conceals defects rather than promptly remedies them.

991.    The Michigan Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased these Class Vehicles and/or would have paid less, or would have taken other affirmative steps in light of the information concealed from them.  The Michigan Class members' actions were justified.  Mercedes was in exclusive control of the material facts, and such facts were not generally known to the public or the Michigan Class members.

992.    Mercedes' actions as set forth above occurred in the conduct of trade or commerce.

993.    Mercedes' unfair or deceptive acts or practices were likely to, and did, in fact, deceive reasonable consumers.

994.    As a direct and proximate result of Mercedes' violations of the Michigan CPA, the Michigan Class members have suffered injury-in-fact and/or actual damage.

995.    The Michigan Class members suffered ascertainable loss caused by Mercedes' misrepresentations and its failure to disclose material information.  Had they been aware of the

Paint Defect in the Class Vehicles, the Michigan Class members either would have paid less for their vehicles or would not have purchased or leased them at all.  The Michigan Class members did not receive the benefit of their bargain as a result of Mercedes' misconduct.

996.    The repairs offered and instituted by Mercedes are not adequate.

997.    The Michigan Class members seek injunctive relief to enjoin Mercedes from continuing its unfair, unlawful, and/or deceptive practices; monetary relief against Mercedes, measured as the greater of: (a) actual damages in an amount to be determined at trial; and (b) statutory damages in the amount of $250 for each Michigan Class member, reasonable attorneys' fees, and any other just and proper relief available under MICH. COMP. LAWS §445.911.

998.    The Michigan Class members also seek punitive damages against Mercedes because it carried out despicable conduct with willful and conscious disregard of the rights of others.  Mercedes intentionally and willfully misrepresented the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles, concealed material facts that only Mercedes knew, and repeatedly promised the Michigan Class members that the Class Vehicles and the paint and paint process used on them was of high quality  – all to avoid the expense and public relations nightmare of correcting a flaw in the Class Vehicles. Mercedes' unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

## MICHIGAN COUNT II

### BREACH OF IMPLIED WARRANTIES
### (MICH. COMP. LAWS §§440.2314 AND 440.2860)

999.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1000.   This Count is brought on behalf of the Michigan Class.

1001.  Mercedes is and was at all relevant times a "merchant" with respect to motor vehicles within the meaning of MICH. COMP. LAWS §440.2314(1), and a "seller" of motor vehicles under §440.2103(1)(d).

1002.  With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under MICH. COMP. LAWS §440.2803(1)(p).

1003.  The Class Vehicles are and were at all relevant times "goods" within the meaning of MICH. COMP. LAWS §§440.2105(1) and 440.2803(1)(h).

1004.  Under MICH. COMP. LAWS §§440.2314 and 440.2862, a warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used was implied by law.

1005.  The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Mercedes cannot cure the defect in the Class Vehicles, they fail to cure Mercedes' breach of implied warranties.

1006.  As a direct and proximate result of Mercedes' breach of the implied warranty of merchantability, the Michigan Class members have been damaged in an amount to be proven at trial.

1007.  Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

## MICHIGAN COUNT III

## BREACH OF EXPRESS WARRANTY
### (MICH. COMP. LAWS §§440.2313 AND 440.2860)

1008.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1009.   This Count is brought on behalf of the Michigan Class.

1010.   Mercedes is and was at all relevant times a "seller" with respect to the Class Vehicles under MICH. COMP. LAWS §440.2103(1)(c), and a "merchant" under §440.2104(1).

1011.   With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under MICH. COMP. LAWS §440.2803(1)(p).

1012.   The Michigan Class members are and were at all relevant times "buyers" of the Class Vehicles under MICH. COMP. LAWS §440.2103(1)(a).

1013.   The Class Vehicles are and were at all relevant times "goods" within the meaning of MICH. COMP. LAWS §§440.2105(1) and 440.2803(1)(h).

1014.   In connection with the purchase or lease of all Class Vehicles, Mercedes provided the Michigan Class members with a written warranty covering defects in materials and workmanship of the Class Vehicles for four years, as detailed above.  In addition, Mercedes' various oral and written representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles constituted express warranties to the Michigan Class.

1015.   Mercedes' warranties formed a basis of the bargain that was reached when the Michigan Class members purchased or leased their Class Vehicles.

1016.   Mercedes breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Michigan Class members with Class

Vehicles containing defects in the materials and workmanship with regard to the paint and paint process used on the Class Vehicles that were never disclosed to the Michigan Class members; (b) failing to repair or replace the defective Class Vehicles at no cost within the four-year warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Mercedes.

1017.  The Michigan Class members have given Mercedes a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Mercedes can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

1018.  Thus, Mercedes' four-year written warranty fails of its essential purpose and the recovery of the Michigan Class members is not limited to its remedies.

1019.  Accordingly, the Michigan Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Michigan Class members of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

1020.  As a direct and proximate result of Mercedes' breach of express warranty, the Michigan Class members have been damaged in an amount to be determined at trial.

1021.  Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

**Y.      Claims Brought on Behalf of the Minnesota Class**

**MINNESOTA COUNT I**

**VIOLATION OF MINNESOTA PREVENTION OF
CONSUMER FRAUD ACT
(MINN. STAT. §325F.68, *ET SEQ*.)**

1022.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1023.   This Count is brought on behalf of the Minnesota Class.

1024.   Mercedes and the Minnesota Class members are "persons" within the meaning of MINN. STAT. §325F.68(3).  The Class Vehicles are "merchandise" within the meaning of MINN. STAT. §325F.68(2).

1025.   The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby."  MINN. STAT. §325F.69(1).

1026.   In the course of its business, Mercedes violated the Minnesota CFA by knowingly misrepresenting and intentionally concealing material facts regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles, as detailed above.  Specifically, in marketing, offering for sale/lease, and selling/leasing the defective Class Vehicles, Mercedes engaged in one or more of the following unfair or deceptive acts or practices prohibited by the Minnesota CFA:

a.      representing that the Class Vehicles have characteristics or benefits that they do not have;

b. representing that the Class Vehicles are of a particular standard and quality when they are not; and/or

c. advertising the Class Vehicles with the intent not to sell them as advertised.

1027. Mercedes' scheme and concealment of the true characteristics of the Class Vehicles were material to the Minnesota Class, and Mercedes misrepresented, concealed, or failed to disclose the truth with the intention that the Minnesota Class would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the Minnesota Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1028. The Minnesota Class members had no way of discerning that Mercedes' representations were false and misleading, or otherwise learning the facts that Mercedes had concealed or failed to disclose.

1029. Mercedes had an ongoing duty to the Minnesota Class members to refrain from unfair and deceptive practices under the Minnesota CFA in the course of its business. Specifically, Mercedes owed the Minnesota Class members a duty to disclose all the material facts concerning the Class Vehicles because it possessed exclusive knowledge, it intentionally concealed such material facts from the Minnesota Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1030. The Minnesota Class members suffered ascertainable loss and actual damages as a direct and proximate result of Mercedes' concealment, misrepresentations, and/or failure to disclose material information.

1031.   Pursuant to the Minnesota CFA, and MINN. STAT. §8.31(3a), the Minnesota Class members seek an order awarding damages, treble damages, and any other just and proper relief available under the Minnesota CFA.

## MINNESOTA COUNT II

## VIOLATION OF MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT (MINN. STAT. §325D.43-48, *ET SEQ.*)

1032.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1033.   This Count is brought on behalf of the Minnesota Class.

1034.   Mercedes and the Minnesota Class members are "persons" within the meaning of MINN. STAT. §325D.44.   The Class Vehicles are "goods" within the meaning of MINN. STAT. §325D.44.

1035.   The Minnesota Deceptive Trade Practices Act ("Minnesota DTPA") prohibits deceptive trade practices, which occur when a person: "(5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have"; "(7) represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another"; and "(9) advertises goods or services with intent not to sell them as advertised."  MINN. STAT. §325D.44.

1036.   In the course of its business, Mercedes violated the Minnesota DTPA by knowingly misrepresenting and intentionally concealing material facts regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles, as detailed above.   Specifically, in marketing, offering for sale/lease, and

selling/leasing the defective Class Vehicles, Mercedes engaged in one or more of the following unfair or deceptive acts or practices as defined in MINN. STAT. §325D.44:

    a.    representing that the Class Vehicles have characteristics and benefits that they do not have;

    b.    representing that the Class Vehicles are of a particular standard and quality when they are not; and/or

    c.    advertising the Class Vehicles with the intent not to sell them as advertised.

1037. Mercedes' scheme and concealment of the true characteristics of the Class Vehicles were material to the Minnesota Class members, and Mercedes misrepresented, concealed, or failed to disclose the truth with the intention that the Minnesota Class members would rely on the misrepresentations, concealments, and omissions. Had they known the truth, the Minnesota Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1038. The Minnesota Class members had no way of discerning that Mercedes' representations were false and misleading, or otherwise learning the facts that Mercedes had concealed or failed to disclose.

1039. Mercedes had an ongoing duty to the Minnesota Class members to refrain from unfair and deceptive practices under the Minnesota DTPA in the course of its business. Specifically, Mercedes owed the Minnesota Class members a duty to disclose all the material facts concerning the Class Vehicles because it possessed exclusive knowledge, it intentionally concealed such material facts from the Minnesota Class members, and/or it made

misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1040.  The Minnesota Class members suffered ascertainable loss and actual damages as a direct and proximate result of Mercedes' concealment, misrepresentations, and/or failure to disclose material information.

1041.  Pursuant to MINN. STAT. §§8.31(3a) and 325D.45, the Minnesota Class members seek actual damages, attorneys' fees, and any other just and proper relief available under the Minnesota DTPA.

## MINNESOTA COUNT III

## BREACH OF IMPLIED WARRANTIES
### (MINN. STAT. §§336.2-314 AND 336.2A-212)

1042.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1043.  This Count is brought on behalf of the Minnesota Class.

1044.  Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under MINN. STAT. §336.2-104(1), and a "seller" of the Class Vehicles under §336.2-103(1)(d).

1045.  With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under MINN. STAT. §336.2A-103(1)(p).

1046.  The Class Vehicles are and were at all relevant times "goods" within the meaning of MINN. STAT. §§336.2-105(1) and 336.2A-103(1)(h).

1047.  A warranty that the Class Vehicles were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to MINN. STAT. §§336.2-314 and 336.2A-212.

1048.  The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose as a result of their inherent defects, as detailed above.   In addition, because any warranty repairs or replacements offered by Mercedes cannot cure the defect in the Class Vehicles, they fail to cure Mercedes' breach of implied warranties.

1049.  As a direct and proximate result of Mercedes' breach of its implied warranties, the Minnesota Class members have been damaged in an amount to be determined at trial.

1050.  Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

## MINNESOTA COUNT IV

### BREACH OF EXPRESS WARRANTY
### (MINN. STAT. §§336.2-313 AND 336.2A-210)

1051.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1052.  This Count is brought on behalf of the Minnesota Class.

1053.  Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under MINN. STAT. §336.2-104(1), and a "seller" of the Class Vehicles under §336.2-103(1)(d).

1054.  With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under MINN. STAT. §336.2A-103(1)(p).

1055.  The Class Vehicles are and were at all relevant times "goods" within the meaning of MINN. STAT. §§336.2-105(1) and 336.2A-103(1)(h).

1056.  In connection with the purchase or lease of all Class Vehicles, Mercedes provided the Minnesota Class members with a written warranty covering defects in materials and

workmanship of the Class Vehicles for four years, as detailed above.  In addition, Mercedes' various oral and written representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles constituted express warranties to the Minnesota Class members.

1057.   Mercedes' warranties formed a basis of the bargain that was reached when the Minnesota Class members purchased or leased their Class Vehicles.

1058.   Mercedes breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Minnesota Class members with Class Vehicles containing defects in the materials and workmanship with regard to the paint and paint process used on the Class Vehicles that were never disclosed to the Minnesota Class members; (b) failing to repair or replace the defective Class Vehicles at no cost within the four-year warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Mercedes.

1059.   The Minnesota Class members have given Mercedes a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Mercedes can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

1060.   Thus, Mercedes' four-year written warranty fails of its essential purpose and the recovery of the Minnesota Class members is not limited to its remedies.

1061.   Accordingly, the Minnesota Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Minnesota Class

members of the purchase or lease price of all Class Vehicles currently owned and leased, and for such other incidental and consequential damages as allowed.

1062.   As a direct and proximate result of Mercedes' breach of its express warranty, the Minnesota Class members have been damaged in an amount to be determined at trial.

1063.   Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

**Z.      Claims Brought on Behalf of the Mississippi Class**

**MISSISSIPPI COUNT I**

**VIOLATION OF THE MISSISSIPPI CONSUMER PROTECTION ACT
(MISS. CODE ANN. §75-24-1, *ET SEQ.*)**

1064.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1065.   This Count is brought on behalf of the Mississippi Class.

1066.   Mercedes' actions as set forth above occurred in the conduct of trade or commerce.

1067.   The Mississippi Consumer Protection Act ("Mississippi CPA") prohibits any "unfair or deceptive trade practices in or affecting commerce."  MISS. CODE ANN. §75-24-5(1). Unfair or deceptive practices include, but are not limited to: "(e) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have"; "(g) Representing that good or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another"; and "(i) Advertising goods or services with intent not to sell them as advertised."

1068.    In the course of its business, Mercedes concealed the Paint Defect in Class Vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.    Accordingly, Mercedes engaged in unfair or deceptive acts or practices, including representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

1069.    Mercedes' unfair or deceptive acts or practices were likely to, and did, in fact, deceive reasonable consumers, including the Mississippi Class members, about the quality of the Class Vehicles and Mercedes brand, and the true value of the Class Vehicles.

1070.    The Mississippi Class members reasonably relied upon Mercedes' false misrepresentations and unfair or deceptive acts or practices.    They had no way of knowing that Mercedes' representations were false and gravely misleading.    As alleged herein, Mercedes engaged in extremely sophisticated methods of deception.    The Mississippi Class members did not, and could not, unravel Mercedes' deception on their own.

1071.    Mercedes intentionally and knowingly failed to disclose and misrepresented material facts regarding the Class Vehicles with intent to mislead the Mississippi Class.

1072.    Mercedes knew or should have known that its conduct violated the Mississippi CPA.

1073.  Mercedes owed the Mississippi Class members a duty to disclose the defective condition of the Class Vehicles because Mercedes:

      a.    possessed exclusive knowledge that the paint and paint process used on the Class Vehicles were defective;

      b.    intentionally concealed the foregoing from the Mississippi Class members; and/or

      c.    made incomplete representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles, while purposefully withholding material facts from the Mississippi Class members that contradicted these representations.

1074.  Mercedes' scheme and concealment of the true characteristics of the Class Vehicles were material to the Mississippi Class members.

1075.  The Mississippi Class members suffered ascertainable loss and actual damages as a direct and proximate result of Mercedes' concealment, misrepresentations, and/or failure to disclose material information.  Had they known the truth, the Mississippi Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them. The Mississippi Class members also suffered diminished value of their vehicles, as well as lost or diminished use.  These injuries are the direct and natural consequence of Mercedes' misrepresentations and omissions.

1076.  Mercedes had an ongoing duty to all of its customers to refrain from unfair or deceptive acts or practices under the Mississippi CPA.  All owners of the Class Vehicles suffered ascertainable loss in the form of diminished value of their vehicles as a result of Mercedes' unfair or deceptive acts or practices made in the course of its business.

1077.   As a direct and proximate result of Mercedes' violations of the Mississippi CPA, the Mississippi Class members have suffered injury-in-fact and/or actual damage.

1078.   The Mississippi Class members seek actual damages in an amount to be determined at trial and any other just and proper relief available under the Mississippi CPA.

## MISSISSIPPI COUNT II

## BREACH OF IMPLIED WARRANTIES
## (MISS. CODE ANN. §§75-2-314 AND 75-2A-212)

1079.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1080.   This Count is brought on behalf of the Mississippi Class.

1081.   Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under MISS. CODE ANN. §75-2-104(1), and a "seller" of the Class Vehicles under §75-2-103(1)(d).

1082.   With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under MISS. CODE ANN. §75-2A-103(1)(p).

1083.   The Class Vehicles are and were at all relevant times "goods" within the meaning of MISS. CODE ANN. §§75-2-105(1) and 75-2A-103(1)(h).

1084.   A warranty that the Class Vehicles were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to MISS. CODE ANN. §§75-2-314 and 75-2A-212.

1085.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose as a result of their inherent defects, as detailed above.   In addition, because any warranty repairs or replacements offered by

Mercedes cannot cure the defect in the Class Vehicles, they fail to cure Mercedes' breach of implied warranties.

1086.   As a direct and proximate result of Mercedes' breach of its implied warranties, the Mississippi Class members have been damaged in an amount to be determined at trial.

1087.   Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

## MISSISSIPPI COUNT III

### BREACH OF EXPRESS WARRANTY
### (MISS. CODE ANN. §§75-2-313 AND 75-2A-210)

1088.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1089.   This Count is brought on behalf of the Mississippi Class.

1090.   Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under MISS. CODE ANN. §75-2-104(1), and a "seller" of the Class Vehicles under §75-2-103(1)(d).

1091.   With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under MISS. CODE ANN. §75-2A-103(1)(p).

1092.   The Class Vehicles are and were at all relevant times "goods" within the meaning of MISS. CODE ANN. §§75-2-105(1) and 75-2A-103(1)(h).

1093.   In connection with the purchase or lease of all Class Vehicles, Mercedes provided the Mississippi Class members with a written warranty covering defects in materials and workmanship of the Class Vehicles for four years, as detailed above.  In addition, Mercedes' various oral and written representations regarding the quality of the Class Vehicles and the

quality and benefits of the paint and paint process used on the Class Vehicles constituted express warranties to the Mississippi Class members.

1094.   Mercedes' warranties formed a basis of the bargain that was reached when the Mississippi Class members purchased or leased their Class Vehicles.

1095.   Mercedes breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Mississippi Class members with Class Vehicles containing defects in the materials and workmanship with regard to the paint and paint process used on the Class Vehicles that were never disclosed to the Mississippi Class members; (b) failing to repair or replace the defective Class Vehicles at no cost within the four-year warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Mercedes.

1096.   The Mississippi Class members have given Mercedes a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Mercedes can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

1097.   Thus, Mercedes' four-year written warranty fails of its essential purpose and the recovery of the Mississippi Class members is not limited to its remedies.

1098.   Accordingly, the Mississippi Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Mississippi Class members of the purchase or lease price of all Class Vehicles currently owned and leased, and for such other incidental and consequential damages as allowed.

1099.   As a direct and proximate result of Mercedes' breach of its express warranty, the Mississippi Class members have been damaged in an amount to be determined at trial.

1100.   Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

**AA.    Claims Brought on Behalf of the Missouri Class**

**MISSOURI COUNT I**

**VIOLATION OF MISSOURI MERCHANDISING PRACTICES ACT
(MO. REV. STAT. §407.010, *ET SEQ.*)**

1101.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1102.   This Count is brought on behalf of the Missouri Class.

1103.   Mercedes and the Missouri Class members are "persons" within the meaning of MO. REV. STAT. §407.010(5).

1104.   The Class Vehicles are "merchandise" within the meaning of MO. REV. STAT. §407.010(4).

1105.   Mercedes is engaged in "trade" or "commerce" within the meaning of MO. REV. STAT. §407.010(7).

1106.   The Missouri Merchandising Practices Act ("Missouri MPA") makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise."   MO. REV. STAT. §407.020.

1107.   In the course of its business, Mercedes violated the Missouri MPA by knowingly misrepresenting and intentionally concealing material facts regarding the quality of the Class

Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles, as detailed above.  Specifically, in marketing, offering for sale/lease, and selling/leasing the defective Class Vehicles, Mercedes engaged in one or more of the following unfair or deceptive acts or practices proscribed by the Missouri MPA:

    a.    representing that the Class Vehicles have characteristics or benefits that they do not have;

    b.    representing that the Class Vehicles are of a particular standard and quality when they are not; and/or

    c.    advertising the Class Vehicles with the intent not to sell them as advertised.

1108.  Mercedes' scheme and concealment of the true characteristics of the Class Vehicles were material to the Missouri Class members, and Mercedes misrepresented, concealed, or failed to disclose the truth with the intention that the Missouri Class members would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the Missouri Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1109.  The Missouri Class members had no way of discerning that Mercedes' representations were false and misleading, or otherwise learning the facts that Mercedes had concealed or failed to disclose.

1110.  Mercedes had an ongoing duty to the Missouri Class members to refrain from unfair and deceptive practices under the Missouri MPA in the course of its business.  Specifically, Mercedes owed the Missouri Class members a duty to disclose all the material facts concerning the Class Vehicles because it possessed exclusive knowledge, it intentionally

concealed such material facts from the Missouri Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1111.   The Missouri Class members suffered ascertainable loss and actual damages as a direct and proximate result of Mercedes' concealment, misrepresentations, and/or failure to disclose material information.

1112.   Mercedes is liable to the Missouri Class members for damages in amounts to be proven at trial, including attorneys' fees, costs, and punitive damages, and any other just and proper relief under MO. REV. STAT. §407.025.

## MISSOURI COUNT II

### BREACH OF IMPLIED WARRANTIES
### (MO. REV. STAT. §§400.2-314 AND 400.2A-212)

1113.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth here.

1114.   This Count is brought on behalf of the Missouri Class.

1115.   Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under MO. REV. STAT. §400.2-104(1), and a "seller" of the Class Vehicles under §400.2-103(1)(d).

1116.   With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under MO. REV. STAT. §400.2A-103(1)(p).

1117.   The Class Vehicles are and were at all relevant times "goods" within the meaning of MO. REV. STAT. §§400.2-105(1) and 75-2A-103(1)(h).

1118.  A warranty that the Class Vehicles were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to MO. REV. STAT. §§400.2-314 and 400.2A-212.

1119.  The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Mercedes cannot cure the defect in the Class Vehicles, they fail to cure Mercedes' breach of implied warranties.

1120.  As a direct and proximate result of Mercedes' breach of its implied warranties, the Missouri Class members have been damaged in an amount to be determined at trial.

1121.  Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

## MISSOURI COUNT III

### BREACH OF EXPRESS WARRANTY
### (MO. REV. STAT. §§400.2-313 AND 400.2A-210)

1122.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1123.  This Count is brought on behalf of the Missouri Class.

1124.  Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under MO. REV. STAT. §400.2-104(1), and a "seller" of the Class Vehicles under §400.2-103(1)(d).

1125.  With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under MO. REV. STAT. §400.2A-103(1)(p).

1126.   The Class Vehicles are and were at all relevant times "goods" within the meaning of MO. REV. STAT. §§400.2-105(1) and 400.2A-103(1)(h).

1127.   In connection with the purchase or lease of all Class Vehicles, Mercedes provided the Missouri Class members with a written warranty covering defects in materials and workmanship of the Class Vehicles for four years, as detailed above.  In addition, Mercedes' various oral and written representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles constituted express warranties to the Missouri Class members.

1128.   Mercedes' warranties formed a basis of the bargain that was reached when the Missouri Class members purchased or leased their Class Vehicles.

1129.   Mercedes breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Missouri Class members with Class Vehicles containing defects in the materials and workmanship with regard to the paint and paint process used on the Class Vehicles that were never disclosed to the Missouri Class members; (b) failing to repair or replace the defective Class Vehicles at no cost within the four-year warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Mercedes.

1130.   The Missouri Class members have given Mercedes a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Mercedes can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

1131.   Thus, Mercedes' four-year written warranty fails of its essential purpose and the recovery of the Missouri Class members is not limited to its remedies.

1132.   Accordingly, the Missouri Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Missouri Class members of the purchase or lease price of all Class Vehicles currently owned and leased, and for such other incidental and consequential damages as allowed.

1133.   As a direct and proximate result of Mercedes' breach of its express warranty, the Missouri Class members have been damaged in an amount to be determined at trial.

1134.   Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

**BB.    Claims Brought on Behalf of the Montana Class**

**MONTANA COUNT I**

**VIOLATION OF THE MONTANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT OF 1973
(MONT. CODE ANN. §30-14-101, *ET SEQ.*)**

1135.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1136.   This Count is brought on behalf of the Montana Class.

1137.   Mercedes and the Montana Class members are "persons" within the meaning of MONT. CODE ANN. §30-14-102(6).   The Montana Class members are "consumers" within the meaning of MONT. CODE ANN. §30-14-102(1).

1138.   The sale or lease of the Class Vehicles occurred within "trade and commerce" within the meaning of MONT. CODE ANN. §30-14-102(8).

1139.  The Montana Unfair Trade Practices and Consumer Protection Act ("Montana CPA") makes unlawful any "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  MONT. CODE ANN. §30-14-103.

1140.  In the course of its business, Mercedes violated the Montana CPA by knowingly misrepresenting and intentionally concealing material facts regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles, as detailed above.  Specifically, in marketing, offering for sale/lease, and selling/leasing the defective Class Vehicles, Mercedes engaged in one or more of the following unfair or deceptive acts or practices proscribed by the Montana CPA:

      a.     representing that the Class Vehicles have characteristics or benefits that they do not have;

      b.     representing that the Class Vehicles are of a particular standard and quality when they are not; and/or

      c.     advertising the Class Vehicles with the intent not to sell them as advertised.

1141.  Mercedes' scheme and concealment of the true characteristics of the Class Vehicles were material to the Montana Class members, and Mercedes misrepresented, concealed, or failed to disclose the truth with the intention that the Montana Class members would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the Montana Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1142.   The Montana Class members had no way of discerning that Mercedes' representations were false and misleading, or otherwise learning the facts that Mercedes had concealed or failed to disclose.

1143.   Mercedes had an ongoing duty to the Montana Class members to refrain from unfair and deceptive practices under the Montana CPA in the course of its business. Specifically, Mercedes owed the Montana Class members a duty to disclose all the material facts concerning the Class Vehicles because it possessed exclusive knowledge, it intentionally concealed such material facts from the Montana Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1144.   The Montana Class members suffered ascertainable loss and actual damages as a direct and proximate result of Mercedes' concealment, misrepresentations, and/or failure to disclose material information.

1145.   Pursuant to MONT. CODE ANN. §30-14-133, the Montana Class members seek an order awarding damages, treble damages, and any other just and proper relief available under the Montana CPA.

## MONTANA COUNT II

### BREACH OF IMPLIED WARRANTIES
### (MONT. CODE ANN. §§30-2-314 AND 30-2A-212)

1146.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1147.   This Count is brought on behalf of the Montana Class.

1148.   Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under MONT. CODE ANN. §30-2-104(1), and a "seller" of the Class Vehicles under §30-2-103(1)(d).

1149.   With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under MONT. CODE ANN. §30-2A-103(1)(p).

1150.   The Class Vehicles are and were at all relevant times "goods" within the meaning of MONT. CODE ANN. §§30-2-105(1) and 30-2A-103(1)(h)

1151.   A warranty that the Class Vehicles were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to MONT. CODE ANN. §§30-2-314 and 30-2A-212.

1152.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose as a result of their inherent defects, as detailed above.   In addition, because any warranty repairs or replacements offered by Mercedes cannot cure the defect in the Class Vehicles, they fail to cure Mercedes' breach of implied warranties.

1153.   As a direct and proximate result of Mercedes' breach of its implied warranties, the Montana Class members have been damaged in an amount to be determined at trial.

1154.   Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

### MONTANA COUNT III

### BREACH OF EXPRESS WARRANTY
### (MONT. CODE ANN. §§30-2-313 AND 30-2A-210)

1155.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1156. This Count is brought on behalf of the Montana Class.

1157. Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under MONT. CODE ANN. §30-2-104(1), and a "seller" of the Class Vehicles under §30-2-103(1)(d).

1158. With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under MONT. CODE ANN. §30-2A-103(1)(p).

1159. The Class Vehicles are and were at all relevant times "goods" within the meaning of MONT. CODE ANN. §§30-2-105(1) and 30-2A-103(1)(h).

1160. In connection with the purchase or lease of all Class Vehicles, Mercedes provided the Montana Class members with a written warranty covering defects in materials and workmanship of the Class Vehicles for four years, as detailed above. In addition, Mercedes' various oral and written representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles constituted express warranties to the Montana Class members.

1161. Mercedes' warranties formed a basis of the bargain that was reached when the Montana Class members purchased or leased their Class Vehicles.

1162. Mercedes breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Montana Class members with Class Vehicles containing defects in the materials and workmanship with regard to the paint and paint process used on the Class Vehicles that were never disclosed to the Montana Class members; (b) failing to repair or replace the defective Class Vehicles at no cost within the four-year warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d)

supplying products and materials that failed to conform to the representations made by Mercedes.

1163.  The Montana Class members have given Mercedes a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Mercedes can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

1164.  Thus, Mercedes' four-year written warranty fails of its essential purpose and the recovery of the Montana Class members is not limited to its remedies.

1165.  Accordingly, the Montana Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Montana Class members of the purchase or lease price of all Class Vehicles currently owned and leased, and for such other incidental and consequential damages as allowed.

1166.  As a direct and proximate result of Mercedes' breach of its express warranty, the Montana Class members have been damaged in an amount to be determined at trial.

1167.  Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

**CC.    Claims Brought on Behalf of the Nebraska Class**

**NEBRASKA COUNT I**

**VIOLATION OF THE NEBRASKA CONSUMER PROTECTION ACT
(NEB. REV. STAT. §59-1601, *ET SEQ.*)**

1168.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1169.  This Count is brought on behalf of the Nebraska Class.

1170.   Mercedes and the Nebraska Class members are "persons" under the Nebraska Consumer Protection Act ("Nebraska CPA"), NEB. REV. STAT. §59-1601(1).  Mercedes' actions set forth herein occurred in the conduct of trade or commerce as defined under NEB. REV. STAT §59-1601(2).

1171.   The Nebraska CPA prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."  NEB. REV. STAT §59-1602.

1172.   In the course of its business, Mercedes violated the Nebraska CPA by knowingly misrepresenting and intentionally concealing material facts regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles, as detailed above.  Specifically, in marketing, offering for sale/lease, and selling/leasing the defective Class Vehicles, Mercedes engaged in one or more of the following unfair or deceptive acts or practices which are proscribed by the Nebraska CPA:

> a.   representing that the Class Vehicles have characteristics or benefits that they do not have;

> b.   representing that the Class Vehicles are of a particular standard and quality when they are not; and/or

> c.   advertising the Class Vehicles with the intent not to sell them as advertised.

1173.  Mercedes' scheme and concealment of the true characteristics of the Class Vehicles were material to the Nebraska Class members, and Mercedes misrepresented, concealed, or failed to disclose the truth with the intention that the Nebraska Class members would rely on the misrepresentations, concealments, and omissions.  Had they known the truth,

the Nebraska Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1174.   The Nebraska Class members had no way of discerning that Mercedes' representations were false and misleading, or otherwise learning the facts that Mercedes had concealed or failed to disclose.

1175.   Mercedes had an ongoing duty to the Nebraska Class members to refrain from unfair and deceptive practices under the Nebraska CPA in the course of its business. Specifically, Mercedes owed the Nebraska Class members a duty to disclose all the material facts concerning the Class Vehicles because it possessed exclusive knowledge, it intentionally concealed such material facts from the Nebraska Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1176.   The Nebraska Class members suffered ascertainable loss and actual damages as a direct and proximate result of Mercedes' concealment, misrepresentations, and/or failure to disclose material information.

1177.   Pursuant to NEB. REV. STAT §59-1609, the Nebraska Class members seek an order awarding damages, treble damages, and any other just and proper relief available under the Nebraska CPA.

## NEBRASKA COUNT II

## BREACH OF IMPLIED WARRANTIES
## (NEB. REV. STAT. UCC §§2-314 AND 2A-212)

1178.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1179.   This Count is brought on behalf of the Nebraska Class.

1180.   Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under NEB. REV. STAT UCC §2-104(1), and a "seller" of the Class Vehicles under §2-103(1)(d).

1181.   With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under NEB. REV. STAT UCC §2A-103(1)(p).

1182.   The Class Vehicles are and were at all relevant times "goods" within the meaning of NEB. REV. STAT UCC §§2-105(1) and 2A-103(1)(h).

1183.   A warranty that the Class Vehicles were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to NEB. REV. STAT UCC §§2-314 and 2A-212.

1184.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose as a result of their inherent defects, as detailed above.   In addition, because any warranty repairs or replacements offered by Mercedes cannot cure the defect in the Class Vehicles, they fail to cure Mercedes' breach of implied warranties.

1185.   As a direct and proximate result of Mercedes' breach of its implied warranties, the Nebraska Class members have been damaged in an amount to be determined at trial.

1186.   Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

## NEBRASKA COUNT III

### BREACH OF EXPRESS WARRANTY
### (NEB. REV. STAT. UCC §§2-313 AND 2A-210)

1187.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1188.   This Count is brought on behalf of the Nebraska Class.

1189.   Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under NEB. REV. STAT. UCC §2-104(1), and a "seller" of the Class Vehicles under §2-103(1)(d).

1190.   With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under NEB. REV. STAT UCC §2A-103(1)(p).

1191.   The Class Vehicles are and were at all relevant times "goods" within the meaning of NEB. REV. STAT. UCC §§2-105(1) and 2A-103(1)(h).

1192.   In connection with the purchase or lease of all Class Vehicles, Mercedes provided the Nebraska Class members with a written warranty covering defects in materials and workmanship of the Class Vehicles for four years, as detailed above.   In addition, Mercedes' various oral and written representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles constituted express warranties to the Nebraska Class members.

1193.   Mercedes' warranties formed a basis of the bargain that was reached when the Nebraska Class members purchased or leased their Class Vehicles.

1194.   Mercedes breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Nebraska Class members with Class Vehicles containing defects in the materials and workmanship with regard to the paint and paint process used on the Class Vehicles that were never disclosed to the Nebraska Class members; (b) failing to repair or replace the defective Class Vehicles at no cost within the four-year warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Mercedes.

1195.   The Nebraska Class members have given Mercedes a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Mercedes can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

1196.   Thus, Mercedes' four-year written warranty fails of its essential purpose and the recovery of the Nebraska Class members is not limited to its remedies.

1197.   Accordingly, the Nebraska Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Nebraska Class members of the purchase or lease price of all Class Vehicles currently owned and leased, and for such other incidental and consequential damages as allowed.

1198.   As a direct and proximate result of Mercedes' breach of its express warranty, the Nebraska Class members have been damaged in an amount to be determined at trial.

1199.   Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

**DD.    Claims Brought on Behalf of the Nevada Class**

**NEVADA COUNT I**

**VIOLATION OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT**
**(NEV. REV. STAT. §598.0903, *ET SEQ.*)**

1200.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1201.   This Count is brought on behalf of the Nevada Class.

1202.   The Nevada Deceptive Trade Practices Act ("Nevada DTPA"), NEV. REV. STAT. §598.0903, *et seq.*, prohibits deceptive trade practices.  NEV. REV. STAT. §598.0915 provides that

a person engages in a "deceptive trade practice" if, in the course of business or occupation, the person: "[]Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith; … [] Represents that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model; … [] Advertises goods or services with intent not to sell or lease them as advertised; … [or] Knowingly makes any other false representation in a transaction." Nev. Rev. Stat. §598.0915(5), (7), (9), (15).

1203.   In the course of its business, Mercedes violated the Nevada DTPA by knowingly misrepresenting and intentionally concealing material facts regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles, as detailed above.  Specifically, in marketing, offering for sale/lease, and selling/leasing the defective Class Vehicles, Mercedes engaged in one or more of the following unfair or deceptive acts or practices which are proscribed by the Nevada DTPA:

    a.    representing that the Class Vehicles have characteristics or benefits that they do not have;

    b.    representing that the Class Vehicles are of a particular standard and quality when they are not; and/or

    c.    advertising the Class Vehicles with the intent not to sell them as advertised.

1204.  Mercedes' scheme and concealment of the true characteristics of the Class Vehicles were material to the Nevada Class members, and Mercedes misrepresented, concealed,

or failed to disclose the truth with the intention that the Nevada Class members would rely on the misrepresentations, concealments, and omissions. Had they known the truth, the Nevada Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1205. The Nevada Class members had no way of discerning that Mercedes' representations were false and misleading, or otherwise learning the facts that Mercedes had concealed or failed to disclose.

1206. Mercedes had an ongoing duty to the Nevada Class members to refrain from unfair and deceptive practices under the Nevada DTPA in the course of its business. Specifically, Mercedes owed the Nevada Class members a duty to disclose all the material facts concerning the Class Vehicles because it possessed exclusive knowledge, it intentionally concealed such material facts from the Nevada Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1207. The Nevada Class members suffered ascertainable loss and actual damages as a direct and proximate result of Mercedes' concealment, misrepresentations, and/or failure to disclose material information.

1208. Pursuant to NEV. REV. STAT. §41.600, the Nevada Class members seek an order awarding damages, treble damages, and any other just and proper relief available under the Nevada DTPA.

## NEVADA COUNT II

## BREACH OF IMPLIED WARRANTIES
### (NEV. REV. STAT. §§104.2314 AND 104A.2212)

1209.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1210.   This Count is brought on behalf of the Nevada Class.

1211.   Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under NEV. REV. STAT. §104.2104(1), and a "seller" of the Class Vehicles under §104.2103(1)(c).

1212.   With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under NEV. REV. STAT §104A.2103(1)(p).

1213.   The Class Vehicles are and were at all relevant times "goods" within the meaning of NEV. REV. STAT. §§104.2105(1) and 104A.2103(1)(h).

1214.   A warranty that the Class Vehicles were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to NEV. REV. STAT. §§104.2314 and 104A.2212.

1215.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose as a result of their inherent defects, as detailed above.   In addition, because any warranty repairs or replacements offered by Mercedes cannot cure the defect in the Class Vehicles, they fail to cure Mercedes' breach of implied warranties.

1216.   As a direct and proximate result of Mercedes' breach of its implied warranties, the Nevada Class members have been damaged in an amount to be determined at trial.

1217.   Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

### NEVADA COUNT III

### BREACH OF EXPRESS WARRANTY
### (NEV. REV. STAT. §§104.2313 AND 104A.2210)

1218.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1219.   This Count is brought on behalf of the Nevada Class.

1220.   Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under NEV. REV. STAT. §104.2104(1), and a "seller" of the Class Vehicles under §104.2103(1)(c).

1221.   With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under NEV. REV. STAT §104A.2103(1)(p).

1222.   The Class Vehicles are and were at all relevant times "goods" within the meaning of NEV. REV. STAT. §§104.2105(1) and 104A.2103(1)(h).

1223.   In connection with the purchase or lease of all Class Vehicles, Mercedes provided the Nevada Class members with a written warranty covering defects in materials and workmanship of the Class Vehicles for four years, as detailed above. In addition, Mercedes' various oral and written representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles constituted express warranties to the Nevada Class members.

1224.   Mercedes' warranties formed a basis of the bargain that was reached when the Nevada Class members purchased or leased their Class Vehicles.

1225.  Mercedes breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Nevada Class members with Class Vehicles containing defects in the materials and workmanship with regard to the paint and paint process used on the Class Vehicles that were never disclosed to the Nevada Class members; (b) failing to repair or replace the defective Class Vehicles at no cost within the four-year warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Mercedes.

1226.  The Nevada Class members have given Mercedes a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Mercedes can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

1227.  Thus, Mercedes' four-year written warranty fails of its essential purpose and the recovery of the Nevada Class members is not limited to its remedies.

1228.  Accordingly, the Nevada Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Nevada Class members of the purchase or lease price of all Class Vehicles currently owned and leased, and for such other incidental and consequential damages as allowed.

1229.  As a direct and proximate result of Mercedes' breach of its express warranty, the Nevada Class members have been damaged in an amount to be determined at trial.

1230.  Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

**EE.    Claims Brought on Behalf of the New Hampshire Class**

**NEW HAMPSHIRE COUNT I**

**VIOLATION OF THE N.H. CONSUMER PROTECTION ACT**
**(N.H. REV. STAT. ANN. §358-A:1, *ET SEQ.*)**

1231.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1232.   This Count is brought on behalf of the New Hampshire Class.

1233.   Mercedes and the New Hampshire Class members are "persons" under the New Hampshire Consumer Protection Act ("New Hampshire CPA"), N.H. REV. STAT. ANN. §358-A:1(I).   Mercedes' actions as set forth herein occurred in the conduct of trade or commerce as defined under N.H. REV. STAT. ANN. §358-A:1(II).

1234.   The New Hampshire CPA prohibits a person, in the conduct of any trade or commerce, from using "any unfair or deceptive act or practice," including "but … not limited to, the following: … [r]epresenting that goods or services have … characteristics, … uses, benefits, or quantities that they do not have; … [r]epresenting that goods or services are of a particular standard, quality, or grade, … if they are of another; … [and] [] [a]dvertising goods or services with intent not to sell them as advertised."  N.H. REV. STAT. ANN. §358A:2(V), (VII), and (IX).

1235.   In the course of its business, Mercedes violated the New Hampshire CPA by knowingly misrepresenting and intentionally concealing material facts regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles, as detailed above.   Specifically, in marketing, offering for sale/lease, and selling/leasing the defective Class Vehicles, Mercedes engaged in one or more of the following unfair or deceptive acts or practices which are proscribed by the New Hampshire CPA:

a.    representing that the Class Vehicles have characteristics or benefits that they do not have;

b.    representing that the Class Vehicles are of a particular standard and quality when they are not; and/or

c.    advertising the Class Vehicles with the intent not to sell them as advertised.

1236.  Mercedes' scheme and concealment of the true characteristics of the Class Vehicles were material to the New Hampshire Class members, and Mercedes misrepresented, concealed, or failed to disclose the truth with the intention that the New Hampshire Class members would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the New Hampshire Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1237.  The New Hampshire Class members had no way of discerning that Mercedes' representations were false and misleading, or otherwise learning the facts that Mercedes had concealed or failed to disclose.

1238.  Mercedes had an ongoing duty to the New Hampshire Class members to refrain from unfair and deceptive practices under the New Hampshire CPA in the course of its business. Specifically, Mercedes owed the New Hampshire Class members a duty to disclose all the material facts concerning the Class Vehicles because it possessed exclusive knowledge, it intentionally concealed such material facts from the New Hampshire Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1239.   The New Hampshire Class members suffered ascertainable loss and actual damages as a direct and proximate result of Mercedes' concealment, misrepresentations, and/or failure to disclose material information.

1240.   Pursuant to N.H. Rev. Stat. Ann. §358A:10, the New Hampshire Class members seek an order awarding damages, treble damages, and any other just and proper relief available under the New Hampshire CPA.

### NEW HAMPSHIRE COUNT II

### BREACH OF IMPLIED WARRANTIES
### (N.H. REV. STAT. ANN. §§382-A:2-314 AND 382-A:2A-212)

1241.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1242.   This Count is brought on behalf of the New Hampshire Class.

1243.   Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under N.H. Rev. Stat. Ann. §382-A:2-104(1), and a "seller" of the Class Vehicles under §382-A:2-103(1)(d).

1244.   With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under N.H. Rev. Stat. Ann. §382-A:2A-103(1)(p).

1245.   The Class Vehicles are and were at all relevant times "goods" within the meaning of N.H. Rev. Stat. Ann. §§382-A:2-105(1) and 382-A:2A-103(1)(h).

1246.   A warranty that the Class Vehicles were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to N.H. Rev. Stat. Ann. §§382-A:2-314 and 382-A:2A-212.

1247.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose as a result of their inherent defects,

as detailed above.   In addition, because any warranty repairs or replacements offered by Mercedes cannot cure the defect in the Class Vehicles, they fail to cure Mercedes' breach of implied warranties.

1248.   As a direct and proximate result of Mercedes' breach of its implied warranties, the New Hampshire Class members have been damaged in an amount to be determined at trial.

1249.   Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

### NEW HAMPSHIRE COUNT III

### BREACH OF EXPRESS WARRANTY
### (N.H. REV. STAT. ANN. §§382-A:2-313 AND 382-A:2A-210)

1250.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1251.   This Count is brought on behalf of the New Hampshire Class.

1252.   Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under N.H. REV. STAT. ANN. §382-A:2-104(1), and a "seller" of the Class Vehicles under §382-A:2-103(1)(d).

1253.   With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under N.H. REV. STAT. ANN. §382-A:2A-103(1)(p).

1254.   The Class Vehicles are and were at all relevant times "goods" within the meaning of N.H. REV. STAT. ANN. §§382-A:2-105(1) and 382-A:2A-103(1)(h).

1255.   In connection with the purchase or lease of all Class Vehicles, Mercedes provided the New Hampshire Class members with a written warranty covering defects in materials and workmanship of the Class Vehicles for four years, as detailed above.   In addition, Mercedes' various oral and written representations regarding the quality of the Class Vehicles and the

quality and benefits of the paint and paint process used on the Class Vehicles constituted express warranties to the New Hampshire Class members.

1256.   Mercedes' warranties formed a basis of the bargain that was reached when the New Hampshire Class members purchased or leased their Class Vehicles.

1257.   Mercedes breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the New Hampshire Class members with Class Vehicles containing defects in the materials and workmanship with regard to the paint and paint process used on the Class Vehicles that were never disclosed to the New Hampshire Class members; (b) failing to repair or replace the defective Class Vehicles at no cost within the four-year warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Mercedes.

1258.   The New Hampshire Class members have given Mercedes a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Mercedes can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

1259.   Thus, Mercedes' four-year written warranty fails of its essential purpose and the recovery of the New Hampshire Class members is not limited to its remedies.

1260.   Accordingly, the New Hampshire Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the New Hampshire Class members of the purchase or lease price of all Class Vehicles currently owned and leased, and for such other incidental and consequential damages as allowed.

1261.   As a direct and proximate result of Mercedes' breach of its express warranty, the New Hampshire Class members have been damaged in an amount to be determined at trial.

1262.   Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

**FF.   Claims Brought on Behalf of the New Jersey Class**

### NEW JERSEY COUNT I

### VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT
### (N.J. STAT. ANN. §56:8-1, *ET SEQ.*)

1263.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1264.   Plaintiff Robert Ponzio (for the purposes of this section, "Plaintiff") brings this claim on behalf of himself and the New Jersey Class.

1265.   Mercedes, Plaintiff, and the New Jersey Class members are "persons" within the meaning of N.J. STAT. ANN. §56:8-1(d).  Mercedes engaged in "sales" of "merchandise" within the meaning of §56:8-1(c) and (e).

1266.   The New Jersey Consumer Fraud Act ("New Jersey CFA") makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby."  N.J. STAT. ANN. §56:8-2.

1267.   In the course of its business, Mercedes violated the New Jersey CFA by knowingly misrepresenting and intentionally concealing material facts regarding the quality of

the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles, as detailed above.    Specifically, in marketing, offering for sale/lease, and selling/leasing the defective Class Vehicles, Mercedes engaged in one or more of the following unfair or deceptive acts or practices which are proscribed by the New Jersey CFA:

     a.    representing that the Class Vehicles have characteristics or benefits that they do not have;

     b.    representing that the Class Vehicles are of a particular standard and quality when they are not; and/or

     c.    advertising the Class Vehicles with the intent not to sell them as advertised.

1268.  Mercedes' scheme and concealment of the true characteristics of the Class Vehicles were material to Plaintiff and the New Jersey Class members, and Mercedes misrepresented, concealed, or failed to disclose the truth with the intention that Plaintiff and the New Jersey Class members would rely on the misrepresentations, concealments, and omissions. Had they known the truth, Plaintiff and the New Jersey Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1269.  Plaintiff and the New Jersey Class members had no way of discerning that Mercedes' representations were false and misleading, or otherwise learning the facts that Mercedes had concealed or failed to disclose.

1270.  Mercedes had an ongoing duty to Plaintiff and the New Jersey Class members to refrain from unfair and deceptive practices under the New Jersey CFA in the course of its business.  Specifically, Mercedes owed Plaintiff and the New Jersey Class members a duty to disclose all the material facts concerning the Class Vehicles because it possessed exclusive

knowledge, it intentionally concealed such material facts from Plaintiff and the New Jersey Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1271.   Plaintiff and the New Jersey Class members suffered ascertainable loss and actual damages as a direct and proximate result of Mercedes' concealment, misrepresentations, and/or failure to disclose material information.

1272.   Pursuant to N.J. STAT. ANN. §56:8-19, Plaintiff and the New Jersey Class members seek an order awarding damages, treble damages, and any other just and proper relief available under the New Jersey CFA.

## NEW JERSEY COUNT II

## BREACH OF IMPLIED WARRANTIES
### (N.J. STAT. ANN. §§12A:2-314 AND 12A:2A-212)

1273.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1274.   Plaintiff Robert Ponzio (for the purposes of this section, "Plaintiff") brings this claim on behalf of himself and the New Jersey Class.

1275.   Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under N.J. STAT. ANN. §12A:2-104(1), and a "seller" of the Class Vehicles under §12A:2-103(1)(d).

1276.   With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under N.J. STAT. ANN. §12A:2A-103(1)(p).

1277.   The Class Vehicles are and were at all relevant times "goods" within the meaning of N.J. STAT. ANN. §§12A:2-105(1) and 12A:2A-103(1)(h).

1278.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose as a result of their inherent defects, as detailed above.   In addition, because any warranty repairs or replacements offered by Mercedes cannot cure the defect in the Class Vehicles, they fail to cure Mercedes' breach of implied warranties.

1279.   As a direct and proximate result of Mercedes' breach of its implied warranties, Plaintiff and the New Jersey Class members have been damaged in an amount to be determined at trial.

1280.   Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

### NEW JERSEY COUNT III

### BREACH OF EXPRESS WARRANTY
### (N.J. STAT. ANN. §§12A:2-313 AND 12A:2A-210)

1281.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1282.   Plaintiff Robert Ponzio (for the purposes of this section, "Plaintiff") brings this claim on behalf of himself and the New Jersey Class.

1283.   Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under N.J. STAT. ANN. §12A:2-104(1), and a "seller" of the Class Vehicles under §12A:2-103(1)(d).

1284.   With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under N.J. STAT. ANN. §12A:2A-103(1)(p).

1285.   The Class Vehicles are and were at all relevant times "goods" within the meaning of N.J. STAT. ANN. §§12A:2-105(1) and 12A:2A-103(1)(h).

1286.   In connection with the purchase or lease of all Class Vehicles, Mercedes provided Plaintiff and the New Jersey Class members with a written warranty covering defects in materials and workmanship of the Class Vehicles for four years, as detailed above.  In addition, Mercedes' various oral and written representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles constituted express warranties to Plaintiff and the New Jersey Class members.

1287.   Mercedes' warranties formed a basis of the bargain that was reached when Plaintiff and the New Jersey Class members purchased or leased their Class Vehicles.

1288.   Mercedes breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing Plaintiff and the New Jersey Class members with Class Vehicles containing defects in the materials and workmanship with regard to the paint and paint process used on the Class Vehicles that were never disclosed to the New Jersey Class members; (b) failing to repair or replace the defective Class Vehicles at no cost within the four-year warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Mercedes.

1289.   Plaintiff and the New Jersey Class members have given Mercedes a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Mercedes can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

1290.   Thus, Mercedes' four-year written warranty fails of its essential purpose and the recovery of Plaintiff and the New Jersey Class members is not limited to its remedies.

1291.   Accordingly, Plaintiff and the New Jersey Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and the New Jersey Class members of the purchase or lease price of all Class Vehicles currently owned and leased, and for such other incidental and consequential damages as allowed.

1292.   As a direct and proximate result of Mercedes' breach of express warranty, Plaintiff and the New Jersey Class members have been damaged in an amount to be determined at trial.

1293.   Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

**GG.    Claims Brought on Behalf of the New Mexico Class**

**NEW MEXICO COUNT I**

**VIOLATIONS OF THE NEW MEXICO UNFAIR
TRADE PRACTICES ACT
(N.M. STAT. ANN. §57-12-1, *ET SEQ.*)**

1294.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1295.   This Count is brought on behalf of the New Mexico Class.

1296.   Mercedes and the New Mexico Class members are "person[s]" under the New Mexico Unfair Trade Practices Act ("New Mexico UTPA"), N.M. STAT. ANN. §57-12-2.

1297.   Mercedes' actions as set forth herein occurred in the conduct of trade or commerce as defined under N.M. STAT. ANN. §57-12-2.

1298.   The New Mexico UTPA makes unlawful "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services … by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person,"

including, but not limited to, "failing to state a material fact if doing so deceives or tends to deceive." N.M. STAT. ANN. §57-12- 2(D). Mercedes' acts and omissions described herein constitute unfair or deceptive acts or practices under N.M. STAT. ANN. §57-12-2(D). In addition, Mercedes' actions constitute unconscionable actions under N.M. STAT. ANN. §57-12-2(E), since they took advantage of the lack of knowledge, ability, experience, and capacity of the New Mexico Class members to a grossly unfair degree.

1299. In the course of Mercedes' business, Mercedes concealed the Paint Defect in Class Vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Accordingly, Mercedes engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

1300. Mercedes knew or should have known of the Paint Defect inherent in the Class Vehicles.

1301. Mercedes had a duty to disclose the existence of the Paint Defect in the Class Vehicles. By failing to disclose and by actively concealing the Paint Defect in Class Vehicles, by marketing its vehicles as durable and being of high quality, and by presenting itself as a

reputable manufacturer that valued quality and stood behind its vehicles after they were sold, Mercedes engaged in deceptive business practices in violation of the New Mexico UTPA.

1302.  Mercedes' unfair or deceptive acts or practices were likely to, and did, in fact, deceive reasonable consumers, including the New Mexico Class members, about the quality of the Class Vehicles and Mercedes brand, and the true value of the Class Vehicles.

1303.  The New Mexico Class members reasonably relied upon Mercedes' false misrepresentations and unfair or deceptive acts or practices.  They had no way of knowing that Mercedes' representations were false and gravely misleading.  As alleged herein, Mercedes engaged in extremely sophisticated methods of deception.  The New Mexico Class members did not, and could not, unravel Mercedes' deception on their own.

1304.  Mercedes intentionally and knowingly failed to disclose and misrepresented material facts regarding the Class Vehicles with intent to mislead the New Mexico Class.

1305.  Mercedes knew or should have known that its conduct violated the New Mexico UTPA.

1306.  Mercedes owed the New Mexico Class members a duty to disclose the defective condition of the Class Vehicles because Mercedes:

a.    possessed exclusive knowledge that the paint and paint process used on the Class Vehicles were defective;

b.    intentionally concealed the foregoing from the New Mexico Class members; and

c.    made incomplete representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used

on the Class Vehicles, while purposefully withholding material facts from the New Mexico Class members that contradicted these representations.

1307.  Mercedes' concealment of the Paint Defect in Class Vehicles was material to the New Mexico Class members.  A vehicle made by a reputable manufacturer of quality vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of inferior vehicles that conceals defects rather than promptly remedies them.

1308.  The New Mexico Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased these Class Vehicles and/or would have paid less, or would have taken other affirmative steps in light of the information concealed from them.  The New Mexico Class members' actions were justified.  Mercedes was in exclusive control of the material facts, and such facts were not generally known to the public or the New Mexico Class members.

1309.  Mercedes' actions as set forth above occurred in the conduct of trade or commerce.

1310.  Mercedes' unfair or deceptive acts or practices were likely to, and did, in fact, deceive reasonable consumers.

1311.  As a direct and proximate result of Mercedes' violations of the New Mexico UTPA, the New Mexico Class members have suffered injury-in-fact and/or actual damage.

1312.  The New Mexico Class members suffered ascertainable loss caused by Mercedes' misrepresentations and its failure to disclose material information.  Had they been aware of the Paint Defect in the Class Vehicles, the New Mexico Class members either would have paid less

for their vehicles or would not have purchased or leased them at all. The New Mexico Class members did not receive the benefit of their bargain as a result of Mercedes' misconduct.

1313.  The repairs offered and instituted by Mercedes are not adequate.

1314.  Pursuant to N.M. STAT. ANN. §57-12-10, the New Mexico Class members seek monetary relief against Mercedes for actual damages or $100, whichever is greater, in addition to treble damages.

1315.  The New Mexico Class members also seek declaratory relief, punitive damages, an order enjoining Mercedes' unfair, unlawful, and/or deceptive practices, and reasonable attorneys' fees and costs, as well as other proper and just relief under the New Mexico UTPA.

## NEW MEXICO COUNT II

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (N.M. STAT. ANN. §§55-2-314 AND 55-2A-212)

1316.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1317.  This Count is brought on behalf of the New Mexico Class.

1318.  Mercedes is and was at all relevant times a "merchant" with respect to motor vehicle sales under N.M. STAT. ANN. §55-2-104(1) and a "seller" of motor vehicles under §55-2-103(1)(d).

1319.  With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under N.M. STAT. ANN. §55-2A-103(1)(p).

1320.  The Class Vehicles are and were at all relevant times "goods" within the meaning of N.M. STAT. ANN. §§55-2-105(1) and 55-2A-103(1)(h).

1321.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.M. STAT. ANN. §§55-2-314 and 55-2A-212.

1322.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose as a result of their inherent defects, as detailed above.   In addition, because any warranty repairs or replacements offered by Mercedes cannot cure the defect in the Class Vehicles, they fail to cure Mercedes' breach of implied warranties.

1323.  Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

1324.   As a direct and proximate result of Mercedes' breach of the implied warranty of merchantability, the New Mexico Class members have been damaged in an amount to be proven at trial.

## NEW MEXICO COUNT III

### BREACH OF EXPRESS WARRANTY
### (N.M. STAT. ANN. §§55-2-313 AND 55-2A-210)

1325.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1326.   This Count is brought on behalf of the New Mexico Class.

1327.   Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under N.M. STAT. ANN. §55-2-104(1), and a "seller" of the Class Vehicles under §55-2-103(1)(d).

1328.   With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under N.M. STAT. ANN. §55-2A-103(1)(p).

1329.   The Class Vehicles are and were at all relevant times "goods" within the meaning of N.M. STAT. ANN. §§55-2-105(1) and 55-2A-103(1)(h).

1330.   In connection with the purchase or lease of all Class Vehicles, Mercedes provided the New Mexico Class members with a written warranty covering defects in materials and workmanship of the Class Vehicles for four years, as detailed above.  In addition, Mercedes' various oral and written representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles constituted express warranties to the New Mexico Class members.

1331.   Mercedes' warranties formed a basis of the bargain that was reached when the New Mexico Class members purchased or leased their Class Vehicles.

1332.   Mercedes breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the New Mexico Class members with Class Vehicles containing defects in the materials and workmanship with regard to the paint and paint process used on the Class Vehicles that were never disclosed to the New Mexico Class members; (b) failing to repair or replace the defective Class Vehicles at no cost within the four-year warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Mercedes.

1333.   The New Mexico Class members have given Mercedes a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Mercedes can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

1334.   Thus, Mercedes' four-year written warranty fails of its essential purpose and the recovery of the New Mexico Class members is not limited to its remedies.

1335.   Accordingly, the New Mexico Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the New Mexico Class members of the purchase or lease price of all Class Vehicles currently owned and leased, and for such other incidental and consequential damages as allowed.

1336.   As a direct and proximate result of Mercedes' breach of its express warranty, the New Mexico Class members have been damaged in an amount to be determined at trial.

1337.   Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

**HH.    Claims Brought on Behalf of the New York Class**

**NEW YORK COUNT I**

**DECEPTIVE ACTS OR PRACTICES IN VIOLATION OF N.Y. LAW
(N.Y. GEN. BUS. LAW §349)**

1338.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1339.   Plaintiff Hadiya Nelthrope (for the purposes of this section, "Plaintiff") brings this claim on behalf of herself and the New York Class.

1340.   Plaintiff and the New York Class members are "persons" within the meaning of New York General Business Law ("New York GBL"), N.Y. GEN. BUS. LAW §349(h).   Mercedes is a "person," "firm," "corporation," or "association" within the meaning of N.Y. GEN. LAW §349.

1341.   The New York GBL makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce."   N.Y. GEN. BUS. LAW §349.

1342.   In the course of its business, Mercedes violated the New York GBL by knowingly misrepresenting and intentionally concealing material facts regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles, as detailed above.   Specifically, in marketing, offering for sale/lease, and selling/leasing the defective Class Vehicles, Mercedes engaged in one or more of the following unfair or deceptive acts or practices which are proscribed by the New York GBL:

> a.    representing that the Class Vehicles have characteristics or benefits that they do not have;
>
> b.    representing that the Class Vehicles are of a particular standard and quality when they are not; and/or
>
> c.    advertising the Class Vehicles with the intent not to sell them as advertised.

1343.  Mercedes' scheme and concealment of the true characteristics of the Class Vehicles were material to Plaintiff and the New York Class, and Mercedes misrepresented, concealed, or failed to disclose the truth with the intention that Plaintiff and the New York Class members would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, Plaintiff and the New York Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1344.  Plaintiff and the New York Class members had no way of discerning that Mercedes' representations were false and misleading, or otherwise learning the facts that Mercedes had concealed or failed to disclose.

1345.  Mercedes had an ongoing duty to Plaintiff and the New York Class members to refrain from unfair and deceptive practices under the New York GBL in the course of its

business.  Specifically, Mercedes owed Plaintiff and the New York Class members a duty to disclose all the material facts concerning the Class Vehicles because it possessed exclusive knowledge, it intentionally concealed such material facts from Plaintiff and the New York Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1346.   Plaintiff and the New York Class members suffered ascertainable loss and actual damages as a direct and proximate result of Mercedes' concealment, misrepresentations, and/or failure to disclose material information.

1347.  Pursuant to N.Y. GEN. BUS. LAW §349, Plaintiff and the New York Class members seek an order awarding damages, treble damages, and any other just and proper relief available under the New York GBL.

## NEW YORK COUNT II

### VIOLATION OF THE NEW YORK FALSE ADVERTISING ACT
### (N.Y. GEN. BUS. LAW §350)

1348.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1349.   Plaintiff Hadiya Nelthrope (for the purposes of this section, "Plaintiff") brings this claim on behalf of herself and the New York Class.

1350.   Mercedes was engaged in the "conduct of business, trade or commerce" within the meaning of N.Y. GEN. BUS. LAW §350.

1351.   N.Y. GEN. BUS. LAW §350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce."  False advertising includes "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect," taking into account "the

extent to which the advertising fails to reveal facts material in light of … representations [made] with respect to the commodity. . ."  N.Y. GEN. BUS. LAW §350-a.

1352.   Mercedes caused to be made or disseminated through New York, through advertising, marketing, and other publications, statements that were untrue or misleading, and that were known, or which by the exercise of reasonable care should have been known, to Mercedes to be untrue and misleading to consumers including Plaintiff and the New York Class members.

1353.   Mercedes violated N.Y. GEN. BUS. LAW §350 because the misrepresentations and omissions regarding the Class Vehicles, as set forth above, were material and likely to deceive a reasonable consumer.

1354.   Plaintiff and the New York Class members suffered ascertainable loss and actual damages as a direct and proximate result of Mercedes' concealment, misrepresentations, and/or failure to disclose material information.

1355.   Pursuant to N.Y. GEN. BUS. LAW §350-e, Plaintiff and the New York Class members seek monetary relief against Mercedes measured as the greater of: (a) actual damages in an amount to be determined at trial; and (b) statutory damages in the amount of $500 for each of Plaintiff and the New York Class members.  Because Mercedes' conduct was committed willfully and knowingly, Plaintiff and the New York Class members are entitled to recover three times actual damages, up to $10,000 each.

### NEW YORK COUNT III

### BREACH OF IMPLIED WARRANTIES
### (N.Y. U.C.C. LAW §§2-314 AND 2A-212)

1356.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1357.   Plaintiff Hadiya Nelthrope (for the purposes of this section, "Plaintiff") brings this claim on behalf of herself and the New York Class.

1358.   Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under N.Y. U.C.C. LAW §2-104(1), and a "seller" of the Class Vehicles under §2-103(1)(d).

1359.   With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under N.Y. U.C.C. LAW §2A-103(1)(p).

1360.   The Class Vehicles are and were at all relevant times "goods" within the meaning of N.Y. U.C.C. LAW §§2-105(1) and 2A-103(1)(h).

1361.   A warranty that the Class Vehicles were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to N.Y. U.C.C. LAW §§2-314 and 2A-212.

1362.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose as a result of their inherent defects, as detailed above.   In addition, because any warranty repairs or replacements offered by Mercedes cannot cure the defect in the Class Vehicles, they fail to cure Mercedes' breach of implied warranties.

1363.   As a direct and proximate result of Mercedes' breach of its implied warranties, Plaintiff and the New York Class members have been damaged in an amount to be determined at trial.

1364.   Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

## NEW YORK COUNT IV

## BREACH OF EXPRESS WARRANTY
### (N.Y. U.C.C. LAW §§2-313 AND 2A-210)

1365.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1366.   Plaintiff Hadiya Nelthrope (for the purposes of this section, "Plaintiff") brings this claim on behalf of herself and the New York Class.

1367.   Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under N.Y. U.C.C. LAW §2-104(1), and a "seller" of the Class Vehicles under §2-103(1)(d).

1368.   With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under N.Y. U.C.C. LAW §2A-103(1)(p).

1369.   The Class Vehicles are and were at all relevant times "goods" within the meaning of N.Y. U.C.C. LAW §§2-105(1) and 2A-103(1)(h).

1370.   In connection with the purchase or lease of all Class Vehicles, Mercedes provided Plaintiff and the New York Class members with a written warranty covering defects in materials and workmanship of the Class Vehicles for four years, as detailed above.  In addition, Mercedes' various oral and written representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles constituted express warranties to Plaintiff and the New York Class members.

1371.   Mercedes' warranties formed a basis of the bargain that was reached when Plaintiff and the New York Class members purchased or leased their Class Vehicles.

1372.   Mercedes breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing Plaintiff and the New York Class members

with Class Vehicles containing defects in the materials and workmanship with regard to the paint and paint process used on the Class Vehicles that were never disclosed to Plaintiff and the New York Class members; (b) failing to repair or replace the defective Class Vehicles at no cost within the four-year warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Mercedes.

1373.  Plaintiff and the New York Class members have given Mercedes a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Mercedes can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

1374.  Thus, Mercedes' four-year written warranty fails of its essential purpose and the recovery of Plaintiff and the New York Class members is not limited to their remedies.

1375.  Accordingly, Plaintiff and the New York Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and the New York Class members of the purchase or lease price of all Class Vehicles currently owned and leased, and for such other incidental and consequential damages as allowed.

1376.  As a direct and proximate result of Mercedes' breach of express warranty, Plaintiff and the New York Class members have been damaged in an amount to be determined at trial.

1377.  Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

## II.    Claims Brought on Behalf of the North Carolina Class

### NORTH CAROLINA COUNT I

### VIOLATION OF NORTH CAROLINA'S UNFAIR
### AND DECEPTIVE ACTS AND PRACTICES ACT
### (N.C. GEN. STAT. §75-1.1, *ET SEQ.*)

1378.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1379.    Plaintiff Robert Mull (for the purposes of this section, "Plaintiff") brings this claim on behalf of himself and the North Carolina Class.

1380.    North Carolina's Unfair and Deceptive Trade Practices Act, N.C. GEN. STAT. §75-1.1, *et seq*. ("North Carolina UDTPA"), prohibits a person from engaging in "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce[.]"  The North Carolina UDTPA provides a private right of action for any person injured "by reason of any act or thing done by any other person, firm or corporation in violation of" the North Carolina UDTPA.  N.C. GEN. STAT. §75-16.

1381.    Mercedes' acts and practices complained of herein were performed in the course of Mercedes' trade or business and thus occurred in or affected "commerce," as defined in N.C. GEN. STAT. §75-1.1(b).

1382.    In the course of Mercedes' business, Mercedes concealed the Paint Defect in Class Vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.   Accordingly, Mercedes engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer,

and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

1383.   Mercedes knew or should have known of the Paint Defect inherent in the Class Vehicles.

1384.   Mercedes had a duty to disclose the existence of the Paint Defect in the Class Vehicles.  By failing to disclose and by actively concealing the Paint Defect in Class Vehicles, by marketing its vehicles as durable and being of high quality, and by presenting itself as a reputable manufacturer that valued quality and stood behind its vehicles after they were sold, Mercedes engaged in deceptive business practices in violation of the North Carolina UDTPA.

1385.   Mercedes' unfair or deceptive acts or practices were likely to, and did, in fact, deceive reasonable consumers, including Plaintiff and the North Carolina Class members, about the quality of the Class Vehicles and Mercedes brand, and the true value of the Class Vehicles.

1386.   Plaintiff and the North Carolina Class members reasonably relied upon Mercedes' false misrepresentations and unfair or deceptive acts or practices.  They had no way of knowing that Mercedes' representations were false and gravely misleading.  As alleged herein, Mercedes engaged in extremely sophisticated methods of deception.  Plaintiff and the North Carolina Class members did not, and could not, unravel Mercedes' deception on their own.

1387.   Mercedes intentionally and knowingly failed to disclose and misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiff and the North Carolina Class members.

1388.   Mercedes knew or should have known that its conduct violated the North Carolina UDTPA.

1389.   Mercedes owed Plaintiff and the North Carolina Class members a duty to disclose the defective condition of the Class Vehicles because Mercedes:

> a.   possessed exclusive knowledge that the paint and paint process used on the Class Vehicles were defective;
>
> b.   intentionally concealed the foregoing from Plaintiff and the North Carolina Class members; and
>
> c.   made incomplete representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles, while purposefully withholding material facts from Plaintiff and the North Carolina Class members that contradicted these representations.

1390.   Mercedes' concealment of the Paint Defect in Class Vehicles was material to Plaintiff and the North Carolina Class members.  A vehicle made by a reputable manufacturer of quality vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of inferior vehicles that conceals defects rather than promptly remedies them.

1391.   Plaintiff and the North Carolina Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased these Class Vehicles and/or would have paid less, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff and the North Carolina Class members' actions were

justified.   Mercedes was in exclusive control of the material facts, and such facts were not generally known to the public or Plaintiff and the North Carolina Class members.

1392.   Mercedes' actions as set forth above occurred in the conduct of trade or commerce.

1393.   Mercedes' unfair or deceptive acts or practices were likely to, and did, in fact, deceive reasonable consumers.

1394.   As a direct and proximate result of Mercedes' violations of the North Carolina UDTPA, Plaintiff and the North Carolina Class members have suffered injury-in-fact and/or actual damage.

1395.   Plaintiff and the North Carolina Class members suffered ascertainable loss caused by Mercedes' misrepresentations and its failure to disclose material information.  Had they been aware of the Paint Defect in the Class Vehicles, Plaintiff and the North Carolina Class members either would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiff and the North Carolina Class members did not receive the benefit of their bargain as a result of Mercedes' misconduct.

1396.   The repairs offered and instituted by Mercedes are not adequate.

1397.   Plaintiff and the North Carolina Class members seek monetary relief against Mercedes for actual damages, in addition to treble damages pursuant to N.C. GEN. STAT. §75-16.

1398.   Plaintiff and the North Carolina Class members also seek declaratory relief, punitive damages, an order enjoining Mercedes' unfair, unlawful, and/or deceptive practices, and reasonable attorneys' fees and costs pursuant to N.C. GEN. STAT. §75-16.1, as well as other proper and just relief under the North Carolina UDTPA.

## NORTH CAROLINA COUNT II

### BREACH OF IMPLIED WARRANTIES
### (N.C. GEN. STAT. §§25-2-314 AND 252A-212)

1399.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1400.  Plaintiff Robert Mull (for the purposes of this section, "Plaintiff") brings this claim on behalf of himself and the North Carolina Class.

1401.  Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under N.C. GEN. STAT §25-2-104(1), and a "seller" of the Class Vehicles under §25-2-103(1)(d).

1402.  With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under N.C. GEN. STAT. §25-2A-103(1)(p).

1403.  The Class Vehicles are and were at all relevant times "goods" within the meaning of N.C. GEN. STAT. §§25-2-105(1) and 25-2A-103(1)(h).

1404.  A warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions N.C. GEN. STAT §§25-2-314 and 25-2A-212.

1405.  The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Mercedes cannot cure the defect in the Class Vehicles, they fail to cure Mercedes' breach of implied warranties.

1406.  As a direct and proximate result of Mercedes' breach of the implied warranty of merchantability, Plaintiff and the North Carolina Class members have been damaged in an amount to be proven at trial.

1407.   Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

## NORTH CAROLINA COUNT III

### BREACH OF EXPRESS WARRANTY
### (N.C. GEN. STAT. §§25-2-313 AND 25-2A-103)

1408.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1409.   Plaintiff Robert Mull (for the purposes of this section, "Plaintiff") brings this claim on behalf of himself and the North Carolina Class.

1410.   Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under N.C. GEN. STAT. §25-2-104(1), and a "seller" of the Class Vehicles under §25-2-103(1)(d).

1411.   With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under N.C. GEN. STAT. §25-2A-103(1)(p).

1412.   The Class Vehicles are and were at all relevant times "goods" within the meaning of N.C. GEN. STAT. §§25-2-105(1) and 25-2A-103(1)(h).

1413.   In connection with the purchase or lease of all Class Vehicles, Mercedes provided Plaintiff and the North Carolina Class members with a written warranty covering defects in materials and workmanship of the Class Vehicles for four years, as detailed above.  In addition, Mercedes' various oral and written representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles constituted express warranties to Plaintiff and the North Carolina Class members.

1414.   Mercedes' warranties formed a basis of the bargain that was reached when Plaintiff and the North Carolina Class members purchased or leased their Class Vehicles.

1415.    Mercedes breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing Plaintiff and the North Carolina Class members with Class Vehicles containing defects in the materials and workmanship with regard to the paint and paint process used on the Class Vehicles that were never disclosed to Plaintiff and the North Carolina Class members; (b) failing to repair or replace the defective Class Vehicles at no cost within the four-year warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Mercedes.

1416.    Plaintiff and the North Carolina Class members have given Mercedes a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Mercedes can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

1417.    Thus, Mercedes' four-year written warranty fails of its essential purpose and the recovery of Plaintiff and the North Carolina Class members is not limited to its remedies.

1418.    Accordingly, Plaintiff and the North Carolina Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and the North Carolina Class members of the purchase or lease price of all Class Vehicles currently owned and leased, and for such other incidental and consequential damages as allowed.

1419.    As a direct and proximate result of Mercedes' breach of its express warranty, Plaintiff and the North Carolina Class members have been damaged in an amount to be determined at trial.

1420.  Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

**JJ.    Claims Brought on Behalf of the North Dakota Class**

### NORTH DAKOTA COUNT I

### VIOLATION OF THE NORTH DAKOTA CONSUMER FRAUD ACT
### (N.D. CENT. CODE §51-15-02)

1421.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1422.  This Count is brought on behalf of the North Dakota Class.

1423.  The North Dakota Class members, and Mercedes are "persons" within the meaning of N.D. CENT. CODE §51-15-02(4).

1424.  Mercedes engaged in the "sale" of "merchandise" within the meaning of N.D. CENT. CODE §51-15-02(3), (5).

1425.  The North Dakota Consumer Fraud Act ("North Dakota CFA") makes unlawful "[t]he act, use, or employment by any person of any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise." N.D. CENT. CODE §51-15-02. As set forth above and below, Mercedes committed deceptive acts or practices, with the intent that the North Dakota Class members rely thereon in connection with their purchase or lease of the Class Vehicles.

1426.  In the course of its business, Mercedes concealed the Paint Defect in Class Vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  Accordingly, Mercedes engaged in unfair or deceptive acts or practices, including representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they

do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

1427.   Mercedes' unfair or deceptive acts or practices were likely to, and did, in fact, deceive reasonable consumers, including the North Dakota Class members, about the quality of the Class Vehicles and Mercedes brand, and the true value of the Class Vehicles.

1428.   The North Dakota Class members reasonably relied upon Mercedes' false misrepresentations and unfair or deceptive acts or practices.  They had no way of knowing that Mercedes' representations were false and gravely misleading.  As alleged herein, Mercedes engaged in extremely sophisticated methods of deception.  The North Dakota Class members did not, and could not, unravel Mercedes' deception on their own.

1429.   Mercedes intentionally and knowingly failed to disclose and misrepresented material facts regarding the Class Vehicles with intent to mislead the North Dakota Class.

1430.   Mercedes knew or should have known that its conduct violated the North Dakota CFA.

1431.   Mercedes owed the North Dakota Class members a duty to disclose the defective condition of the Class Vehicles because Mercedes:

       a.     possessed exclusive knowledge that the paint and paint process used on the Class Vehicles were defective;

b. intentionally concealed the foregoing from the North Dakota Class members; and/or

c. made incomplete representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles, while purposefully withholding material facts from the North Dakota Class that contradicted these representations.

1432. Mercedes' scheme and concealment of the true characteristics of the Class Vehicles were material to the North Dakota Class members.

1433. The North Dakota Class members suffered ascertainable loss and actual damages as a direct and proximate result of Mercedes' concealment, misrepresentations, and/or failure to disclose material information. Had they known the truth, the North Dakota Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them. The North Dakota Class members also suffered diminished value of their vehicles, as well as lost or diminished use.

1434. Mercedes had an ongoing duty to all of its customers to refrain from unfair or deceptive acts or practices under the North Dakota CFA. All owners of the Class Vehicles suffered ascertainable loss in the form of diminished value of their vehicles as a result of Mercedes' unfair or deceptive acts or practices made in the course of its business.

1435. As a direct and proximate result of Mercedes' violations of the North Dakota CFA, the North Dakota Class members have suffered injury-in-fact and/or actual damage.

1436. The North Dakota Class members seek punitive damages against Mercedes because Mercedes' conduct was egregious. Mercedes' egregious conduct warrants punitive damages.

1437.   Further, Mercedes knowingly committed the conduct described above, and thus, under N.D. CENT. CODE §51-15-09, Mercedes is liable to the North Dakota Class for treble damages in amounts to be proven at trial, as well as attorneys' fees, costs, and disbursements. The North Dakota Class further seeks an order enjoining Mercedes' unfair and/or deceptive acts or practices, and other just and proper available relief under the North Dakota CFA.

### NORTH DAKOTA COUNT II

### BREACH OF IMPLIED WARRANTIES
### (N.D. CENT. CODE §§41-02-31 AND 41-02.1-21)

1438.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1439.   This Count is brought on behalf of the North Dakota Class.

1440.   Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under N.D. CENT. CODE §41-02-04(3), and a "seller" of the Class Vehicles under §41-02-03(1)(d).

1441.   With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under N.D. CENT. CODE §41-02.1-03(1)(p).

1442.   The Class Vehicles are and were at all relevant times "goods" within the meaning of N.D. CENT. CODE §§41-02-05(2) and 41-02.1-03(1)(h).5.

1443.   A warranty that the Class Vehicles were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to N.D. CENT. CODE §§41-02-31 and 41-02.1-21.

1444.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose as a result of their inherent defects, as detailed above.   In addition, because any warranty repairs or replacements offered by

Mercedes cannot cure the defect in the Class Vehicles, they fail to cure Mercedes' breach of implied warranties.

1445.    As a direct and proximate result of Mercedes' breach of its implied warranties, the North Dakota Class members have been damaged in an amount to be determined at trial.

1446.    Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

## NORTH DAKOTA COUNT III

## BREACH OF EXPRESS WARRANTY
### (N.D. CENT. CODE §§41-02-30 AND 41-02.1-19)

1447.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein

1448.    This Count is brought on behalf of the North Dakota Class.

1449.    Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under N.D. CENT. CODE §41-02.04(3), and a "seller" of the Class Vehicles under §41-02-03(1)(d).

1450.    With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under N.D. CENT. CODE §41-02.1-03(1)(p).

1451.    The Class Vehicles are and were at all relevant times "goods" within the meaning of N.D. CENT. CODE §§41-02-05(2) and 41-02.1-03(1)(h).

1452.    In connection with the purchase or lease of all Class Vehicles, Mercedes provided the North Dakota Class members with a written warranty covering defects in materials and workmanship of the Class Vehicles for four years, as detailed above.  In addition, Mercedes' various oral and written representations regarding the quality of the Class Vehicles and the

quality and benefits of the paint and paint process used on the Class Vehicles constituted express warranties to the North Dakota Class members.

1453. Mercedes' warranties formed a basis of the bargain that was reached when the North Dakota Class members purchased or leased their Class Vehicles.

1454. Mercedes breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the North Dakota Class members with Class Vehicles containing defects in the materials and workmanship with regard to the paint and paint process used on the Class Vehicles that were never disclosed to the North Dakota Class members; (b) failing to repair or replace the defective Class Vehicles at no cost within the four-year warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Mercedes.

1455. The North Dakota Class members have given Mercedes a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Mercedes can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

1456. Thus, Mercedes' four-year written warranty fails of its essential purpose and the recovery of the North Dakota Class members is not limited to its remedies.

1457. Accordingly, the North Dakota Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the North Dakota Class members of the purchase or lease price of all Class Vehicles currently owned and leased, and for such other incidental and consequential damages as allowed.

1458.   As a direct and proximate result of Mercedes' breach of its express warranty, the North Dakota Class members have been damaged in an amount to be determined at trial.

1459.   Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

**KK.    Claims Brought on Behalf of the Ohio Class**

## OHIO COUNT I

### VIOLATION OF THE CONSUMER SALES PRACTICES ACT (OHIO REV. CODE ANN. §1345.01, *ET SEQ.*)

1460.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1461.   This Count is brought on behalf of the Ohio Class.

1462.   The Ohio Class members are "consumers" as defined by the Ohio Consumer Sales Practices Act, OHIO REV. CODE ANN. §1345.01 ("Ohio CSPA").  Mercedes is a "supplier" as defined by the Ohio CSPA.  The Ohio Class members' purchases or leases of the Class Vehicles were "consumer transactions" as defined by the Ohio CSPA.

1463.   By willfully failing to disclose and actively concealing the Paint Defect, Mercedes engaged in deceptive business practices prohibited by the Ohio CSPA, including: (a) representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; (b) representing that the Class Vehicles are of a particular standard, quality, and grade when they are not; (c) advertising the Class Vehicles with the intent not to sell or lease them as advertised; and (d) engaging in acts or practices which are otherwise unfair, misleading, false, or deceptive to the consumer.

1464.   In the course of Mercedes' business, Mercedes concealed the Paint Defect in Class Vehicles as described herein and otherwise engaged in activities with a tendency or

capacity to deceive. Accordingly, Mercedes engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

1465.  Mercedes knew or should have known of the Paint Defect inherent in the Class Vehicles.

1466.  Mercedes had a duty to disclose the existence of the Paint Defect in the Class Vehicles.  By failing to disclose and by actively concealing the Paint Defect in Class Vehicles, by marketing its vehicles as safe, durable, and of high quality, and by presenting itself as a reputable manufacturer that valued quality and stood behind its vehicles after they were sold, Mercedes engaged in deceptive business practices in violation of the Ohio CSPA.

1467.  Mercedes' unfair or deceptive acts or practices were likely to, and did, in fact, deceive reasonable consumers, including the Ohio Class members, about the quality of the Class Vehicles and Mercedes brand and the true value of the Class Vehicles.

1468.  The Ohio Class members reasonably relied upon the Mercedes' false misrepresentations and unfair or deceptive acts or practices.  They had no way of knowing that the Mercedes' representations were false and gravely misleading.  As alleged herein, Mercedes

engaged in extremely sophisticated methods of deception. The Ohio Class members did not, and could not, unravel the Mercedes' deception on their own.

1469.    Mercedes intentionally and knowingly failed to disclose and misrepresented material facts regarding the Class Vehicles with intent to mislead the Ohio Class members.

1470.    Mercedes knew or should have known that its conduct violated Ohio CSPA.

1471.    Mercedes owed the Ohio Class members a duty to disclose the defective condition of the Class Vehicles because Mercedes:

    a.    possessed exclusive knowledge that the paint and paint process used on the Class Vehicles were defective;

    b.    intentionally concealed the foregoing from the Ohio Class members; and

    c.    made incomplete representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles, while purposefully withholding material facts from the Ohio Class members that contradicted these representations.

1472.    Mercedes' concealment of the Paint Defect in Class Vehicles was material to the Ohio Class members. A vehicle made by a reputable manufacturer of quality vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of inferior vehicles that conceals defects rather than promptly remedies them.

1473.    The Ohio Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased these Class Vehicles and/or would have paid less, or would have taken other affirmative steps in light of the information concealed from them. The Ohio Class members' actions were justified. Mercedes was in exclusive control of

the material facts, and such facts were not generally known to the public or the Ohio Class members.

1474.  Mercedes' actions as set forth above occurred in the conduct of trade or commerce.

1475.  Mercedes' unfair or deceptive acts or practices were likely to, and did, in fact, deceive reasonable consumers.

1476.  The Ohio Attorney General has made available for public inspection prior state court decisions which have held that the acts and omissions of Mercedes in this Complaint, including, but not limited to, the failure to honor implied warranties, the making and distribution of false, deceptive, and/or misleading representations, and the concealment and/or non-disclosure of a dangerous defect, constitute deceptive sales practices in violation of the Ohio CSPA.  These cases include, but are not limited to, the following:

    a.    *Mason v. Mercedes Benz USA, LLC* (OPIF #10002382);

    b.    *State ex rel. Betty D. Montgomery v. Volkswagen Motor Co.* (OPIF #10002123);

    c.    *State ex rel. Betty D. Montgomery v. Bridgestone/Firestone, Inc.* (OPIF #10002025);

    d.    *Bellinger v. Hewlett-Packard Co.*, No. 20744, 2002 Ohio App. LEXIS 1573 (Ohio Ct. App. Apr. 10, 2002) (OPIF #10002077);

    e.    *Borror v. MarineMax of Ohio*, No. OT-06-010, 2007 Ohio App. LEXIS 525 (Ohio Ct. App. Feb. 9, 2007) (OPIF #10002388);

    f.    *State ex rel. Jim Petro v. Craftmatic Organization, Inc.* (OPIF #10002347);

g.  *Mark J. Craw Volkswagen, et al. v. Joseph Airport Toyota, Inc.* (OPIF #10001586);

h.  *State ex rel. William J. Brown v. Harold Lyons, et al.* (OPIF #10000304);

i.  *Brinkman v. Mazda Motor of America, Inc.* (OPIF #10001427);

j.  *Khouri v. Don Lewis* (OPIF #100001995);

k.  *Mosley v. Performance Mitsubishi aka Automanage* (OPIF #10001326);

l.  *Walls v. Harry Williams dba Butch's Auto Sales* (OPIF #10001524); and

m.  *Brown v. Spears* (OPIF #10000403).

1477.  As a direct and proximate result of Mercedes' violations of the Ohio CSPA, the Ohio Class members have suffered injury-in-fact and/or actual damage.

1478.  The Ohio Class members suffered ascertainable loss caused by Mercedes' misrepresentations and its failure to disclose material information.  Had they been aware of the Paint Defect in the Class Vehicles, the Ohio Class members either would have paid less for their vehicles or would not have purchased or leased them at all.  The Ohio Class members did not receive the benefit of their bargain as a result of Mercedes' misconduct.

1479.  The repairs offered and instituted by Mercedes are not adequate.

1480.  The Ohio Class members seek monetary relief against Mercedes for actual damages, in addition to treble damages.

1481.  The Ohio Class members also seek declaratory relief, punitive damages, an order enjoining Mercedes' unfair, unlawful, and/or deceptive practices, and reasonable attorneys' fees and costs pursuant to OHIO REV. CODE ANN. §1345.09, as well as other proper and just relief under the Ohio CSPA.

## OHIO COUNT II

## VIOLATIONS OF THE OHIO DECEPTIVE TRADE PRACTICES ACT
### (Ohio Rev. Code §4165.01, *et seq.*)

1482.  Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1483.  This claim is brought on behalf of the Ohio Class.

1484.  Mercedes and the Ohio Class are "persons" within the meaning of Ohio Rev. Code §4165.01(D).

1485.  Mercedes engaged in "the course of [its] business" within the meaning of Ohio Rev. Code §4165.02(A) with respect to the acts alleged herein.

1486.  The Ohio Deceptive Trade Practices Act, Ohio Rev. Code §4165.02(A) ("Ohio DTPA") provides that a "person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation," the person does any of the following: "(2) Causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services; … (7) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have; … (9) Represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; … [or] (11) Advertises goods or services with intent not to sell them as advertised."

1487.  In the course of its business, Mercedes violated the Ohio DTPA by knowingly misrepresenting and intentionally concealing material facts regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles, as detailed above.  Specifically, in marketing, offering for sale/lease, and selling/leasing the

defective Class Vehicles, Mercedes engaged in one or more of the following unfair or deceptive acts or practices which are proscribed by the Ohio DTPA:

    a.    representing that the Class Vehicles have characteristics or benefits that they do not have;

    b.    representing that the Class Vehicles are of a particular standard and quality when they are not;

    c.    advertising the Class Vehicles with the intent not to sell them as advertised; and

    d.    engaging in other conduct which created a likelihood of confusion or misunderstanding.

1488. Mercedes' scheme and concealment of the true characteristics of the Class Vehicles were material to the Ohio Class members, and Mercedes misrepresented, concealed, or failed to disclose the truth with the intention that the Oklahoma Class members would rely on the misrepresentations, concealments, and omissions. Had they known the truth, the Ohio Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1489. The Ohio Class members had no way of discerning that Mercedes' representations were false and misleading, or otherwise learning the facts that Mercedes had concealed or failed to disclose.

1490. Mercedes had an ongoing duty to the Ohio Class members to refrain from unfair and deceptive practices under the Ohio DTPA in the course of its business. Specifically, Mercedes owed the Ohio Class members a duty to disclose all the material facts concerning the Class Vehicles because it possessed exclusive knowledge, it intentionally concealed it from the

Ohio Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1491.   The Ohio Class members suffered ascertainable loss and actual damages as a direct and proximate result of Mercedes' concealment, misrepresentations, and/or failure to disclose material information.

1492.   Pursuant to OHIO REV. CODE §4165.03, the Ohio Class members seek an order enjoining Volkswagen's unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Ohio DTPA.

**OHIO COUNT III**

**BREACH OF IMPLIED WARRANTIES**
**(OHIO REV. CODE ANN. §§1302.27 AND 1310.19)**

1493.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1494.   This Count is brought on behalf of the Ohio Class.

1495.   Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under OHIO REV. CODE ANN. §1302.1(A)(5) and a "seller" of the Class Vehicles under §1302.1(A)(4).

1496.   With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under OHIO REV. CODE ANN. §1310.01(A)(16).

1497.   The Class Vehicles are and were at all relevant times "goods" within the meaning of OHIO REV. CODE ANN. §§1302.1(A)(8) and 1310.01(A)(8).

1498.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to OHIO REV. CODE ANN. §§1302.27 and 1310.19.

1499.  The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Mercedes cannot cure the defect in the Class Vehicles, they fail to cure Mercedes' breach of implied warranties.

1500.  As a direct and proximate result of Mercedes' breach of the implied warranty of merchantability, the Ohio Class members have been damaged in an amount to be proven at trial.

1501.  Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

**OHIO COUNT IV**

**BREACH OF EXPRESS WARRANTY**
**(OHIO REV. CODE ANN. §§1302.26 AND 1310.01)**

1502.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1503.  This Count is brought on behalf of the Ohio Class.

1504.  Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under OHIO REV. CODE ANN. §§1302.1(A)(5) and 1310.01(A)(20), and a "seller" of the Class Vehicles under §1302.1(A)(4).

1505.  With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under OHIO REV. CODE ANN. §1310.01(A)(16).

1506.  The Class Vehicles are and were at all relevant times "goods" within the meaning of OHIO REV. CODE ANN. §§1302.1(A)(8) and 1310.01(A)(8).

1507.  In connection with the purchase or lease of all Class Vehicles, Mercedes provided the Ohio Class members with a written warranty covering defects in materials and workmanship

of the Class Vehicles for four years, as detailed above.  In addition, Mercedes' various oral and written representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles constituted express warranties to the Ohio Class members.

1508.  Mercedes' warranties formed a basis of the bargain that was reached when the Ohio Class members purchased or leased their Class Vehicles.

1509.  Mercedes breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Ohio Class members with Class Vehicles containing defects in the materials and workmanship with regard to the paint and paint process used on the Class Vehicles that were never disclosed to the Ohio Class members; (b) failing to repair or replace the defective Class Vehicles at no cost within the four-year warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Mercedes.

1510.  The Ohio Class members have given Mercedes a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Mercedes can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

1511.  Thus, Mercedes' four-year written warranty fails of its essential purpose and the recovery of the Ohio Class members is not limited to its remedies.

1512.  Accordingly, the Ohio Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Ohio Class members of

the purchase or lease price of all Class Vehicles currently owned and leased, and for such other incidental and consequential damages as allowed.

1513.   As a direct and proximate result of Mercedes' breach of its express warranty, the Ohio Class members have been damaged in an amount to be determined at trial.

1514.   Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

**LL.    Claims Brought on Behalf of the Oklahoma Class**

**OKLAHOMA COUNT I**

**VIOLATION OF THE OKLAHOMA CONSUMER PROTECTION ACT
(OKLA. STAT. ANN. TIT. 15 §751, *ET SEQ.*)**

1515.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1516.   This Count is brought on behalf of the Oklahoma Class.

1517.   The Oklahoma Class members are "persons" under the Oklahoma Consumer Protection Act ("Oklahoma CPA"), OKLA. STAT. ANN. tit. 15, §752(1).

1518.   Mercedes is a "person," "corporation," or "association" within the meaning of OKLA. STAT. ANN. tit. 15, §15-752(1).

1519.   The sale or lease of the Class Vehicles to the Oklahoma Class members was a "consumer transaction" within the meaning of OKLA. STAT. ANN. tit. 15, §752(2), and Mercedes' actions as set forth herein occurred in the conduct of trade or commerce.

1520.   The Oklahoma CPA declares unlawful, *inter alia*, the following acts or practices when committed in the course of business: "mak[ing] a false or misleading representation, knowingly or with reason to know, as to the characteristics… uses, [or] benefits, of the subject of a consumer transaction," or making a false representation, "knowingly or with reason to know,

that the subject of a consumer transaction is of a particular standard, style or model, if it is of another or "[a]dvertis[ing], knowingly or with reason to know, the subject of a consumer transaction with intent not to sell it as advertised"; and otherwise committing "an unfair or deceptive trade practice." *See* OKLA. STAT. ANN. tit. 15, §753.

1521.   In the course of its business, Mercedes violated the Oklahoma CPA by knowingly misrepresenting and intentionally concealing material facts regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles, as detailed above.   Specifically, in marketing, offering for sale/lease, and selling/leasing the defective Class Vehicles, Mercedes engaged in one or more of the following unfair or deceptive acts or practices which are proscribed by the Oklahoma CPA:

> a.    representing that the Class Vehicles have characteristics or benefits that they do not have;
>
> b.    representing that the Class Vehicles are of a particular standard and quality when they are not; and/or
>
> c.    advertising the Class Vehicles with the intent not to sell them as advertised.

1522. Mercedes' scheme and concealment of the true characteristics of the Class Vehicles were material to the Oklahoma Class members, and Mercedes misrepresented, concealed, or failed to disclose the truth with the intention that the Oklahoma Class members would rely on the misrepresentations, concealments, and omissions.   Had they known the truth, the Oklahoma Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1523.   The Oklahoma Class members had no way of discerning that Mercedes' representations were false and misleading, or otherwise learning the facts that Mercedes had concealed or failed to disclose.

1524.   Mercedes had an ongoing duty to the Oklahoma Class members to refrain from unfair and deceptive practices under the Oklahoma CPA in the course of its business. Specifically, Mercedes owed the Oklahoma Class members a duty to disclose all the material facts concerning the Class Vehicles because it possessed exclusive knowledge, it intentionally concealed it from the Oklahoma Class, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1525.   The Oklahoma Class members suffered ascertainable loss and actual damages as a direct and proximate result of Mercedes' concealment, misrepresentations, and/or failure to disclose material information.

1526.   Pursuant to OKLA. STAT. ANN. tit. 15, §761.1, the Oklahoma Class members seek an order awarding damages, treble damages, and any other just and proper relief available under the Oklahoma CPA.

### OKLAHOMA COUNT II

### BREACH OF IMPLIED WARRANTIES
### (OKLA. STAT. ANN. TIT 12A §§2-314 AND 2A-212)

1527.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1528.   This Count is brought on behalf of the Oklahoma Class.

1529.   Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under OKLA. STAT. ANN. tit. 12A, §§2-104(1) and 2-1103(3), and a "seller" of the Class Vehicles under 12A, §2-103(1)(c).

1530.   With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under OKLA. STAT. ANN. tit. 12A, §2A-103(1)(p).

1531.   The Class Vehicles are and were at all relevant times "goods" within the meaning of OKLA. STAT. ANN. tit. 12A, §§2-105(1) and 2A-103(1)(h).

1532.   A warranty that the Class Vehicles were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to OKLA. STAT. ANN. tit. 12A, §§2-314 and 2A-212.

1533.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose as a result of their inherent defects, as detailed above.   In addition, because any warranty repairs or replacements offered by Mercedes cannot cure the defect in the Class Vehicles, they fail to cure Mercedes' breach of implied warranties.

1534.   As a direct and proximate result of Mercedes' breach of its implied warranties, the Oklahoma Class members have been damaged in an amount to be determined at trial.

1535.   Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

### OKLAHOMA COUNT III

### BREACH OF EXPRESS WARRANTY
### (OKLA. STAT. ANN. TIT. 12A §§2-313 AND 2A-210)

1536.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1537.   This Count is brought on behalf of the Oklahoma Class.

1538.   Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under OKLA. STAT. ANN. tit. 12A, §§2-104(1) and 2-1103(3), and a "seller" of the Class Vehicles under 12A, §2-103(1)(c).

1539.   With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under OKLA. STAT. ANN. tit. 12A, §2A-103(1)(p).

1540.   The Class Vehicles are and were at all relevant times "goods" within the meaning of OKLA. STAT. ANN. tit. 12A, §§2-105(1) and 2A-103(1)(h).

1541.   In connection with the purchase or lease of all Class Vehicles, Mercedes provided the Oklahoma Class members with a written warranty covering defects in materials and workmanship of the Class Vehicles for four years, as detailed above.   In addition, Mercedes' various oral and written representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles constituted express warranties to the Oklahoma Class members.

1542.   Mercedes' warranties formed a basis of the bargain that was reached when the Oklahoma Class members purchased or leased their Class Vehicles.

1543.   Mercedes breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Oklahoma Class members with Class Vehicles containing defects in the materials and workmanship with regard to the paint and paint process used on the Class Vehicles that were never disclosed to the Oklahoma Class members; (b) failing to repair or replace the defective Class Vehicles at no cost within the four-year warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Mercedes.

1544.   The Oklahoma Class members have given Mercedes a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Mercedes can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

1545.   Thus, Mercedes' four-year written warranty fails of its essential purpose and the recovery of the Oklahoma Class members is not limited to its remedies.

1546.   Accordingly, the Oklahoma Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Oklahoma Class members of the purchase or lease price of all Class Vehicles currently owned and leased, and for such other incidental and consequential damages as allowed.

1547.   As a direct and proximate result of Mercedes' breach of its express warranty, the Oklahoma Class members have been damaged in an amount to be determined at trial.

1548.   Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

**MM.   Claims Brought on Behalf of the Oregon Class**

**OREGON COUNT I**

**VIOLATION OF THE OREGON UNLAWFUL TRADE PRACTICES ACT
(OR. REV. STAT. §§646.605, *ET SEQ.*)**

1549.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1550.   This Count is brought on behalf of the Oregon Class.

1551.   Mercedes is a "person" within the meaning of OR. REV. STAT. §646.605(4).

1552.  The Class Vehicles are "goods" obtained primarily for personal, family, or household purposes within the meaning of OR. REV. STAT. §646.605(6).

1553.  The Oregon Unfair Trade Practices Act ("Oregon UTPA") prohibits a person from, in the course of the person's business, doing any of the following: "[] [r]epresent[ing] that … goods … have … characteristics … uses, benefits, … or qualities that they do not have; … [] [r]epresent[ing] that … goods … are of a particular standard [or] quality … if they are of another; … [] [a]dvertis[ing] … goods or services with intent not to provide them as advertised; … [and] [] engag[ing] in any other unfair or deceptive conduct in trade or commerce." OR. REV. STAT. §646.608(1).

1554.  In the course of its business, Mercedes violated the Oregon UTPA by knowingly misrepresenting and intentionally concealing material facts regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles, as detailed above.  Specifically, in marketing, offering for sale/lease, and selling/leasing the defective Class Vehicles, Mercedes engaged in one or more of the following unfair or deceptive acts or practices which are proscribed by the Oregon UTPA:

> a.    representing that the Class Vehicles have characteristics or benefits that they do not have;
>
> b.    representing that the Class Vehicles are of a particular standard and quality when they are not; and/or
>
> c.    advertising the Class Vehicles with the intent not to sell them as advertised.

1555.  Mercedes' scheme and concealment of the true characteristics of the Class Vehicles were material to the Oregon Class members, and Mercedes misrepresented, concealed,

or failed to disclose the truth with the intention that the Oregon Class members would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the Oregon Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1556.  The Oregon Class members had no way of discerning that Mercedes' representations were false and misleading, or otherwise learning the facts that Mercedes had concealed or failed to disclose.

1557.  Mercedes had an ongoing duty to the Oregon Class members to refrain from unfair and deceptive practices under the Oregon UTPA in the course of its business. Specifically, Mercedes owed the Oregon Class members a duty to disclose all the material facts concerning the Class Vehicles because it possessed exclusive knowledge, it intentionally concealed such material facts from the Oregon Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1558.  The Oregon Class members suffered ascertainable loss and actual damages as a direct and proximate result of Mercedes' concealment, misrepresentations, and/or failure to disclose material information.

1559.  Pursuant to OR. REV. STAT. §646.638(1), the Oregon Class members seek an order awarding damages, treble damages, and any other just and proper relief available under the Oregon UTPA.

## OREGON COUNT II

## BREACH OF IMPLIED WARRANTIES
### (OR. REV. STAT. §§72.3140 AND 72A.2120)

1560. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1561. This Count is brought on behalf of the Oregon Class.

1562. Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under OR. REV. STAT. §§72.1040(1) and 72A.1030(1)(t), and a "seller" of the Class Vehicles under §72.1030(1)(d).

1563. With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under OR. REV. STAT. §72A.1030(1)(p).

1564. The Class Vehicles are and were at all relevant times "goods" within the meaning of OR. REV. STAT. §§72.1050(1) and 72A.1030(1)(h).

1565. A warranty that the Class Vehicles were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to OR. REV. STAT. §§72.3140 and 72A-2120.

1566. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose as a result of their inherent defects, as detailed above. In addition, because any warranty repairs or replacements offered by Mercedes cannot cure the defect in the Class Vehicles, they fail to cure Mercedes' breach of implied warranties.

1567. As a direct and proximate result of Mercedes' breach of its implied warranties, the Oregon Class members have been damaged in an amount to be determined at trial.

1568. Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

## OREGON COUNT III

### BREACH OF EXPRESS WARRANTY
### (OR. REV. STAT. §72.3130 AND 72A.2100)

1569.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1570.   This Count is brought on behalf of the Oregon Class.

1571.   Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under OR. REV. STAT. §§72.1040(1) and 72A.1030(1)(t), and a "seller" of the Class Vehicles under §72.1030(1)(d).

1572.   With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under OR. REV. STAT. §72A.1030(1)(p).

1573.   The Class Vehicles are and were at all relevant times "goods" within the meaning of OR. REV. STAT. §§72.1050(1) and 72A.1030(1)(h).

1574.   In connection with the purchase or lease of all Class Vehicles, Mercedes provided the Oregon Class members with a written warranty covering defects in materials and workmanship of the Class Vehicles for four years, as detailed above.  In addition, Mercedes' various oral and written representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles constituted express warranties to the Oregon Class members.

1575.   Mercedes' warranties formed a basis of the bargain that was reached when the Oregon Class members purchased or leased their Class Vehicles.

1576.   Mercedes breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Oregon Class members with Class Vehicles containing defects in the materials and workmanship with regard to the paint and paint

process used on the Class Vehicles that were never disclosed to the Oregon Class members; (b) failing to repair or replace the defective Class Vehicles at no cost within the four-year warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Mercedes.

1577. The Oregon Class members have given Mercedes a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Mercedes can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

1578. Thus, Mercedes' four-year written warranty fails of its essential purpose and the recovery of the Oregon Class members is not limited to its remedies.

1579. Accordingly, the Oregon Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Oregon Class members of the purchase or lease price of all Class Vehicles currently owned and leased, and for such other incidental and consequential damages as allowed.

1580. As a direct and proximate result of Mercedes' breach of its express warranty, the Oregon Class members have been damaged in an amount to be determined at trial.

1581. Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

**NN.    Claims Brought on Behalf of the Pennsylvania Class**

**PENNSYLVANIA COUNT I**

**VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES
AND CONSUMER PROTECTION LAW
(73 PA. CONS. STAT ANN. §201-1, *ET SEQ.*)**

1582.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1583.   This Count is brought on behalf of the Pennsylvania Class.

1584.   The Pennsylvania Class and Mercedes are "persons" within the meaning of 73 PA. CONS. STAT. ANN. §201-2(2).

1585.   The Pennsylvania Class purchased or leased the Class Vehicles primarily for personal, family, or household purposes within the meaning of 73 PA. CONS. STAT. ANN. §201-9.2.

1586.   All of the acts complained of herein were perpetrated by Mercedes in the course of trade or commerce within the meaning of 73 PA. CONS. STAT. ANN. §201-2(3).

1587.   The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL") prohibits unfair or deceptive acts or practices, including: (i) "Representing that goods or services have … characteristics, … Benefits or qualities that they do not have"; (ii) "Representing that goods or services are of a particular standard, quality or grade … if they are of another"; (iii) "Advertising goods or services with intent not to sell them as advertised"; and (iv) "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." 73 PA. CONS. STAT. ANN. §201-2(4).

1588.   In the course of its business, Mercedes violated the Pennsylvania CPL by knowingly misrepresenting and intentionally concealing material facts regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class

Vehicles, as detailed above. Specifically, in marketing, offering for sale/lease, and selling/leasing the defective Class Vehicles, Mercedes engaged in one or more of the following unfair or deceptive acts or practices which are proscribed by the Pennsylvania CPL:

 a. representing that the Class Vehicles have characteristics or benefits that they do not have;

 b. representing that the Class Vehicles are of a particular standard and quality when they are not; and/or

 c. advertising the Class Vehicles with the intent not to sell them as advertised.

1589. Mercedes' scheme and concealment of the true characteristics of the Class Vehicles were material to the Pennsylvania Class members, and Mercedes misrepresented, concealed, or failed to disclose the truth with the intention that the Pennsylvania Class members would rely on the misrepresentations, concealments, and omissions. Had they known the truth, the Pennsylvania Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1590. The Pennsylvania Class members had no way of discerning that Mercedes' representations were false and misleading, or otherwise learning the facts that Mercedes had concealed or failed to disclose.

1591. Mercedes had an ongoing duty to the Pennsylvania Class members to refrain from unfair and deceptive practices under the Pennsylvania CPL in the course of its business. Specifically, Mercedes owed the Pennsylvania Class members a duty to disclose all the material facts concerning the Class Vehicles because it possessed exclusive knowledge, it intentionally concealed such material facts from the Pennsylvania Class members, and/or it made

misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1592.   The Pennsylvania Class members suffered ascertainable loss and actual damages as a direct and proximate result of Mercedes' concealment, misrepresentations, and/or failure to disclose material information.

1593.   Pursuant to 73 PA. CONS. STAT. ANN. §201-9.2(a), the Pennsylvania Class members seek an order awarding damages, treble damages, and any other just and proper relief available under the Pennsylvania CPL.

## PENNSYLVANIA COUNT II

### BREACH OF IMPLIED WARRANTIES
### (13 PA. CONS. STAT. ANN. §§2314 AND 2A212)

1594.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1595.   This Count is brought on behalf of the Pennsylvania Class.

1596.   Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under 13 PA. CONS. STAT. ANN. §§2104 and 2A103(a), and a "seller" of the Class Vehicles under §2103(a).

1597.   With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under 13 PA. CONS. STAT. ANN. §2A103(a).

1598.   The Class Vehicles are and were at all relevant times "goods" within the meaning of 13 PA. CONS. STAT. ANN. §§2105(a) and 2A103(a).

1599.   A warranty that the Class Vehicles were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to 13 PA. CONS. STAT. ANN. §§2314 and 2A212.

1600. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose as a result of their inherent defects, as detailed above. In addition, because any warranty repairs or replacements offered by Mercedes cannot cure the defect in the Class Vehicles, they fail to cure Mercedes' breach of implied warranties.

1601. As a direct and proximate result of Mercedes' breach of its implied warranties, the Pennsylvania Class members have been damaged in an amount to be determined at trial.

1602. Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

## PENNSYLVANIA COUNT III

## BREACH OF EXPRESS WARRANTY
### (13 PA. CONS. STAT. ANN. §§2313 AND 2A210)

1603. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1604. This Count is brought on behalf of the Pennsylvania Class.

1605. Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under 13 PA. CONS. STAT. ANN. §§2104 and 2A103(a), and a "seller" of the Class Vehicles under §2103(a).

1606. With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under 13 PA. CONS. STAT. ANN. §2A103(a).

1607. The Class Vehicles are and were at all relevant times "goods" within the meaning of 13 PA. CONS. STAT. ANN. §§2105(a) and 2A103(a).

1608. In connection with the purchase or lease of all Class Vehicles, Mercedes provided the Pennsylvania Class members with a written warranty covering defects in materials and

workmanship of the Class Vehicles for four years, as detailed above. In addition, Mercedes' various oral and written representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles constituted express warranties to the Pennsylvania Class members.

1609. Mercedes' warranties formed a basis of the bargain that was reached when the Pennsylvania Class members purchased or leased their Class Vehicles.

1610. Mercedes breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Pennsylvania Class members with Class Vehicles containing defects in the materials and workmanship with regard to the paint and paint process used on the Class Vehicles that were never disclosed to the Pennsylvania Class members; (b) failing to repair or replace the defective Class Vehicles at no cost within the four-year warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Mercedes.

1611. The Pennsylvania Class members have given Mercedes a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Mercedes can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

1612. Thus, Mercedes' four-year written warranty fails of its essential purpose and the recovery of the Pennsylvania Class members is not limited to its remedies.

1613. Accordingly, the Pennsylvania Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the

Pennsylvania Class members of the purchase or lease price of all Class Vehicles currently owned and leased, and for such other incidental and consequential damages as allowed.

1614.   As a direct and proximate result of Mercedes' breach of express warranty, the Pennsylvania Class members have been damaged in an amount to be determined at trial.

1615.   Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

**OO.    Claims Brought on Behalf of the Rhode Island Class**

**RHODE ISLAND COUNT I**

**VIOLATION OF THE RHODE ISLAND UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT (R.I. GEN. LAWS §6-13.1, *ET SEQ.*)**

1616.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1617.   This Count is brought on behalf of the Rhode Island Class.

1618.   Mercedes and the Rhode Island Class members are persons within the meaning of R.I. GEN. LAWS §6-13.1-1(3).  The sale or lease of the Class Vehicles occurred in the course of "trade and commerce" within the meaning of R.I. GEN. LAWS §6-13.1-1(5).

1619.   Rhode Island's Unfair Trade Practices and Consumer Protection Act ("Rhode Island CPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce" including: "[] [r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have[;]… [] [r]epresenting that goods or services are of a particular standard, quality, or grade …, if they are of another[;]…  [] [a]dvertising goods or services with intent not to sell them as advertised[;]… [] [e]ngaging in any other conduct that similarly creates a likelihood of confusion or of misunderstanding[;] [] [e]ngaging in any act or practice that is unfair or deceptive to the

consumer[;] [and] [] [u]sing any other methods, acts or practices which mislead or deceive members of the public in a material respect." R.I. GEN. LAWS §6-13.1-1(6)(v), (vii), (ix), and (xii)-(xiv).

1620. In the course of its business, Mercedes violated the Rhode Island CPA by knowingly misrepresenting and intentionally concealing material facts regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles, as detailed above. Specifically, in marketing, offering for sale/lease, and selling/leasing the defective Class Vehicles, Mercedes engaged in one or more of the following unfair or deceptive acts or practices proscribed by the Rhode Island CPA:

      a.    representing that the Class Vehicles have characteristics or benefits that they do not have;

      b.    representing that the Class Vehicles are of a particular standard and quality when they are not; and/or

      c.    advertising the Class Vehicles with the intent not to sell them as advertised.

1621. Mercedes' scheme and concealment of the true characteristics of the Class Vehicles were material to the Rhode Island Class, and Mercedes misrepresented, concealed, or failed to disclose the truth with the intention that the Rhode Island Class would rely on the misrepresentations, concealments, and omissions. Had they known the truth, the Rhode Island Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1622.   The Rhode Island Class members had no way of discerning that Mercedes' representations were false and misleading, or otherwise learning the facts that Mercedes had concealed or failed to disclose.

1623.   Mercedes had an ongoing duty to the Rhode Island Class members to refrain from unfair and deceptive practices under the Rhode Island CPA in the course of its business. Specifically, Mercedes owed the Rhode Island Class members a duty to disclose all the material facts concerning the Class Vehicles because it possessed exclusive knowledge, it intentionally concealed such material facts from the Rhode Island Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1624.   The Rhode Island Class members suffered ascertainable loss and actual damages as a direct and proximate result of Mercedes' concealment, misrepresentations, and/or failure to disclose material information.

1625.   Pursuant to R.I. GEN. LAWS §6-13.1-5.2(a), the Rhode Island Class members seek an order awarding damages, treble damages, and any other just and proper relief available under the Rhode Island CPA.

## RHODE ISLAND COUNT II

### BREACH OF IMPLIED WARRANTIES
### (R.I. GEN. LAWS §§6A-2-314 AND 6A-2.1-212)

1626.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1627.   This Count is brought on behalf of the Rhode Island Class.

1628.  Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under R.I. GEN. LAWS §§6A-2-104(1) and 6A-2.1-103(1)(t), and a "seller" of the Class Vehicles under §6a-2-103(a)(4).

1629.  With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under R.I. GEN. LAWS §6A-2.1-103(1)(p).

1630.  The Class Vehicles are and were at all relevant times "goods" within the meaning of R.I. GEN. LAWS §§6A-2-105(1) and 6A-2.1-103(1)(h).

1631.  A warranty that the Class Vehicles were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to R.I. GEN. LAWS §§6A-2-314 and 6A-2.1-212.

1632.  The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Mercedes cannot cure the defect in the Class Vehicles, they fail to cure Mercedes' breach of implied warranties.

1633.  As a direct and proximate result of Mercedes' breach of its implied warranties, the Rhode Island Class members have been damaged in an amount to be determined at trial.

1634.  Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

### RHODE ISLAND COUNT III

### BREACH OF EXPRESS WARRANTY
### (R.I. GEN. LAWS §§6A-2-313 AND 6A-2.1-210)

1635.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1636.   This Count is brought on behalf of the Rhode Island Class.

1637.   Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under R.I. GEN. LAWS §§6A-2-104(1) and 6A-2.1-103(1)(t), and a "seller" of the Class Vehicles under §6A-2-103(a)(4).

1638.   With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under R.I. GEN. LAWS §6A-2.1-103(1)(p).

1639.   The Class Vehicles are and were at all relevant times "goods" within the meaning of R.I. GEN. LAWS §§6A-2-105(1) and 6A-2.1-103(1)(h).

1640.   In connection with the purchase or lease of all Class Vehicles, Mercedes provided the Rhode Island Class members with a written warranty covering defects in materials and workmanship of the Class Vehicles for four years, as detailed above.   In addition, Mercedes' various oral and written representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles constituted express warranties to the Rhode Island Class members.

1641.   Mercedes' warranties formed a basis of the bargain that was reached when the Rhode Island Class members purchased or leased their Class Vehicles.

1642.   Mercedes breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Rhode Island Class members with Class Vehicles containing defects in the materials and workmanship with regard to the paint and paint process used on the Class Vehicles that were never disclosed to the Rhode Island Class members; (b) failing to repair or replace the defective Class Vehicles at no cost within the four-year warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad

faith; and (d) supplying products and materials that failed to conform to the representations made by Mercedes.

1643.   The Rhode Island Class members have given Mercedes a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Mercedes can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

1644.   Thus, Mercedes' four-year written warranty fails of its essential purpose and the recovery of the Rhode Island Class members is not limited to its remedies.

1645.   Accordingly, the Rhode Island Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Rhode Island Class members of the purchase or lease price of all Class Vehicles currently owned and leased, and for such other incidental and consequential damages as allowed.

1646.   As a direct and proximate result of Mercedes' breach of its express warranty, the Rhode Island Class members have been damaged in an amount to be determined at trial.

1647.   Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

**PP.   Claims Brought on Behalf of the South Carolina Class**

**SOUTH CAROLINA COUNT I**

**VIOLATIONS OF THE SOUTH CAROLINA
UNFAIR TRADE PRACTICES ACT
(S.C. CODE ANN. §39-5-10, *ET SEQ.*)**

1648.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1649.   This Count is brought on behalf of the South Carolina Class.

1650.   Mercedes and the South Carolina Class members are "persons" under S.C. CODE ANN. §39-5-10.

1651.   The sale or lease of the Class Vehicles is within the meaning of "trade" and "commerce" under S.C. CODE ANN. §39-5-10.

1652.   The South Carolina Unfair Trade Practices Act ("South Carolina UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."  S.C. CODE ANN. §39-5-20(a).

1653.   In the course of its business, Mercedes violated the South Carolina UTPA by knowingly misrepresenting and intentionally concealing material facts regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles, as detailed above.   Specifically, in marketing, offering for sale/lease, and selling/leasing the defective Class Vehicles, Mercedes engaged in one or more of the following unfair or deceptive acts or practices which are proscribed by the South Carolina UTPA:

a.   representing that the Class Vehicles have characteristics or benefits that they do not have;

b.   representing that the Class Vehicles are of a particular standard and quality when they are not; and/or

c.   advertising the Class Vehicles with the intent not to sell them as advertised.

1654.  Mercedes' scheme and concealment of the true characteristics of the Class Vehicles were material to the South Carolina Class members, and Mercedes misrepresented, concealed, or failed to disclose the truth with the intention that the South Carolina Class members would rely on the misrepresentations, concealments, and omissions.  Had they known

the truth, the South Carolina Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1655.  The South Carolina Class members had no way of discerning that Mercedes' representations were false and misleading, or otherwise learning the facts that Mercedes had concealed or failed to disclose.

1656.  Mercedes had an ongoing duty to the South Carolina Class members to refrain from unfair and deceptive practices under the South Carolina UTPA in the course of its business. Specifically, Mercedes owed the South Carolina Class members a duty to disclose all the material facts concerning the Class Vehicles because it possessed exclusive knowledge, it intentionally concealed such material facts from the South Carolina Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1657.  The South Carolina Class members suffered ascertainable loss and actual damages as a direct and proximate result of Mercedes' concealment, misrepresentations, and/or failure to disclose material information.

1658.  Pursuant to S.C. CODE ANN. §39-5-140(a), the South Carolina Class members seek an order awarding damages, treble damages, and any other just and proper relief available under the South Carolina UTPA.

**SOUTH CAROLINA COUNT II**

**BREACH OF IMPLIED WARRANTIES**
**(S.C. CODE ANN. §§36-2-314 AND 36-2A-212)**

1659.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1660.  This Count is brought on behalf of the South Carolina Class.

1661.   Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under S.C. CODE ANN. §§36-2-104(1) and 36-2A-103(1)(t), and a "seller" of the Class Vehicles under §36-2-103(1)(d).

1662.   With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under S.C. CODE ANN. §36-2A-103(1)(p).

1663.   The Class Vehicles are and were at all relevant times "goods" within the meaning of S.C. CODE ANN. §§36-2-105(1) and 36-2A-103(1)(h).

1664.   A warranty that the Class Vehicles were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to S.C. CODE ANN. §§36-2-314 and 36-2A-212.

1665.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose as a result of their inherent defects, as detailed above.   In addition, because any warranty repairs or replacements offered by Mercedes cannot cure the defect in the Class Vehicles, they fail to cure Mercedes' breach of implied warranties.

1666.   As a direct and proximate result of Mercedes' breach of its implied warranties, the South Carolina Class members have been damaged in an amount to be determined at trial.

1667.   Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

### SOUTH CAROLINA COUNT III

### BREACH OF EXPRESS WARRANTY
### (S.C. CODE ANN. §§36-2-313 AND 36-2A-210)

1668.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1669.  This Count is brought on behalf of the South Carolina Class.

1670.  Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under S.C. CODE ANN. §§36-2-104(1) and 36-2A-103(1)(t), and a "seller" of the Class Vehicles under §36-2-103(1)(d).

1671.  With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under S.C. CODE ANN. §36-2A-103(1)(p).

1672.  The Class Vehicles are and were at all relevant times "goods" within the meaning of S.C. CODE ANN. §§36-2-105(1) and 36-2A-103(1)(h).

1673.  In connection with the purchase or lease of all Class Vehicles, Mercedes provided the South Carolina Class members with a written warranty covering defects in materials and workmanship of the Class Vehicles for four years, as detailed above.  In addition, Mercedes' various oral and written representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles constituted express warranties to the South Carolina Class members.

1674.  Mercedes' warranties formed a basis of the bargain that was reached when the South Carolina Class members purchased or leased their Class Vehicles.

1675.  Mercedes breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the South Carolina Class members with Class Vehicles containing defects in the materials and workmanship with regard to the paint and paint process used on the Class Vehicles that were never disclosed to the South Carolina Class members; (b) failing to repair or replace the defective Class Vehicles at no cost within the four-year warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad

faith; and (d) supplying products and materials that failed to conform to the representations made by Mercedes.

1676.   The South Carolina Class members have given Mercedes a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Mercedes can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

1677.   Thus, Mercedes' four-year written warranty fails of its essential purpose and the recovery of the South Carolina Class members is not limited to its remedies.

1678.   Accordingly, the South Carolina Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the South Carolina Class members of the purchase or lease price of all Class Vehicles currently owned and leased, and for such other incidental and consequential damages as allowed.

1679.   As a direct and proximate result of Mercedes' breach of its express warranty, the South Carolina Class members have been damaged in an amount to be determined at trial.

1680.   Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

**QQ.    Claims Brought on Behalf of the South Dakota Class**

**SOUTH DAKOTA COUNT I**

**VIOLATION OF THE SOUTH DAKOTA DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION LAW
(S.D. CODIFIED LAWS §37-24-6)**

1681.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1682.   This Count is brought on behalf of the South Dakota Class.

1683.  Mercedes and the South Dakota Class members are "persons" under S.D. CODIFIED LAWS §37-24-1(8).

1684.  The sale or lease of the Class Vehicles is within the meaning of "trade" and "commerce" under S.D. CODIFIED LAWS §37-24-1(13).

1685.  The South Dakota Deceptive Trade Practices and Consumer Protection Law ("South Dakota CPL") prohibits deceptive acts or practices, which are defined for relevant purposes to include "[k]nowingly and intentionally act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been misled, deceived, or damaged thereby."  S.D. CODIFIED LAWS §37-24-6(1).

1686.  In the course of its business, Mercedes violated the South Dakota CPL by knowingly misrepresenting and intentionally concealing material facts regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles, as detailed above.  Specifically, in marketing, offering for sale/lease, and selling/leasing the defective Class Vehicles, Mercedes engaged in one or more of the following unfair or deceptive acts or practices which are proscribed by the South Dakota CPL:

     a.    representing that the Class Vehicles have characteristics or benefits that they do not have;

     b.    representing that the Class Vehicles are of a particular standard and quality when they are not; and/or

     c.    advertising the Class Vehicles with the intent not to sell them as advertised.

1687.  Mercedes' scheme and concealment of the true characteristics of the Class Vehicles were material to the South Dakota Class members, and Mercedes misrepresented, concealed, or failed to disclose the truth with the intention that the South Dakota Class members would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the South Dakota Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1688.  The South Dakota Class members had no way of discerning that Mercedes' representations were false and misleading, or otherwise learning the facts that Mercedes had concealed or failed to disclose.

1689.  Mercedes had an ongoing duty to the South Dakota Class members to refrain from unfair and deceptive practices under the South Dakota CPL in the course of its business. Specifically, Mercedes owed the South Dakota Class members a duty to disclose all the material facts concerning the Class Vehicles because it possessed exclusive knowledge, it intentionally concealed such material facts from the South Dakota Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1690.  The South Dakota Class members suffered ascertainable loss and actual damages as a direct and proximate result of Mercedes' concealment, misrepresentations, and/or failure to disclose material information.

1691.  Pursuant to S.D. CODIFIED LAWS §37-24-31, the South Dakota Class members seek an order awarding damages, treble damages, and any other just and proper relief available under the South Dakota CPL.

## SOUTH DAKOTA COUNT II

### BREACH OF IMPLIED WARRANTIES
### (S.D. CODIFIED LAWS §§57A-2-314 AND 57A-2A-212)

1692.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1693.   This Count is brought on behalf of the South Dakota Class.

1694.   Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under S.D. CODIFIED LAWS §§57A-2-104(1) and 57A-2A-103(1)(t), and a "seller" of the Class Vehicles under §57A-2-103(1)(d).

1695.   With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under S.D. CODIFIED LAWS §57A-2A-103(1)(p).

1696.   The Class Vehicles are and were at all relevant times "goods" within the meaning of S.D. CODIFIED LAWS §§57A-2-105(1) and 57A-2A-103(1)(h).

1697.   A warranty that the Class Vehicles were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to S.D. CODIFIED LAWS §§57A-2-314 and 57A-2A-212.

1698.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose as a result of their inherent defects, as detailed above.   In addition, because any warranty repairs or replacements offered by Mercedes cannot cure the defect in the Class Vehicles, they fail to cure Mercedes' breach of implied warranties.

1699.   As a direct and proximate result of Mercedes' breach of its implied warranties, the South Dakota Class members have been damaged in an amount to be determined at trial.

1700.   Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

## SOUTH DAKOTA COUNT III

### BREACH OF EXPRESS WARRANTY
### (S.D. CODIFIED LAWS §§57A-2-313 AND 57A-2A-210)

1701.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1702.   This Count is brought on behalf of the South Dakota Class.

1703.   Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under S.D. CODIFIED LAWS §§57A-2-104(1) and 57A-2A-103(1)(t), and a "seller" of the Class Vehicles under §57A-2-103(1)(d).

1704.   With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under S.D. CODIFIED LAWS §57A-2A-103(1)(p).

1705.   The Class Vehicles are and were at all relevant times "goods" within the meaning of S.D. CODIFIED LAWS §§57A-2-105(1) and 57A-2A-103(1)(h).

1706.   In connection with the purchase or lease of all Class Vehicles, Mercedes provided the South Dakota Class members with a written warranty covering defects in materials and workmanship of the Class Vehicles for four years, as detailed above.  In addition, Mercedes' various oral and written representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles constituted express warranties to the South Dakota Class members.

1707.   Mercedes' warranties formed a basis of the bargain that was reached when the South Dakota Class members purchased or leased their Class Vehicles.

1708.   Mercedes breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the South Dakota Class members with Class Vehicles containing defects in the materials and workmanship with regard to the paint and paint process used on the Class Vehicles that were never disclosed to the South Dakota Class members; (b) failing to repair or replace the defective Class Vehicles at no cost within the four-year warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Mercedes.

1709.   The South Dakota Class members have given Mercedes a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Mercedes can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

1710.   Thus, Mercedes' four-year written warranty fails of its essential purpose and the recovery of the South Dakota Class members is not limited to its remedies.

1711.   Accordingly, the South Dakota Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the South Dakota Class members of the purchase or lease price of all Class Vehicles currently owned and leased, and for such other incidental and consequential damages as allowed.

1712.   As a direct and proximate result of Mercedes' breach of its express warranty, the South Dakota Class members have been damaged in an amount to be determined at trial.

1713.   Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

**RR.    Claims Brought on Behalf of the Tennessee Class**

## TENNESSEE COUNT I

### VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT
### (TENN. CODE ANN. §47-18-101, *ET SEQ.*)

1714.  Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1715.  This Count is brought on behalf of the Tennessee Class.

1716.  Mercedes and the Tennessee Class are "persons" within the meaning of TENN. CODE ANN. §47-18-103(13), and the Tennessee Class members are "consumers" within the meaning of §47-18-103(2).  The Tennessee Class members are "natural persons" within the meaning of TENN. CODE ANN. §47-18-103(13).

1717.  Mercedes' conduct complained of herein affected "trade," "commerce" or "consumer transactions" within the meaning of TENN. CODE ANN. §47-18-103(19).  The Class Vehicles were at all relevant times "goods" within the meaning of TENN. CODE ANN. §47-18-103(7).

1718.  The Tennessee Consumer Protection Act ("Tennessee CPA") makes unlawful "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce" under TENN. CODE ANN. §47-18-104.  Without limitation, this includes:

> (5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not have;
>
> (7) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

(9) advertising goods or services with intent not to sell them as advertised.

Tenn. Code Ann. §47-18-104.

1719.   In the course of its business, Mercedes violated the Tennessee CPA by knowingly misrepresenting and intentionally concealing material facts regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles, as detailed above.   Specifically, in marketing, offering for sale/lease, and selling/leasing the defective Class Vehicles, Mercedes engaged in one or more of the following unfair or deceptive acts or practices within the meaning of Tenn. Code Ann. §47-18-101, *et seq*., by:

a.     representing that the Class Vehicles have characteristics, benefits, or qualities that they do not have;

b.     representing that the Class Vehicles are of a particular standard and quality when they are not; and/or

c.     advertising the Class Vehicles with the intent not to sell them as advertised.

1720.   Mercedes' scheme and concealment of the true characteristics of the Class Vehicles were material to the Tennessee Class members, and Mercedes misrepresented, concealed, or failed to disclose the truth with the intention that the Tennessee Class members would rely on the misrepresentations, concealments, and omissions.   Had they known the truth, the Tennessee Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1721.   The Tennessee Class members had no way of discerning that Mercedes' representations were false and misleading, or otherwise learning the facts that Mercedes had concealed or failed to disclose.

1722.  Mercedes had an ongoing duty to the Tennessee Class members to refrain from unfair and deceptive practices under the Tennessee CPA in the course of its business. Specifically, Mercedes owed the Tennessee Class members a duty to disclose all the material facts concerning the Class Vehicles because it possessed exclusive knowledge, it intentionally concealed such material facts from the Tennessee Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1723.  The Tennessee Class members suffered ascertainable loss and actual damages as a direct and proximate result of Mercedes' concealment, misrepresentations, and/or failure to disclose material information.

1724.  Pursuant to TENN. CODE ANN. §47-18-109(a), the Tennessee Class members seek an order awarding damages, treble damages, and any other just and proper relief available under the Tennessee CPA.

## TENNESSEE COUNT II

## BREACH OF IMPLIED WARRANTIES
### (TENN. CODE ANN. §§47-2-314 AND 47-2A-212)

1725.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1726.  This Count is brought on behalf of the Tennessee Class.

1727.  Mercedes is and was at all relevant times a "seller" with respect to the Class Vehicles under TENN. CODE ANN. §47-2-103(a)(d), and a "merchant" within the meaning of. §§47-2-104(1) and 47-2A-103(1)(t).

1728.  With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under TENN. CODE ANN. §47-2A-103(1)(p).

1729.   The Tennessee Class members are and were at all relevant times "buyers" with respect to the Class Vehicles under TENN. CODE ANN. §47-2-313(1).

1730.   The Class Vehicles are and were at all relevant times "goods" within the meaning of TENN. CODE ANN. §§47-2-313(1)-(2) and 47-2A-103(1)(h).

1731.   A warranty that the Class Vehicles were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to TENN. CODE ANN. §§47-2-314 and 47-2A-212.

1732.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose as a result of their inherent defects, as detailed above.   In addition, because any warranty repairs or replacements offered by Mercedes cannot cure the defect in the Class Vehicles, they fail to cure Mercedes' breach of implied warranties.

1733.   As a direct and proximate result of Mercedes' breach of its implied warranties, the Tennessee Class members have been damaged in an amount to be determined at trial.

1734.   Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

### TENNESSEE COUNT III

### BREACH OF EXPRESS WARRANTY
### (TENN. CODE ANN. §§47-2-313 AND 47-2A-210)

1735.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1736.   This Count is brought on behalf of the Tennessee Class.

1737.   Mercedes is and was at all relevant times a "seller" with respect to the Class Vehicles under TENN. CODE ANN. §47-2-103(1)(d), and a "merchant" within the meaning of §§47-2-104(1) and 47-2A-103(1)(t).

1738.   With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under TENN. CODE ANN. §47-2A-103(1)(p).

1739.   The Tennessee Class members are and were at all relevant times "buyers" with respect to the Class Vehicles under TENN. CODE ANN. §47-2-313(1).

1740.   The Class Vehicles are and were at all relevant times "goods" within the meaning of TENN. CODE ANN. §§47-2-105(1) and 47-2A-103(1)(h).

1741.   In connection with the purchase or lease of all Class Vehicles, Mercedes provided the Tennessee Class members with a written warranty covering defects in materials and workmanship of the Class Vehicles for four years, as detailed above.  In addition, Mercedes' various oral and written representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles constituted express warranties to the Tennessee Class members.

1742.   Mercedes' warranties formed a basis of the bargain that was reached when the Tennessee Class members purchased or leased their Class Vehicles.

1743.   Mercedes breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Tennessee Class members with Class Vehicles containing defects in the materials and workmanship with regard to the paint and paint process used on the Class Vehicles that were never disclosed to the Tennessee Class members; (b) failing to repair or replace the defective Class Vehicles at no cost within the four-year warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith;

and (d) supplying products and materials that failed to conform to the representations made by Mercedes.

1744.   The Tennessee Class members have given Mercedes a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Mercedes can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

1745.   Thus, Mercedes' four-year written warranty fails of its essential purpose and the recovery of the Tennessee Class members is not limited to its remedies.

1746.   Accordingly, the Tennessee Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Tennessee Class members of the purchase or lease price of all Class Vehicles currently owned and leased, and for such other incidental and consequential damages as allowed.

1747.   As a direct and proximate result of Mercedes' breach of express warranty, the Tennessee Class members have been damaged in an amount to be determined at trial.

1748.   Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

**SS.    Claims Brought on Behalf of the Texas Class**

## TEXAS COUNT I

### BREACH OF IMPLIED WARRANTIES
### (TEX. BUS. & COM. CODE §§2.314 AND 2A.212)

1749.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1750.   This Count is brought on behalf of the Texas Class.

1751.   Mercedes is and was at all relevant times a "seller" with respect to the Class Vehicles under TEX. BUS. & COM. CODE §2.103(a)(4), and a "merchant" within the meaning of §§2.104(1) and 2A.103(a)(20).

1752.   With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under TEX. BUS. & COM. CODE §2A.103(a)(16).

1753.   The Texas Class members are and were at all relevant times "buyers" with respect to the Class Vehicles under TEX. BUS. & COM. CODE §2.313(a).

1754.   The Class Vehicles are and were at all relevant times "goods" within the meaning of TEX. BUS. & COM. CODE §§2.105(a) and 2A.103(a)(8).

1755.   A warranty that the Class Vehicles were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to TEX. BUS. & COM. CODE §§2.314 and 2A.212.

1756.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose as a result of their inherent defects, as detailed above.   In addition, because any warranty repairs or replacements offered by Mercedes cannot cure the defect in the Class Vehicles, they fail to cure Mercedes' breach of implied warranties.

1757.   As a direct and proximate result of Mercedes' breach of its implied warranties, the Texas Class members have been damaged in an amount to be determined at trial.

1758.   Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

## TEXAS COUNT II

### BREACH OF EXPRESS WARRANTY
### (TEX. BUS. & COM. CODE §§2.313 AND 2A.210)

1759.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1760.   This Count is brought on behalf of the Texas Class.

1761.   Mercedes is and was at all relevant times a "seller" with respect to the Class Vehicles under TEX. BUS. & COM. CODE §2.103(a)(4), and a "merchant" within the meaning of §§2.104(1) and 2A.103(a)(20).

1762.   With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under TEX. BUS. & COM. CODE §2A.103(a)(16).

1763.   The Texas Class members are and were at all relevant times "buyers" with respect to the Class Vehicles under TEX. BUS. & COM. CODE §2.313(a).

1764.   The Class Vehicles are and were at all relevant times "goods" within the meaning of TEX. BUS. & COM. CODE §§2.105(a) and 2A.103(a)(8).

1765.   In connection with the purchase or lease of all Class Vehicles, Mercedes provided the Texas Class members with a written warranty covering defects in materials and workmanship of the Class Vehicles for four years, as detailed above.  In addition, Mercedes' various oral and written representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles constituted express warranties to the Texas Class members.

1766.   Mercedes' warranties formed a basis of the bargain that was reached when the Texas Class members purchased or leased their Class Vehicles.

1767.   Mercedes breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Texas Class members with Class Vehicles containing defects in the materials and workmanship with regard to the paint and paint process used on the Class Vehicles that were never disclosed to the Texas Class members; (b) failing to repair or replace the defective Class Vehicles at no cost within the four-year warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Mercedes.

1768.   The Texas Class members have given Mercedes a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Mercedes can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

1769.   Thus, Mercedes' four-year written warranty fails of its essential purpose and the recovery of the Texas Class members is not limited to its remedies.

1770.   Accordingly, the Texas Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Texas Class members of the purchase or lease price of all Class Vehicles currently owned and leased, and for such other incidental and consequential damages as allowed.

1771.   As a direct and proximate result of Mercedes' breach of express warranty, the Texas Class members have been damaged in an amount to be determined at trial.

1772.   Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

**TT.**    **Claims Brought on Behalf of the Utah Class**

## UTAH COUNT I

### VIOLATION OF THE UTAH CONSUMER SALES PRACTICES ACT
### (UTAH CODE ANN. §13-11-1, *ET SEQ.*)

1773.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1774.   This Count is brought on behalf of the Utah Class.

1775.   Mercedes is a "supplier" within the meaning of UTAH CODE ANN. §13-11-3(6). The Utah Class members are "persons" within the meaning of §13-11-3(5).  The sale or lease of the Class Vehicles is and was at all relevant times a "consumer transaction" within the meaning of UTAH CODE ANN. §13-11-3(2)(b).

1776.   The Utah Consumer Sales Practices Act ("Utah CSPA") makes unlawful any "deceptive act or practice by a supplier in connection with a consumer transaction" under UTAH CODE ANN. §13-11-4.   Without limitation, this includes if the supplier knowingly or intentionally:

> (a)    indicates that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not;

> (b)    indicates that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not;

UTAH CODE ANN. §13-11-4.  "An unconscionable act or practice by a supplier in connection with a consumer transaction" also violates the Utah CSPA.  UTAH CODE ANN. §13-11-5.

1777.   In the course of its business, Mercedes violated the Utah CSPA by knowingly misrepresenting and intentionally concealing material facts regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles,

as detailed above.  Specifically, in marketing, offering for sale/lease, and selling/leasing the defective Class Vehicles, Mercedes engaged in one or more of the following unfair or deceptive acts or practices within the meaning of UTAH CODE ANN. §13-11-1, *et seq.*, by:

> a.    representing that the Class Vehicles have characteristics or benefits that they do not have;
>
> b.    representing that the Class Vehicles are of a particular standard and quality when they are not; and/or
>
> c.    advertising the Class Vehicles with the intent not to sell them as advertised.

1778.  Mercedes' scheme and concealment of the true characteristics of the Class Vehicles were material to the Utah Class members, and Mercedes misrepresented, concealed, or failed to disclose the truth with the intention that the Utah Class members would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the Utah Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1779.  The Utah Class members had no way of discerning that Mercedes' representations were false and misleading, or otherwise learning the facts that Mercedes had concealed or failed to disclose.

1780.  Mercedes had an ongoing duty to the Utah Class members to refrain from unfair and deceptive practices under the Utah CSPA in the course of its business.  Specifically, Mercedes owed the Utah Class members a duty to disclose all the material facts concerning the Class Vehicles because it possessed exclusive knowledge, it intentionally concealed it from the

Utah Class, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1781.  The Utah Class members suffered ascertainable loss and actual damages as a direct and proximate result of Mercedes' concealment, misrepresentations, and/or failure to disclose material information.

1782.  Pursuant to UTAH CODE ANN. §13-11-1, *et seq.*, the Utah Class members seek an order awarding damages, treble damages, and any other just and proper relief available under the Utah CSPA.

### UTAH COUNT II

### BREACH OF IMPLIED WARRANTIES
### (UTAH CODE ANN. §§70A-2-314 AND 70A-2A-212)

1783.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1784.  This Count is brought on behalf of the Utah Class.

1785.  Mercedes is and was at all relevant times a "seller" under UTAH CODE ANN. §70A-2-103(1)(d).

1786.  The Utah Class members are and were at all relevant times "buyers" with respect to the Class Vehicles under UTAH CODE ANN. §70A-2-313(1).

1787.  With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under UTAH CODE ANN. §70A-2a-103(1)(p).

1788.  The Class Vehicles are and were at all relevant times "goods" within the meaning of UTAH CODE ANN. §§70A-2-313(1)-(2) and 70A-2a-103(1)(h).

1789.  At all relevant times, Mercedes also was and is a "merchant" within the meaning of UTAH CODE ANN. §§70A-2-104(1) and 70A-2a-103(1)(t).

1790.  A warranty that the Class Vehicles were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to UTAH CODE ANN. §§70A-2-314 and 70A-2a-212.

1791.  The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Mercedes cannot cure the defect in the Class Vehicles, they fail to cure Mercedes' breach of implied warranties.

1792.  As a direct and proximate result of Mercedes' breach of its implied warranties, the Utah Class members have been damaged in an amount to be determined at trial.

1793.  Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

**UTAH COUNT III**

**BREACH OF EXPRESS WARRANTY**
**(UTAH CODE ANN. §§70A-2-313 AND 70A-2A-210)**

1794.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1795.  This Count is brought on behalf of the Utah Class.

1796.  Mercedes is and was at all relevant times a "seller" with respect to the Class Vehicles under UTAH CODE ANN. §70A-2-103(1)(d), and a "merchant" within the meaning of §§70A-2-104(1) and 70A-2a-103(1)(t).

1797.  With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under UTAH CODE ANN. §70A-2a-103(1)(p).

1798.   The Utah Class members are and were at all relevant times "buyers" with respect to the Class Vehicles under UTAH CODE ANN. §70A-2-313(1).

1799.   The Class Vehicles are and were at all relevant times "goods" within the meaning of UTAH CODE ANN. §§70A-2-105(1) and 70A-2a-103(1)(h).

1800.   In connection with the purchase or lease of all Class Vehicles, Mercedes provided the Utah Class members with a written warranty covering defects in materials and workmanship of the Class Vehicles for four years, as detailed above.   In addition, Mercedes' various oral and written representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles constituted express warranties to the Utah Class members.

1801.   Mercedes' warranties formed a basis of the bargain that was reached when the Utah Class members purchased or leased their Class Vehicles.

1802.   Mercedes breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Utah Class members with Class Vehicles containing defects in the materials and workmanship with regard to the paint and paint process used on the Class Vehicles that were never disclosed to the Utah Class members; (b) failing to repair or replace the defective Class Vehicles at no cost within the four-year warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Mercedes.

1803.   The Utah Class members have given Mercedes a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by

Mercedes can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

1804.  Thus, Mercedes' four-year written warranty fails of its essential purpose and the recovery of the Utah Class members is not limited to its remedies.

1805.  Accordingly, the Utah Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Utah Class members of the purchase or lease price of all Class Vehicles currently owned and leased, and for such other incidental and consequential damages as allowed.

1806.  As a direct and proximate result of Mercedes' breach of express warranty, the Utah Class members have been damaged in an amount to be determined at trial.

1807.  Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

**UU.    Claims Brought on Behalf of the Vermont Class**

**VERMONT COUNT I**

**VIOLATION OF THE VERMONT CONSUMER FRAUD ACT
(VT. STAT. ANN. TIT. 9, §2451, *ET SEQ*.)**

1808.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1809.  This Count is brought on behalf of the Vermont Class.

1810.  Mercedes is a "seller" within the meaning of VT. STAT. ANN. tit. 9, §2451a(c), and the Vermont Class members are "consumers" within the meaning of §2451a(a).

1811.  The Class Vehicles are "goods" within the meaning of VT. STAT. ANN. tit. 9, §2451a(b).

1812.  The Vermont Consumer Fraud Act ("Vermont CFA") makes unlawful "[u]nfair methods of competition in commerce and unfair or deceptive acts or practices in commerce." VT. STAT. ANN. tit. 9, §2453(a).

1813.  In the course of its business, Mercedes violated the Vermont CFA by knowingly misrepresenting and intentionally concealing material facts regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles, as detailed above.  Specifically, in marketing, offering for sale/lease, and selling/leasing the defective Class Vehicles, Mercedes engaged in one or more of the following unfair or deceptive acts or practices within the meaning of VT. STAT. ANN. tit. 9, §2451, *et seq.*, by:

      a.    representing that the Class Vehicles have characteristics or benefits that they do not have;

      b.    representing that the Class Vehicles are of a particular standard and quality when they are not; and/or

      c.    advertising the Class Vehicles with the intent not to sell them as advertised.

1814.  Mercedes' scheme and concealment of the true characteristics of the Class Vehicles were material to the Vermont Class members, and Mercedes misrepresented, concealed, or failed to disclose the truth with the intention that the Vermont Class members would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the Vermont Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1815.   The Vermont Class members had no way of discerning that Mercedes' representations were false and misleading, or otherwise learning the facts that Mercedes had concealed or failed to disclose.

1816.   Mercedes had an ongoing duty to the Vermont Class members to refrain from unfair and deceptive practices under the Vermont CFA in the course of its business. Specifically, Mercedes owed the Vermont Class members a duty to disclose all the material facts concerning the Class Vehicles because it possessed exclusive knowledge, it intentionally concealed such material facts from the Vermont Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1817.   The Vermont Class members suffered ascertainable loss and actual damages as a direct and proximate result of Mercedes' concealment, misrepresentations, and/or failure to disclose material information.

1818.   Pursuant to VT. STAT. ANN. tit. 9, §2451, *et seq.*, the Vermont Class members seek an order awarding damages, treble damages, and any other just and proper relief available under the Vermont CFA.

## VERMONT COUNT II

### BREACH OF IMPLIED WARRANTIES
### (VT. STAT. ANN. TIT. 9A, §§2-314 AND 2A-212)

1819.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1820.   This Count is brought on behalf of the Vermont Class.

1821.  Mercedes is and was at all relevant times a "seller" with respect to the Class Vehicles under VT. STAT. ANN. tit. 9A, §2-313 (1)-(2).  At all relevant times, Mercedes also was and is a "merchant" within the meaning of VT. STAT. ANN. tit. 9A, §§2-104(1) and 2A-103(1)(t).

1822.  The Vermont Class members are and were at all relevant times "buyers" with respect to the Class Vehicles under VT. STAT. ANN. tit. 9A, §2-313(1).

1823.  With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under VT. STAT. ANN. tit. 9A, §2A-103(1)(p).

1824.  The Class Vehicles are and were at all relevant times "goods" within the meaning of VT. STAT. ANN. tit. 9A, §§2-105(1) and 2A-103(1)(h).

1825.  A warranty that the Class Vehicles were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to VT. STAT. ANN. tit. 9A, §§2-314 and 2A-212.

1826.  The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Mercedes cannot cure the defect in the Class Vehicles, they fail to cure Mercedes' breach of implied warranties.

1827.  As a direct and proximate result of Mercedes' breach of its implied warranties, the Vermont Class members have been damaged in an amount to be determined at trial.

1828.  Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

## VERMONT COUNT III

### BREACH OF EXPRESS WARRANTY
### (VT. STAT. ANN. TIT. 9A, §§2-313 AND 2A-210)

1829.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1830.   This Count is brought on behalf of the Vermont Class.

1831.   Mercedes is and was at all relevant times a "seller" with respect to the Class Vehicles under VT. STAT. ANN. tit. 9A, §2-313(1)-(2), and a "merchant" within the meaning of §§2-104(1) and 2A-103(1)(t).

1832.   The Vermont Class members are and were at all relevant times "buyers" with respect to the Class Vehicles under VT. STAT. ANN. tit. 9A, §2-313 (1).

1833.   With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under VT. STAT. ANN. tit. 9A, §2A-103(1)(p).

1834.   The Class Vehicles are and were at all relevant times "goods" within the meaning of VT. STAT. ANN. tit. 9A, §§2-105(1) and 2A-103(1)(h).

1835.   In connection with the purchase or lease of all Class Vehicles, Mercedes provided the Vermont Class members with a written warranty covering defects in materials and workmanship of the Class Vehicles for four years, as detailed above.  In addition, Mercedes' various oral and written representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles constituted express warranties to the Vermont Class members.

1836.   Mercedes' warranties formed a basis of the bargain that was reached when the Vermont Class members purchased or leased their Class Vehicles.

1837. Mercedes breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Vermont Class members with Class Vehicles containing defects in the materials and workmanship with regard to the paint and paint process used on the Class Vehicles that were never disclosed to the Vermont Class members; (b) failing to repair or replace the defective Class Vehicles at no cost within the four-year warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Mercedes.

1838. The Vermont Class members have given Mercedes a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Mercedes can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

1839. Thus, Mercedes' four-year written warranty fails of its essential purpose and the recovery of the Vermont Class members is not limited to its remedies.

1840. Accordingly, the Vermont Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Vermont Class members of the purchase or lease price of all Class Vehicles currently owned and leased, and for such other incidental and consequential damages as allowed.

1841. As a direct and proximate result of Mercedes' breach of express warranty, the Vermont Class members have been damaged in an amount to be determined at trial.

1842. Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

**VV.    Claims Brought on Behalf of the Virginia Class**

**VIRGINIA COUNT I**

**VIOLATION OF VIRGINIA CONSUMER PROTECTION ACT**
**(VA. CODE ANN. §59.1-196, *ET SEQ.*)**

1843.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1844.   This Count is brought on behalf of the Virginia Class.

1845.   Mercedes, and the Virginia Class members are "persons" within the meaning of VA. CODE ANN. §59.1-198.

1846.   Mercedes is and was at all relevant times a "supplier" under VA. CODE ANN. §59.1-198.

1847.   The sale or lease of the Class Vehicles is and was at all relevant times a "consumer transaction" within the meaning of VA. CODE ANN. §59.1-198.

1848.   The Virginia Consumer Protection Act ("Virginia CPA") prohibits certain "fraudulent acts or practices committed by a supplier in connection with a consumer transaction" and lists prohibited practices which include:

(5) Misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits;

(6) Misrepresenting that goods or services are of a particular standard, quality, grade, style or model;

(8) Advertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised;

(14) Using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction.

VA. CODE ANN. §59.1-200.

1849.  In the course of its business, Mercedes violated the Virginia CPA by knowingly misrepresenting and intentionally concealing material facts regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles , as detailed above.   Specifically, in marketing, offering for sale/lease, and selling/leasing the defective Class Vehicles, Mercedes engaged in one or more of the following unfair or deceptive acts or practices within the meaning of VA. CODE ANN. §59.1-200, *et seq*., by:

> a.  representing that the Class Vehicles have characteristics or benefits that they do not have;
>
> b.  representing that the Class Vehicles are of a particular standard and quality when they are not; and/or
>
> c.  advertising the Class Vehicles with the intent not to sell them as advertised.

1850.  Mercedes' scheme and concealment of the true characteristics of the Class Vehicles were material to the Virginia Class members, and Mercedes misrepresented, concealed, or failed to disclose the truth with the intention that the Virginia Class members would rely on the misrepresentations, concealments, and omissions.   Had they known the truth, the Virginia Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1851.  The Virginia Class members had no way of discerning that Mercedes' representations were false and misleading, or otherwise learning the facts that Mercedes had concealed or failed to disclose.

1852.  Mercedes had an ongoing duty to the Virginia Class members to refrain from unfair and deceptive practices under the Virginia CPA in the course of its business.   Specifically,

Mercedes owed the Virginia Class members a duty to disclose all the material facts concerning the Class Vehicles because it possessed exclusive knowledge, it intentionally concealed such material facts from the Virginia Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1853.  The Virginia Class members suffered ascertainable loss and actual damages as a direct and proximate result of Mercedes' concealment, misrepresentations, and/or failure to disclose material information.

1854.  Pursuant to VA. CODE ANN. §59.1-204, the Virginia Class members seek an order awarding damages, treble damages, and any other just and proper relief available under the Virginia CPA.

## VIRGINIA COUNT II

## BREACH OF IMPLIED WARRANTIES
### (VA. CODE ANN. §§8.2-314 AND 8.2A-212)

1855.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1856.  This Count is brought on behalf of the Virginia Class.

1857.  Mercedes is and was at all relevant times a "seller" with respect to the Class Vehicles under VA. CODE ANN. §8.2-313(1)-(2), and a "merchant" within the meaning of §§8.2-104(1) and 8.2A-103(1)(t).

1858.  With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under VA. CODE ANN. §8.2A-103(1)(p).

1859.  The Virginia Class members are and were at all relevant times "buyers" with respect to the Class Vehicles under VA. CODE ANN. §8.2-313(1).

1860.   The Class Vehicles are and were at all relevant times "goods" within the meaning of VA. CODE ANN. §§8.2-105(1) and 8.2A-103(1)(h).

1861.   A warranty that the Class Vehicles were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to VA. CODE ANN. §§8.2-314 and 8.2A-212.

1862.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose as a result of their inherent defects, as detailed above.   In addition, because any warranty repairs or replacements offered by Mercedes cannot cure the defect in the Class Vehicles, they fail to cure Mercedes' breach of implied warranties.

1863.   As a direct and proximate result of Mercedes' breach of its implied warranties, the Virginia Class members have been damaged in an amount to be determined at trial.

1864.   Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

## VIRGINIA COUNT III

## BREACH OF EXPRESS WARRANTY
### (VA. CODE ANN. §§8.2-313 AND 8.2A-210)

1865.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1866.   This Count is brought on behalf of the Virginia Class.

1867.   Mercedes is and was at all relevant times a "seller" with respect to the Class Vehicles under VA. CODE ANN. §8.2-313(1)-(2), and a "merchant" within the meaning of §§8.2-104(1) and 8.2A-103(1)(t).

1868.   The Virginia Class members are and were at all relevant times "buyers" with respect to the Class Vehicles under VA. CODE ANN. §8.2-313(1).

1869.  With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under VA. CODE ANN. §8.2A-103(1)(p).

1870.  The Class Vehicles are and were at all relevant times "goods" within the meaning VA. CODE ANN. §§8.2-105(1) and 8.2A-103(1)(h).

1871.  In connection with the purchase or lease of all Class Vehicles, Mercedes provided the Virginia Class members with a written warranty covering defects in materials and workmanship of the Class Vehicles for four years, as detailed above. In addition, Mercedes' various oral and written representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles constituted express warranties to the Virginia Class members.

1872.  Mercedes' warranties formed a basis of the bargain that was reached when the Virginia Class members purchased or leased their Class Vehicles.

1873.  Mercedes breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Virginia Class members with Class Vehicles containing defects in the materials and workmanship with regard to the paint and paint process used on the Class Vehicles that were never disclosed to the Virginia Class members; (b) failing to repair or replace the defective Class Vehicles at no cost within the four-year warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Mercedes.

1874.  The Virginia Class members have given Mercedes a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by

Mercedes can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

1875. Thus, Mercedes' four-year written warranty fails of its essential purpose and the recovery of the Virginia Class members is not limited to its remedies.

1876. Accordingly, the Virginia Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Virginia Class members of the purchase or lease price of all Class Vehicles currently owned and leased, and for such other incidental and consequential damages as allowed.

1877. As a direct and proximate result of Mercedes' breach of express warranty, the Virginia Class members have been damaged in an amount to be determined at trial.

1878. Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

**WW.   Claims Brought on Behalf of the Washington Class**

### WASHINGTON COUNT I

### VIOLATION OF THE CONSUMER PROTECTION ACT
### (WASH. REV. CODE §19.86.010, *ET SEQ.*)

1879. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1880. This Count is brought on behalf of the Washington Class.

1881. Mercedes and the Washington Class members are "persons" within the meaning of WASH. REV. CODE §19.86.010(1).

1882. Mercedes is engaged in "trade" or "commerce" within the meaning of WASH. REV. CODE §19.86.010(2).

1883.   The Washington Consumer Protection Act ("Washington CPA") broadly prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  WASH. REV. CODE §19.86.020.

1884.  In the course of its business, Mercedes violated the Washington CPA by knowingly misrepresenting and intentionally concealing material facts regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles, as detailed above.   Specifically, in marketing, offering for sale/lease, and selling/leasing the defective Class Vehicles, Mercedes engaged in one or more of the following unfair or deceptive acts or practices within the meaning of WASH. REV. CODE §19.86.010, *et seq.*, by:

a.    representing that the Class Vehicles have characteristics or benefits that they do not have;

b.    representing that the Class Vehicles are of a particular standard and quality when they are not; and/or

c.    advertising the Class Vehicles with the intent not to sell them as advertised.

1885. Mercedes' scheme and concealment of the true characteristics of the Class Vehicles were material to the Washington Class members, and Mercedes misrepresented, concealed, or failed to disclose the truth with the intention that the Washington Class members would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the Washington Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1886.  The Washington Class members had no way of discerning that Mercedes' representations were false and misleading, or otherwise learning the facts that Mercedes had concealed or failed to disclose.

1887.  Mercedes had an ongoing duty to the Washington Class members to refrain from unfair and deceptive practices under the Washington CPA in the course of its business. Specifically, Mercedes owed the Washington Class members a duty to disclose all the material facts concerning the Class Vehicles because it possessed exclusive knowledge, it intentionally concealed such material facts from the Washington Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1888.  The Washington Class members suffered ascertainable loss and actual damages as a direct and proximate result of Mercedes' concealment, misrepresentations, and/or failure to disclose material information.

1889.  Pursuant to WASH. REV. CODE §§19.86.140 and 19.86.090, the Washington Class members seek an order awarding damages, treble damages, and any other just and proper relief available under the Washington CPA.

## WASHINGTON COUNT II

### BREACH OF IMPLIED WARRANTIES
### (WASH. REV. CODE §§62A.2-314 AND 62A.2A-212)

1890.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1891.  This Count is brought on behalf of the Washington Class.

1892.   Mercedes is and was at all relevant times a "seller" with respect to the Class Vehicles under WASH. REV. CODE §62A.2-313(1)-(2).  At all relevant times, Mercedes also was a "merchant" within the meaning of WASH. REV. CODE §§62A.2-104(1) and 62A.2A-103(1)(t).

1893.   The Washington Class members are and were at all relevant times "buyers" with respect to the Class Vehicles under WASH. REV. CODE §62A.2-313(1).  The Class Vehicles are and were at all relevant times "goods" within the meaning of WASH. REV. CODE §§62A.2-313(1)-(2) and 62A.2A-103(1)(h).

1894.   With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under WASH. REV. CODE §62A.2A-103(1)(p).

1895.   A warranty that the Class Vehicles were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to WASH. REV. CODE §§62A.2-314 and 62A.2A-212.

1896.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose as a result of their inherent defects, as detailed above.   In addition, because any warranty repairs or replacements offered by Mercedes cannot cure the defect in the Class Vehicles, they fail to cure Mercedes' breach of implied warranties.

1897.   As a direct and proximate result of Mercedes' breach of its implied warranties, the Washington Class members have been damaged in an amount to be determined at trial.

1898.   Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

## WASHINGTON COUNT III

## BREACH OF EXPRESS WARRANTY
### (WASH. REV. CODE §§62A.2-313, 62A.2A-103, AND 62A.2A-210)

1899.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1900.   This Count is brought on behalf of the Washington Class.

1901.   Mercedes is and was at all relevant times a "seller" with respect to the Class Vehicles under WASH. REV. CODE §62A.2-313(1)-(2), and a "merchant" within the meaning of §§62A.2-104(1) and 62A.2A-103(1)(t).

1902.   The Washington Class members are and were at all relevant times "buyers" with respect to the Class Vehicles under WASH. REV. CODE §62A.2-313(1).

1903.   With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under WASH. REV. CODE §62A.2A-103(1)(p).

1904.   The Class Vehicles are and were at all relevant times "goods" within the meaning of WASH. REV. CODE §§62A.2-105(1) and 62A.2A-103(1)(h).

1905.   In connection with the purchase or lease of all Class Vehicles, Mercedes provided the Washington Class members with a written warranty covering defects in materials and workmanship of the Class Vehicles for four years, as detailed above.  In addition, Mercedes' various oral and written representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles constituted express warranties to the Washington Class members.

1906.   Mercedes' warranties formed a basis of the bargain that was reached when the Washington Class members purchased or leased their Class Vehicles.

1907.  Mercedes breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Washington Class members with Class Vehicles containing defects in the materials and workmanship with regard to the paint and paint process used on the Class Vehicles that were never disclosed to the Washington Class members; (b) failing to repair or replace the defective Class Vehicles at no cost within the four-year warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Mercedes.

1908.  The Washington Class members have given Mercedes a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Mercedes can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

1909.  Thus, Mercedes' four-year written warranty fails of its essential purpose and the recovery of the Washington Class members is not limited to its remedies.

1910. Accordingly, the Washington Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Washington Class members of the purchase or lease price of all Class Vehicles currently owned and leased, and for such other incidental and consequential damages as allowed.

1911.  As a direct and proximate result of Mercedes' breach of express warranty, the Washington Class members have been damaged in an amount to be determined at trial.

1912.  Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

**XX.    Claims Brought on Behalf of the West Virginia Class**

**WEST VIRGINIA COUNT I**

**BREACH OF IMPLIED WARRANTIES
(W. VA. CODE §§46-2-314 AND 46-2A-212)**

1913.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1914.   This Count is brought on behalf of the West Virginia Class.

1915.   Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under W. VA. CODE §§46-2-314(1) and 46-2A-103(1)(t), and a "seller" of the Class Vehicles under §§46-2-314(1) and 46-2-315.

1916.   The West Virginia Class members are and were at all relevant times "buyers" within the meaning of W. VA. CODE §46-2-315.

1917.   With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under W. VA. CODE §46-2A-103(1)(p).

1918.   The Class Vehicles are and were at all relevant times "goods" within the meaning of W. VA. CODE §§46-2-105(1) and 46-2A-103(1)(h).

1919.   A warranty that the Class Vehicles were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to W. VA. CODE §§46-2-314 and 46-2A-212.

1920.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose as a result of their inherent defects, as detailed above.   In addition, because any warranty repairs or replacements offered by Mercedes cannot cure the defect in the Class Vehicles, they fail to cure Mercedes' breach of implied warranties.

1921.   As a direct and proximate result of Mercedes' breach of its implied warranties, the West Virginia Class members have been damaged in an amount to be determined at trial.

1922.   Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

### WEST VIRGINIA COUNT II

### BREACH OF EXPRESS WARRANTY
### (W. VA. CODE §§46-2-313 AND 46-2A-210)

1923.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1924.   This Count is brought on behalf of the West Virginia Class.

1925.   Mercedes is and was at all relevant times a "seller" with respect to the Class Vehicles under W. VA. CODE §46-2-103(1)(d), and a "merchant" within the meaning of §§46-2-104(1) and 46-2A-103(1)(t).

1926.   The West Virginia Class members are and were at all relevant times "buyers" with respect to the Class Vehicles under W. VA. CODE §46-2-313(1).

1927.   With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under W. VA. CODE §46-2A-103(1)(p).

1928.   The Class Vehicles are and were at all relevant times "goods" within the meaning of W. VA. CODE §§46-2-313(1)-(2) and 46-2A-103(1)(h).

1929.   In connection with the purchase or lease of all Class Vehicles, Mercedes provided the West Virginia Class members with a written warranty covering defects in materials and workmanship of the Class Vehicles for four years, as detailed above.  In addition, Mercedes' various oral and written representations regarding the quality of the Class Vehicles and the

quality and benefits of the paint and paint process used on the Class Vehicles constituted express warranties to the West Virginia Class members.

1930.   Mercedes' warranties formed a basis of the bargain that was reached when the West Virginia Class members purchased or leased their Class Vehicles.

1931.   Mercedes breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the West Virginia Class members with Class Vehicles containing defects in the materials and workmanship with regard to the paint and paint process used on the Class Vehicles that were never disclosed to the West Virginia Class members; (b) failing to repair or replace the defective Class Vehicles at no cost within the four-year warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Mercedes.

1932.   The West Virginia Class members have given Mercedes a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Mercedes can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

1933.   Thus, Mercedes' four-year written warranty fails of its essential purpose and the recovery of the West Virginia Class members is not limited to its remedies.

1934.   Accordingly, the West Virginia Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the West Virginia Class members of the purchase or lease price of all Class Vehicles currently owned and leased, and for such other incidental and consequential damages as allowed.

1935.  As a direct and proximate result of Mercedes' breach of express warranty, the West Virginia Class members have been damaged in an amount to be determined at trial.

1936.  Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

**YY.    Claims Brought on Behalf of the Wisconsin Class**

**WISCONSIN COUNT I**

**VIOLATION OF WISCONSIN DECEPTIVE TRADE PRACTICES ACT (WIS. STAT. §100.18, *ET SEQ*.)**

1937.  Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1938.  This Count is brought on behalf of the Wisconsin Class.

1939.  Mercedes is a "person, firm, corporation or association" within the meaning of WIS. STAT. §100.18(1).

1940.  The Wisconsin Class members are members of "the public" within the meaning of WIS. STAT. §100.18(1).

1941.  The Class Vehicles are "merchandise" within the meaning of WIS. STAT. §100.18(1).

1942.  The Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA") prohibits a "representation or statement of fact which is untrue, deceptive or misleading."  WIS. STAT. §100.18(1).

1943.  In the course of its business, Mercedes violated the Wisconsin DTPA by knowingly misrepresenting and intentionally concealing material facts regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles, as detailed above.  Specifically, in marketing, offering for sale/lease, and

selling/leasing the defective Class Vehicles, Mercedes made one or more representation or statement of fact which is untrue, deceptive, or misleading as defined in WIS. STAT. §100.18(1) by:

      a.      representing that the Class Vehicles have characteristics or benefits that they do not have;

      b.      representing that the Class Vehicles are of a particular standard and quality when they are not; and/or

      c.      advertising the Class Vehicles with the intent not to sell them as advertised.

1944.  Mercedes' scheme and concealment of the true characteristics of the Class Vehicles were material to the Wisconsin Class, and Mercedes misrepresented, concealed, or failed to disclose the truth with the intention that the Wisconsin Class would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the Wisconsin Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1945.  The Wisconsin Class members had no way of discerning that Mercedes' representations were false and misleading, or otherwise learning the facts that Mercedes had concealed or failed to disclose.

1946.  Mercedes had an ongoing duty to the Wisconsin Class members to refrain from making representations or statements of fact that are untrue, deceptive, or misleading under the Wisconsin DTPA in the course of its business.  Specifically, Mercedes owed the Wisconsin Class members a duty to disclose all the material facts concerning the Class Vehicles because it possessed exclusive knowledge, it intentionally concealed such material facts from the

Wisconsin Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1947.   The Wisconsin Class members suffered ascertainable loss and actual damages as a direct and proximate result of Mercedes' concealment, misrepresentations, and/or failure to disclose material information.

1948.   Pursuant to WIS. STAT. §100.18(11)(b)(2), the Wisconsin Class members seek an order awarding damages, double damages, and any other just and proper relief available under the Wisconsin DTPA.

## WISCONSIN COUNT II

### BREACH OF IMPLIED WARRANTIES
### (WIS. STAT. §§402.314 AND 411.212)

1949.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1950.   This Count is brought on behalf of the Wisconsin Class.

1951.   Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under WIS. STAT. §§402.314(1) and 411.103(1)(t), and a "seller" of the Class Vehicles under §402.103(1)(d).

1952.   The Wisconsin Class members are and were at all relevant times "buyers" within the meaning of WIS. STAT. §402.315.

1953.   With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under WIS. STAT. §411.103(1)(p).

1954.   The Class Vehicles are and were at all relevant times "goods" within the meaning of WIS. STAT. §§402.105(1)(c) and 411.103(1)(h).

1955.  A warranty that the Class Vehicles were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to WIS. STAT. §§402.314 and 411.212.

1956.  The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Mercedes cannot cure the defect in the Class Vehicles, they fail to cure Mercedes' breach of implied warranties.

1957.  As a direct and proximate result of Mercedes' breach of its implied warranties, the Wisconsin Class members have been damaged in an amount to be determined at trial.

1958.  Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

### WISCONSIN COUNT III

### BREACH OF EXPRESS WARRANTY
### (WIS. STAT. §§402.313 AND 411.210)

1959.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1960.  This Count is brought on behalf of the Wisconsin Class.

1961.  Mercedes is and was at all relevant times a "seller" with respect to the Class Vehicles under WIS. STAT. §402.313(1)-(2), and a "merchant" within the meaning of §§402.104(3) and 411.103(1)(t).

1962.  The Wisconsin Class members are and were at all relevant times "buyers" with respect to the Class Vehicles under WIS. STAT. §402.313(1).

1963.  With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under WIS. STAT. §411.103(1)(p).

1964.  The Class Vehicles are and were at all relevant times "goods" within the meaning of WIS. STAT. §§402.105(1)(c) and 411.103(1)(h).

1965.  In connection with the purchase or lease of all Class Vehicles, Mercedes provided the Wisconsin Class members with a written warranty covering defects in materials and workmanship of the Class Vehicles for four years, as detailed above.  In addition, Mercedes' various oral and written representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles constituted express warranties to the Wisconsin Class members.

1966.  Mercedes' warranties formed a basis of the bargain that was reached when the Wisconsin Class members purchased or leased their Class Vehicles.

1967.  Mercedes breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Wisconsin Class members with Class Vehicles containing defects in the materials and workmanship with regard to the paint and paint process used on the Class Vehicles that were never disclosed to the Wisconsin Class members; (b) failing to repair or replace the defective Class Vehicles at no cost within the four-year warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Mercedes.

1968.  The Wisconsin Class members have given Mercedes a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Mercedes can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

1969.   Thus, Mercedes' four-year written warranty fails of its essential purpose and the recovery of the Wisconsin Class members is not limited to its remedies.

1970.   Accordingly, the Wisconsin Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Wisconsin Class members of the purchase or lease price of all Class Vehicles currently owned and leased, and for such other incidental and consequential damages as allowed.

1971.   As a direct and proximate result of Mercedes' breach of express warranty, the Wisconsin Class members have been damaged in an amount to be determined at trial.

1972.   Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

**ZZ.    Claims Brought on Behalf of the Wyoming Class**

**WYOMING COUNT I**

**BREACH OF IMPLIED WARRANTIES**
**(WYO. STAT. §§34.1-2-314 AND 34.1-2.A-212)**

1973.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1974.   This Count is brought on behalf of the Wyoming Class.

1975.   Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under WYO. STAT. §§34.1-2-104(a) and 34.1-2.A-103(a)(xx), and a "seller" of the Class Vehicles under §34.1-2-103(a)(iv).

1976.   With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under WYO. STAT. §34.1-2.A-103(a)(xvi).

1977.   The Class Vehicles are and were at all relevant times "goods" within the meaning of WYO. STAT. §§34.1-2-105(a) and 34.1-2.A-103(a)(viii).

1978.  A warranty that the Class Vehicles were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to WYO. STAT. §§34.1-2-314 and 34.1-2.A-212.

1979.  The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Mercedes cannot cure the defect in the Class Vehicles, they fail to cure Mercedes' breach of implied warranties.

1980.  As a direct and proximate result of Mercedes' breach of its implied warranties, the Wyoming Class members have been damaged in an amount to be determined at trial.

1981.  Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

### WYOMING COUNT II

### BREACH OF EXPRESS WARRANTY
### (WYO. STAT. §§34.1-2-313 AND 34.1-2.A-210)

1982.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1983.  This Count is brought on behalf of the Wyoming Class.

1984.  Mercedes is and was at all relevant times a "merchant" with respect to the Class Vehicles under WYO. STAT. §§34.1-2-104(a) and 34.1-2.A-103(a)(xx), and a "seller" of the Class Vehicles under §34.1-2-103(a)(iv).

1985.  With respect to leases, Mercedes is and was at all relevant times a "lessor" of motor vehicles under WYO. STAT. §34.1-2.A-103(a)(xvi).

1986.  The Class Vehicles are and were at all relevant times "goods" within the meaning of WYO. STAT. §§34.1-2-105(a) and 34.1-2.A-103(a)(viii).

1987.  In connection with the purchase or lease of all Class Vehicles, Mercedes provided the Wyoming Class members with a written warranty covering defects in materials and workmanship of the Class Vehicles for four years, as detailed above.  In addition, Mercedes' various oral and written representations regarding the quality of the Class Vehicles and the quality and benefits of the paint and paint process used on the Class Vehicles constituted express warranties to the Wyoming Class members.

1988.  Mercedes' warranties formed a basis of the bargain that was reached when the Wyoming Class members purchased or leased their Class Vehicles.

1989.  Mercedes breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Wyoming Class members with Class Vehicles containing defects in the materials and workmanship with regard to the paint and paint process used on the Class Vehicles that were never disclosed to the Wyoming Class members; (b) failing to repair or replace the defective Class Vehicles at no cost within the four-year warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Mercedes.

1990.  The Wyoming Class members have given Mercedes a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Mercedes can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

1991.  Thus, Mercedes' four-year written warranty fails of its essential purpose and the recovery of the Wyoming Class members is not limited to its remedies.

1992.  Accordingly, the Wyoming Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Wyoming Class members of the purchase or lease price of all Class Vehicles currently owned and leased, and for such other incidental and consequential damages as allowed.

1993.  As a direct and proximate result of Mercedes' breach of its express warranty, the Wyoming Class members have been damaged in an amount to be determined at trial.

1994.  Mercedes was provided notice of the issues raised in this Count and this Complaint, as detailed above.

## II.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the members of the Nationwide and State Classes, respectfully request that the Court certify the proposed Nationwide and State Classes, including designating the named Plaintiffs as representatives of the Nationwide Class and their respective State Classes and appointing the undersigned as Class Counsel, and the designation of any appropriate issue classes, under the applicable provisions of Fed. R. Civ. P. 23, and that the Court enter judgment in Plaintiffs' favor and against Mercedes including the following relief:

A.      A declaration that any applicable statutes of limitations are tolled due to Mercedes' fraudulent concealment and that Mercedes is estopped from relying on any statutes of limitations in defense;

B.      Restitution, compensatory damages, and costs for economic loss and out-of- pocket costs;

C.      Punitive and exemplary damages under applicable law;

D.      Reimbursement and compensation of the full purchase price for any replacement paint job purchased by a Plaintiff or Class member;

E.      A determination that Mercedes is financially responsible for all Class notices and the administration of Class relief;

F.      Any applicable statutory or civil penalties;

G.      An order requiring Mercedes to pay both pre-judgment and post-judgment interest on any amounts awarded;

H.      An award of reasonable counsel fees, plus reimbursement of reasonable costs, expenses, and disbursements, including reasonable allowances for the fees of experts;

I.      Leave to amend this Class Action Complaint to conform to the evidence produced in discovery and at trial; and

J.      Any such other and further relief the Court deems just and equitable.

## III.    DEMAND FOR JURY TRIAL

Plaintiffs and Class members hereby demand a trial by jury, pursuant to Fed. R. Civ. P. 38(b), of all issues so triable.


Dated: August 8, 2018.                           Respectfully submitted,

**CARELLA, BYRNE, CECCHI,**
**OLSTEIN, BRODY & AGNELLO, P.C.**

By */s/ James E. Cecchi*                          
    James E. Cecchi
    Caroline F. Bartlett
    5 Becker Farm Road
    Roseland, New Jersey 07068
    Telephone:  (973) 994-1700
    Facsimile:  (973) 994-1744
    E-mail:  jcecchi@carellabyrne.com
             cbartlett@carellabyrne.com

Mark. J. Dearman
Stuart A. Davidson
Jason H. Alperstein
Eric Dwoskin
**ROBBINS GELLER RUDMAN
    & DOWD LLP**
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone:  (561) 750-3000
Facsimile:  (561) 750-3364
E-mail:   mdearman@rgrdlaw.com
              sdavidson@rgrdlaw.com
              jalperstein@rgrdlaw.com
              edwoskin@rgrdlaw.com

Steven G. Calamusa
Robert. E. Gordon
Daniel G. Williams
**GORDON & DONER, P.A.**
4114 Northlake Boulevard
Palm Beach Gardens, FL 33410
Telephone: (561) 799-5070
Facsimile: (561) 799-4050
E-mail:   scalamusa@fortheinjured.com
              rgordon@fortheinjured.com
              dwilliams@fortheinjured.com

*Counsel for Plaintiffs and the Proposed
Class*