**SHOOK, HARDY & BACON L.L.P.**
Joseph H. Blum
Thomas J. Sullivan
John M. Lyons
Two Commercial Square
2001 Market St., Suite 3000
Philadelphia, PA 19103
Telephone:  (215) 278-2555
Facsimile: (215) 278-2594
jblum@shb.com
tsullivan@shb.com
jlyons@shb.com

*Attorneys for Defendants*
*MERCEDES-BENZ USA, LLC and*
*DAIMLER AG*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| ROBERT PONZIO, KARINA KLOCZKO, JESSICA IRENE MILLER, THOMAS HAYES, ALEX ACUNA, BRIAN MADSEN, VANESSA M. MONTGOMERY, ROBERT MULL, HADIYA NELTHROPE, and SAMUEL SALGADO, on behalf of themselves and all others similarly situated, | : : : : : : : : : : | Case No. 1:18-cv-12544-JHR-JS *Document Electronically Filed* Motion Date: February 15, 2019 |
| Plaintiffs, | : : : | **DEFENDANT DAIMLER AG'S BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CLASS ACTION** |
| v. | : : | **COMPLAINT FOR LACK OF PERSONAL JURISDICTION, LACK OF STANDING, AND FAILURE TO STATE** |
| MERCEDES-BENZ USA, LLC and DAIMLER AG, | : : : | **A CLAIM, OR, IN THE ALTERNATIVE, MOTION TO TRANSFER** |
| Defendants. | : : : : | *Oral Argument Requested* |

699726 v1

# TABLE OF CONTENTS

**Page(s)**

I.     PLAINTIFFS' BREACH OF EXPRESS WARRANTY CLAIMS FAIL ...................... 4

    A.    Daimler AG Did Not Issue Any Express Warranty To Plaintiffs.......................... 4

    B.    Plaintiffs Plead No Facts Establishing That Their Vehicles Remained Under Warranty at the Time They Sought Repairs, Thus Barring Their Claims ................................................................................................................ 6

    C.    Certain Plaintiffs Fail to Allege a Breach of Their Express Warranty, Thus Barring Their Claims ........................................................................................ 8

    D.    Plaintiff Salgado Did Not Present His Vehicle to an Authorized Mercedes-Benz Dealership for Repair, Thus His Express Warranty Claims Must Be Dismissed.............................................................................................................. 9

    E.    California Plaintiffs Failed to Provide a Mercedes-Benz Dealer With a Reasonable Number of Repair Attempts, Barring Their Song-Beverly Claim for Breach of Express Warranty................................................................ 10

II.    PLAINTIFFS' BREACH OF IMPLIED WARRANTY CLAIMS MUST BE DISMISSED ................................................................................................................ 11

III.   PLAINTIFFS' MAGNUSON-MOSS WARRANTY ACT CLAIMS FAIL................... 11

IV.   PLAINTIFFS' UNJUST ENRICHMENT CLAIMS MUST BE DISMISSED ............. 12

    A.    Plaintiffs Cannot Assert a Nationwide Unjust Enrichment Claim...................... 12

    B.    Plaintiffs' Express Warranties Preclude Their Unjust Enrichment Claims ......... 13

    C.    Plaintiffs Have Adequate Remedies at Law, Thus Barring Their Unjust Enrichment Claims.............................................................................................. 14

    D.    Plaintiffs Have Not Conferred a Direct Benefit on Daimler AG Under New Jersey, Florida, New York, and North Carolina Law................................. 14

    E.    Daimler AG Was Not Reasonably Expected to Pay for Any "Benefit" Under New Jersey Law....................................................................................... 15

    F.    Plaintiffs Received the Benefit of Their Bargain................................................. 16

    G.    Kloczko and Nelthrope's Unjust Enrichment Claims Are Time-Barred ............. 16

    H.    Montgomery and Salgado's Unjust Enrichment Claims Fail Along With Their Fraud-Based Claims .................................................................................. 17

V.    PLAINTIFFS' FRAUD-BASED CLAIMS CANNOT SURVIVE................................. 17

    A.    Plaintiffs' Impermissible Group Pleading Fails to Satisfy Rules 8 and 9(b)....... 17

    B.    Plaintiffs' Fraudulent Concealment Claims Fail................................................. 19

        1.    The Court Should Dismiss the Proposed Nationwide Fraudulent Concealment Claim.................................................................................. 19

# TABLE OF CONTENTS
## (continued)

**Page(s)**

2.   Plaintiffs Allege No Facts Showing Daimler AG Violated a Duty to Disclose ........................................................................................ 20

C.   The Economic Loss Doctrine Bars the California, Florida, and Kansas Fraudulent Concealment Claims ........................................................... 31

D.   Plaintiffs' State-Specific Consumer Protection Act Claims Fail ......................... 32

1.   Plaintiffs' Consumer Protection Act Claims Fail to the Extent They Are Based on Alleged Misrepresentations ................................................ 32

2.   All Plaintiffs (Except Florida) Have Not Adequately Pled Alleged Omissions ..................................................................................... 33

3.   The California Unfair Competition Law and False Advertising Law Claims Fail for Additional Reasons ................................................ 33

4.   Florida Plaintiff Kloczko's Deceptive & Unfair Trade Practices Act Claim Is Time-Barred As Well .......................................................... 35

5.   The New Jersey Consumer Fraud Act Claim Also Fails Because the Alleged Defect Manifested After the Expiration of the Warranty Period .................................................................................. 36

6.   The New York General Business Law Sections 349 and 350 Claims Are Time-Barred As Well ............................................................ 36

7.   The North Carolina Unfair and Deceptive Trade Practices Act Claim Fails for Additional Reasons ...................................................... 37

VI.   THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER NON-NEW JERSEY PLAINTIFFS' CLAIMS AGAINST DAIMLER AG ........................... 38

VII.   PLAINTIFFS LACK STANDING TO BRING CLAIMS ON BEHALF OF PUTATIVE CLASS MEMBERS IN OTHER STATES .................................................. 41

VIII.   IN THE ALTERNATIVE, THE COURT SHOULD TRANSFER THIS CASE TO THE NORTHERN DISTRICT OF GEORGIA PURSUANT TO 28 U.S.C. § 1404(A) ............................................................................................................. 43

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraham v. Volkswagen of Am., Inc.*,
  795 F.2d 238 (2d Cir. 1986)..........................................................................7

*Alban v. BMW of North America, LLC*,
  2011 U.S. Dist. LEXIS 26754 (D.N.J. March 15, 2011)...........................24

*Alin v. Am. Honda Motor Co.*,
  2010 U.S. Dist. LEXIS 32584 (D.N.J. Mar. 31, 2010)..............................15

*Altimas v. Whitney*,
  2010 U.S. Dist. LEXIS 149662 (M.D. Fla. Dec. 9, 2010)..........................32

*Am. Honda v. Super. Ct.*,
  199 Cal. App. 4th 1367 (2011) .................................................................23

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).....................................................................................4

*Bannister v. Agard*,
  125 A.D. 3d 797 (N.Y. App. Div. 2015) ...................................................30

*Barba v. Seung Heun Lee*,
  2010 U.S. Dist. LEXIS 153381 (D. Ariz. Aug. 24, 2010).........................19

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).....................................................................................4

*Berenblat v. Apple, Inc.*,
  2010 U.S. Dist. LEXIS (N.D. Cal. Apr. 9, 2010) .....................................24

*Berlinger v. Wells Fargo, N.A.*,
  2015 U.S. Dist. LEXIS 141111 (M.D. Fla. Oct. 16, 2015) .......................14

*Breeden v. Richmond Cmty. Coll.*,
  171 F.R.D. 189 (M.D.N.C. 1997) ..............................................................28

*Brisson v. Ford Motor Co.*,
  349 F. App'x 433 (11th Cir. 2009) ..............................................................7

*Bristol-Myers Squibb Co. v. Superior Court*,
  137 S. Ct. 1773 (2017)........................................................................ *passim*

## <u>TABLE OF AUTHORITIES</u>
(continued)

**Page(s)**

**Cases**

*Burdt v. Whirlpool Corp.*,
2015 U.S. Dist. LEXIS 102761 (N.D. Cal. Aug. 5, 2015).......................................................22

*Burnette v. Nicolet, Inc.*,
818 F.2d 1098 (4th Cir. 1986) ...............................................................................................28

*Burton v. R.J. Reynolds Tobacco Co.*,
397 F.3d 906 (10th Cir. 2005) .........................................................................................20, 28

*In re Burton Wiand Receivership Cases*,
2008 U.S. Dist. LEXIS 27929 (M.D. Fla. Mar. 26, 2008).......................................................17

*Butcher v. DaimlerChrysler Co.*,
2008 U.S. Dist. LEXIS 57679 (M.D.N.C. July 29, 2008) ........................................................38

*Butler v. Butler*,
768 S.E.2d 332 (N.C. Ct. App. 2015) ....................................................................................16

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ...................................................................................42

*Carrier v. Bank of Am., N.A.*,
2014 WL 356219 (D.N.J. Jan. 31, 2014) ..................................................................................6

*Catanese v. Unilever*,
774 F. Supp. 2d 684 (D.N.J. 2011) .......................................................................................44

*Cazares v. Household Fin. Corp.*,
2005 U.S. Dist. LEXIS 39222 (C.D. Cal. July 26, 2005)........................................................35

*Centex Homes Corp. v. Boag*,
128 N.J. Super. 385 (N.J. Super. Ct. 1974).............................................................................14

*Chernus v. Logitech, Inc.*,
2018 U.S. Dist. LEXIS 70784 (D.N.J. Apr. 27, 2018) ...........................................................39

*Chin v. Chrysler Corp.*,
182 F.R.D. 448 (D.N.J. 1998).................................................................................................19

*Clemens v. DaimlerChrysler Corp.*,
534 F.3d 1017 (9th Cir. 2008) ..........................................................................................7, 11

## TABLE OF AUTHORITIES
<u>(continued)</u>

**Page(s)**

**Cases**

*Coba v. Ford Motor Co.*,
  2013 U.S. Dist. LEXIS 8366 (D.N.J. Jan. 22, 2013) ............................................28

*Coker v. DaimlerChrysler Corp.*,
  617 S.E.2d 306 (N.C. App. Ct. 2005) ......................................................................37

*Colley v. P&G*,
  2016 U.S. Dist. LEXIS 137725 (S.D. Ohio Oct. 4, 2016) ......................................13

*Crozier v. Johnson & Johnson Consumer Cos.*,
  901 F. Supp. 2d 494 (D.N.J. 2012) ...........................................................................4

*Czarnecki v. Roller*,
  726 F. Supp. 832 (S.D. Fla. 1989) ..........................................................................30

*Daimler AG v. Bauman*,
  134 S. Ct. 746 (2014)...............................................................................................38

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
  2015 U.S. Dist. LEXIS 84152 (N.D. Ill. June 29, 2015) .......................................41

*Dandana, LLC v. MBC FZ-LLC*,
  507 F. App'x 264 (3d Cir. 2012) .............................................................................13

*Darne v. Ford Motor Co.*,
  2015 U.S. Dist. LEXIS 169752 (N.D. Ill. Dec. 18, 2015) .....................................33

*Daugherty v. Am. Honda Motor Co.*,
  144 Cal. App. 4th 824 (2006) ...................................................................................7

*Demmick v. Cellco P'ship*,
  2010 U.S. Dist. LEXIS 94041 (D.N.J. Sept. 8, 2010) ...............................12, 19, 20

*In re Dental Supplies Antitrust Litig.*,
  2017 U.S. Dist. LEXIS 153265 (E.D.N.Y. Sept. 20, 2017).....................................40

*Destfino v. Reiswig*,
  630 F.3d 952 (9th Cir. 2011) ...................................................................................18

*Doll v. Ford Motor Co.*,
  814 F. Supp. 2d 526 (D. Md. 2011).........................................................................15

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

**Cases**

*Donnelly v. Option One Mortg. Corp.*,
  2014 U.S. Dist. LEXIS 41924 (D.N.J. Mar. 26, 2014)..........................................................32

*In re Ductile Iron Pipe Fittings Indirect Purchaser Antitrust Litig.*,
  2013 U.S. Dist. LEXIS 36783 (D.N.J. Mar. 18, 2013)..........................................................41

*Duquesne Light Co. v. Westinghouse Elec. Corp.*,
  66 F.3d 604 (3d Cir. 1995)......................................................................................................7

*Edmundson v. Procter & Gamble Co.*,
  537 F. App'x 708 (9th Cir. 2013) ..........................................................................................29

*Erlandson v. Ford Motor Co.*,
  2009 U.S. Dist. LEXIS 101316 (D. Or. Oct. 30, 2009)........................................................22

*Fabricatore v. ADT LLC*,
  2018 WL 3696581 (D.N.J. Aug. 3, 2018) ...............................................................................5

*Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*,
  400 F. App'x 611 (2d Cir. 2010) ...........................................................................................14

*Ferranti v. Hewlett-Packard Co.*,
  2014 U.S. Dis. LEXIS 131249 (N.D. Cal. Sept. 16, 2014) ...................................................25

*Fisher v. Honda N. Am., Inc.*,
  2014 U.S. Dist. LEXIS 84570 (C.D. Cal. June 12, 2014) .....................................................26

*In re Flash Memory Antitrust Litig.*,
  643 F. Supp. 2d 1133 (N.D. Cal. 2009) .................................................................................41

*Flynn v. FCA US LLC*,
  327 F.R.D. 206 (S.D. Ill. 2018) .............................................................................................11

*In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*,
  2010 U.S. Dist. LEXIS 68241 (D.N.J. July 9, 2010)......................................................30, 33

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*,
  174 F.R.D. 332 (D.N.J. 1997)......................................................................................13, 19, 42

*In re Ford Motor Co. Vehicle Paint Litig.*,
  182 F.R.D. 214 (E.D. La. 1998)..............................................................................................19

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

**Cases**

*Frank M. McDermott, Ltd. v. Moretz*,
  898 F.2d 418 (4th Cir. 1990) ...............................................30

*Frederico v. Home Depot*,
  507 F.3d 188 (3d Cir. 2007)......................................................4

*Friedland v. Gales*,
  509 S.E.2d 793 (N.C. Ct. App. 1998) ...................................20

*Friedman v. Am. Guardian Warranty Servs.*,
  837 So. 2d 1165 (Fla. Ct. App. 2003)...................................27

*Friedman v. Mercedes-Benz USA, LLC*,
  2013 U.S. Dist. LEXIS 187268 (C.D. Cal. June 12, 2013) ............................30, 33

*Gerschel v. Christensen*,
  40 N.Y.S.3d 41 (N.Y. App. Div. 2016) .................................17

*Gerstle v. Am. Honda Motor Co.*,
  2017 U.S. Dist. LEXIS 100580 (N.D. Cal. June 28, 2017) ....................13

*GFRE, Inc. v. U.S. Bank, N.A.*,
  130 A.D.3d 569 (N.Y. App. Div. 2015) .................................16

*Glass v. BMW of N. America, LLC.*,
  2011 U.S. Dist. LEXIS 149199 (D.N.J. Dec. 29, 2011)....................................32, 33

*In re GM LLC Ignition Switch Litig.*,
  2016 U.S. Dist. LEXIS 92499 (S.D.N.Y. July 15, 2016) .......................31

*Goldman v. Bayer AG*,
  2017 U.S. Dist. LEXIS 117117 (N.D. Cal. July 26, 2017)....................17

*Graham v. Bank of Am., N.A.*,
  172 Cal. Rptr. 3d 218 (Cal. Ct. App. 2014)............................20

*Grandalski v. Quest Diagnostics Inc.*,
  767 F.3d 175 (3d Cir. 2014)......................................................43

*Greene v. Mizuho Bank, Ltd.*,
  289 F. Supp. 3d 870 (N.D. Ill. 2017) .....................................40

## TABLE OF AUTHORITIES
<u>(continued)</u>

**Page(s)**

**Cases**

*Gristede's Foods, Inc. v. Unkechauge Nation*,
532 F. Supp. 2d 439 (E.D.N.Y. 2007) ................................................................37

*Haag v. Hyundai Motor Am.*,
969 F. Supp. 2d 313 (W.D.N.Y. 2013) .............................................................13

*Harbour Point Homeowners' Ass'n v. DJF Enters.*,
206 N.C. App. 152 (2010) ..................................................................................9

*Herremans v. BMW of N. Am., LLC*,
2014 U.S. Dist. LEXIS 145957 (C.D. Cal. Oct. 3, 2014) ................................24

*Herrera v. Volkswagen Grp. of Am., Inc.*,
2016 U.S. Dist. LEXIS 192907 (C.D. Cal. Sep. 9, 2016) ................................11

*Highway Sales, Inc. v. Blue Bird Corp.*,
559 F.3d 782 (8th Cir. 2009) ............................................................................11

*Hinz v. Elanco Prods. Co.*,
1988 U.S. Dist. LEXIS 10433 (D. Kan. Aug. 19, 1988) ..................................31

*Hodsdon v. Mars, Inc.*,
891 F.3d 857 (9th Cir. 2018) ......................................................................27, 34

*Horowitz v. AT&T Inc.*,
2018 U.S. Dist. LEXIS 69191 (D.N.J. Apr. 25, 2018) .....................................39

*Howe v. Samsung Elecs. Am., Inc.*,
2018 WL 2212982 (N.D. Fla. Jan. 5, 2018) .....................................................40

*Huang v. Sonus Networks, Inc.*,
2016 U.S. Dist. LEXIS 36009 (D.N.J. Mar. 21, 2016) ...............................43, 44

*Hughes v. Panasonic Consumer Elecs. Co.*,
2011 U.S. Dist. LEXIS 79504 (D.N.J. July 21, 2011) ................................14, 16

*Ice Corp. v. Hamilton Sundstrand, Inc.*,
444 F. Supp. 2d 1165 (D. Kan. 2006) ...............................................................13

*Ingrami v. Rovner*,
847 N.Y.S.2d 132 (N.Y. App. Div. 2007) ........................................................16

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

**Cases**

*Jumara v. State Farm Ins. Co.*,
  55 F.3d 873 (3d Cir. 1995) ................................................................................43

*Kampuries v. Am. Honda Motor Co.*,
  204 F. Supp. 3d 484 (E.D.N.Y. 2016) ...............................................................20

*Kirsopp v. Yamaha Motor Co.*,
  2015 U.S. Dist. LEXIS 68639 (C.D. Cal. Jan. 7, 2015) ....................................22

*Lane v. Capital Acquisitions & Mgmt. Co.*,
  2006 U.S. Dist. LEXIS 96422 (S.D. Fla. Apr. 13, 2006) ..................................18

*Lawrence v. Xerox Corp.*,
  56 F. Supp. 2d 442 (D.N.J. 1999) ......................................................................44

*Lewis v. Casey*,
  518 U.S. 343 (1996) ...........................................................................................41

*Licul v. Volkswagen Grp. of Am., Inc.*,
  2013 U.S. Dist. LEXIS 171627 (S.D. Fla. Dec. 5, 2013) ....................................7

*Loiodice v. BMW of N. Am., LLC*,
  4 N.Y.S. 3d 102 (N.Y. App. Div. 2015) .............................................................37

*Lopez v. Clarke*,
  189 So. 3d 805 (Fla. Dist. Ct. App. 2015) .........................................................20

*Lusson v. Apple, Inc.*,
  2016 U.S. Dist. LEXIS 145018 (N.D. Cal. Oct. 19, 2016) .................................30

*In re Magnesium Oxide Antitrust Litig.*,
  2011 U.S. Dist. LEXIS 121373 (D.N.J. Oct. 20, 2011) .................................41, 42

*Marshall v. Hyundai Motor Am.*,
  51 F. Supp. 3d 451 (S.D.N.Y. 2014) ..................................................................13

*Matthews v. Am. Honda Motor Co.*,
  2012 U.S. Dist. LEXIS 90802 (S.D. Fla. June 6, 2012) .....................................36

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) ..............................................................................12

699726 v1

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

**Cases**

*McGee v. S-Bay Dev., LLC,*
   2012 U.S. Dist. LEXIS 30872 (M.D. Fla. Mar. 8, 2012).........................................30

*McGuire v. BMW of N. Am., LLC,*
   2014 U.S. Dist. LEXIS 77009 (D.N.J. June 6, 2014) .............................................42

*McQueen v. BMW of N. Am., LLC,*
   2014 U.S. Dist. LEXIS 21084 (D.N.J. Feb. 20, 2014) .......................................6, 25

*MDNet, Inc. v. Pharmacia Corp.,*
   147 F. App'x 239 (3d Cir. 2005) .............................................................................18

*Meeker v. McLaughlin,*
   2018 U.S. Dist. LEXIS 117211 (S.D.N.Y. July 13, 2018) .....................................20

*Merkin v. Honda N. Am., Inc.,*
   2017 U.S. Dist. LEXIS 187233 (D.N.J. Nov. 9, 2017)...........................................24

*Merl v. Warner Bros. Entm't, Inc.,*
   2013 U.S. Dist. LEXIS 9202 (S.D. Fla. Jan. 23, 2013) .........................................14

*Metric Constructors, Inc. v. Bank of Tokyo-Mitsubishi, Ltd.,*
   72 F. App'x 916 (4th Cir. 2003) ..............................................................................13

*In re MI Windows & Doors Prods. Liab. Litig.,*
   2013 U.S. Dist. LEXIS 48017 (D.S.C. Apr. 3, 2013).............................................33

*Miles v. Love,*
   1 Kan. App. 2d 630 (1977) ......................................................................................20

*Miller v. Hyundai Motor Am.,*
   2016 U.S. Dist. LEXIS 133668 (S.D.N.Y. Sept. 28, 2016)......................................9

*Mukamal v. GE Capital Corp.,*
   517 B.R. 310 (Bankr. S.D. Fla. 2013)......................................................................20

*N.Y. City Health & Hosp. Corp. v. Wellcare of N.Y., Inc.,*
   35 Misc. 3d 250 (N.Y. Sup. Ct. 2011) .....................................................................14

*Naporano Iron & Metal Co. v. Am. Crane Corp.,*
   79 F. Supp. 2d 494 (D.N.J. 1999) ............................................................................18

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

**Cases**

*Nelson v. Nelson*,
  288 Kan. 570 (2009) ........................................................................................14

*Nelson v. Nissan N. Am., Inc.*,
  894 F. Supp. 2d 558 (D.N.J. 2012) ..................................................................8

*Nguyen v. Nissan N. Am., Inc.*,
  2017 U.S. Dist. LEXIS 55501 (N.D. Cal. Apr. 11, 2017) .....................................14

*In re NJOY, Inc. Consumer Class Action Litig.*,
  120 F. Supp. 3d 1050 (C.D. Cal. 2015) ...........................................................33

*Nobile v. Ford Motor Co.*,
  2011 U.S. Dist. LEXIS 26766 (D.N.J. Mar. 14, 2011).........................................36

*Ocana v. Ford Motor Co.*,
  992 So. 2d 319 (Fla. Ct. App. 2008).................................................................9

*Ormsby v. Imhoff & Assocs., P.C.*,
  2014 U.S. Dist. LEXIS 119400 (D. Kan. Aug. 22, 2014) ................................30, 32

*Pension Benefit Guar. Corp. v. White Consol. Indus.*,
  998 F.2d 1192 (3rd Cir. 1993) .......................................................................23

*Perret v. Wyndham Vacation Resorts, Inc.*,
  889 F. Supp. 2d 1333 (S.D. Fla. 2012) ............................................................32

*Peterpaul v. Reger*,
  2007 U.S. Dist. LEXIS 94059 (D.N.J. Dec. 19, 2007).........................................20

*Peters v. Countrywide Home Loans, Inc.*,
  2016 U.S. Dist. LEXIS 64461 (D.N.J. May 17, 2016).........................................29

*Peterson v. Cellco P'ship*,
  164 Cal. App. 4th 1583 (2008) .......................................................................16

*Phillips v. Apple Inc.*,
  2016 U.S. Dist. LEXIS 53148 (N.D. Cal. Apr. 19, 2016) ................................32, 35

*Pinon v. Daimler AG and Mercedes-Benz USA, LLC*,
  No. 1:18-cv-03984 (N.D. Ga. filed Aug. 21, 2018)..............................................44

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

**Cases**

*Plumlee v. Pfizer, Inc.*,
2014 U.S. Dist. LEXIS 23172 (N.D. Cal. Feb. 21, 2014) ....................................35

*Plymouth Cnty. Ret. Ass'n v. Primo Water Corp.*,
966 F. Supp. 2d 525 (M.D.N.C. 2013) ................................................................30

*Practice Mgmt. Support Sys. v. Cirque Du Soleil, Inc.*,
2018 U.S. Dist. LEXIS 39754 (N.D. Ill. Mar. 12, 2018) .......................................40

*Prohias v. Pfizer, Inc.*,
485 F. Supp. 2d 1329 (S.D. Fla. 2007) ...............................................................16

*Punian v. Gillette Co.*,
2015 U.S. Dist. LEXIS 111208 (N.D. Cal. Aug. 20, 2015) ...................................34

*Rapp v. Green Tree Servicing, LLC*,
302 F.R.D. 505 (D. Minn. 2014) .........................................................................12

*Rasnic v. FCA US LLC*,
2017 U.S. Dist. LEXIS 206444 (D. Kan. Dec. 15, 2017) ......................................33

*Resnick v. Hyundai Motor Am., Inc.*,
2016 U.S. Dist. LEXIS 160179 (C.D. Cal. Nov. 14, 2016) ...................8, 18, 21, 33

*Resnick v. Hyundai Motor Am., Inc.*,
2017 U.S. Dist. LEXIS 139179 (C.D. Cal. Aug. 21, 2017) ........................... *passim*

*Resnick v. Hyundai Motor Am., Inc.*,
2017 U.S. Dist. LEXIS 67525 (C.D. Cal. Apr. 13, 2017) ...................................7, 8

*Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc.*,
2013 U.S. Dist. LEXIS 151128 (N.D. Cal. Oct. 18, 2013) ...................................34

*Rojas-Lozano v. Google, Inc.*,
159 F. Supp. 3d 1101 (N.D. Cal. 2016) ..............................................................17

*Salovaara v. Jackson Nat. Life Ins. Co.*,
66 F. Sup. 2d 593 (D.N.J. 1999) ........................................................................28

*Sanchez v. Aurora Loan Servs., LLC*,
2014 U.S. Dist. LEXIS 199631 (C.D. Cal. Mar. 11, 2014) ...................................32

699726 v1

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

## Cases

*Sara Designs, Inc. v. A Classic Time Watch Co. Inc.*,
234 F. Supp. 3d 548 (S.D.N.Y. 2017)....................................................................33

*In re Seagate Tech. LLC Litig.*,
233 F. Supp. 3d 776 (N.D. Cal. 2017) ..................................................................10

*Seven Peanut Co. v. Indus. Fumigant Co.*,
807 F.3d 88 (4th Cir. 2015) ...................................................................................37

*Shema Kolainu-Hear Our Voices v. ProviderSoft, LLC*,
2010 U.S. Dist. LEXIS 50447 (E.D.N.Y. May 21, 2010) ......................................30

*Smith v. Ford Motor Co.*,
462 F. App'x 660 (9th Cir. 2011) .............................................................................8

*Smith v. Ford Motor Co.*,
749 F. Supp. 2d 980 (N.D. Cal. 2010) ..................................................................17

*Solum v. Certainteed Corp.*,
147 F. Supp. 3d 404 (E.D.N.C. 2015)....................................................................32

*In re Sony Grand WEGA KDF-E A10/A20 Series Rear Projection HDTV TV
Litig.*,
758 F. Supp. 2d 1077 (S.D. Cal. 2010).........................................................7, 32, 35

*Southwood v. Credit Card Sol.*,
2016 U.S. Dist. LEXIS 48039 (E.D.N.C. Feb. 26, 2016)......................................14

*Speier-Roche v. Volkswagen Grp. of Am., Inc.*,
2014 U.S. Dist. LEXIS 59991 (S.D. Fla. Apr. 30, 2014) ..................................8, 36

*Spratley v. FCA US LLC*,
2017 U.S. Dist. LEXIS 147492 (N.D.N.Y. Sept. 12, 2017)...................................40

*State Farm Mut. Auto. Ins. Co. v. B&A Diagnostic, Inc.*,
104 F. Supp. 3d 1366 (S.D. Fla. 2015) .................................................................16

*Stevenson v. Mazda Motor of Am., Inc.*,
2015 U.S. Dist. LEXIS 70945 (D.N.J. June 2, 2015)..................................28, 30, 33

*Stewart v. Electrolux Home Prods.*,
2018 U.S. Dist. LEXIS 63078 (E.D. Cal. Apr. 13, 2018)......................................25

699726 v1

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

**Cases**

*Stewart v. Electrolux Home Prods.*,
   304 F. Supp. 3d 894, 902 (E.D. Cal. 2018)............................................................31

*Stickrath v. Globalstar, Inc.*,
   527 F. Supp. 2d 992 (N.D. Cal. 2007) ...................................................................30

*Suddreth v. Mercedes-Benz USA, LLC*,
   2011 U.S. Dist. LEXIS 126237 (D.N.J. Oct. 31, 2011).....................................8, 22

*In re Suprema Specialties, Inc. Secs. Litig.*,
   438 F.3d 256 (3d Cir. 2006)....................................................................................4

*In re Surplus Furniture Liquidators*,
   199 B.R. 136 (Bankr. M.D.N.C. 1995)..................................................................28

*Swiss Watch Int'l, Inc. v. Movado Grp., Inc.*,
   2001 U.S. Dist. LEXIS 27529 (S.D. Fla. June 21, 2001) .......................................15

*Tatum v. Chrysler Group LLC*,
   2011 U.S. Dist. LEXIS 32362 (D.N.J. Mar. 28, 2011)..........................................30

*Taylor v. American Honda Motor Co.*,
   555 F. Supp. 59 (M.D. Fla. 1982)..........................................................................28

*TBG, Inc. v. Bendis*,
   841 F. Supp. 1538 (D. Kan. 1993).........................................................................30

*TBI Unlimited, LLC v. Clearcut Lawn Decisions, LLC*,
   2013 WL 1223643 (D.N.J. Mar. 25, 2013).........................................................5, 6

*In re Terazosin Hydrochloride Antitrust Litig.*,
   160 F. Supp. 2d 1365 (S.D. Fla. 2001) ..................................................................42

*Thompkins v. Key Health Med. Sols., Inc.*,
   2015 U.S. Dist. LEXIS 35470 (M.D.N.C. Mar. 23, 2015) .....................................14

*Toms v. Funai Corp.*,
   2015 U.S. Dist. LEXIS 83413 (D.N.J. June 25, 2015)...........................................20

*Torpey v. Anthem Blue Cross Blue Shield of California*.,
   2014 WL 1569498 (D.N.J. Apr. 17, 2014) ..............................................................5

**TABLE OF AUTHORITIES**
(continued)

Page(s)

**Cases**

*In re Tropicana Orange Juice Mktg. & Sales Practices Litig.*,
2018 U.S. Dist. LEXIS 9797 (D.N.J. Jan. 22, 2018) ............................................16

*Tsonev v. Kia Motors Am., Inc.*,
2016 U.S. Dist. LEXIS 192698 (C.D. Cal. Nov. 9, 2016) ....................................11

*Van Mourik v. Big Heart Pet Brands, Inc.*,
2018 U.S. Dist. LEXIS 34796 (N.D. Cal. Mar. 1, 2018) ......................................19

*Verizon Directories Corp. v. Yellow Book United States, Inc.*,
309 F. Supp. 2d 401 (E.D.N.Y. 2004) ..................................................................32

*Vinci v. Hyundai Motor Am.*,
2018 U.S. Dist. LEXIS 139979 (C.D. Cal. Apr. 10, 2018) ...................................11

*Walsh v. Ford Motor Co.*,
807 F.2d 1000 (D.C. Cir. 1986) ............................................................................11

*Weckhorst v. Kan. State Univ.*,
241 F. Supp. 3d 1154 (D. Kan. 2017) ...................................................................32

*In re Wellbutrin XL Antitrust Litig.*,
260 F.R.D. 143 (E.D. Pa. July 30, 2009) .........................................................12, 42

*Wenokur v. AXA Equitable Life Ins. Co.*,
2017 U.S. Dist. LEXIS 162812 (D. Ariz. Oct. 2, 2017)........................................40

*Weske v. Samsung Elecs, Am., Inc.*,
934 F. Supp. 2d 698 (D.N.J. 2013)........................................................................25

*Wilborn v. CarMax Auto Superstores Cal., LLC*,
2017 U.S. Dist. LEXIS 203597 (C.D. Cal. Dec. 11, 2017) ..................................10

*Williams v. Yamaha Motor Co.*,
851 F.3d 1015 (9th Cir. 2017) ..............................................................................26

*Williams v. Yamaha Motor Corp.*,
106 F. Supp. 3d 1101 (C.D. Cal. 2015) ................................................................26

*Williams v. Yamaha Motor Corp.*,
2015 U.S. Dist. LEXIS 193825 (C.D. Cal. Jan. 7, 2015) .....................................13

699726 v1

**TABLE OF AUTHORITIES**
(continued)

Page(s)

**Cases**

*Williamson v. Amrani*,
   283 Kan. 227 (2007) ........................................................................................33

*Wilson v. Everbank, N.A.*,
   77 F. Supp. 3d 1202, 1220 (S.D. Fla. 2015) .............................................13

*Wilson v. Hewlett-Packard*,
   668 F.3d 1136 (9th Cir. 2012) .................................................... *passim*

*Woods v. Maytag Co.*,
   2010 U.S. Dist. LEXIS 116595 (E.D.N.Y. Nov. 2, 2010)..........................33

*Zavala v. Wal-Mart Stores, Inc.*,
   393 F. Supp. 2d 295 (D.N.J. 2005) ........................................................21

**Statutes**

40 C.F.R.
   § 86.1808-01-(f)(2)(i) ...............................................................................22

28 U.S.C.
   § 1404(a) ...............................................................................................2, 43

California Civil Code
   Section 338(a) ...........................................................................................35
   Section 1793.2(d)(1) ..................................................................................10
   Section 1795.91...........................................................................................22

Federal Rules of Civil Procedure
   Rule 8 ......................................................................................................2, 17
   Rule 9(b) ...............................................................2, 4, 18, 21, 29, 31, 32, 35
   Rule 12(b)(6)................................................................................................4

Florida Statutes
   Section 95.11(3)(f)......................................................................................36

New York General Business Law
   Section 349.............................................................................................33, 37
   Section 350.............................................................................................33, 37

**Other Authorities**

Federal Rule of Civil Procedure 8 ...............................................................5

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

**Cases**

http://assets.mbusa.com/vcm/CAC_RAPMD/01vehiclecareguide.pdf ........................................31

http://www.uscourts.gov/sites/default/files/data_tables/ .............................................................44

***Mercedes-Benz USA, LLC*** (MBUSA) ..............................................................................................5

Rule 9(b) ...................................................................................................................................... *passim*

Rule 9(b)'s ...................................................................................................................................2

## INTRODUCTION

Plaintiffs are ten purchasers of new and used 2012-2014 Mercedes-Benz vehicles who allege a defect in their "Mars Red" paint, thereby disappointing their nebulous "expectation" of "ten years of acceptable performance of a paint system." *See* Compl. ¶¶ 1, 4.  However, wholly undermining these claims are the simple facts that (1) Daimler AG is not the warrantor of their vehicles, (2) their vehicles are subject to a four-year, 50,000-mile warranty which specifically advises that the vehicles—like any other consumer product—may experience defects, and (3) Daimler AG neither generally nor specifically represented that the Mars Red paint would endure without blemish under any circumstances or for any particular period of time.  In spite of this, plaintiffs bring a variety of fraud- and warranty-based claims against Daimler AG based on their unsupported belief that their vehicles should be "free of defects," *see id.* ¶ 176, and without pleading facts showing they were entitled to warranty coverage.  For numerous reasons, plaintiffs fail to plead essential facts supporting their claims, which must be dismissed in their entirety.

Plaintiffs' warranty claims fail on several grounds.  Critically, Daimler AG did not issue any express warranty for plaintiffs' vehicles.  In addition, plaintiffs ignore their warranties' time and mileage limits and fail to plead facts showing their vehicles were under warranty at the time of repair.  Several also fail to allege a breach because they either received a free repair or failed to present their vehicle for repair.

Plaintiffs also fail to plead a claim for unjust enrichment because the subject matter of their claims—an alleged product defect—is governed by an express warranty.  Such claims are also barred because, among other things, plaintiffs allege adequate remedies at law, fail to establish a direct benefit conferred on Daimler AG, received the benefit of the bargain, and cannot establish a claim on a nationwide basis.

1

Plaintiffs' fraud-based claims fail to satisfy Rule 8, let alone Rule 9(b)'s heightened pleading requirements.  Nearly every allegation in the Complaint impermissibly lumps Daimler AG and Mercedes-Benz USA, LLC ("MBUSA") together as a collective "Mercedes," despite recognizing that each is a different company with different functions.  The Complaint's impermissible group pleading therefore dooms plaintiffs' fraud claims at the outset.  Moreover, plaintiffs fail to plead facts showing Daimler AG's pre-sale knowledge of the alleged defect.  Nor do plaintiffs' allegations show that Daimler AG made any representations rising above the level of puffery—much less that it promised them "defect free" vehicles.  Plaintiffs also fail to allege facts showing that Daimler AG owed and violated any duty to disclose to plaintiffs.  These and other state-specific reasons doom their state law consumer protection act claims as well.

Plaintiffs' Complaint is also vastly overbroad in several respects.  Only one of the ten named plaintiffs resides in or purchased a vehicle in New Jersey, such that the Court lacks personal jurisdiction as to the claims of the other nine under the Supreme Court's recent holding in *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017).  In addition, despite having connections to only six states, plaintiffs improperly seek to bring claims as to the 44 other states plus the District of Columbia.  Under well-settled principles, they lack standing to do so.

Finally, if this Court does not dismiss the non-New Jersey plaintiffs for lack of personal jurisdiction, this case, in the alternative, should be transferred to the Northern District of Georgia pursuant to 28 U.S.C. Section 1404(a), where a duplicative class action has been filed.

## FACTUAL ALLEGATIONS

Ten named plaintiffs who purchased Mercedes-Benz vehicles in six different states—New Jersey (Robert Ponzio), Florida (Karina Kloczko, Jessica Irene Miller, Thomas Hayes, and Alex Acuna), Kansas (Brian Madsen), California (Vanessa Montgomery, Samuel Salgado), North

2

Carolina (Robert Mull), and New York (Hadiya Nelthrope)—allege that the "Mars Red" exterior paint on their vehicles is bubbling, peeling and flaking.  Compl. ¶ 1.  In other words, their alleged issue is purely cosmetic.

Plaintiffs' vehicles were subject to a New Vehicle Limited Warranty ("NVLW") issued by MBUSA—*not* by Daimler AG—which promises to "correct defects in material or workmanship arising during the warranty period," which is "48 months or 50,000 miles, whichever occurs first." Compl. ¶ 159.  Yet, plaintiffs uniformly fail to allege that they presented their vehicles for repair within the warranty period.  Indeed, the facts alleged *affirmatively* show that the warranties for Ponzio, Miller, Acuna, and Madsen's vehicles had expired when they presented for repair.

Plaintiffs also claim that "it is customary to expect in excess of ten years of acceptable performance of a paint system" and that they reasonably believed at the time of purchase that their vehicles would be "free of defects."  Compl. ¶¶ 4, 176.  But these groundless assumptions go directly against the NVLW, which makes no such promise and exists because vehicles can and do experience defects.  Indeed, the NVLW specifically acknowledges this reality as to paint, advising "that if you find any paint or appearance problems that you advise your authorized Mercedes-Benz Center as soon as possible."  Compl. ¶ 162.

Unable to identify any representation wherein Daimler AG promised them vehicles "free of defects" or "ten years" of "acceptable paint performance," plaintiffs instead point to alleged advertisements from "Mercedes" describing the putative class vehicles as "state-of-the-art," "luxury," "fine craftsmanship," "the most advanced vehicles on the road," and having "enduring quality."  Compl. ¶¶ 7, 80, 103.  But these statements are mere puffery and not actionable and, in any event, plaintiffs do not even allege that they saw or otherwise relied on them.

Nonetheless, plaintiffs claim Daimler AG defrauded them into purchasing their vehicles

3

and bring fraud- and warranty-based claims on behalf of fifty-one putative subclasses.  *See id.* ¶ 192.

## MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

A complaint must be dismissed under Rule 12(b)(6) unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Moreover, for claims premised on fraud, the allegations must satisfy the more "stringent pleading requirements" of Rule 9(b), and a plaintiff is required to "state with particularity the circumstances of the alleged fraud or otherwise inject the requisite precision into her allegations." Fed. R. Civ. P. 9(b); *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).  "Rule 9(b) requires, at a minimum, that plaintiffs support their allegations of [] fraud with all of the essential factual background that would accompany the 'first paragraph of any newspaper story'—that is, the 'who, what, when, where and how' of the events at issue."  *In re Suprema Specialties, Inc. Secs. Litig.*, 438 F.3d 256, 276 (3d Cir. 2006).  These standards apply with equal force in the class action context and "each 'individually named plaintiff must satisfy Rule 9(b) independently.'" *Crozier v. Johnson & Johnson Consumer Cos.*, 901 F. Supp. 2d 494, 506 (D.N.J. 2012).

## I.  PLAINTIFFS' BREACH OF EXPRESS WARRANTY CLAIMS FAIL

### A.  Daimler AG Did Not Issue Any Express Warranty To Plaintiffs

Plaintiffs' express warranty claims against Daimler AG must be dismissed for a simple reason—plaintiffs do not (and cannot) allege that Daimler AG issued a warranty for their vehicles. Indeed, that is exactly the outcome reached under similar circumstances in *Luppino v. Mercedes-Benz USA, LLC*, where another court in this jurisdiction dismissed express warranty claims against Daimler AG because plaintiffs "failed to provide facts to support the allegation that Daimler warrants the vehicles."  2013 U.S. Dist. LEXIS 161689, at *18 (D.N.J. Nov. 12, 2013).

4

Here, there are no circumstances which would dictate a result different than that reached in *Luppino*. The express warranties themselves identify **MBUSA** – and not Daimler AG – as the warrantor of plaintiffs' vehicles. *See* Request for Judicial Notice ("RJN") Ex. A at 11 ("**Mercedes-Benz USA, LLC** (MBUSA) warrants . . . that any authorized Mercedes-Benz Center will make any repairs or replacements necessary to correct defects in material or workmanship arising during the warranty period.") (emphasis added), Ex. B at 11 (same), Ex. C (same). Thus, the Court need not credit plaintiffs' conclusory allegations to the contrary. *See Torpey v. Anthem Blue Cross Blue Shield of California.*, 2014 WL 1569498, at *1 n.4 (D.N.J. Apr. 17, 2014) ("[A] court need not accept allegations as true that are contradicted by the documents upon which a party's claims are based . . . .").

Furthermore, plaintiffs concede that MBUSA was the entity that issued the express warranties for their vehicles. Compl. ¶ 71 ("MBUSA . . . engaged in the business of . . . warranting . . . automobiles, including the Class Vehicles, throughout the United States."). Thus, for this additional reason, plaintiffs' conclusory allegations to the contrary are not entitled to the presumption of truth. *See Fabricatore v. ADT LLC*, 2018 WL 3696581, at *5 (D.N.J. Aug. 3, 2018) ("Nor must the District Court accept conclusory allegations set forth in a complaint [ ] when those allegations are belied by the complaint's remaining factual allegations.").

Finally, plaintiffs cannot plead around this fatal deficiency by alleging in a conclusory fashion that MBUSA acted as Daimler AG's "agent" with respect to the NVLW or that Daimler AG controls "the scope of written warranties." Compl. ¶¶ 75-76; *TBI Unlimited, LLC v. Clearcut Lawn Decisions, LLC*, 2013 WL 1223643, at *4 (D.N.J. Mar. 25, 2013) ("Under Federal Rule of Civil Procedure 8, a plaintiff must plead facts sufficient to establish that the asserted agency relationship existed."). The latter allegation was expressly rejected in *Luppino* as a basis for

5

bringing express warranty claims against Daimler AG.  *See Luppino*, 2013 U.S. Dist. LEXIS 161689, at *18 (allegation that Daimler AG "sets the warranty terms" was conclusory and did not support express warranty claims).  Moreover, plaintiffs do not allege any ***facts*** showing that a principal-agent relationship existed between Daimler AG and MBUSA, or that Daimler AG had any control over MBUSA's issuance of or performance under the NVLW.  Compl. ¶¶ 75-76.  They simply assert that to be the case, which is "insufficient to establish the existence of an agency relationship."  *TBI*, 2013 WL 1223643, at *4; *Carrier v. Bank of Am., N.A.*, 2014 WL 356219, at *5 (D.N.J. Jan. 31, 2014) ("A plaintiff may not conclusively assert that a party was another party's agent without sufficient factual allegations.").

### B.   Plaintiffs Plead No Facts Establishing That Their Vehicles Remained Under Warranty at the Time They Sought Repairs, Thus Barring Their Claims

Plaintiffs' express warranty claims separately fail because plaintiffs do not allege facts showing an entitlement to free repairs.  The NVLW provides warranty coverage for defects in materials and workmanship "for 48 months or 50,000 miles, whichever occurs first," Compl. ¶ 159, starting "on the date the vehicle is delivered to the first retail purchaser" (*see* Request for Judicial Notice ("RJN") Exs. A-C at 11 (NVLW)).

Here, none of the ten plaintiffs pleads facts establishing that they were within the 50,000-mile warranty when they sought their repairs from authorized Mercedes-Benz dealers.  Plaintiffs' failure to plead essential facts is fatal to their express warranty claims.  *See, e.g.*, *McQueen v. BMW of N. Am., LLC*, 2014 U.S. Dist. LEXIS 21084, at *18-*19 (D.N.J. Feb. 20, 2014) (warranty claims dismissed where complaint "does not allege that Plaintiff discovered and reported the alleged defect to BMW within the terms of the warranty").

Further, certain plaintiffs' allegations show they were outside the 48-month time warranty:

- Ponzio purchased his vehicle on June 10, 2013 and did not seek repair until nearly five years later in May 2018, when his vehicle was "out of warranty."  Compl. ¶¶ 15, 18.

6

- Miller purchased a used model year ("MY") 2014 vehicle on March 28, 2017, did not present her vehicle for repair until March 13, 2018, and pleads no facts showing her used vehicle was still under warranty. *Id.* ¶¶ 26, 29.

- Acuna purchased a used MY 2012 vehicle in December 2014, did not present his vehicle for repair until September or October 2016, and pleads no facts showing his used vehicle was still under warranty. *Id.* ¶¶ 36, 39.

- Madsen purchased a used MY 2013 vehicle on April 9, 2018, presented for repair in May 2018, and pleads no facts showing his vehicle was still under warranty, admitting he was told by "Mercedes" that he was out of warranty. *Id.* ¶¶ 42, 45.

Thus, Ponzio, Miller, Acuna, and Madsen's express warranty claims fail for this reason, too.

Case law confirms that "an express warranty does not cover repairs made after the applicable time . . . has elapsed." *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 616 (3d Cir. 1995); *see Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) ("[W]e can hardly say that the warranty is implicated when the item fails after the warranty period expires."); *Brisson v. Ford Motor Co.*, 349 F. App'x 433, 434 (11th Cir. 2009) ("plaintiffs' failure to allege that they experienced a defect within the warranty period . . . is fatal").[1]

Moreover, Daimler AG's purported knowledge of an allegedly hidden defect (*see, e.g.*, Compl. ¶ 124) does not nullify the durational limits of plaintiffs' express warranties. *See Duquesne Light Co.*, 66 F.3d at 616 ("'[L]atent defects' discovered after the term of the warranty are not actionable.") (quotation omitted).[2] Thus, because plaintiffs fail to plead any facts demonstrating that their vehicles were under warranty when they sought repairs, they cannot state claims for breach of express warranty. *See, e.g.*, *Resnick v. Hyundai Motor Am., Inc.*, 2017 U.S. Dist. LEXIS

---

[1] *See also McQueen*, 2014 U.S. Dist. LEXIS 21084, at *18-*19; *In re Sony Grand WEGA KDF-E A10/A20 Series Rear Projection HDTV TV Litig.*, 758 F. Supp. 2d 1077, 1100 (S.D. Cal. 2010).

[2] *See also Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 250 (2d Cir. 1986) (rejecting argument because "[a] rule that would make failure of a part actionable based on such 'knowledge' would render meaningless time/mileage limitations in warranty coverage"); *Licul v. Volkswagen Grp. of Am., Inc.*, 2013 U.S. Dist. LEXIS 171627, at *5 (S.D. Fla. Dec. 5, 2013); *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 830 (2006).

139179, at *27-*29 (C.D. Cal. Aug. 21, 2017) (dismissing breach of express warranty claim in similar alleged paint defect case where repairs sought after express warranty expired).

Additionally, plaintiffs' boilerplate allegations that the NVLW is unconscionable fail. *See, e.g.*, Compl. ¶¶ 237-39. First, plaintiffs conclusorily allege that the NVLW is "procedurally" unconscionable because of "unequal bargaining power," Compl. ¶ 238, but this does not suffice. *See, e.g.*, *Resnick v. Hyundai Motor Am., Inc.*, 2016 U.S. Dist. LEXIS 160179, at *26 (C.D. Cal. Nov. 14, 2016) (finding three-year/36,000 mile warranty not procedurally unconscionable); *Nelson v. Nissan N. Am., Inc.*, 894 F. Supp. 2d 558, 566 (D.N.J. 2012) ("allegations of unequal bargaining power with respect to the terms of the warranty are also insufficient").

Second, there is nothing "substantively" unconscionable about the NVLW as the time/mileage intervals are in-line with or superior to other automotive warranties held not to be unconscionable. *See, e.g.*, *Smith v. Ford Motor Co.*, 462 F. App'x 660, 663-64 (9th Cir. 2011) (finding three-year/36,000 mile warranty not unconscionable).[3] Indeed, courts have rejected similar claims regarding the NVLW for Mercedes-Benz vehicles. *See, e.g.*, *Suddreth v. Mercedes-Benz USA, LLC*, 2011 U.S. Dist. LEXIS 126237, *9-*12 (D.N.J. Oct. 31, 2011).

## C. Certain Plaintiffs Fail to Allege a Breach of Their Express Warranty, Thus Barring Their Claims

Hayes, Montgomery, Mull, Nelthrope, and Salgado's express warranty claims also fail because they, even assuming Daimler AG warranted their vehicles, they plead no facts showing it ever refused to provide them with a warranty repair. Hayes had "the expense of the repainting [] covered by the dealership." Compl. ¶ 34. So did Mull, who had "the cost of repainting [] covered

---

[3] *See also Speier-Roche v. Volkswagen Grp. of Am., Inc.*, 2014 U.S. Dist. LEXIS 59991, at *11 (S.D. Fla. Apr. 30, 2014) (enforcing 12-month/12,000 mile warranty); *Nelson v. Nissan N. Am., Inc.*, 894 F. Supp. 2d 558, 565-66 (D.N.J. 2012) ("there is nothing substantively unconscionable or unreasonable about a 5 year/60,000 mile warranty").

under warranty." *Id.* ¶ 55.  Further, Montgomery and Nelthrope never actually demanded a repair from their authorized Mercedes-Benz dealers, only bringing their alleged paint issues to the attention of the service consultant.  *Id.* ¶¶ 50, 60.  Finally, Salgado was never refused a warranty repair because he does not even allege that he brought his car in for repair.  *See id.* ¶¶ 62-66.

Absent allegations that Daimler AG refused to repair their vehicles under the warranty, these plaintiffs' express warranty claims fail as a matter of law and must be dismissed.  *See, e.g.*, *Resnick*, 2017 U.S. Dist. LEXIS 139179, at *27 (express warranty claim dismissed where "Hyundai paid to repair the paint on her vehicle").[4]

### D.  Plaintiff Salgado Did Not Present His Vehicle to an Authorized Mercedes-Benz Dealership for Repair, Thus His Express Warranty Claims Must Be Dismissed

Salgado's express warranty claims under California law also fail because he does not allege that he presented his vehicle to an authorized Mercedes-Benz dealer for repair.  *See* Compl. ¶¶ 62-66.  Both California law and the NVLW required Salgado to present his vehicle to an authorized Mercedes-Benz dealer for repair in order to bring a claim for breach of express warranty.  But Salgado fails to allege that he took this necessary step.  *See* RJN Exs. A-B at 16, Ex. C at 18 (NVLW); *Resnick v. Hyundai Motor Am., Inc.*, 2017 U.S. Dist. LEXIS 67525, at *24 n.3 (C.D. Cal. Apr. 13, 2017) (finding allegations insufficient because plaintiff "d[id] not indicate . . . whether Defendants were presented with the issue and breached the warranty by refusing to repair the vehicle").  Thus, Salgado's express warranty claim fails for this additional reason.

---

4  *See also Ocana v. Ford Motor Co.*, 992 So. 2d 319, 324 (Fla. Ct. App. 2008); *Miller v. Hyundai Motor Am.*, 2016 U.S. Dist. LEXIS 133668, at *24-*25 (S.D.N.Y. Sept. 28, 2016); *Harbour Point Homeowners' Ass'n v. DJF Enters.*, 206 N.C. App. 152, 162 (2010).

**E.  California Plaintiffs Failed to Provide a Mercedes-Benz Dealer With a Reasonable Number of Repair Attempts, Barring Their Song-Beverly Claim for Breach of Express Warranty**

In addition to the reasons outlined above regarding their breach of express warranty claims, California Plaintiffs Montgomery and Salgado did not provide Daimler AG—much less an authorized Mercedes-Benz dealer—with a "reasonable number of attempts" to repair the alleged defect pursuant to the Song-Beverly Consumer Warranty Act.  *See* Cal. Civ. Code § 1793.2(d)(1). Montgomery never actually demanded a repair of the alleged defect by her authorized Mercedes-Benz dealer.  *See* Compl. ¶ 50.  Thus, no authorized Mercedes-Benz dealer ever made a repair attempt on her vehicle for the alleged defect.  Further, Salgado does not even allege that he ever presented his vehicle to an authorized Mercedes-Benz dealer for repair.  *See id.* ¶¶ 62-66; Section I.C., *supra*.

Song-Beverly requires consumers to provide the warrantor with ***more than one*** opportunity to repair a vehicle.  *See Wilborn v. CarMax Auto Superstores Cal., LLC*, 2017 U.S. Dist. LEXIS 203597, at *17 (C.D. Cal. Dec. 11, 2017) ("reasonable number of attempts" language "preclude[s] liability for breach of express warranty where the manufacturer has had only one opportunity to repair the complained-of nonconformity") (quotation omitted).

Thus, even assuming Daimler AG warranted Montgomery's and Salgado's vehicles (it did not), their failure to give it at least two repair attempts requires that their Song-Beverly express warranty claims (California Count VI) be dismissed.  *See In re Seagate Tech. LLC Litig.*, 233 F. Supp. 3d 776, 785 (N.D. Cal. 2017) ("[A]t a minimum there must be more than one opportunity to fix the nonconformity.").

10

## II. PLAINTIFFS' BREACH OF IMPLIED WARRANTY CLAIMS MUST BE DISMISSED

Plaintiffs' claims for breach of implied warranty must be dismissed.  Plaintiffs have already withdrawn such claims as to MBUSA, and their counsel have informed defense counsel that they agree to withdraw them as to Daimler AG too.

## III. PLAINTIFFS' MAGNUSON-MOSS WARRANTY ACT CLAIMS FAIL

Plaintiffs' Magnuson-Moss Warranty Act ("MMWA") claims fail for multiple reasons. First, plaintiffs cannot assert their MMWA claims on a nationwide basis because such claims rely on underlying state law for each of the fifty states.  *See, e.g.*, *Flynn v. FCA US LLC*, 327 F.R.D. 206, 225 (S.D. Ill. 2018) ("MMWA claims rely on underlying state law. The Court squarely rejects Plaintiffs' contention that Michigan law should be applied to an entire nationwide class regardless of where class members reside or where they purchased and used their vehicles."); *Herrera v. Volkswagen Grp. of Am., Inc*., 2016 U.S. Dist. LEXIS 192907, at *17 (C.D. Cal. Sep. 9, 2016) ("[S]ince Magnuson-Moss depends on state law, Defendant has a plausible argument that a nationwide class is inappropriate."); *Vinci v. Hyundai Motor Am.*, 2018 U.S. Dist. LEXIS 139979, at *26 (C.D. Cal. Apr. 10, 2018) (dismissing with prejudice at pleading stage nationwide claims under MMWA, among others); *Tsonev v. Kia Motors Am., Inc.*, 2016 U.S. Dist. LEXIS 192698, at *13-*15 (C.D. Cal. Nov. 9, 2016) (striking nationwide class asserting MMWA claims).

Second, plaintiffs' MMWA claims fail for the same reasons as their state law express and implied warranty claims fail.  *See, e.g.*, *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1013-16 (D.C. Cir. 1986) ("state warranty law lies at the base of all warranty claims under Magnuson-Moss"); *Clemens*, 534 F.3d at 1022 (same).[5]  As a result, plaintiffs' MMWA claims must be dismissed.

---

[5] *See also Highway Sales, Inc. v. Blue Bird Corp.*, 559 F.3d 782, 789 n.6 (8th Cir. 2009) (MMWA claim follows state statute of limitations period).

## IV. Plaintiffs' Unjust Enrichment Claims Must Be Dismissed

### A. Plaintiffs Cannot Assert a Nationwide Unjust Enrichment Claim

Plaintiffs' "nationwide" claim for unjust enrichment under New Jersey law must be dismissed because, under New Jersey's choice of law principles, the Court must apply the unjust enrichment law of each plaintiff's home state.

A choice of law analysis under New Jersey law requires two steps. "First a court must determine if an actual conflict in law exists among the states. Once it has been determined that a conflict exists, the court must determine which state has the 'most significant relationship' to the claim at issue." *Demmick v. Cellco P'ship*, 2010 U.S. Dist. LEXIS 94041, at *10 (D.N.J. Sept. 8, 2010) (internal citations omitted).

Both of these steps mitigate against applying New Jersey's law of unjust enrichment as to plaintiffs residing in other states. First, "[a]s countless courts have found, the states' different approaches to, or elements of, unjust enrichment are significant." *Rapp v. Green Tree Servicing, LLC*, 302 F.R.D. 505, 514 (D. Minn. 2014); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 591 (9th Cir. 2012) ("The elements necessary to establish a claim for unjust enrichment also vary materially from state to state."); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 167 (E.D. Pa. July 30, 2009) (rejecting argument that unjust enrichment claims are substantially identical across all fifty states). Indeed, as reflected below, the six home states of the named plaintiffs differ as to whether unjust enrichment requires a direct relationship, a direct conferral of a benefit, and an expectation of remuneration. *See* Sections IV.D.-F., *infra*. Some states, including California, do not even recognize unjust enrichment as a fully independent cause of action. *See* Section IV.H., *infra*. As such, courts have precluded plaintiffs "from pursuing an unjust enrichment claim on

12

behalf of a nationwide class." *Colley v. P&G*, 2016 U.S. Dist. LEXIS 137725, at *23 (S.D. Ohio

Oct. 4, 2016) (striking nationwide class allegations for unjust enrichment).

Second, under New Jersey's interest analysis, the unjust enrichment laws of each plaintiff's

home state should be applied because:

> Each plaintiff's home state has an interest in protecting its consumers from in-state
> injuries caused by foreign corporations and in delineating the scope of recovery for
> its citizens under its own laws. These interests arise by virtue of each state being
> the place in which plaintiffs reside, or the place in which plaintiffs bought and used
> their allegedly defective vehicles or the place where plaintiffs' alleged damages
> occurred.

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 348 (D.N.J. 1997).

Accordingly, each plaintiff's unjust enrichment claim is governed by the law of his or her

home state, requiring dismissal of plaintiffs' "nationwide" unjust enrichment claim.

### B.  **Plaintiffs' Express Warranties Preclude Their Unjust Enrichment Claims**

Plaintiffs cannot state a claim for unjust enrichment because the applicable state laws

foreclose such claims where the dispute at issue is an alleged product defect subject to an express

warranty.  *See, e.g.*, *Williams v. Yamaha Motor Corp.*, 2015 U.S. Dist. LEXIS 193825, at *39-40

(C.D. Cal. Jan. 7, 2015) ("[B]ecause the express warranty here covers disputes over product

defects, Plaintiffs may not bring an unjust enrichment based on those defects."); *Haag v. Hyundai

Motor Am.*, 969 F. Supp. 2d 313, 317 (W.D.N.Y. 2013) ("It is well settled that where a valid

warranty governs the subject matter of a suit, . . . it is appropriate to dismiss an unjust enrichment

claim.").[6]  Here, the NVLW and the CPO Limited Warranty are warranties that apply to plaintiffs'

---

[6]  *See also Gerstle v. Am. Honda Motor Co.*, 2017 U.S. Dist. LEXIS 100580, at *39 (N.D. Cal.
June 28, 2017); *Metric Constructors, Inc. v. Bank of Tokyo-Mitsubishi, Ltd.*, 72 F. App'x 916, 920
(4th Cir. 2003) (North Carolina law); *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 472
(S.D.N.Y. 2014); *Dandana, LLC v. MBC FZ-LLC*, 507 F. App'x 264, 270 (3d Cir. 2012) (New
Jersey law); *Ice Corp. v. Hamilton Sundstrand, Inc.*, 444 F. Supp. 2d 1165, 1170 (D. Kan. 2006);
*Wilson v. Everbank, N.A.*, 77 F. Supp. 3d 1202, 1220 (S.D. Fla. 2015).

vehicle purchases. Further, plaintiffs' breach of express warranty and unjust enrichment claims arise out of the same subject matter—the alleged failure to repair the defect in their vehicles. *Compare* Compl. ¶¶ 222-223 *with id.* ¶¶ 390, 585, 829, 1288, 1372, 1415. Accordingly, plaintiffs cannot maintain a claim of unjust enrichment while simultaneously suing Daimler AG for breach of express warranty.

### C. Plaintiffs Have Adequate Remedies at Law, Thus Barring Their Unjust Enrichment Claims

Plaintiffs also cannot maintain unjust enrichment claims because they have adequate remedies at law. *See, e.g.*, *Nguyen v. Nissan N. Am., Inc.*, 2017 U.S. Dist. LEXIS 55501, at *10-*12 (N.D. Cal. Apr. 11, 2017) (dismissing unjust enrichment claim).[7] Here, plaintiffs assert causes of actions for fraudulent concealment, breach of express warranty, and various state statutory violations. *See generally* Compl. ¶¶ 202-1994. Because plaintiffs cannot show they lack adequate remedies at law, they cannot pursue unjust enrichment claims.

### D. Plaintiffs Have Not Conferred a Direct Benefit on Daimler AG Under New Jersey, Florida, New York, and North Carolina Law

Under New Jersey, Florida, New York, and North Carolina law, plaintiffs are required to allege "a direct relationship between the parties" or that they conferred a direct benefit on Daimler AG. *Hughes v. Panasonic Consumer Elecs. Co.*, 2011 U.S. Dist. LEXIS 79504, at *78 (D.N.J. July 21, 2011).[8] Plaintiffs do not allege these necessary elements. Notably, plaintiffs do not allege

---

[7] *See also Merl v. Warner Bros. Entm't, Inc.*, 2013 U.S. Dist. LEXIS 9202, at *22 (S.D. Fla. Jan. 23, 2013); *Thompkins v. Key Health Med. Sols., Inc.*, 2015 U.S. Dist. LEXIS 35470, at *26 (M.D.N.C. Mar. 23, 2015); *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, 400 F. App'x 611, 613 (2d Cir. 2010) (New York law); *Nelson v. Nelson*, 288 Kan. 570, 597 (2009); *Centex Homes Corp. v. Boag*, 128 N.J. Super. 385, 389 (N.J. Super. Ct. 1974).

[8] *See Berlinger v. Wells Fargo, N.A.*, 2015 U.S. Dist. LEXIS 141111, at *44 (M.D. Fla. Oct. 16, 2015); *Southwood v. Credit Card Sol.*, 2016 U.S. Dist. LEXIS 48039, at *46 (E.D.N.C. Feb. 26, 2016); *N.Y. City Health & Hosp. Corp. v. Wellcare of N.Y., Inc.*, 35 Misc. 3d 250, 254 (N.Y. Sup. Ct. 2011).

any interaction with Daimler AG and concede they purchased their vehicles from third party dealerships.  Instead, they make conclusory allegations that Daimler AG "received millions in revenue from the sale of the Class Vehicles" and "[t]his revenue was a benefit conferred upon Mercedes."  Compl. ¶¶ 220-221.  These allegations are insufficient to establish a direct benefit as a matter of law.  *See, e.g., Swiss Watch Int'l, Inc. v. Movado Grp., Inc.*, 2001 U.S. Dist. LEXIS 27529, at *11 (S.D. Fla. June 21, 2001) ("[Plaintiff's] conclusory allegation that it 'directly conferred' a benefit on [defendant] . . . is insufficient" to maintain a claim for unjust enrichment.).  It is the dealerships, not Daimler AG, who had the direct relationship with plaintiffs and benefitted from the sale of plaintiffs' vehicles.  Compl. ¶¶ 15, 20, 26, 31, 36, 52, 57.  Daimler AG, on the other hand, is a remote manufacturer that did not sell vehicles to plaintiffs or undertake any obligations to service their warranties.

Plaintiffs do not allege that any benefit received by a dealer was transferred to Daimler AG, and thus have not pled that Daimler AG has received any benefit, direct or otherwise.  *See, e.g., Alin v. Am. Honda Motor Co.*, 2010 U.S. Dist. LEXIS 32584, at *41 (D.N.J. Mar. 31, 2010) (plaintiff failed to plead direct relationship because complaint did not allege that Honda dealer "gave, or was required to give, its profits from the purchase to Honda").  Moreover, the benefit allegedly conferred on Daimler AG is even more illusory as to Miller, Acuna, and Mull as they purchased *used* vehicles from third party dealerships with no connection to Daimler AG.  *See Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 551-52 (D. Md. 2011) (dismissing Florida unjust enrichment claim).  Thus, certain plaintiffs' unjust enrichment claims fail as no direct benefit was conferred on Daimler AG.

### E.  Daimler AG Was Not Reasonably Expected to Pay for Any "Benefit" Under New Jersey Law

Even if there was a benefit conferred on Daimler AG—which there wasn't, under New

15

Jersey law—Ponzio's unjust enrichment claim fails because does not allege that he expected any kind of remuneration from Daimler AG at the time he purchased his vehicle, or that Daimler AG's failure to remunerate him enriched it beyond its contractual rights. *See Hughes*, 2011 U.S. Dist. LEXIS 79504, at *77 (dismissing unjust-enrichment claims where plaintiffs alleged no facts "indicating that they expected remuneration from Panasonic at the time of purchase"). Indeed, Ponzio could not possibly make such allegation because he alleges no interaction with Daimler AG.

### F.  Plaintiffs Received the Benefit of Their Bargain

Plaintiffs cannot maintain their unjust enrichment claims as they have received the benefit of their bargain. *See, e.g.*, *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008).[9]  Here, neither Daimler AG nor the express warranties promised plaintiffs defect-free vehicles. Indeed, plaintiffs' warranties informed them that defects may exist. *See* Section II.B., *supra*.  Plaintiffs received exactly what they bargained for—a working vehicle subject to applicable warranties.

### G.  Kloczko and Nelthrope's Unjust Enrichment Claims Are Time-Barred

Kloczko and Nelthrope's unjust enrichment claims are time-barred.  In Florida, the statute of limitations for an unjust enrichment claim is four years. *See State Farm Mut. Auto. Ins. Co. v. B&A Diagnostic, Inc.*, 104 F. Supp. 3d 1366, 1376 (S.D. Fla. 2015).  Similarly, under New York law, the statute of limitations is three years where, as here, plaintiff seeks monetary relief. *See Ingrami v. Rovner*, 847 N.Y.S.2d 132, 134 (N.Y. App. Div. 2007) (finding that three-year statute of limitations applies since plaintiff was "seeking monetary, as opposed to equitable relief").

---

9  *See also Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329, 1335 (S.D. Fla. 2007); *In re Tropicana Orange Juice Mktg. & Sales Practices Litig.*, 2018 U.S. Dist. LEXIS 9797, at *15 (D.N.J. Jan. 22, 2018); *GFRE, Inc. v. U.S. Bank, N.A.*, 130 A.D.3d 569, 570 (N.Y. App. Div. 2015); *Butler v. Butler*, 768 S.E.2d 332, 336 (N.C. Ct. App. 2015).

16

For both states, the limitations period begins to run at the time of the injury—when the benefit is conferred—and not when the injury is (or should have been) discovered. *See In re Burton Wiand Receivership Cases*, 2008 U.S. Dist. LEXIS 27929, at *25 (M.D. Fla. Mar. 26, 2008); *Gerschel v. Christensen*, 40 N.Y.S.3d 41, 43 (N.Y. App. Div. 2016).

Here, the only alleged benefit that Kloczko and Nelthrope claim to have conferred on Daimler AG is the purchase of their vehicles. *See* Compl. ¶¶ 220-221. Thus, for Kloczko, the four-year limitations period began to run in May 2014, when she purchased her vehicle, and it expired four years later in May 2018. *Id.* ¶ 20. For Nelthrope, the three-year limitations period began to run in August 2014, when she purchased her vehicle, and it expired three years later in August 2017. *Id.* ¶ 57. Because plaintiffs filed their Complaint after the statute of limitations had expired, their unjust enrichment claims must be dismissed.

### H. Montgomery and Salgado's Unjust Enrichment Claims Fail Along With Their Fraud-Based Claims

Montgomery and Salgado fail to state an unjust enrichment claim under California law because they fail to "sufficiently plead an actionable misrepresentation or omission," as discussed in Sections V.B., V.D., *infra*. *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1120 (N.D. Cal. 2016); *Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 997 (N.D. Cal. 2010) ("Unjust enrichment, 'is not a separate cause of action,' but, rather, must rely on some other claim that is cognizable."); *Goldman v. Bayer AG*, 2017 U.S. Dist. LEXIS 117117, at *24 (N.D. Cal. July 26, 2017) (dismissing unjust enrichment claim where consumer protection claim based on same allegations also failed).

## V. PLAINTIFFS' FRAUD-BASED CLAIMS CANNOT SURVIVE

### A. Plaintiffs' Impermissible Group Pleading Fails to Satisfy Rules 8 and 9(b)

Plaintiffs have failed to properly plead claims specifically against Daimler AG, a failure

that requires dismissal of their fraud-based claims. Daimler AG is a distinct corporate entity from MBUSA; the former designs and manufactures Mercedes-Benz vehicles, whereas the latter warrants and distributes Mercedes-Benz vehicles in the United States. *See* Compl. ¶¶ 67-74. Yet nearly each and every factual allegation in the Complaint is directed at "Mercedes"—used to describe Daimler AG and the separate entity MBUSA collectively—without even attempting to identify which specific Defendant actually did the thing described. *See, e.g.*, *id.* ¶ 124.

Plaintiffs cannot make indiscriminate allegations as to "Mercedes" because "[w]hen multiple defendants are involved, the complaint must plead with particularity by specifying the allegations of fraud applying to each defendant." *MDNet, Inc. v. Pharmacia Corp.*, 147 F. App'x 239, 245 (3d Cir. 2005); *see Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (affirming dismissal of "shotgun pleading" where plaintiffs made "'everyone did everything' allegations"); *Resnick*, 2016 U.S. Dist. LEXIS 160179, at *41 n.15 (complaint that "addressed only the group conduct of 'Defendants' or 'Hyundai'" did not satisfy Rule 9(b)). Complaints that instead "vaguely attribute[] the alleged fraudulent statements to 'defendants'" must be dismissed. *Naporano Iron & Metal Co. v. Am. Crane Corp.*, 79 F. Supp. 2d 494, 511 (D.N.J. 1999). That Daimler AG is allegedly part of the same corporate family as MBUSA makes no difference, as allowing group pleading even among corporate affiliates runs afoul of the presumption of corporate separateness. *See Lane v. Capital Acquisitions & Mgmt. Co.*, 2006 U.S. Dist. LEXIS 96422, at *15-*16 (S.D. Fla. Apr. 13, 2006) (dismissing complaint for failing to differentiate between defendants, including "one parent and its subsidiary"). Plaintiffs' fraud claims must be dismissed on this basis alone.

**B. Plaintiffs' Fraudulent Concealment Claims Fail**

    **1.  The Court Should Dismiss the Proposed Nationwide Fraudulent Concealment Claim**

Plaintiffs' "nationwide" claim for fraudulent concealment under New Jersey law must be dismissed because, under New Jersey's choice of law principles, the Court must apply the fraudulent concealment law of each plaintiff's home state.

As discussed *supra*, *see* Section IV, New Jersey's choice of law rules require a court exercising diversity jurisdiction to determine if an actual conflict in law exists among the states and, if so, which state has the 'most significant relationship' to the claim at issue.  *See, e.g.*, *Demmick*, 2010 U.S. Dist. LEXIS 94041, at *10.  Under this test and established precedent, the fraudulent concealment law of each plaintiff's home state must be applied.  First, "there are significant variations in the law of fraudulent concealment from state to state," including as to "the burden of proof, the duty to disclose, materiality, reliance, and the measure of damages."  *In re Ford Motor Co. Vehicle Paint Litig.*, 182 F.R.D. 214, 222 (E.D. La. 1998); *see also Van Mourik v. Big Heart Pet Brands, Inc.*, 2018 U.S. Dist. LEXIS 34796, at *4 (N.D. Cal. Mar. 1, 2018) ("It is well-established that these common law actions [for common law fraud] vary materially among the states."); *Barba v. Seung Heun Lee*, 2010 U.S. Dist. LEXIS 153381, at *34 n.18 (D. Ariz. Aug. 24, 2010) ("[T]he law on fraudulent concealment and fraudulent non-disclosure varies by state.").

Second, courts applying New Jersey's interest analysis to fraud-based claims have repeatedly found that "the laws of each plaintiff's home state must be applied" in a nationwide class action because "[e]ach plaintiff's home state has an interest in protecting its consumers from in-state injuries caused by foreign corporations and in delineating the scope of recovery for its citizens under its own laws."  *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 348 (D.N.J. 1997); *see also Chin v. Chrysler Corp.*, 182 F.R.D. 448, 457 (D.N.J. 1998)

19

(same); *Demmick v. Cellco P'ship*, 2010 U.S. Dist. LEXIS 94041, at *15 (D.N.J. Sep. 8, 2010) ("Plaintiffs' fraud claims bear the most significant relationship to the state where Plaintiffs contracted for the services, where they primarily used their phones, and where they suffered any injury.").

Accordingly, each plaintiff's fraudulent concealment claim is governed by the law of his or her home state, requiring dismissal of plaintiffs' "nationwide" fraudulent concealment claim under New Jersey law.

### 2. Plaintiffs Allege No Facts Showing Daimler AG Violated a Duty to Disclose

Plaintiffs' claims for fraudulent concealment must be dismissed because they do not plead facts showing—as they must—that Daimler AG had a duty to disclose the alleged defect. A duty to disclose is an element for each of plaintiffs' fraudulent concealment claims.[10]

### a) Plaintiffs Fail to Allege Facts Showing Daimler AG Had Presale Knowledge of the Alleged Defect

Plaintiffs' fraudulent concealment claims require them to allege facts showing Daimler AG knew of, but failed to disclose, the alleged defect at the time plaintiffs purchased their vehicles. *See*, *e.g.*, Compl. ¶ 208 (asserting a duty to disclose based on Daimler AG's alleged presale knowledge of a defect).[11] Because plaintiffs do not plead such facts, they have not shown that

---

[10] *See*, *e.g.*, *Graham v. Bank of Am., N.A.*, 172 Cal. Rptr. 3d 218, 228 (Cal. Ct. App. 2014); *Friedland v. Gales*, 509 S.E.2d 793, 797 (N.C. Ct. App. 1998); *Meeker v. McLaughlin*, 2018 U.S. Dist. LEXIS 117211, at *19-20 (S.D.N.Y. July 13, 2018); *Burton v. R.J. Reynolds Tobacco Co.*, 397 F.3d 906, 910-11 (10th Cir. 2005); *Mukamal v. GE Capital Corp.*, 517 B.R. 310, 335 (Bankr. S.D. Fla. 2013); *Peterpaul v. Reger*, 2007 U.S. Dist. LEXIS 94059, at *15 n.16 (D.N.J. Dec. 19, 2007).

[11] *See*, *e.g.*, *Resnick*, 2017 U.S. Dist. LEXIS 67525, at *38; *Lopez v. Clarke*, 189 So. 3d 805, 809 (Fla. Dist. Ct. App. 2015); *Miles v. Love*, 1 Kan. App. 2d 630, 632 (1977); *Toms v. Funai Corp.*, 2015 U.S. Dist. LEXIS 83413, at *24 (D.N.J. June 25, 2015); *Kampuries v. Am. Honda Motor Co.*, 204 F. Supp. 3d 484, 493 (E.D.N.Y. 2016); *Friedland*, 509 S.E.2d at 797.

Daimler AG had a duty to disclose the alleged defect.  All of their allegations of knowledge are made indiscriminately as to "Mercedes," with none showing that ***Daimler AG*** knew of the alleged defect when plaintiffs purchased their vehicles.  Regardless, none of plaintiffs' allegations are sufficient to demonstrate presale knowledge of the alleged defect.

<u>Pre-Release Design and Testing Information</u> – Plaintiffs' reliance on unspecified pre-release design and testing results to show that Daimler AG had presale knowledge of the alleged defect fails because they do not allege any facts showing that the supposed pre-production testing and design results were unsatisfactory or that they revealed the alleged defect.  They instead speculate that the alleged testing and design process "***would have*** revealed the Paint Defect," Compl. ¶ 41 (emphasis added), but this is insufficient to show that Daimler AG had actual, presale knowledge of the alleged defect.  For example, plaintiffs allege that certain types of paint-related tests are "typically" utilized in the automotive industry, but they do not sufficiently allege which, if any, of these tests were actually carried out in relation to Mars Red paint.  Rather, plaintiffs only claim "on information and belief" that "Mercedes" or its suppliers "would have" performed certain of them, without supplying the foundation necessary to satisfy Rule 9(b).  *See Zavala v. Wal-Mart Stores, Inc.*, 393 F. Supp. 2d 295, 313 (D.N.J. 2005) ("[A]llegations based on information and belief do not satisfy Rule 9(b) unless the complaint sets forth the facts upon which the belief is founded."); *Resnick*, 2016 U.S. Dist. LEXIS 160179, at *42 ("[A]llegations that 'Hyundai likely conducts testing on components . . . to verify that the materials are free from defects' are insufficient to establish Defendant's knowledge[.]").

In addition, plaintiffs offer no facts to establish that the alleged testing "would have revealed the Paint Defect."  Compl. ¶ 41.  They do not explain why the alleged symptoms occur or under what conditions, much less why the alleged testing would have replicated them.  Thus,

21

plaintiffs' conclusory allegations fail because they impermissibly "require the Court to draw the inference that Defendant's *opportunity* to learn about this alleged defect . . . necessarily means that they *did* learn about the defect." *Kirsopp v. Yamaha Motor Co.*, 2015 U.S. Dist. LEXIS 68639, at *32 (C.D. Cal. Jan. 7, 2015). This is improper because inferring knowledge of a defect from "internal testing or quality controls [that the defendant] may or may not employ is to create a presumption of knowledge on the part of any large manufacturer of any alleged defect in its product line." *Stewart v. Electrolux Home Prods.*, 2018 U.S. Dist. LEXIS 63078, at *27-*29 (E.D. Cal. Apr. 13, 2018); *Burdt v. Whirlpool Corp.*, 2015 U.S. Dist. LEXIS 102761, at *12 (N.D. Cal. Aug. 5, 2015) ("Plaintiff must allege more than an undetailed assertion that the testing must have revealed the alleged defect. Otherwise, any consumer could bring a CLRA claim merely by asserting that a manufacturer had knowledge of an alleged defect from its pre-release testing.").

LI98.00-P-058914 – Plaintiffs' reliance on a June 12, 2014 technical service bulletin ("TSB") is also insufficient to establish knowledge of a defect. An automaker's service bulletins are a legally recognized method for communicating to a dealer "instructions for making . . . diagnoses and repairs." 40 C.F.R. § 86.1808-01-(f)(2)(i); *see also* Cal. Civ. Code § 1795.91 (providing that service bulletins cannot "be construed as an admission . . . of the existence or nonexistence of a vehicle defect"). For these reasons, numerous courts have rejected attempts by consumers to rely on service bulletins as a basis for imposing liability. *See*, *e.g.*, *Suddreth*, 2011 U.S. Dist. LEXIS 126237, at *3 n.3 (recognizing that a service bulletin is merely "a document disseminated internally that informs Mercedes technicians how to diagnose and repair the identified problem").[12] Plaintiffs' attempt to use the TSB referenced in the Complaint as an

---

[12] *Alban v. BMW of North America, LLC*, 2011 U.S. Dist. LEXIS 26754, at *36-*37 (D.N.J. March 15, 2011) ("[T]he Court is hesitant to view technical service bulletins . . . as potential admissions of fraudulent concealment of a defect."); *Erlandson v. Ford Motor Co.*, 2009 U.S.

22

admission of a "Paint Defect" is contrary to the law.

But even if TSBs could somehow support a fraud claim, plaintiffs do not plead facts showing that this would be appropriate here.  It is common knowledge that, due to its exposure to the elements, unauthorized cleaning products, accidents, etc., a vehicle's paint may become damaged for reasons having nothing to do with a defect.  Yet, plaintiffs do not cite any language from the TSB indicating it is intended to address peeling or flaking of the clearcoat as a result of a defect, rather than some other cause.  Indeed, the Complaint misleadingly *omits* language from the TSB stating that the peeling, flaking, and bubbling of the clearcoat is due to environmental factors, and *not* a defect: "Cause: Improper adhesion of clearcoat.  *Exposure factors like humidity or solar radiation* may cause adhesion problems between base coat and clearcoat."  RJN, Ex. D (LI98.00-P-058914, Feb. 3, 2017) (emphasis added).[13]   Given that the TSB expressly attributes the symptoms in question to environmental factors, it cannot plausibly be construed—contrary to its own language—as an admission of a defect.

Finally, even if knowledge of a defect could be inferred from the TSB, this still would not support the claims of Ponzio, Klockzo, or Salgado.  Each of them purchased their vehicle *before* the TSB was first issued on June 12, 2014.[14]  Thus, the TSB cannot provide a plausible inference

---

Dist. LEXIS 101316, at *11-*12 (D. Or. Oct. 30, 2009) (a service bulletin "does not constitute an admission by Defendant that a defect exists . . . because it is no more than a recommended repair method"); *Am. Honda v. Super. Ct.*, 199 Cal. App. 4th 1367, 1378 (2011) (a service bulletin "is not and cannot be fairly construed . . . as an admission of a design or other defect.").

[13]   Because plaintiffs rely on and quote from the February 3, 2017 version of the TSB in their Complaint, *see* Compl. ¶ 143, the Court may properly consider it as attached to Daimler AG's motion to dismiss.  *See*, *e.g.*, *Pension Benefit Guar. Corp. v. White Consol. Indus*., 998 F.2d 1192, 1196 (3rd Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

[14]   The Court may likewise consider the June 12, 2014 version of the TSB as plaintiffs expressly rely on and quote from it in their Complaint.  *See* Compl. ¶¶ 138-140; *Pension Benefit Guar. Corp*.,

that Daimler AG knew of the alleged defect at or before the time they purchased their vehicles. *See*, *e.g.*, *Merkin v. Honda N. Am., Inc.*, 2017 U.S. Dist. LEXIS 187233, at *10 (D.N.J. Nov. 9, 2017) (TSB issued after plaintiff purchased vehicle could not establish knowledge of a defect.); *Alban*, 2010 U.S. Dist. LEXIS 94038, at *35-*36 (same).  Moreover, plaintiffs' speculation that Daimler AG became aware of the alleged defect up to a year before the June 12, 2014 TSB was issued is insufficient as a matter of law.  *See* Compl. ¶ 146.  Plaintiffs do not plead a single fact showing that the alleged investigation began as early as June 2013.

Consumer Complaints – Plaintiffs' reliance on a handful of consumer complaints also fails to show Daimler AG knew of the alleged defect prior to their vehicle purchases.  *See Wilson v. Hewlett-Packard*, 668 F.3d 1136, 1148 (9th Cir. 2012) (expressing doubt that customer complaints could support "an inference that HP was aware of the defect at the time it sold the Laptops to Plaintiffs" and citing cases reflecting same).  At best, customer complaints "establish[ ] knowledge that there were complaints" and are "insufficient to show that [a defendant] had knowledge" of a defect.  *Berenblat v. Apple, Inc.*, 2010 U.S. Dist. LEXIS, at *27-*28 (N.D. Cal. Apr. 9, 2010).

There are sound reasons for this rule.  It is beyond dispute that "all [automobile] parts will wear out sooner or later and thus have a limited effective life."  *Herremans v. BMW of N. Am., LLC*, 2014 U.S. Dist. LEXIS 145957, at *35 (C.D. Cal. Oct. 3, 2014).  Thus, the fact that a consumer complained that a part malfunctioned does not indicate that a "defect" was the cause or that such part in every vehicle has the same "defect."  If "customer complaints" were sufficient, the "[f]ailure of a product to last forever would become a 'defect,' . . . and product defect litigation would become as widespread as manufacturing itself."  *Wilson*, 668 F.3d at 1142-43.

---

998 F.2d at 1196; RJN Ex. E (LI98.00-P-058914, June 12, 2014).  The June 12, 2014 TSB states that it is Version 1.

Regardless, the cited complaints on their face come nowhere close to showing that Daimler AG had presale knowledge of the alleged defect.  First, not counting duplicates, plaintiffs only cite 14 purported examples of such complaints.   *See* Compl. ¶¶ 152, 154.   This number is infinitesimally small compared to the "thousands" of vehicles alleged to have been sold with Mars Red paint over 14 years and cannot support an inference of knowledge.  *Id.* ¶¶ 1 n.1, 196; *see*, *e.g.*, *Weske v. Samsung Elecs, Am., Inc.*, 934 F. Supp. 2d 698, 703 (D.N.J. 2013) ("Awareness of a few customer complaints . . . does not establish knowledge of a defect."); *McQueen*, 2013 U.S. Dist. LEXIS 123232, at *19 (32 complaints out of 122,000 vehicles could not support an inference that defendant knew of an alleged defect).

Second, plaintiffs do not allege facts showing that Daimler AG was aware of the supposedly "large number" of consumer complaints regarding Mars Red paint.  Compl. ¶ 151.  Each of the 14 cited complaints comes from online forums that are ***not*** affiliated with Daimler AG.  *Id.*   ¶¶ 152, 154.   Courts routinely hold that complaints posted on third-party websites are insufficient to establish defendant's exclusive knowledge of an alleged defect.  *See*, *e.g.*, *Ferranti v. Hewlett-Packard Co.*, 2014 U.S. Dis. LEXIS 131249, at *15 (N.D. Cal. Sept. 16, 2014).  Also, plaintiffs' claim that "Mercedes undoubtedly tracks . . . and was, or should have been aware" of such complaints is conclusory and insufficient.  *See*, *e.g.*, *Resnick*, 2017 U.S. Dist. LEXIS 67525, at *50 (consumer complaints insufficient to show knowledge where "Plaintiffs do not provide any allegations regarding the method by which complaints were recorded and transmitted to management, or otherwise reviewed or received").[15]

Finally, plaintiffs' claim that 12 of the cited complaints were made "directly" to "Mercedes" is belied by the alleged complaints themselves. *See id.* ¶ 152.  None of the alleged

---

15  *See also Stewart*, 2018 U.S. Dist. LEXIS 63078, at *29.

complaints indicate any communication with **_Daimler AG_** and the vast majority merely involve communications with third-party dealerships.  One complaint does not even specify the paint color at issue.[16]

    <u>Warranty and Replacement Paint Data</u> – Plaintiffs' allegation that Daimler AG knew of the alleged defect because it maintains a database regarding warranty repairs and tracks the sale of replacement paint is also insufficient.  Compl. ¶¶ 148-149.  Plaintiffs allege this only "upon information and belief," without providing the requisite factual basis for this belief.  *Id.*  They allege no facts showing what data was contained in those databases, when Daimler AG became aware of such, or how it shows the existence of the alleged paint defect.  In similar situations, courts have held that allegations that a company "should have known of the defect due to the number of repair requests and replacement mechanisms 'likely' made or ordered, are speculative" and cannot support an inference of knowledge.  *See, e.g.*, *Fisher v. Honda N. Am., Inc.*, 2014 U.S. Dist. LEXIS 84570, at *14 (C.D. Cal. June 12, 2014); *Williams*, 106 F. Supp. 3d at 1116 (finding it "speculative . . . to infer that Defendant's exposure to these warranty claims necessarily led it to discover [the alleged] defect").

> **b)  Plaintiffs Do Not Allege an Unreasonable Safety Hazard, Which Is Fatal to <u>Their California Fraudulent Concealment Claim</u>**

    Montgomery and Salgado's claim for fraudulent concealment under California law separately fails because they have not pled facts showing that the alleged paint defect presents an unreasonable safety hazard.  "To state a claim for failing to disclose a defect [under California law], a party must allege," among other things, "the existence of an unreasonable safety hazard." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1025 (9th Cir. 2017) (citations omitted); *see, e.g.*,

---

[16]  See Compl. ¶ 152 (first complaint).

*Wilson*, 668 F.3d at 1141 ("[D]efendants are only under a duty to disclose a known defect in a consumer product when there are safety concerns associated with the product's use.").

Here, plaintiffs do not even contend that the alleged paint defect presents a safety hazard, and instead describe it as only affecting the appearance of their vehicles. *See* Compl. ¶¶ 3-6. As such, plaintiffs' claim for fraudulent concealment under California law fails because Daimler AG had no duty to disclose the alleged defect. Indeed, under similar circumstances, fraudulent concealment allegations under California law regarding an automotive paint defect were dismissed because plaintiffs failed to plead an unreasonable safety defect and, thus, could not show a duty to disclose. *See Resnick*, 2017 U.S. Dist. LEXIS 139179, at *45 n.7 (dismissing fraudulent concealment claims).

Moreover, even if plaintiffs do not need to plead a safety defect under California law, they would still have to plead facts showing the alleged paint defect affects the central function of their vehicles. *See Hodsdon v. Mars, Inc.*, 891 F.3d 857, 863 (9th Cir. 2018). They have not done so. Plaintiffs only allege mere aesthetic concerns and do not claim the alleged paint defect prevents them from using their vehicles for their ordinary purpose, which is to provide transportation. Indeed, other courts considering similar alleged paint defects have found they do not affect a vehicle's ordinary purpose. *See, e.g., Resnick v. Hyundai*, 2017 U.S. Dist. LEXIS 139179, at *36 (C.D. Cal. Aug. 21, 2017) (alleged paint defect did not affect vehicle's fitness for ordinary use).

### c) The Kansas, Florida, New Jersey, and North Carolina Plaintiffs' Fraudulent Concealment Claims Fail For Lack of a Confidential or Fiduciary Relationship

The Kansas, Florida, New Jersey, and North Carolina plaintiffs' fraudulent concealment claims also fail because they do not allege facts showing a relationship between them and Daimler AG that would create a duty to disclose. "Fraud based upon a failure to disclose material information exists only when a duty to make such disclosures exists." *Friedman v. Am. Guardian*

27

*Warranty Servs.*, 837 So. 2d 1165, 1166 (Fla. Ct. App. 2003).[17]  In Kansas, Florida, New Jersey, and North Carolina there is no duty to disclose absent a fiduciary, confidential, or contractual relationship.[18]

Here, Daimler AG did not owe the Kansas, Florida, New Jersey, or North Carolina plaintiffs any duty of disclosure because there was no fiduciary, contractual, or other confidential relationship between them.  Indeed, courts in New Jersey and Florida have specifically recognized that automotive companies have no duty of disclosure to consumers owing to the lack of a special relationship with them.  *See*, *e.g.*, *Coba v. Ford Motor Co*., 2013 U.S. Dist. LEXIS 8366, at *37 (D.N.J. Jan. 22, 2013) ("New Jersey Courts have found no special relationship between individual consumers and automobile manufacturers that would impose a duty to disclose on the manufacturers."); *Stevenson*, 2015 U.S. Dist. LEXIS 70945 at *27 (collecting cases); *Taylor v. American Honda Motor Co.*, 555 F. Supp. 59, 64 (M.D. Fla. 1982) ("No Florida case has gone so far as to impose upon merchants a duty to disclose information to the public at large, and this Court declines to do so today.").  Similarly, under Kansas law, "the relationship between a product buyer and seller is not fiduciary in nature," and, therefore, does not give rise to a duty to disclose alleged material information.  *Burton*, 397 F.3d at 912-913; *see also In re Surplus Furniture Liquidators*, 199 B.R. 136, 143 (Bankr. M.D.N.C. 1995) (ordinary consumer transactions do not give rise to

---

[17]  *See also Salovaara v. Jackson Nat. Life Ins. Co.*, 66 F. Sup. 2d 593, 602 (D.N.J. 1999) (fraudulent concealment based on an omission requires a duty to disclose); *Burton v. R.J. Reynolds Tobacco Co*., 397 F.3d 906, 910-11 (10th Cir. 2005) (same, under Kansas law); *Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 194 (M.D.N.C. 1997) ("[S]ilence is fraudulent only when there is a duty to speak").

[18]  *See*, *e.g.*, *Friedman*, 837 So.2d at 1166; *Burton*, 397 F.3d at 911; *Stevenson v. Mazda Motor of Am., Inc*., 2015 U.S. Dist. LEXIS 70945, at *25-*26 (D.N.J. June 2, 2015); *Burnette v. Nicolet, Inc*., 818 F.2d 1098, 1101 (4th Cir. 1986) ("North Carolina has never recognized a cause of action for fraudulent concealment in the absence of a relationship of trust or confidence created by a fiduciary, contractual or other similar relationship.").

28

fiduciary or confidential relationships under North Carolina law).

### d) Plaintiffs Have Not Adequately Pled a Duty to Disclose Based on Alleged Misrepresentations

Plaintiffs also fail to plead facts showing that Daimler AG had a duty to disclose the alleged

defect based on alleged misrepresentations. *See* Compl. ¶ 208(d).

First, plaintiffs fail to satisfy the heightened pleading requirements of Rule 9(b) with

respect to their claims of alleged misrepresentations. Rule 9(b) requires allegations of fraudulent

misrepresentations to include, among other things, "'the who, what, when, where and how of the

events at issue.'" *Peters v. Countrywide Home Loans, Inc*., 2016 U.S. Dist. LEXIS 64461, at *9

(D.N.J. May 17, 2016). Plaintiffs do none of this in their Complaint. As an initial matter, they

fail to identify a single misrepresentation alleged to have been made by Daimler AG, and instead

improperly rely on collectivized allegations as to "Mercedes," in violation of Rule 9(b). Compl.

¶¶ 102-119; *see* Section V.A., *supra*. Plaintiffs also fail to allege any specific facts concerning the

"Mercedes" representations they supposedly relied upon in purchasing their vehicles. Instead,

they generically claim they "viewed marketing materials and commercials that touted the enduring

quality, durability, and value of Mercedes' vehicles." Compl. ¶¶ 16, 21, 27, 32, 37, 43, 48, 53, 58,

63. Vague, conclusory allegations such as these leave out essential facts, such as the time, place,

contents, and source of the alleged misrepresentations, including whether they even related to Mars

Red paint. As such, these allegations do not satisfy the strictures of Rule 9(b).

Second, none of the quoted statements rise above the level of non-actionable puffery. Only

"[s]pecific, quantifiable 'statements of fact' that refer to a product's absolute characteristics may

constitute" the basis of a consumer fraud claim. *Edmundson v. Procter & Gamble Co*., 537 F.

App'x 708, 709 (9th Cir. 2013). Yet, the opinion statements that plaintiffs cite—for example, that

Mercedes-Benz vehicles are "state-of-the-art" and have "enduring quality" and "the best possible

29

paint job", Compl. ¶¶ 103, 114—are quintessential examples of non-actionable puffery. *Tatum v. Chrysler Group LLC*, 2011 U.S. Dist. LEXIS 32362, at *13-*15 (D.N.J. Mar. 28, 2011) ("reliable" and "durable" are non-actionable puffery).[19]   Indeed, in a similar action alleging a vehicle paint defect, claims that paint "will stand the test of time" were found to be non-actionable puffery. *See Resnick*, 2017 U.S. Dist. LEXIS 139719, at *30.  In addition, only one of these generalized opinion statements even mentions paint, and only does so in non-actionable terms.  *See* Compl. ¶¶ 112-114 (describing Mercedes-Benz paint as, e.g., "extremely durable and remarkably protective").

Third, even if the quoted statements went beyond puffery, they are still not actionable here. Notably, plaintiffs do not claim to have relied on ***any*** of these alleged statements, so they cannot serve as the basis for their fraud claims.[20]   Also, any statements from dealership sales representatives that plaintiffs claim to have relied on do not provide a basis for liability as to Daimler AG.  Plaintiffs do not allege any facts showing that employees of independently owned dealerships are agents of Daimler AG for purposes of selling vehicles.  *See, e.g.*, *Friedman v. Mercedes-Benz USA, LLC*, 2013 U.S. Dist. LEXIS 187268, at *20 (C.D. Cal. June 12, 2013) (dismissing fraud-based claims because plaintiff did not allege facts showing selling dealership "in any respect serv[ed] as MBUSA's agent"); *In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, 2010 U.S. Dist. LEXIS 68241, at *47-*49 (D.N.J. July 9, 2010) (similar).

---

[19]  *Shema Kolainu-Hear Our Voices v. ProviderSoft, LLC*, 2010 U.S. Dist. LEXIS 50447, at *36 (E.D.N.Y. May 21, 2010); *Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 998 (N.D. Cal. 2007); *Plymouth Cnty. Ret. Ass'n v. Primo Water Corp.*, 966 F. Supp. 2d 525, 544 (M.D.N.C. 2013); *Ormsby v. Imhoff & Assocs., P.C.*, 2014 U.S. Dist. LEXIS 119400, at *16 (D. Kan. Aug. 22, 2014); *McGee v. S-Bay Dev., LLC*, 2012 U.S. Dist. LEXIS 30872, at *9 (M.D. Fla. Mar. 8, 2012).
[20] *Lusson v. Apple, Inc*., 2016 U.S. Dist. LEXIS 145018, at *7 (N.D. Cal. Oct. 19, 2016); *Czarnecki v. Roller*, 726 F. Supp. 832, 842 (S.D. Fla. 1989); *TBG, Inc. v. Bendis*, 841 F. Supp. 1538, 1562 (D. Kan. 1993); *Stevenson*, 2015 U.S. Dist. LEXIS 70945, at *20, *23-25; *Bannister v. Agard*, 125 A.D. 3d 797, 798 (N.Y. App. Div. 2015); *Frank M. McDermott, Ltd. v. Moretz*, 898 F.2d 418, 421 (4th Cir. 1990).

Also, with few exceptions, plaintiffs do not identify *when* the alleged misrepresentations were made, in violation of Rule 9(b).  It is therefore not possible to determine if they were made at a relevant time—i.e., before plaintiffs purchased their vehicles or between 2004 and 2017, when Mars Red paint is alleged to have been produced.  For example, only three paragraphs in the Complaint purport to quote alleged misrepresentations specifically relating to paint, Compl. ¶¶ 112-114, but none are dated and it is not clear whether they even pertain to Mars Red paint or plaintiffs' vehicles.  In fact, the quoted material in paragraph 113 appears to be from a *1999* Vehicle Care Guide, which predates the alleged introduction of Mars Red paint by *five years*.[21]

### C.   The Economic Loss Doctrine Bars the California, Florida, and Kansas Fraudulent Concealment Claims

The California, Florida, and Kansas plaintiffs' fraudulent concealment claims are barred by the economic loss doctrine.  In California, a distributor "is not liable in tort for purely economic loss" caused by a product defect that only damages the product itself.  *Stewart v. Electrolux Home Prods.*, 304 F. Supp. 3d 894, 902 (E.D. Cal. 2018) (dismissing fraudulent concealment claim where only damage alleged was to allegedly defective oven).  The same is true under Florida and Kansas law.  *See*, *e.g.*, *In re GM LLC Ignition Switch Litig.*, 2016 U.S. Dist. LEXIS 92499, at *195 (S.D.N.Y. July 15, 2016) (fraudulent concealment claim asserting that automotive company "failed to disclose a known defect in [a plaintiff's] car at the time of purchase . . . falls squarely within the domain of products liability, and is therefore barred by Florida's economic loss rule"); *Hinz v. Elanco Prods. Co.*, 1988 U.S. Dist. LEXIS 10433, at *11 (D. Kan. Aug. 19, 1988) ("Kansas denies tort recovery of pure economic loss caused by qualitative defects in a product.").

---

[21]  *See* http://assets.mbusa.com/vcm/CAC_RAPMD/01vehiclecareguide.pdf (last visited Jan. 14, 2019) (containing, at pages 3-4, the language quote in the Complaint at paragraph 113).

### D.  Plaintiffs' State-Specific Consumer Protection Act Claims Fail

#### 1.  Plaintiffs' Consumer Protection Act Claims Fail to the Extent They Are Based on Alleged Misrepresentations

Plaintiffs have failed to adequately plead state consumer protection claims based on alleged misrepresentations.  First, their claim that they relied on marketing materials that "touted the enduring quality, durability, and value of Mercedes' vehicles" (*see, e.g.*, Compl. ¶ 16) does not pass muster under Rule 9(b).  *See, e.g.*, *Sanchez v. Aurora Loan Servs., LLC*, 2014 U.S. Dist. LEXIS 199631, at *67 (C.D. Cal. Mar. 11, 2014) ("[U]nder Rule 9(b), [UCL] fraud allegations must include the 'time, place, and specific content of the false representations.'").[22]  Second, general opinion statements such as these, as well as others quoted in the Complaint, regarding the quality of a vehicle are mere puffery and are not actionable as misrepresentations.  *See* Section V.B.2.d., *supra*; *In re Sony Grand Wega*, 758 F. Supp. 2d at 1089 (finding that generalized statements of product superiority or high quality did not amount to claim under UCL or FAL).[23]

Third, even if any of the statements quoted in the Complaint were more than puffery, they cannot support a consumer protection claim because plaintiffs do not allege they saw or relied upon them.  *See, e.g.*, *Phillips v. Apple Inc.*, 2016 U.S. Dist. LEXIS 53148, at *22-*25 (N.D. Cal. Apr. 19, 2016) (dismissing UCL and FAL claims where plaintiffs did not allege they read or relied

---

[22]  *See also In re Sony Grand Wega*, 758 F. Supp. 2d at 1088 (Cal. FAL claim); *Altimas v. Whitney,* 2010 U.S. Dist. LEXIS 149662, at *11-*12 (M.D. Fla. Dec. 9, 2010) (FDUTPA claim); *Weckhorst v. Kan. State Univ.*, 241 F. Supp. 3d 1154, 1177 (D. Kan. 2017) (KCPA claim); *Donnelly v. Option One Mortg. Corp.*, 2014 U.S. Dist. LEXIS 41924, at *16 (D.N.J. Mar. 26, 2014) (NJCFA claim).

[23]  *See also Perret v. Wyndham Vacation Resorts, Inc*., 889 F. Supp. 2d 1333, 1342 (S.D. Fla. 2012); *Ormsby v. Imhoff & Assocs., P.C.*, 2014 U.S. Dist. LEXIS 119400, at *27-*28 (D. Kan. Aug. 22, 2014); *Glass v. BMW of N. America, LLC.*, 2011 U.S. Dist. LEXIS 149199, at *13-*14 (D.N.J. Dec. 29, 2011); *Verizon Directories Corp. v. Yellow Book United States, Inc*., 309 F. Supp. 2d 401, 405 (E.D.N.Y. 2004); *Solum v. Certainteed Corp.,* 147 F. Supp. 3d 404, 412-413 (E.D.N.C. 2015).

upon alleged misrepresentation).[24]   Finally, alleged statements to plaintiffs by dealership salespeople do not provide a basis for liability because plaintiffs allege no facts showing that their dealers were Daimler AG's agents.  *See, e.g.*, *Friedman,* 2013 U.S. Dist. LEXIS 187268, at *20; *In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, 2010 U.S. Dist. LEXIS 68241, at *47-*49.

### 2.   <u>All Plaintiffs (Except Florida) Have Not Adequately Pled Alleged Omissions</u>

California, Kansas, New Jersey, New York, and North Carolina plaintiffs have not pled state consumer protection claims based on alleged omissions.  As discussed in Section V.B.2.a., *supra*, plaintiffs have not alleged any facts showing that Daimler AG knew of the alleged defect before plaintiffs purchased their vehicles.  Because omission-based claims require plausible allegations of Daimler AG's knowledge, plaintiffs have failed to state a claim based on alleged concealment.  *See, e.g.*, *Wilson*, 668 F.3d at 1148 (affirming dismissal of UCL claim where plaintiff failed to "sufficiently allege that [defendant] knew of the alleged defect at the time of sale").[25]

### 3.   **The California Unfair Competition Law and False Advertising Law Claims Fail for Additional Reasons**

<u>Montgomery and Salgado Have Not Adequately Pled a UCL Claim Based on An Unreasonable Safety Hazard</u> – Daimler AG had no duty to disclose the alleged defect because

---

[24]  *See also In re NJOY, Inc. Consumer Class Action Litig*., 120 F. Supp. 3d 1050, 1089 (C.D. Cal. 2015) (applying Florida law); *Rasnic v. FCA US LLC*, 2017 U.S. Dist. LEXIS 206444, at *16 (D. Kan. Dec. 15, 2017); *Stevenson*, 2015 U.S. Dist. LEXIS 70945, at *20; *In re MI Windows & Doors Prods. Liab. Litig.*, 2013 U.S. Dist. LEXIS 48017, at *8 (D.S.C. Apr. 3, 2013) (applying NY law); *Darne v. Ford Motor Co*., 2015 U.S. Dist. LEXIS 169752, at *38 (N.D. Ill. Dec. 18, 2015) (applying NC law).

[25]  *See also Williamson v. Amrani*, 283 Kan. 227, 246 (2007); *Glass*, 2011 U.S. Dist. LEXIS 149199, at *17-*18; *Woods v. Maytag Co*., 2010 U.S. Dist. LEXIS 116595, at *45 (E.D.N.Y. Nov. 2, 2010); *Sara Designs, Inc. v. A Classic Time Watch Co. Inc.*, 234 F. Supp. 3d 548, 558 (S.D.N.Y. 2017) (GBL § 350 claims must meet same elements as §*Resnick*, 2016 U.S. Dist. LEXIS 160179, at *56 (applying NC law).

Montgomery and Salgado have not alleged facts showing it is an unreasonable safety hazard. Defendants in California have no duty to disclose a known defect in a consumer product if it does not present a safety concern.  *See* Section V.B.2.b., *supra*; *Wilson*, 668 F.3d at 1141, 1143 (affirming dismissal of UCL claim where plaintiff failed to allege defect created safety hazard). In addition, even if plaintiffs did not need to plead a safety defect under California law, they would still fail to establish a duty to disclose because they do not plead facts showing the alleged paint defect affects the central function of their vehicles.  *See* Section V.B.2.b; *Hodsdon*, 891 F.3d at 863.

       <u>Montgomery and Salgado Fail to Allege Facts Showing Any Unlawful, Fraudulent, or Unfair Business Practice under the UCL</u> – Montgomery and Salgado fail to sufficiently plead that Daimler AG violated any law that could support a UCL "unlawful" business practices claim.  Such claim must, therefore, be dismissed.  *See, e.g.*, *Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc.*, 2013 U.S. Dist. LEXIS 151128, at *67 (N.D. Cal. Oct. 18, 2013) (dismissing UCL "unlawful" claim because plaintiffs failed to adequately state any other claims).  Further, they also fail to allege facts that satisfy the "fraudulent" prong of the UCL.  As discussed in Sections V.B., V.D., *supra*, they do not plead facts that show presale knowledge of a defect or otherwise sustain fraud claims based on misrepresentations or omissions.  *See also Wilson*, 668 F.3d at 1146 n.5 ("[T]he failure to disclose . . . defect of which it is not aware . . . does not constitute an unfair or fraudulent practice" under the UCL).  Finally, they fail to allege facts showing an "unfair" business practice under the UCL.  As with their other fraud-based claims, they fail to establish that Daimler AG knew of the alleged defect or committed any act or omission that could qualify as an "unfair" business practice.  *See* Sections V.B., V.D., *supra*; *see also Wilson*, 668 F.3d at 1146 n.5; *Punian v. Gillette Co.*, 2015 U.S. Dist. LEXIS 111208, at *41 (N.D. Cal. Aug. 20, 2015) (dismissing UCL

34

"unfair" claim for failure to plead facts showing defendant's presale knowledge of defect).

     <u>Montgomery and Salgado's FAL Claims Fail</u> – For the reasons discussed in Section V.D.1., *supra*, Montgomery and Salgado's FAL claims fail because they do not plead facts under Rule 9(b) showing that they relied upon actionable misrepresentations.  *See*, *e.g.*, *In re Sony Grand Wega*, 758 F. Supp. 2d at 1088-89; *Phillips*, 2016 U.S. Dist. 53148, at *25.  They do not identify the representations they allegedly relied upon, and the quoted advertisements are mere puffery.

     Montgomery and Salgado's FAL claims are also barred by the applicable three-year statute of limitations.  *See* Cal. Civ. Code § 338(a); *Cazares v. Household Fin. Corp.*, 2005 U.S. Dist. LEXIS 39222, at *40 n.17 (C.D. Cal. July 26, 2005).  This period begins to run when the customer purchases a product as a result of the defendant's alleged misrepresentations or omissions.  *See Plumlee v. Pfizer, Inc.*, 2014 U.S. Dist. LEXIS 23172, at *27 (N.D. Cal. Feb. 21, 2014).

     Montgomery and Salgado bought their vehicles in February 2015 and January 2014, respectively—more than three years before filing this suit in August 2018.  Compl. ¶¶ 47, 62.  Thus, their FAL claims are time-barred.  Moreover, while they allege discovery of the defect in 2015 and 2016 (*see id.* ¶¶ 50, 65), respectively, both have failed to fulfill their burden to warrant any tolling of the limitations period.  *See, e.g.*, *Plumlee*, 2014 U.S. Dist. LEXIS 23172, at *27-*32 (plaintiff who failed to plead facts regarding manner of discovery or proof of diligence in making discovery could not invoke discovery rule).  And, even if the limitations period for Salgado's FAL claim were tolled until he discovered the alleged defect, he still has not pled facts showing that this lawsuit was filed within three years of that time.  Compl. ¶ 65 (alleging that Salgado noticed the alleged defect "[i]n approximately 2015").

     **4.  Florida Plaintiff Kloczko's Deceptive & Unfair Trade Practices Act Claim Is Time-Barred As Well**

     Kloczko's FDUTPA claim is subject to the four-year statute of limitations governing

actions based on a statutory liability.  *See* Fla. Stat. § 95.11(3)(f).  Kloczko alleges she bought her

vehicle on May 14, 2014, more than four years before filing this suit.  Compl. ¶ 20.  Her FDUTPA

claim is therefore time-barred.  *See Matthews v. Am. Honda Motor Co.*, 2012 U.S. Dist. LEXIS

90802, at *12 (S.D. Fla. June 6, 2012) (FDUTPA claim time-barred because plaintiff "sustained

damage the moment that she purchased the vehicle with the alleged defect, even though the alleged

defect did not manifest for several years"); *Speier-Roche*, 2014 U.S. Dist. LEXIS 59991, at *20

("[A] claim of mere 'nondisclosure' . . . is legally insufficient to toll the statute of limitations" for

a claim under the FDUTPA.).

### 5. The New Jersey Consumer Fraud Act Claim Also Fails Because the Alleged Defect Manifested After the Expiration of the Warranty Period

Ponzio does not have a viable claim under the NJCFA because the alleged defect did not

manifest in his vehicle until after the expiration of the warranty period.  Ponzio purchased his car

in June 2013.  Compl. ¶ 15.  He alleges he first noticed issues with his vehicle's paint as early as

August 2017, when the four-year warranty was already expired.  *Id.* ¶18.  Courts repeatedly dismiss

NJCFA claims based on allegations that their product defect manifested after expiration of the

warranty period, which is exactly Ponzio's situation here.  *See*, *e.g.*, *Nobile v. Ford Motor Co.*,

2011 U.S. Dist. LEXIS 26766, at *15-17 (D.N.J. Mar. 14, 2011) (holding that where plaintiffs'

vehicle performed past expiration of warranty, plaintiffs' NJCFA claims must be dismissed

because there is no ascertainable loss).

### 6. The New York General Business Law Sections 349 and 350 Claims Are Time-Barred As Well

Nelthrope's claims under New York General Business Law ("GBL") Sections 349 and 350

are time-barred and she cannot establish any tolling of her GBL claims, so these claims must be

dismissed.  Claims under GBL Sections 349 and 350 must be commenced within three years of

the date of accrual.  *Loiodice v. BMW of N. Am., LLC*, 4 N.Y.S. 3d 102, 104 (N.Y. App. Div.

36

2015); *Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F. Supp. 2d 439, 453 (E.D.N.Y. 2007).

Accrual occurs when a plaintiff has been injured by a deceptive act or practice that is in violation

of GBL Sections 349 and 350.  *Loiodice*, 4 N.Y.S. 3d at 104.  Here, Nelthrope alleges that she

discovered issues with her vehicle's paint in approximately October 2014, thereby starting her

accrual period.  Nelthrope did not initiate the instant action until August 2018—almost one year

past her statute of limitations deadline and four years after she allegedly discovered what she

believed was a defect.  Compl. ¶ 60.  Thus, Nelthrope's claims are time-barred.

### 7. The North Carolina Unfair and Deceptive Trade Practices Act Claim Fails for Additional Reasons

<u>Mull Does Not Allege Facts Showing Actual Injury</u> – To maintain a claim under the

NCUDTPA, a plaintiff must plausibly allege "actual injury."  *Coker v. DaimlerChrysler Corp.*,

617 S.E.2d 306, 310 (N.C. App. Ct. 2005).  Mull has not done so.  He concedes that "the cost of

repainting [his vehicle] was covered under warranty."  Compl. ¶ 55.  Moreover, his claim to have

suffered injury as a result of an alleged diminution in value is insufficient under North Carolina

law.  Mull does not claim to have actually realized any such diminution in value by selling or

trading in his car.  Instead, he merely relies on "a hypothetical and . . . unsubstantiated diminution

of value allegedly caused by a purported 'defect,'" but claims for unrealized diminished value "are

too speculative and illusory to show a legal injury in fact."  *Coker*, 617 S.E.2d at 313 (dismissing

claims under NCUDTPA and North Carolina common law fraud).

<u>North Carolina's Economic Loss Rule Bars the NCUDTPA Claim</u> – In North Carolina, the

economic loss rule "prohibits recovery for purely economic loss in tort when a contract, a warranty,

or the UCC operates to allocate risk."  *Seven Peanut Co. v. Indus. Fumigant Co.*, 807 F.3d 88, 94

(4th Cir. 2015).  Courts applying North Carolina's economic loss rule have held that it bars

NCUDTPA claims "involving allegations of a defective product where the only damage alleged is

37

damage to the product itself and the allegations of unfair trade practices are intertwined with the breach of contract or warranty claims." *Bussian*, 411 F. Supp. 2d at 627.  Here, Mull alleges only damage to his vehicle and "the only information he alleges to be concealed is that related to [the alleged] product defect." *Butcher v. DaimlerChrysler Co.*, 2008 U.S. Dist. LEXIS 57679, at *14 (M.D.N.C. July 29, 2008).  Thus, the economic loss rule bars his NCUDTPA claim.

## MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### VI. THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER NON-NEW JERSEY PLAINTIFFS' CLAIMS AGAINST DAIMLER AG

Under the Supreme Court's recent holding in *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017), this Court lacks specific personal jurisdiction over Daimler AG—a foreign corporation with its principal place of business in Stuttgart, Germany—as to claims of plaintiffs with no connection to New Jersey. *See* Compl. ¶ 72.  Specific jurisdiction exists only if a defendant has certain minimum contacts with the forum state and the lawsuit "arises out of or relates to" them. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014).  This requires "a connection between the forum and the specific claims at issue." *Bristol-Myers*, 137 S. Ct. at 1781.  These do not exist here between New Jersey and the claims of the non-New Jersey named plaintiffs and putative class members.

*Bristol-Myers* involved a mass tort action brought in California state court by more than 600 plaintiffs—only some of whom were California residents—seeking to recover for harms allegedly caused by non-California resident Bristol-Myers Squibb Co. ("BMS").  BMS challenged personal jurisdiction with respect to the nonresidents' claims.  Reversing the California Supreme Court, the U.S. Supreme Court found that specific jurisdiction was lacking as to these claims: "[w]hat is needed—and what is missing here—is a connection between the forum and the specific claims at issue."  137 S. Ct. at 1781.  In particular, it reasoned that "[t]he mere fact that *other*

38

plaintiffs were prescribed, obtained, and ingested [the drug] Plavix in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Id.* (emphasis in original).

Here, only one named plaintiff—Ponzio—alleges he resides and purchased his class vehicle in New Jersey. Compl. ¶ 15. No other plaintiff alleges any connection whatsoever with New Jersey. *See id.* ¶¶ 20-66. Thus, the only nexus between the non-New Jersey plaintiffs' claims and the State of New Jersey is that the non-New Jersey plaintiffs allegedly suffered the same injury as Ponzio. Accordingly, even assuming specific personal jurisdiction exists as to Ponzio's claims against Daimler AG, under *Bristol-Myers* that is an insufficient basis to assert personal jurisdiction over Daimler AG with respect to the nonresidents' claims. Where "[t]he relevant plaintiffs are not residents" of the state in which the action is brought "and do not claim to have suffered harm in that State," there can be no personal jurisdiction over their claims because "the conduct giving rise to the nonresidents' claims occurred elsewhere." *Bristol-Myers*, 137 S. Ct. at 1782.

It does not matter that the non-New Jersey plaintiffs bring their claims as a putative class action. Where non-New Jersey residents "have affirmatively brought this putative class action as named plaintiffs[,]… there must be a connection between their claims and [defendants'] activities within New Jersey, even if [the non-resident's] claims are similar or identical to claims brought by the resident named plaintiffs." *Horowitz v. AT&T Inc.*, 2018 U.S. Dist. LEXIS 69191, at *46-*47 (D.N.J. Apr. 25, 2018); *see also Chernus v. Logitech, Inc.*, 2018 U.S. Dist. LEXIS 70784, at *17-*18 (D.N.J. Apr. 27, 2018) ("[T]he mere fact that the New Jersey class members … allegedly sustained the same injuries as did Chernus—a nonresident of New Jersey—alone does not confer

39

this Court with specific jurisdiction over Chernus' claims.").[26]

      For similar reasons, this Court also lacks personal jurisdiction with respect to the claims of putative class members who do not reside in New Jersey and did not purchase or lease a class vehicle in this State. The nationwide class that plaintiffs seek to represent comprises "[a]ll persons or entities in the United States … that purchased or leased a Class Vehicle," and therefore includes many putative class members with no connection to New Jersey. Compl. ¶ 192. *Bristol-Myers*, however, precludes plaintiffs' request because "settled principles regarding specific jurisdiction" require "a connection between the forum and the specific claims at issue." 137 S. Ct. at 1781. Here, the "mere fact that other plaintiffs"—*e.g.*, Ponzio and New Jersey putative class members— allegedly purchased or leased their vehicles in New Jersey "does not allow the State to assert specific jurisdiction over the nonresidents' claims." *See Bristol-Myers*, 137 S. Ct. at 1781. District courts have applied *Bristol-Myers* to find they could not assert personal jurisdiction over claims of nonresident putative class members. *See, e.g.*, *Practice Mgmt. Support Sys. v. Cirque Du Soleil, Inc.*, 2018 U.S. Dist. LEXIS 39754, at *47 (N.D. Ill. Mar. 12, 2018).[27]

      *Bristol-Myers* forbids the assertion of specific jurisdiction where, as here, the only connection between non-New Jersey named plaintiffs and putative class members' claims and the State of New Jersey is that the non-resident named plaintiffs and putative class members allegedly suffered the same alleged injury as New Jersey plaintiffs.

---

[26] *See also Howe v. Samsung Elecs. Am., Inc.*, 2018 WL 2212982, at *3 (N.D. Fla. Jan. 5, 2018); *Greene v. Mizuho Bank, Ltd.*, 289 F. Supp. 3d 870, 874 (N.D. Ill. 2017); *accord Spratley v. FCA US LLC*, 2017 U.S. Dist. LEXIS 147492, *19-*20 (N.D.N.Y. Sept. 12, 2017).

[27] *See also Wenokur v. AXA Equitable Life Ins. Co.*, 2017 U.S. Dist. LEXIS 162812, at *12 n.4 (D. Ariz. Oct. 2, 2017); *In re Dental Supplies Antitrust Litig.*, 2017 U.S. Dist. LEXIS 153265, at *37 (E.D.N.Y. Sept. 20, 2017); *Howe v. Samsung Elecs. Am., Inc*., 2018 WL 2212982, at *4 (N.D. Fla. Jan. 5, 2018).

**MOTION TO DISMISS FOR LACK OF STANDING**

**VII.** **PLAINTIFFS LACK STANDING TO BRING CLAIMS ON BEHALF OF PUTATIVE CLASS MEMBERS IN OTHER STATES**

The Court should dismiss the Complaint's non-New Jersey nationwide and non-New Jersey state-specific claims for lack of standing because they are brought on behalf of putative class members whose claims arise under the laws of states in which named plaintiffs did not suffer any alleged harm. In a putative class action, the named plaintiffs must allege and prove that they personally have been injured, "not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1996); *see In re Magnesium Oxide Antitrust Litig.*, 2011 U.S. Dist. LEXIS 121373, at *37 (D.N.J. Oct. 20, 2011) ("[T]he Supreme Court's standing cases confirm that a plaintiff must demonstrate standing for each claim he seeks to press."); *In re Ductile Iron Pipe Fittings Indirect Purchaser Antitrust Litig.*, 2013 U.S. Dist. LEXIS 36783, at *13 (D.N.J. Mar. 18, 2013) ("'[A] claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to the claim.'").[28]

Here, the named plaintiffs allege vehicle purchases in six different states. S*ee* Compl. ¶¶ 15, 20, 26, 31, 36, 42, 47, 52, 57, 62 (New Jersey, California, Florida, Kansas, New York, and North Carolina). Yet, they assert state-specific causes of action and seek to represent subclasses on behalf of all 50 states plus the District of Columbia. *Id.* ¶¶ 192, 249-1994. Because plaintiffs cannot assert claims on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim, at a minimum they lack standing to bring claims under the laws of the

---

[28] *See also*, *e.g.*, *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1164 (N.D. Cal. 2009) ("Where, as here, a representative plaintiff is lacking for a particular state, all claims based on that state's laws are subject to dismissal."); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 2015 U.S. Dist. LEXIS 84152, at *92-93 (N.D. Ill. June 29, 2015).

41

45 jurisdictions where they suffered no alleged injury.  *See, e.g.*, *In re Magnesium Oxide Antitrust Litig.,* 2011 U.S. Dist. LEXIS 121373, at *37-*38 (dismissing for lack of standing claims for states where named plaintiffs did not purchase products); *McGuire v. BMW of N. Am., LLC*, 2014 U.S. Dist. LEXIS 77009, at *17 (D.N.J. June 6, 2014) ("Plaintiff here lacks standing to assert claims under the laws of the states in which he does not reside, or in which he suffered no injury.") (collecting cases).[29]  Additionally, the claims brought under California, Florida, Kansas, New York, and North Carolina law should also be dismissed because the court lacks personal jurisdiction with respect to those plaintiffs' claims under under *Bristol-Myers*, leaving only Ponzio's New Jersey-specific claims.  *See* Section VI., *supra*.

Similarly, the Complaint's nationwide fraudulent concealment, Magnuson-Moss Warranty Act, and unjust enrichment claims should also be dismissed for lack of standing to the extent they are brought on behalf of putative class members outside of New Jersey.  *See* Compl. ¶¶ 202-244. Such claims arise under, or turn on, the laws of states where named plaintiffs have suffered no injury.  "New Jersey choice of law principles require an interest analysis, in which the forum court compares the interests of the states whose laws are potentially involved in the underlying action and determines which state has the greatest interest in having its law applied."  *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 348 (D.N.J. 1997).  Thus, here, where nationwide claims are asserted, "[e]ach plaintiff's home state has an interest in protecting its consumers from in-state injuries caused by foreign corporations and in delineating the scope of recovery for its citizens under its own laws."  *Id.*  As a result, the nationwide putative class members' claims are governed by the law of their respective states.  *See, e.g.*, *id.* at 347 (putative

---

[29]  *See also In re Carrier IQ, Inc., Consumer Privacy Litig.*, 78 F. Supp. 3d 1051, 1074 (N.D. Cal. 2015); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 158 (E.D. Pa. 2009); *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1372 (S.D. Fla. 2001).

class members in other states "have a due process right to have their claims governed by the applicable state law for their dispute"); *Grandalski v. Quest Diagnostics Inc.*, 767 F.3d 175, 182 (3d Cir. 2014) (affirming decision to apply laws of class members' home states to their state law claims where plaintiff's "home state, in which he received and relied on the defendant's alleged fraud, has the 'most significant relationship' to his [] claim") (quotation omitted); *see also* Sections III, IV.A, and V.B.1.  The named plaintiffs who cannot bring claims under the laws of those states lack standing to bring claims on behalf of these putative class members under the guise of "nationwide" claims.

Thus, because plaintiffs lack standing to assert claims under the laws of states in which they have not allegedly suffered injury, those claims must be dismissed.

## MOTION TO TRANSFER

**VIII.   IN THE ALTERNATIVE, THE COURT SHOULD TRANSFER THIS CASE TO THE NORTHERN DISTRICT OF GEORGIA PURSUANT TO 28 U.S.C. § 1404(A)**

If the Court does not dismiss the non-New Jersey plaintiffs for lack of personal jurisdiction, it should, in the alternative, transfer this case pursuant to 28 U.S.C. Section 1404(a) to the Northern District of Georgia.  The Northern District of Georgia is a district where this case "might have been brought," as it is where Defendant MBUSA's principal place of business is located.  *See* 28 U.S.C. § 1404(a); Compl. ¶ 67.  Moreover, the public and private interest factors as well as the interests of justice weigh in favor of transfer there.  *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995) (outlining private and public interest factors).

The private interest factors weigh in favor of transfer or are otherwise neutral.  In particular, for factor one, "a plaintiff's choice of forum becomes substantially less important where he sues representatively on behalf of a class."  *Huang v. Sonus Networks, Inc.*, 2016 U.S. Dist. LEXIS 36009, at *6 (D.N.J. Mar. 21, 2016).  Here, nine of the ten named plaintiffs reside in states other

43

than New Jersey.  Most are in the Southeast, making the Northern District of Georgia a more convenient forum.  Compl. ¶¶ 20, 26, 31, 36, 52, 57.  Unlike in the District of New Jersey, personal jurisdiction exists in the Northern District of Georgia for all the named plaintiffs' claims against Defendant MBUSA, as MBUSA is subject to general jurisdiction in that forum.  Plaintiffs also seek to represent a nationwide putative class and fifty-one state-specific subclasses, including a Georgia one. *Id.* ¶ 192.  Further, the public interest factors also favor transfer or are neutral.  Factor three—court congestion in the two fora—greatly favors transfer to Georgia.  For the 12-month period ending June 30, 2018, the District of New Jersey experienced an average of 1,327 new cases per judge, compared to 731 in the Northern District of Georgia.[30]  Civil cases in the District of New Jersey take a median time of 7.5 months from filing to disposition, compared to 6.6 months in the Northern District of Georgia.  *Id.* at 15, 93.

Finally, this case should be transferred to the Northern District of Georgia in the interests of justice, where a duplicative action alleging the same "Mars Red" paint defect is pending.  *See Pinon v. Daimler AG and Mercedes-Benz USA, LLC*, No. 1:18-cv-03984 (N.D. Ga. filed Aug. 21, 2018) ("*Pinon*").  *Pinon* involves the same defendants and alleges, like here, that Mars Red paint has a defect that causes the exterior surface of vehicles to peel and bubble.  *Pinon*, Dkt. 1, ¶ 4; *see also Catanese v. Unilever*, 774 F. Supp. 2d 684, 690 (D.N.J. 2011).  *Pinon* also asserts a nationwide putative class, like here.  *See Pinon*, Dkt. 1, ¶ 82.  Further, the fact that the present case was filed only two weeks before *Pinon* and is not substantially ahead of it means that transfer would not impede the expeditious litigation of these matters.  *See Lawrence v. Xerox Corp.*, 56 F. Supp. 2d

---

[30]  *See* U.S. District Courts—Combined Civil and Criminal, Federal Court Management Statistics (June 30, 2018), at http://www.uscourts.gov/sites/default/files/data_tables/ fcms_na_distprofile0630.2018.pdf (last accessed Jan. 14, 2019), p. 15, 93; *Huang*, 2016 U.S. Dist. LEXIS 36009, at *11 (finding it appropriate to use these statistics in discussing factor three.).

442, 455 (D.N.J. 1999).  As a result, the Court should transfer this action to the Northern District of Georgia if it does not dismiss the non-New Jersey plaintiffs for lack of personal jurisdiction.

## **CONCLUSION**

For the reasons stated above, plaintiffs' Complaint must be dismissed.

**SHOOK, HARDY & BACON L.L.P.**

Dated: January 15, 2019

*s/ Joseph H. Blum*
Joseph H. Blum
Thomas J. Sullivan
John M. Lyons
Two Commercial Square
2001 Market St., Suite 3000
Philadelphia, PA 19103
Telephone:  (215) 278-2555
Facsimile: (215) 278-2594
jblum@shb.com
tsullivan@shb.com
jlyons@shb.com

*Attorneys for Defendants*
*MERCEDES-BENZ USA, LLC and*
*DAIMLER AG*

699726 v1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have filed the foregoing Defendant Daimler AG's Brief in Support of Motion to Dismiss Plaintiffs' Class Action Complaint for Lack of Personal Jurisdiction, Lack of Standing, and Failure to State a Claim, or, in the Alternative, Motion to Transfer with the Court's CM/ECF system on January 15, 2019, which automatically generates notification of the filing to all counsel of record.

*s/ Joseph H. Blum*
Joseph H. Blum

699726 v1